UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RUBIK'S BRAND LIMITED,
                Plaintiff,

– against –

FLAMBEAU, INC., et al.,
                Defendants.

**OPINION AND ORDER**

**17-CV-6559 (PGG) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Discovery in this trademark case involving Plaintiff's Rubik's Cube and Defendant's Quick Cube is nearly complete. The expert discovery deadline, which initially was September 12, 2018, was extended to January 30, 2019. According to the schedule set by this Court in October, the parties were to serve expert reports on December 5, 2018 and rebuttal reports on January 7, 2019. (Doc. No. 97.)

      On December 27, 2018, Plaintiff Rubik's Brand Limited ("RBL") requested permission to serve one additional expert report after expiration of the December 5 deadline. Its late request is premised on information learned at a November 29, 2018 deposition and receipt of documents after the close of fact discovery and in response to motions to compel documents related to the design and manufacture of Defendant Flambeau, Inc.'s ("Flambeau") allegedly infringing Quick Cube. The first tranche of documents produced by Flambeau on September 13, 2018 revealed certain product safety issues with the Quick Cube. RBL brought the safety issues to the attention of this Court at a September 21, 2018 conference, at which it requested additional discovery, including a preliminary product safety test report and a supplemental deposition of Michael Burke, head of Duncan Toys (the division of Flambeau that sells the Quick

1

Cube). The Court granted RBL's request. Flambeau produced the test report on October 24, and Burke testified on November 29. On December 12 and 21, 2018, Flambeau produced additional documents concerning safety testing and shipment of the Quick Cubes.

RBL argues there is good cause to allow service of an additional expert report in light of its recent discovery of the full extent of the safety problems with the Quick Cube and its distribution to consumers, RBL's quick application for a modification of the discovery schedule, and the fact that its request will not delay resolution of this case or impact the January 30, 2019 deadline for the close of expert discovery.

Flambeau argues that its September 13, 2018 document production put RBL on notice of the potential need for a product safety expert, that RBL had time to identify an expert prior to the December 5 deadline or at least request an extension of that deadline, and that RBL was not diligent in waiting three weeks after expiration of the December 5 deadline to retain a safety expert. It states that the preliminary safety test and report that indicated the Quick Cube did not meet state and federal safety standards is superseded by the final safety report that indicated the Quick Cube met all applicable safety standards. It also argues that the proposed expert will not be helpful to the jury to understand relevant evidence or determine facts pertinent to Plaintiff's claims. Therefore, it argues RBL has not demonstrated good cause to modify the Court's scheduling Order.

## **DISCUSSION**

Federal Rule of Civil Procedure ("Rule") 16(b) requires the trial court to issue a scheduling order as soon as practicable in a case. Fed. R. Civ. P. 16(b). "The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file

motions." Fed. R. Civ. P. 16(b)(3)(A). It is well established that trial courts have broad authority to oversee and set a discovery schedule as appropriate for each case. *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (recognizing broad discretion of magistrate judges in resolving discovery disputes). This broad discretion includes the setting of deadlines for expert disclosures. In fact, consistent with Rule 16(b)'s mandates, Rule 26(a)(2)(D) expressly provides that expert disclosures must be made "at the times and in the sequence that the court orders" but, absent a scheduling order, "at least 90 days before the date set for trial or for the case to be ready for trial." Fed. R. Civ. P. 26(a)(2)(D).

A court-ordered discovery schedule may be modified with the court's consent, for good cause shown. *See* Fed. R. Civ. P. 16(b)(4). Rule 16 does not set forth a definition of "good cause." However, any interpretation and application of Rule 16 must be consistent with Rule 1's mandate to "secure the just, speedy, and inexpensive determination of every action" and Rule 26's mandate to limit the extent of discovery when "the party seeking discovery has had ample opportunity to obtain the information" within the schedule set by the court. Fed. R. Civ. P. 1, 26(b)(2)(C). Courts have considered varying factors in determining whether a party has established good cause sufficient to justify modification of a Rule 16(b) scheduling order. Factors differ based upon the posture of the case and the particular type of relief sought – for example, an extension of the discovery schedule, leave to file an untimely amended pleading, or a "reopening" of discovery.

In the context of a motion to file an untimely amended pleading, the Second Circuit has emphasized that the primary consideration in determining good cause is whether the moving party can demonstrate diligence. *Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 244 (2d

Cir. 2007) (explaining that diligence is the primary but not only consideration); *see also High Point Design LLC v. Buyer's Direct, Inc.*, 730 F.3d 1301, 1319 (Fed. Cir. 2013). This consideration has been applied in the context of motions to reopen discovery or permit certain discovery after expiration of a court-established deadline. *See Young v. Southwest Airlines Co.*, No. 14-cv-1940 (LDH) (RLM), 2016 WL 3257008, at *2 (E.D.N.Y. May 4, 2016); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79 (S.D.N.Y. 2012) ("A party seeking to reopen expert discovery must show that the tardy submission of its desired expert report was not caused by the party's own lack of diligence."); *King v. Friend of Farmer, Inc.*, No. 97-cv-9264 (BSJ) (RLE), 2000 WL 290355 (S.D.N.Y. Mar. 21, 2000) (rejecting defendants' effort to reopen discovery to retain new expert seven months after all discovery closed).

