UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

RUBIK'S BRAND LIMITED,

                    Plaintiff,

      - v -

FLAMBEAU, INC., et al.,

                    Defendants.

**ORDER**

17 Civ. 6559 (PGG) (KHP)

PAUL G. GARDEPHE, U.S.D.J.:

        In this trademark infringement action, Plaintiff Rubik's Brand Limited ("RBL") alleges that Defendant Flambeau, Inc. manufactures and sells puzzles (the "Quick Cube") that copy and emulate the distinctive appearance of its product, the Rubik's Cube. The Complaint pleads claims under the Lanham Act, 15 U.S.C. §§ 1051 et seq., and New York law. (Cmplt. (Dkt. No. 1))

        On July 2, 2018, this case was referred to Magistrate Judge Katharine H. Parker for general pretrial management. (July 2, 2018 Order (Dkt. No. 56))

        In a January 24, 2019 letter, Plaintiff sought leave to file an Amended Complaint that would add a claim under the New York General Business Law ("GBL") § 349 for deceptive acts and trade practices. (Pltf. Br. (Dkt. No. 115); Proposed Amended Complaint ("PAC") (Dkt. No. 115-1))

        On April 29, 2019, Judge Parker submitted a Report and Recommendation ("R&R") recommending that this Court deny Plaintiff's motion to amend. (R&R (Dkt. No. 140)

at 1)[1]  Plaintiff filed objections to the R&R.  (Dkt. No. 141)  For the reasons stated below, this Court will adopt the R&R to the extent that Plaintiff's motion to amend will be denied.

## BACKGROUND

### I. THE COMPLAINT

Plaintiff produces the Rubik's Cube, a 3-D combination puzzle that is the best-selling puzzle game of any kind in the world.  (Cmplt. (Dkt. No. 1) ¶ 9)  Plaintiff estimates that more than 40 million Rubik's Cube puzzles have been sold in the United States.  (Id. ¶ 11)  Defendant Flambeau, through its Duncan Toys Company division, manufactures and sells yoyos, toys and puzzles on its website to online retailers and to national retail store chains for resale to consumers.  (Id. ¶ 17)  At issue in this case is Defendant's "Quick Cube," a twist-cube puzzle that Plaintiff alleges mimics the features and appearance of the Rubik's Cube.

The Complaint alleges the following claims:  infringement of Plaintiff's registered trademark in violation of 15 U.S.C. § 1114; false designation of origin in violation of 15 U.S.C. § 1125(a); dilution of Plaintiff's trademark in violation of 15 U.S.C. § 1125(c); violation of Section 360-1 of the New York General Business Law ("GBL"); and New York common law trademark infringement.  (Id. ¶ 1)

### II. PROCEDURAL HISTORY

The Complaint was filed on August 28, 2017.  (Id.)  Pursuant to this Court's scheduling order, any motion to amend was due by April 13, 2018, except for good cause shown.  (Dkt. No. 38)  Fact discovery closed on September 10, 2018 (see Dkt. No. 57), and expert

---

[1] Except as to deposition transcripts, the page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.  As to depositions, the pagination is that assigned by the court reporter.

discovery closed on January 30, 2019.  (Dkt. No. 97)  The instant motion was filed on January 24, 2019.  (Dkt. No. 115)

## III.     PLAINTIFF'S MOTION TO AMEND

Plaintiff is moving to amend after uncovering what it claims are potentially serious product safety issues with Defendant's Quick Cubes.  (Id. at 1-2)  The PAC adds a claim under New York GBL § 349 alleging that Defendant has sold defective products that harmed the general public.  (Id.)

Plaintiff claims that in or about January 2016, Defendant Flambeau received shipments of approximately 9,200 units of Quick Cubes from its Chinese manufacturer.  (PAC (Dkt. No. 115-1) ¶ 22)  When Defendant received the puzzles in January 2016, they had not yet been tested for compliance with the U.S. Consumer Product Safety Improvement Act of 2008 (the "CPSIA") or California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65").  (Id. ¶¶ 23-24)  In February 2016, Defendant arranged for several of the puzzles from the January 2016 shipments to be tested for compliance with these statutes.  (Id. ¶ 24)