Courts additionally consider a number of other factors in determining whether good cause exists, including the moving party's explanation for failing to comply with the scheduling order and diligence in seeking a modification to the schedule, the importance and relevance of the expert testimony to the case, whether the party seeking the additional discovery has had an adequate opportunity for discovery, prejudice to the party opposing the request, and imminence of trial.[1] *See Young*, 2016 WL 3257008, at *2; *Venite v. St. Luke's/Roosevelt Hosp.*, No. 01-cv-4067 (SAS), 2002 WL 1461493 (S.D.N.Y. July 3, 2002).

In this case, whether RBL has shown good cause is a close call. First, with respect to RBL's diligence, the Court notes that RBL had certain documents in its possession indicating a potential need for a safety expert at least twelve weeks before the December 5 deadline. At

---

[1] In the context of a timely but contested motion to extend the discovery schedule, other factors also may be relevant. *See, e.g., City of Almaty, Kazakhstan v. Ablyazov, et al.*, No. 15-cv-05345 (AJN) (KHP), 2018 WL 2148430, at *1 (S.D.N.Y. May 10, 2018) (discussing factors pertinent to determining extension of discovery).

that time, RBL sought and was granted additional discovery over Flambeau's objection and contention that the safety test information was irrelevant. RBL was not able to conduct a deposition of the relevant witness (Mr. Burke) to answer questions about the product safety testing until the end of November, approximately one week before the December 5 deadline. RBL states only then did it learn "the salient facts regarding the disposition of the failed puzzled cubes" warranting retention of a safety expert. RBL further states that at the deposition it learned, contrary to Flambeau's prior representations, that additional shipping documents existed showing that unsafe Quick Cubes (*i.e.*, ones that had failed safety tests) had been shipped to consumers with the knowledge that they were unsafe and never recalled. Flambeau vigorously contests RBL's characterization of what the deposition testimony and the additional shipping documents show but does not dispute that it produced them after the December 5 deadline. However, what the evidence shows is not something the Court will evaluate at this point; each party can make its arguments on the merits at a later stage of this action. RBL blames the delay in its request for a modification of the expert disclosure deadline with respect to its proposed safety expert on Flambeau's failure to comply with its discovery obligations. Flambeau rightly points out that RBL could have taken initiative to secure an expert before December 5 in the event the deposition revealed information warranting the preparation of the report.

While it is unlikely any expert would have been in a position to prepare a report between the November 29 deposition and the December 5 deadline and without the benefit of the additional shipping documents, RBL could have requested an extension of the December 5 deadline immediately after the deposition and explained that it was expecting additional

5

documents to confirm the necessity of such an expert to prevent incurring an unnecessary expense (or potentially earlier when it first learned of a potential safety issue).  Instead, out of an "abundance of caution," it chose to first to obtain additional testimony and review the additional documents pertaining to this issue before finalizing its decision to retain a safety expert.  It made its request for a modification of the expert schedule within a week after receiving the documents and more than a month before the January 30, 2019 close of expert discovery.  The Court notes that RBL vigorously pursued the safety-related information and filed several applications with the Court to compel Flambeau to search more vigorously for the documents and produce them.  Flambeau only did so after RBL sought Court intervention and only after the close of fact discovery.  RBL should not be prejudiced by Flambeau's delay in producing information on the issue of product safety.  On balance, based on the above, the Court finds that RBL was sufficiently diligent in pursuing the product safety discovery and in seeking a modification of the expert disclosure deadline within a few weeks after taking Mr. Burke's deposition and a week after receiving a supplemental production from Defendant.

      RBL contends that its proposed safety expert's opinion will be highly relevant to the issue of liability and damages to its good will and reputation, and that its expert will be helpful to the jury with regard to product safety testing and the U.S. Consumer Product Safety Act.  According to RBL, its expert can explain the significance and relevance of the failed product safety test.  Flambeau argues that the proposed expert is unnecessary and will not be helpful to the jury on any issue relevant to liability.  It does not dispute that the proposed expert might potentially be relevant to damages if Plaintiff shows confusion.

A claim for trademark infringement requires proof that the plaintiff has senior rights in a protectable mark, and that the defendant's use of its mark is likely to cause confusion as to the origin or sponsorship of its product. *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). The types of relief awarded on a successful infringement claim include the plaintiff's actual damages, such as lost profits on diminished sales, the cost of corrective advertising, and expenditures to prevent, correct, or mitigate consumer confusion; an injunction; disgorgement of defendant's profits; and allowable litigation costs. 15 U.S.C. §§ 1116(a), 1117(a); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir. 1996). Section 1117(a) further authorizes the court to enter judgment for any sum above the amount found as actual damages, but not to exceed three times such amount, according to the circumstances of the case. But, such award cannot be punitive or disproportionate to the actual loss suffered by the Plaintiff. *See Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988).