On or about March 16, 2016, Defendant received a test report indicating that the Quick Cubes from the January shipments tested positive for the presence of phthalates, a toxic chemical and suspected carcinogen.  Tests revealed that the Quick Cubes contained levels of phthalates of up to 150 times more than the limits set in the CPSIA and Proposition 65.  (Id. ¶¶ 25-27)  The report indicates that the source of the toxic chemical is polyvinyl chloride material ("PVC") used to make the stickers that are attached to each of the six sides of the Quick Cubes. (Id. ¶ 27)

Plaintiff alleges that – despite knowing that the Quick Cubes did not comply with the CPSIA and Proposition 65 – Defendant shipped thousands of these products to distributors and customers in the United States in March and April 2016.  (Id. ¶ 29)  Defendant did not notify its distributors or customers about the safety risks, nor did Defendant report to the Consumer Product Safety Commission that it was selling puzzles that did not comply with the CPSIA and Proposition 65.  (Id. ¶¶ 32-33)  Plaintiff contends that Defendant led "purchasers and members of the public [to] falsely believe that [its Quick Cubes are] safe," when in reality they "pose a hazard and threaten harm to the public."  Plaintiff further contends that Defendant's actions are "likely to cause damage to Plaintiff and to the extraordinary goodwill amassed in and symbolized by the RUBIK'S Design Mark."  (Id. ¶¶ 35-37)

## IV.  JUDGE PARKER'S R&R

In her R&R, Judge Parker recommends that Plaintiff's motion to amend be denied.  (R&R (Dkt. No. 140) at 1)  According to Judge Parker, "the alleged injury to Plaintiff is entirely speculative and indirect" in that "the only . . . potential harm [is] to its goodwill if it proves that Defendant infringed on its trademark and/or that consumers confused the Quick Cubes with the Rubik's Cube and if consumers learn that the Quick Cubes were, in fact, toxic."  (Id. at 5)  But "Defendant provided evidence that no toxic Quick Cubes were shipped," and Plaintiff "has no evidence that anyone ever confused a Rubik's Cube with one of Defendant's Quick Cubes."  (Id.)

Judge Parker further concludes that "trademark cases fall outside the scope of GBL § 349. . . ."  (Id.)  Accordingly, "the addition of the proposed new GBL claim would be futile."  (Id.)

4

Finally, Judge Parker finds that, even if Plaintiff's proposed new GBL § 349 claim were not futile, "Plaintiff's motion should be denied because of Plaintiff's lack of diligence and the prejudice that will be imposed on Defendant." (Id. at 6)

Concluding that Plaintiff has not demonstrated good cause to amend, Judge Parker recommends that the motion to amend be denied. (Id. at 7)

## V. PLAINTIFF'S OBJECTIONS

Plaintiff makes the following objections to the R&R's findings regarding futility:

1. Judge Parker relies on "unsupported, uncorroborated and conclusory witness testimony that is contrary to the record evidence" (Pltf. Obj. (Dkt. No. 141) at 18);

2. Plaintiff "has sufficiently pled that Defendant's conduct has and/or is likely to cause damage [to] its reputation and goodwill" (id. at 21);

3. Trademark infringement claims "'are cognizable under [GBL] § 349 [where] there is a specific and substantial injury to the public interest over and above ordinary trademark infringement'" (id.);

4. Actual confusion is not required in trademark cases to allege injury under GBL § 349 (id. at 24).

In addition to these objections regarding futility, Plaintiff objects to Judge Parker's findings regarding lack of diligence and prejudice to Defendant. (Id. at 24-26)

## DISCUSSION

## I. LEGAL STANDARDS

### A. Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

5

objection is made." Id.  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting Vega v. Artuz, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (alteration in Phillips).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . . 'rehashing . . . the same arguments set forth in the original petition.'") (citing Vega, 2002 WL 31174466, at *1; Greene v. WCI Holdings, 956 F.Supp. 509, 513 (S.D.N.Y. 1997)).

    For portions of the R&R to which no timely objection is made, this Court's review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations.  Wingate v. Bloomberg, 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.")).

B.     **Motion to Amend**

Under Fed. R. Civ. P. 15(a), district courts "ha[ve] broad discretion in determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000), and generally "leave to amend should be freely granted when 'justice so requires.'" Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)); Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting Foman v. Davis, 371 U.S. 178, 182 (1962))).

"Where a scheduling order has been entered, [however,] the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003). "'[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.'" Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)).