Not knowing the precise points RBL's proposed expert will make, the Court cannot determine whether the expert testimony will be helpful to the jury or offer relevant opinions. Nor can the Court determine the importance of the expert testimony to the issue of damages. Flambeau's arguments about the proposed expert testimony are made without the benefit of that testimony. While Flambeau contends that RBL cannot show confusion, this argument goes to the merits and is not appropriate for this Court to weigh in on at this juncture. On balance, RBL has explained how the proposed expert testimony could potentially be relevant to harm to RBL's reputation in the event RBL demonstrates confusion and, potentially, the issue of enhanced damages or corrective advertising costs. *See Grant Airmass Corp. v. Gaymar Indus.,*

*Inc.,* 645 F. Supp. 1507, 1514 (S.D.N.Y. 1986) (sustaining claims for lost business, loss of reputation and corrective advertising at summary judgment stage); *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.,* 580 F. Supp. 634, 636 (S.D.N.Y. 1984) (monetary damages appropriate for corrective measures even without showing of lost sales). Most of Flambeau's arguments as to relevance and admissibility of RBL's proposed expert testimony are premature and should be made in the context of an *in limine* or *Daubert* motion. RBL has sufficiently articulated possible relevance.

As to other factors relevant to RBL's motion, the Court notes that it has granted only one extension of the discovery schedule and expert discovery has not yet ended. However, in fairness, Flambeau may require additional time beyond the January 30, 2019 deadline to provide a rebuttal report and depose RBL's expert. At the same time, no trial date has been set and thus the additional proposed discovery will not impact the timing on a final resolution of this case. Finally, the Court considers whether Flambeau will be prejudiced by allowing RBL to serve the additional expert report. While it is true that the additional discovery may increase costs, the likely additional costs associated with one additional expert issue in light of the total expenses incurred to date in this case are not disproportionate to the needs of the case. Additionally, if Flambeau is provided sufficient time to depose RBL's proposed expert and serve a rebuttal expert if needed, prejudice will be mitigated.

Flambeau has cited to several cases where the court denied a party's request to name an expert after the deadline for doing so expired. *See Venite*, 2002 WL 1461493 (precluding defendant from naming an expert two months after the court-ordered deadline, six weeks before trial, and more than a week after plaintiff had submitted her portion of the Joint Pretrial

Order); *Lopez v. Louro*, No. 01-cv-2490 (JSM) (DF), 2002 WL 31682398 (S.D.N.Y. Nov. 27, 2002) (denying leave to file untimely supplemental expert report in light of prior significant extensions to discovery schedule, Court's prior warning that further extensions would be granted only for good cause, and fact that plaintiff would need additional time to explore the expert's opinion and conduct a deposition); *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 643-644 (Fed. Cir. 2015) (defendant/counterclaim plaintiff failed to demonstrate good cause for amending pleading by court-established deadline when it had information necessary for amendment prior to deadline; district court did not abuse discretion in denying motion to amend); *Bard v. Bd. of Educ. of City of New York*, No. 99-cv-0149 (BSJ) (DF), 2002 WL 188471, at *1 (S.D.N.Y. Feb. 6, 2002) (denying plaintiff's request to submit expert report one year after expiration of court-established deadline even though no trial date set). These cases are all distinguishable because of the imminence of trial, the greater time elapsed since the motion to reopen discovery and expiration of the applicable deadline, and/or the lack of diligence on the part of the party requesting a modification to the court-established deadline.

Similarly, the cases cited by RBL are not particularly helpful to its cause. *See Lehal v. U.S. Marshal Serv.*, No. 13-cv-03923 (DF), 2017 WL 4862781, at *7-8 (S.D.N.Y. Oct. 17, 2017) (granting unopposed request for extension of expert discovery deadline due to *defendant's* inadequate preparation of 30(b)(6) witness and resulting incomplete deposition testimony); *Young*, 2016 WL 3257008, at *3-4 (granting plaintiff's request to reopen expert discovery for a limited purpose because trial was not yet scheduled, the expert discovery was relevant to plaintiff's damages, plaintiff, who originally was *pro se*, had been diligent in finding counsel and

9

seeking the extension shortly after obtaining counsel, and additional costs to defendant were not unduly prejudicial given the minimal resources spent by defendant in discovery).

Nevertheless, in view of the cases cited by both parties and when balancing the various factors discussed above, the Court grants RBL's motion. RBL shall serve its expert report by January 23, 2019. Flambeau shall have until February 8, 2019 to serve a rebuttal report. The depositions of the safety expert(s) shall be completed by February 28, 2019. Pre-Dispositive Motion Conference Letters (pursuant to Rule 4(A) of Judge Gardephe's Individual Rules of Practice) shall be filed by March 8, 2019. The parties shall propose a briefing schedule for any proposed dispositive motions in their Pre-Dispositive Motion Letters. A post-discovery conference will be held on March 11, 2019 at 4:30 p.m. in Courtroom 17D.

**SO ORDERED.**

Dated: January 14, 2019
      New York, New York

*Katharine H. Parker*
_____
KATHARINE H. PARKER
United States Magistrate Judge