In determining whether a movant has satisfied the "good cause" standard under Rule 16(b)(4), "the primary consideration is whether the moving party can demonstrate diligence." Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007); Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) ("Whether good causes exists turns on the 'diligence of the moving party.'" (citations omitted)). "A party has not acted diligently where the proposed amendment to the pleading is based on information 'that the party knew, or should

7

have known,' in advance of the deadline sought to be extended." Kontarines v. Mortg. Elec. Registration Sys., Inc., No. 15 Civ. 2206 (ARR), 2016 WL 3821310, at *3 (E.D.N.Y. July 12, 2016) (quoting Perfect Pearl Co., 889 F. Supp. 2d at 457).

"If good cause supports modifying the court-ordered deadline to amend, the moving party must still comply with Fed. R. Civ. P. 15." Eberle v. Town of Southampton, 985 F. Supp. 2d 344, 346 (E.D.N.Y. 2013).  Although Rule 15(a) provides that leave to amend generally should be "freely give[n] . . . when justice so requires," a court may properly deny leave to amend in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (quoting Foman, 371 U.S. at 182).

"'Where it appears that granting leave to amend [would be futile or] is unlikely to be productive[,] . . . it is not an abuse of discretion to deny leave to amend.'" See Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)); Selvam v. Experian Info. Sols., Inc., No. 13 Civ. 6078 (DLI) (JO), 2015 WL 1034891, at *4 (E.D.N.Y. Mar. 10, 2015) (denying leave to amend after granting motion to dismiss because "[t]he [amended] complaint gives no indication that Plaintiff has a colorable claim . . . and Plaintiff has already had one opportunity to amend the complaint"); Murdaugh v. City of N.Y., No. 10 Civ. 7218(HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although . . . leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)).

"[A party] opposing a motion to amend . . . bears the burden of establishing that an amendment would be futile." Bonsey v. Kates, No. 13 Civ. 2708 (RWS), 2013 WL 4494678,

8

at *8 (S.D.N.Y. Aug. 21, 2013) (citing Blaskiewicz v. Cty. of Suffolk, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).  "Ordinarily, leave to amend may be denied on the basis of futility if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss."  Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 403 (S.D.N.Y. 2014), aff'd sub nom. APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc., 725 F. App'x 4 (2d Cir. 2018) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)).  "However, when the motion to amend is filed after the close of discovery and the relevant evidence is before the court, a summary judgment standard will be applied instead."  Id. (citing Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001)).

## II.    ANALYSIS

### A.    "Good Cause" Under Rule 16(b)

Judge Parker found that Plaintiff was not diligent in moving to amend because "Plaintiff has known about the preliminary test report since at least (and likely prior to) September 2018."  (R&R (Dkt. No. 140) at 6)  Plaintiff objects to Judge Parker's finding that it unreasonably delayed bringing the instant motion.  (Pltf. Obj. (Dkt. No. 141) at 24)

After reviewing the record, this Court disagrees with Judge Parker's lack of diligence finding.  In a January 14, 2019 Order addressing Plaintiff's request to serve an additional expert report after the expiration of the scheduling order's December 5, 2018 deadline, Judge Parker states that Plaintiff has "vigorously pursued the safety-related information and filed several applications with the Court to compel Flambeau to search more vigorously for the documents and produce them.  Flambeau only did so after RBL sought Court intervention and only after the close of fact discovery."  (Jan. 14, 2019 Order (Dkt. 114) at 1, 6)

While Plaintiff acknowledges that it knew of a failed test report in September 2018, it did not have access to the content of that report until October 24, 2018, six weeks after

9

the close of fact discovery.  (Pltf. Obj. (Dkt. No. 141) at 25; see also Dkt. No. 57))  And Plaintiff contends that it acted diligently in moving to compel a second deposition of Michael Burke, head of Defendant's Duncan Toys Division, which took place on November 29, 2018.  (Id. at 8-9)  In this second deposition, Plaintiff confirmed that Defendant had not issued a recall of the toxic puzzles.  (Id. at 25; see also Pltf. Second Motion to Compel (Dkt. No. 73); Pltf. Third Motion to Compel (Dkt. No. 80))  And the record shows that it was not until December 21, 2018, that Plaintiff discovered that the January 2016 shipments had not been tested for safety compliance.  (Saunders Decl. (Dkt. No. 142), Ex. 15)  Given these circumstances, the mere fact that Plaintiff had known about a "failed test report since . . . September 2018" (R&R (Dkt. No. 140) at 6) is not dispositive of Plaintiff's diligence.

The Court concludes that Plaintiff's GBL § 349 claim is not "based on information 'that [Plaintiff knew], or should have known,' in advance of the deadline sought to be extended," and that Plaintiff acted with reasonable diligence in seeking to bring its Section 349 claim.  Kontarines, 2016 WL 3821310, at *3.  Accordingly, this Court will exercise its broad discretion under Rule 16(b) to consider the proposed Amended Complaint under Rule 15.

### B. Futility Under Rule 15

Judge Parker found that amendment would be futile because "the alleged injury to Plaintiff is entirely speculative and indirect."  (R&R (Dkt. No. 140) at 5)

#### 1. Elements of a GBL § 349 Claim

GBL § 349 prohibits deceptive acts and practices directed at consumers.  N.Y. Gen. Bus. L. § 349 (McKinney).  To state a claim under GBL § 349, Plaintiff must allege that "'(1) the Defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'"  Krasnyi Oktyabr, Inc. v. Trilini

Imports, 578 F. Supp. 2d 455, 470 (E.D.N.Y. 2008) (citing Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000))  "Although competing businesses have standing to sue under these provisions, the provisions are fundamentally consumer protection devices, so 'the gravamen of the complaint must be consumer injury or harm to the public interest,' not mere competitive disadvantage." Can't Live Without It, LLC v. ETS Express, Inc., 287 F. Supp. 3d 400, 412 (S.D.N.Y. 2018) (quoting Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995)).

  **2.** **Analysis**

    **a.** **Evidence that Toxic Quick Cubes Were Shipped**

Judge Parker found that "Defendant provided evidence that no toxic Quick Cubes were shipped and that the final test report indicated that the Cubes passed the relevant safety tests." (R&R (Dkt. No. 140) at 5)  Plaintiff asserts that Judge Parker improperly relies on "unsupported, uncorroborated and conclusory witness testimony that is contrary to the record evidence." (Pltf. Obj. (Dkt. No. 141) at 18)

In contending that defective Quick Cubes were introduced into commerce, Plaintiff asserts the following:  (1) Defendant had defective Quick Cubes in its possession by January 2016; (2) Defendant learned that its puzzles were defective by March 16, 2016; (3) Defendant remediated the defect by ordering Quick Cubes with replacement stickers shortly after receiving the failed test report; (4) it took a few months to develop and test the replacement stickers, and Flambeau did not receive Quick Cubes with the new stickers until May 3, 2016; (5) between March and April of 2016, Defendant shipped Quick Cube puzzles to its distributor, Toysmith.  (Pltf. Br. (Dkt. No. 115) at 3; Pltf. Obj. (Dkt. No. 141) at 11-16)  In sum, Plaintiff alleges that Defendant shipped toxic Quick Cubes in March and April 2016, and that

11

Defendant's "activities are misleading in a material way in that purchasers and members of the public will falsely believe that the [toxic Quick Cubes] are safe." (PAC ¶ 36)

Because Flambeau has the burden of demonstrating that Plaintiff's proposed GBL § 349 claim is futile, it has the burden of demonstrating that there is no evidence that it shipped toxic Quick Cubes. Bonsey, 2013 WL 4494678 at *8 (defendant has the burden of demonstrating futility in opposing motion to amend); see also Summit Health, 993 F. Supp. 2d at 403 (applying summary judgment standard in connection with a post-discovery motion to amend).

Here, there is evidence – admittedly circumstantial – that Defendant shipped toxic Quick Cubes.

As an initial matter, there is evidence that in January 2016, Flambeau received approximately 9200 Quick Cubes from its Chinese manufacturer – approximately 4900 of the 3901QC version and 4300 of the 3902QC version. (Saunders Decl. (Dkt. No. 142), Exs. 11-14) These Quick Cubes were not tested for consumer safety compliance. (Id., Ex. 15 at FLAMBEAU3095-97) In February 2016, Defendant arranged for samples of the 3901QC and 3902QC versions to be taken from the January 2016 shipments for consumer safety compliance testing. (Id. at FLAMBEAU3093-94) On March 16, 2016, Defendant learned that the sample units tested contained toxic levels of phthalates. (Id., Ex. 16 at FLAMBEAU002702-11) The Quick Cubes with the replacement stickers were not shipped from China to the U.S. until May 3, 2016. (Id., Ex. 24) Accordingly, the issue is whether there is evidence that Defendant distributed toxic Quick Cubes to U.S. distributors or retailers between January 2016 and May 3, 2016.

The parties agree that the failed safety test – which Defendant learned of on March 16, 2016 – relates to both the 3901QC and 3902QC versions of the Quick Cube. (Tomaselli Decl. (Dkt. No. 144), Ex. 11 at FLAMBEAU001862-1881)  In an email exchange beginning on March 16, 2016, a Flambeau employee in China informs Flambeau manager Michael Burke of the test results, stating that "[w]e have asked [the manufacturer] to stop the production for 3902QC and make improved samples . . . for testing.  Due to the test, these could not be shipped by March, possibly in later April or early May if the next test could be approved."  (Id., Ex. 12 at FLAMBEAU002710-11)  Burke and other Flambeau employees then discuss logistics and timelines that are premised on the notion of addressing the phthalates issue and shipping the 3902QC Quick Cubes from China to the U.S. in late April or early May.  (Id. at FLAMBEAU002702-10)  These emails do not discuss the 3901QC Quick Cubes.

Consistent with these emails, a successful test report for the 3902QC Quick Cubes was issued on April 6, 2016, (id., Ex. 11 at FLAMBEAU001890-1901), and a bill of lading establishes that 24,000 of the 3902QC Quick Cubes were shipped to Defendant from China on May 3, 2016, with an estimated arrival date in the U.S. of May 17, 2016.  (Saunders Decl. (Dkt. No. 142), Ex. 24)

Plaintiff's core allegation is that toxic Quick Cubes from the January 2016 shipments were distributed to retailers and businesses in the U.S. prior to the arrival of the consumer safety compliant Quick Cubes in mid-May 2016.  (PAC (Dkt. No. 115-1) ¶ 30) Plaintiff has submitted a document showing that 392 cases of Quick Cubes were shipped to retailers in the U.S. in March 2016, and 181 cases of Quick Cubes were shipped to retailers in the U.S. in April 2016.  (Saunders Decl. (Dkt. No. 142), Ex. 18)  At deposition, Burke confirmed that the March and April 2016 shipments are made up of 3901 QC Quick Cubes.  (Burke Nov.

13

29, 2018 Dep. Tr. (Dkt. No. 142), Ex. 20 at 5:7-8:6)  The January 2016 shipments from China that Plaintiff received include 3901QC Quick Cubes.  (Id., Exs. 12-13)  As discussed above, samples from the January 2016 shipments tested positive for the presence of phthalates.  (Saunders Decl. (Dkt. No. 142), Ex 15 at FLAMBEAU3093-94; id., Ex. 16 at FLAMBEAU002702-11)

Given the evidence that Defendant (1) received shipments of 3901QC and 3902QC Quick Cubes in January 2016; (2) received on March 16, 2016, a failed test report as to 3901QC and 3902QC Quick Cubes samples taken from the January 2016 shipments; (3) shipped 3901QC Quick Cubes to retailers in March and April 2016; and (4) did not receive from China the 3902QC Quick Cubes with compliant stickers applied until May 2016, there is a material issue of fact as to whether Defendant shipped toxic 3901QC Quick Cubes in March and April 2016.

Because there is evidence that Defendant shipped toxic Quick Cubes to U.S. distributors and retailers in March and April 2016, there is a material issue of fact as to whether Defendant's allegedly deceptive acts were directed at consumers and were materially misleading.

### b. Injury to Plaintiff

Judge Parker finds that "[t]he only harm Plaintiff articulated is potential harm to its goodwill if it proves that Defendant infringed on its trademark and/or that consumers confused the Quick Cube with the Rubik's Cube and if consumers learn that the Quick Cubes were, in fact, toxic."  (R&R (Dkt. No. 140) at 5)  Judge Parker also finds that Plaintiff has not offered evidence that Defendant's conduct caused "actual and direct harm" to Plaintiff's business.  (Id. (citing Sergeants Benevolent Ass'n Health and Welfare Fund v. Sanofi-Aventis U.S. LLP, 20 F.Supp.3d 305, 334 (S.D.N.Y. 2014), aff'd, 806 F. 3d 71 (2d Cir. 2015) ("Plaintiffs

must prove actual injury to recover under the statute . . . it cannot be indirect or derivative") (internal quotation marks and citations omitted))  In its objections, Plaintiff asserts that it "has sufficiently pled that Defendant's conduct has and/or is likely to cause damage [to] its reputation and goodwill."  (Pltf. Obj. (Dkt. No. 141) at 21)

As discussed above, given that discovery is closed, the issue is not one of pleading.  The Court must determine whether there is evidence that creates a material issue of fact as to whether Defendant's alleged misconduct – the shipping of toxic Quick Cubes – caused damage to the reputation of the Rubik's Cube and its associated goodwill.  Summit Health, 993 F. Supp. 2d at 403.

To demonstrate futility, Defendant must show that there is no evidence that the alleged shipment of the toxic Quick Cubes caused actual and direct harm to the reputation of the Rubik's Cube and its associated goodwill.  See Sergeants Benevolent Ass'n, 20 F.Supp.3d at 334; N.Y. Gen. Bus. L. § 349(h) (McKinney) ("Any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice. . . .").

Plaintiff has offered no evidence that any consumer (1) ever purchased a toxic Quick Cube; (2) ever suffered an injury associated with a toxic Quick Cube; or (3) ever associated an injury related to Defendant's Quick Cubes with Plaintiff's Rubik's Cube, such that Plaintiff's goodwill would be damaged because of the toxic nature of the defective Quick Cube.  There is likewise no evidence that any distributor, retailer, or consumer ever became aware that Defendant's Quick Cube puzzles had failed a consumer safety compliance test.

Plaintiff cites Romeo & Juliette Laser Hair Removal v. Assara I LLC, No. 08 Civ. 442 (TPG) (FM), 2014 WL 4723299, at *1 (S.D.N.Y. Sept. 23, 2014), for the proposition that a

trademark infringement claim is sufficient – standing alone – to allege harm to a plaintiff's business reputation and goodwill for purposes of a GBL § 349 claim. (Pltf. Obj. (Dkt. No. 141) at 20) In Romeo, however, plaintiff alleged that defendant "sought to divert consumers who searched online for plaintiff's hair-removal service to defendants' website [which was,] by its nature, misleading and likely to injure plaintiff's business reputation." Romeo, 2014 WL 4723299, at *4. Because the plaintiff in Romeo had satisfied the element of actual and direct harm to its business, Romeo is of no assistance to Plaintiff here. Moreover, Romeo was at the pleading stage, while discovery has ended in this case.

Based on the record resulting from full discovery, no reasonable jury could find that Plaintiff suffered "actual and direct harm" to the reputation of the Rubik's Cube and associated goodwill as a result of Defendant's Quick Cube. See Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc., No. CV 08-0068 (KAM) (JO), 2010 WL 2133937, at *7 (E.D.N.Y. Mar. 11, 2010) ("[T]he assertion that [defendant] has caused [plaintiff] to lose goodwill and sales must fail, since [plaintiff] asserted that the cigarettes at issue were intercepted by CBP at the port of entry . . . and it does not allege that any ever reached a consumer. Absent a showing that the defendant's misleading conduct led to any actual harm, the asserted loss of goodwill and of sales cannot establish liability under Section 349."), report and recommendation adopted, No. 08-CV-0068(KAM)(JO), 2010 WL 2160058 (E.D.N.Y. May 27, 2010). For this reason, this Court agrees with Judge Parker's finding that, at this late stage of the litigation, Plaintiff's proposed GBL § 349 claim would be futile. See R&R (Dkt. No. 140) at 5.

## CONCLUSION

The R&R (Dkt. No. 140) is adopted to the extent set forth above.  Plaintiff's motion for leave to file an amended complaint (Dkt. No. 115) is denied.  The following briefing schedule will apply to Defendant's proposed motion for summary judgment:

1. Defendants' motion is due on **June 8, 2020**;

2. Plaintiff's opposition is due on **July 8, 2020**; and

3. Defendants' reply, if any, is due on **July 22, 2020**.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 115, 136).

Dated: New York, New York
       May 7, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge