UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RUBIK'S BRAND LIMITED,

        Plaintiff,

-against-

FLAMBEAU, INC.,

        Defendant.

Civil Action No. 1:17-cv-6559 (PGG)

**CONFIDENTIAL VERSION**

# DEFENDANT FLAMBEAU, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Anthony A. Tomaselli (*pro hac vice*)
anthony.tomaselli@quarles.com
Kristin Graham Noel (*pro hac vice*)
kristin.noel@quarles.com
Matthew J. Duchemin (*pro hac vice*)
matthew.duchemin@quarles.com
Anita Marie Boor (*pro hac vice*)
anita.boor@quarles.com
QUARLES & BRADY, LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: 608-251-5000

*Attorneys for Defendant Flambeau, Inc.*

# TABLE OF CONTENTS

I. The 3x3 Cube Design Is Functional. .................................................................................... 1

II. RBL Cannot Show the Required Probability of Confusion. ................................................ 4

III. RBL Cannot Support Either Lanham Act or New York Statute Dilution. ........................... 9

IV. RBL's Registration Was Procured By Fraud. ....................................................................... 9

V. The Court Should Decline to Award RBL Any of Flambeau's Profits. ............................. 10

## TABLE OF AUTHORITIES

**Cases**

*20th Century Wear, Inc. v. Sanmark-Stardust Inc.*,
  747 F.2d 81 (2d Cir. 1984) ................................................................................................... 5

*Arista Records LLC v. Lime Group LLC*,
  No. 06 CV 5936, 2011 WL 1641978 (S.D.N.Y. Apr. 29, 2011) ........................................... 2

*Atlantis Silverworks, Inc. v. 7th Sense, Inc.*,
  42 U.S.P.Q.2d 1904, 1997 WL 128403 (S.D.N.Y. Mar. 20, 1997) ....................................... 6

*Bristol-Myers Squibb Co. v. McNeil-P.P.C.*,
  973 F.2d 1033 (2d Cir. 1992) ............................................................................................... 7

*City of New York v. Tavern on the Green*,
  427 B.R. 233 (S.D.N.Y. 2010) .............................................................................................. 9

*CTB, Inc. v. Hog Slat, Inc.*,
  954 F.3d 647 (4th Cir. 2020) ................................................................................................ 2

*Cuisinarts, Inc. v. Robot-Coupe Intern. Corp.*,
  580 F. Supp. 634 (S.D.N.Y. 1984) ....................................................................................... 8

*Freedom Card, Inc. v. JPMorgan Chase & Co.*,
  432 F.3d 463 (3d Cir. 2005) ................................................................................................. 6

*George Basch Co., Inc. v. Blue Coral, Inc.*,
  968 F.2d 1532 (2d Cir. 1992) ............................................................................................. 10

*Ideal Toy Corp. v. Chinese Arts & Crafts, Inc.*,
  530 F. Supp. 375 (S.D.N.Y. 1981) ....................................................................................... 4

*Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*
  215 U.S.P.Q. 610 (D.N.J. Oct. 20, 1981), *aff'd*, 685 F.2d 78 (3d Cir. 1982) ........................ 4

*Jay Franco & Sons, Inc. v. Franek*,
  615 F.3d 855 (7th Cir. 2010) ............................................................................................ 1, 4

*Majestic Drug, Inc. v. Olla Beauty Supply, Inc.*,
  No. 97 CIV. 0046, 1997 WL 37955 (S.D.N.Y. Jan. 31, 1997) ............................................. 7

*Metrokane, Inc. v. Built NY, Inc.*,
   06CIV14447, 2008 WL 11397767 (S.D.N.Y. Sept. 3, 2008) .................................................. 10

*Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*,
   130 F.3d 88 (4th Cir. 1997) ...................................................................................................... 6

*Polo Fashions, Inc. v. Extra Special Prods., Inc.*,
   451 F. Supp. 555 (S.D.N.Y. 1978) ............................................................................................ 6

*Ralston Purina Co. v. Thomas J. Lipton, Inc.*,
   341 F. Supp. 129 (S.D.N.Y. 1972) ........................................................................................ 5, 6

*Schutte Bagclosures, Inc. v. Kwik Lok Corporation*,
   193 F. Supp. 3d 245 (S.D.N.Y. 2016) ....................................................................................... 1

*Sporty's Farm L.L.C. v. Sportsman's Mkt.*,
   202 F.3d 489 (2d Cir. 2000) .................................................................................................... 10

*Trafix Devices, Inc. v. Marketing Displays, Inc.*,
   532 U.S. 23 (2001) .......................................................................................................... 1, 2, 5

*Virgin Enters. Ltd. v. Nawab*,
   335 F.3d 141 (2d Cir. 2003) ...................................................................................................... 5

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205 (2000) .................................................................................................................. 5

**Statutes**

15 U.S.C. § 1064(3) ............................................................................................................................ 1

15 U.S.C. § 1115(b) ............................................................................................................................ 1

**Other Authorities**

McCarthy, § 7:49 ............................................................................................................................... 4

**Regulations**

37 C.F.R. § 11.1 ............................................................................................................................... 10

RBL has failed to put forth sufficient evidence to permit a reasonable jury to find in its favor on at least one element of every claim for which it bears the burden of proof. Accordingly, the Court should enter judgment for Flambeau. It should *not* enter judgment for RBL. As plaintiff, RBL must show no genuine dispute on all material facts necessary to support its claims, and that the law favors RBL. It cannot, particularly affording Flambeau all reasonable inferences.

## I. The 3x3 Cube Design Is Functional.

***First***, RBL claims its registered 3x3 Cube Design is "conclusively valid" (Opp. 9), but even an incontestable registration can be invalidated for functionality or fraud. 15 U.S.C. §§ 1115(b), 1064(3). While a duly-issued registration would afford certain presumptions, those do not apply if it is invalid, or if it issued with no explanation after previous rejections for functionality, as here. (St. ¶¶ 110, 122); *Schutte Bagclosures v. Kwik Lok*, 193 F. Supp. 3d 245, 260 (S.D.N.Y. 2016). And any presumption can be rebutted—e.g., with a patent. Then, RBL "must carry the heavy burden of showing" non-functionality. *Id.* at 265 (quoting *TrafFix*, *infra*).

***Second***, RBL mischaracterizes *TrafFix* and the import of patent claims. (Opp. 10). Per *TrafFix*, patents are "vital" indicators of functionality and courts should review not only their claims, but their entire disclosures, as "statements made in the patent applications and in the course of procuring the patents demonstrate the functionality of the design." 532 U.S. 23, 29-32 (2001). RBL also mischaracterizes *Jay Franco*. There, the Seventh Circuit reviewed the patent's claims <u>and</u> specification in finding functionality. 615 F.3d 855, 857-858 (7th Cir. 2010). The court cautioned against myopically focusing on patent claims as "[a] design may not infringe a patented invention [i.e., its claims] because the invention is obvious or taught by prior art." *Id.*[1]

A patent need not match the asserted trade dress exactly in order to render it functional. Courts must consider the "essential features[s]" of the design and then ask whether the patent

---

[1] By the time Rubik patented his puzzle cube, other patents had already disclosed using color to "arrange[]" the cube. (St. ¶¶ 22, 25-26 & patent specifications).

QB\64353261.14

shows they "are necessary to the operation of the device." 532 U.S. at 30. In *TrafFix*, "the dual-spring design" of the road signs was "the essential feature." *Id.* Even though the patent's dual springs were "very different-looking" than the design, the Court held "this makes little difference" because "the point is that the springs are necessary to the operation of the device." *Id.*

Thus, while none of the puzzle cube patents claim the Design's precise six colors, "the point is" the patents demonstrate how the colors and other features "are necessary to the operation" of the cube. *See id.* The patents undisputedly teach the cube shape and the 3x3 grid (St. ¶¶ 30, 35-39, 42-45); square segments with colored surfaces (St. ¶¶ 22, 25, 50); and arranging the segments so the cubes have one distinct color on each side (St. ¶¶ 25, 26, 48, 54, 58, 64, 68, 71, 74). The teachings of these many patents may combine to demonstrate the functionality of the design. *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 660-667 (4th Cir. 2020).[2]

***Third***, RBL improperly elevates supposed alternative designs in the functionality inquiry, arguing the Design's "precise colors" are not functional because of other external indicia. (Opp. 9). *TrafFix* holds otherwise. Once a design is found essential to the use or purpose of a device, courts should dismiss "speculation about other design possibilities." 532 U.S. at 33. In that case, "competitors need not explore whether other … juxtapositions might be used." *Id.* at 33-34.

RBL admits "the color patches on the 3x3 Rubik's Cube provide a way to gauge whether the 3x3 Rubik's Cube is solved." (St. ¶ 213; *see also id.*, ¶¶ 161-164, 174-175, 205). It is no matter whether *other* indicia may also.[3] RBL does not argue that the Design elements are mere flourishes. It cannot because they are what make the Cube work. In fact, RBL does not even

---

[2] RBL footnotes a request to "disregard" Flambeau's toy expert (Opp. 11 n. 5), which should be denied as improper. *See Arista v. Lime*, No. 06 CV 5936, 2011 WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011). Should the Court disagree, Flambeau requests briefing on Mr. Loetz's clearly adequate knowledge, skill, experience, training, and education. (St. ¶¶ 198-200).
[3] Moreover, not all indicia are equal—colors with maximum contrast are best for solving easily and quickly. (St. ¶¶ 234-238). RBL disputes this logic, but offers no real rebuttal.

2

*address* the cube shape, the 3x3 array, or square segments, choosing to focus solely on colors. (*See* Opp. 11). But narrowing the focus does not save the design from its functional nature.

**Fourth**, should the Court look beyond use or purpose and consider alternative designs, it will find RBL's claims of a "plethora" of such alternatives unsupported and exaggerated. (Opp. 9). At the outset, the court should strike evidence and argument related to RBL's supposed non-infringing alternatives because its representatives could not (or would not) explain RBL's theory during discovery, and they are supported solely by inadmissible attorney say-so.[4]

RBL does not explain whether its ten proposed cubes are actual competitive alternatives—e.g., eligible to compete at WCA events. RBL's representative explained it would be a competitive disadvantage to be ineligible for these events. (St. ¶¶ 278-279). Five of the cubes are plainly ineligible because they do not use the required color scheme. (*Compare* St. ¶¶ 136-137, 141-142 *with* ¶¶ 482-501). Those cubes using color have forbidden "elevated pieces" (*compare* St. ¶¶ 138, 143 *with* ¶¶ 474-481, 502-509), or are constructed of many colored plastic parts, increasing inefficiencies in manufacture (*compare* St. ¶ 272 *with* ¶¶ 470-473, 502-509).

RBL does not address manufacturing considerations or meaningfully refute that the simple manufacture of the original Rubik's Cube—applying square color patches to a black cube—created the Design. (St. ¶¶ 267-270). RBL concedes the patches are what "create a grid appearance," but persists in claiming exclusive rights to this grid. (Opp. 2). By seeking to prevent other cube makers from using its Design, RBL improperly seeks to perpetually monopolize one of the simplest ways to manufacture puzzle cubes.

RBL asserts there "was no need for Flambeau to use the same six colors" as the Design. (Opp. 9). The colors are *not* the same (St. ¶ 187 & Reply); but even so, this ignores the

---

[4] Flambeau concurrently files its motion to strike this and other improper portions of RBL's materials.

3

constraints imposed by the color wheel. RBL concedes that: a puzzle cube's colors must be "readily distinguished" (Opp. 9); of the eight maximum contrasting colors, its Design uses seven (St. ¶ 240); and there are numerous toy makers that need to use these colors (St. ¶ 260). While RBL takes issue with Flambeau's math regarding the number of viable color combinations available, RBL (tellingly) does not propose its own number. (St. ¶ 261).

*Fifth*, RBL's reliance on two *Ideal Toy* cases from the 1980s is misplaced. (Opp. 11). These decisions are not determinative, or even instructive. Both predate *TrafFix* and involved undeveloped, preliminary records; neither considered the body of puzzle cube patents, or the WCA rules.[5] 530 F. Supp. 375 (S.D.N.Y. 1981); 215 U.S.P.Q. 610 (D.N.J. Oct. 20, 1981), *aff'd*, 685 F.2d 78 (3d Cir. 1982). In fact, the Third Circuit appeared to believe that there were no relevant patents. *Id.* at 84. RBL also cites the McCarthy treatise, but it offers no independent opinion and merely cites the outdated 1980s cases. McCarthy, § 7:49, n. 37.

*Finally*, RBL relegates aesthetic functionality to a footnote, failing to address its Design's anticompetitive effect. RBL claims that there are "infinite" alternative designs (Opp. 12 n.6), but ignores Flambeau's concerns with the WCA rules and manufacturing constraints. Moreover, RBL essentially claims rights in *every* shade of red, yellow, blue, orange, green, white, and black. (Opp. 10). But the Rubik's Cube does not use *every* shade of these colors; it uses jewel tones limited by Pantone number. (St. ¶ 153). To the extent RBL holds any rights, they are similarly limited. Claiming *every* shade is an overreach. *Jay Franco*, 615 F.3d at 860.

## II. RBL Cannot Show the Required Probability of Confusion.

*First*, RBL seeks to re-draw the contours of the 3x3 Cube Design to focus solely on the colors and the supposed "distinctive grid." Yet the features of the Design are undisputed; they

---

[5] While not cited by RBL in its brief, the ITC's decision *In the matter of Certain Puzzle Cube* suffers from similar problems. It pre-dates *TrafFix* and does not consider the whole body of puzzle cube patents or the effect of the WCA rules on competitive alternatives. (St. ¶ 118).

4

are plainly set forth in the registration; and RBL has not deviated from them in any way that would give it cause to claim any rights beyond them. (St. ¶¶ 153, 294). Primary among these features is "a **black** cube" with a 3x3 array of **square** segments and patches. (St. ¶ 153). RBL's predecessors emphasized the limits of these design features to the PTO in arguing how the Design would allow for competition in the marketplace: Cubes "need not be formed of black." "The color patches need not be square." (St. ¶¶ 104, 105). RBL must adhere to these limits now.

*Second*, RBL's claim to "the broadest scope of protection" is unfounded. A mark must have the highest level of "inherent distinctiveness" and "a high degree of consumer recognition" to receive such protection. *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 147-149 (2d Cir. 2003).

As to the first, the "broad, muscular protection" RBL desires is reserved for arbitrary and fanciful marks. *Id.* at 147-148. Marks "that identify or describe the goods or their attributes" receive "lesser protection, or no protection at all." *Id.* The 3x3 Cube Design falls into the latter category because it describes the product—a 3x3 puzzle cube—and is not an inherent source identifier. *See TrafFix*, 532 U.S. at 29 (*Wal-Mart v. Samara Bros.*, 529 U.S. 205, 213 (2000)).

As to the second, RBL fails to address whether "'the primary significance of the [design] in the minds of the consuming public is not the product but the producer.'" *20th Century Wear v. Sanmark-Stardust*, 747 F.2d 81, 90 (2d Cir. 1984). Showing such "secondary meaning" requires meeting "vigorous evidentiary requirements," *id.*, which RBL has not done. RBL conflates popularity of the Rubik's Cube with secondary meaning of its Design, but "[p]roof of a product's popularity should not be equated with proof of secondary meaning." *20th Century*, 747 F.2d at 90 n.9. RBL cannot rely on the supposed fame of the RUBIK's brand to show secondary meaning of the 3x3 Cube Design. "[L]evels of brand awareness … demonstrate only that consumers have knowledge of brand names. [They do] not reflect any evaluation of the products." *Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F. Supp. 129, 134 (S.D.N.Y. 1972).

5

RBL has no survey evidence on secondary meaning and its repeated claim that the Design "is instantly recognizable by the public" is completely unsupported.[6] (St. ¶¶ 333-334). RBL has done nothing to show its sales were caused by the Design, rather than the supposed fame of the RUBIK'S brand, or the growing popularity of puzzle cubes. Without this analysis, the sales data is meaningless. *Ralston Purina*, 341 F. Supp. at 134; *Atlantis Silverworks, Inc. v. 7th Sense, Inc.*, 42 U.S.P.Q.2d 1904, 1997 WL 128403, at *4 (S.D.N.Y. Mar. 20, 1997).

RBL concedes there are "dozens" of third-party cubes using the 3x3 Cube Design (St. ¶ 316); thus, an *exclusive* association between the Design and RBL is unlikely, and RBL has offered no evidence to the contrary. RBL suggests these third-party cubes appear only at "specialized" WCA events and are thus irrelevant to the general public. (Opp. 17 n.9). To the contrary, these "look-alike" cubes are available for purchase from Target, Walmart, and Amazon. (St. ¶ 314 & Reply). Even if they were limited to WCA events, "speed cubing" has been broadly publicized—e.g., by mainstream media like the *New York Times*. (St. ¶ 131).

*Second*, RBL's dismissal of the admitted differences between the parties' designs—black v. white base; square v. rounded segments/patches (St. ¶¶ 295-303 & Replies)—stands in sharp contrast to the representations its predecessors made to the PTO to obtain the registration—e.g., the cube "need not be … black"; the patches "need not be square" (St. ¶¶ 104-105). RBL utterly fails to address these remarks—which, since they purported to limit the Design's scope, should weigh against likelihood of confusion, *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 476 (3d Cir. 2005); *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 94 (4th Cir. 1997), if not be given full conclusive effect by the Court, *cf. Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F. Supp. 555, 561 (S.D.N.Y. 1978).

---

[6] RBL cites St. ¶ 380—a fact proposed by Flambeau regarding the absence of any quantified reputational damages. RBL's response is pure *ipse dixit*, with no real substance or evidentiary support. Flambeau's concurrently-filed motion to strike addresses these topics.

RBL claims—with no evidence of actual consumer perceptions—that supposed "fine distinctions" between the parties' marks "are highly unlikely to be noticed" and that consumers could "easily believe" Flambeau's white cube is a sanctioned variety of the Rubik's Cube. (Opp. 17). Using white instead of black is not a "fine distinction"—they are opposites and perceived as such in marketing (St. ¶ 296 & Reply). RBL's unsupported *ipse dixit* is precisely the sort of speculation that fails to create a genuine dispute.

RBL's assertion that use of the parties' brands adds to confusion is similarly unsupported. RBL cites *Majestic Drug v. Olla Beauty Supply*, but there "neither brand name is a household word commanding … instant familiarity." No. 97 CIV. 0046, 1997 WL 37955, at *7 (S.D.N.Y. Jan. 31, 1997). Here, the DUNCAN brand is undisputedly well-known and familiar (St. ¶ 176), like brands the Second Circuit has held dispel confusion, *Bristol-Myers v. McNeil-P.P.C.*, 973 F.2d 1033, 1046 (2d Cir. 1992). RBL's reference to Rubik's Cubes sold under the Hasbro brand is a red herring as they still prominently bear the RUBIK's brand. (St. ¶ 309 (see lower right)).

**Third**, RBL's story of malicious intent is factually and legally incorrect. (Opp. 19). The record shows Flambeau simply wanted to make a 3x3 puzzle cube that functioned as a puzzle cube, not to trade off of the RUBIK's brand. (St. ¶¶ 180-183 & Replies) "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying…. [U]nless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *TrafFix*, 532 U.S. at 29. Since the Rubik patents expired (St. ¶¶ 55, 60), toy makers have been free to make and sell puzzle cubes that "look like" the Rubik's Cube.

RBL asserts Flambeau could have selected "other" cubes more "distinct in appearance" from the Rubik's Cube. (Opp. 19). These cubes are not true alternatives, *supra* p. 3. And RBL neglects to mention that Flambeau's supplier offers black 3x3 puzzle cubes, which Flambeau did not select. (St. ¶ 468 Resp.). RBL makes much ado about discontinued *packaging* purportedly

7

showing a black cube, (Opp. 19; St. ¶ 392 Resp.), but offers no evidence that any consumer viewed the packaging, confused it with an RBL product, or bought a Quick Cube for that reason.

RBL disparages the opinions provided to Flambeau prior to the Quick Cube's launch, suggesting the Court disregard them. (Opp. 20). But RBL failed to properly move to strike the opinions and the request should be denied on this basis alone. *Arista*, 2011 WL 1641978, at *4.

RBL's criticisms fail on the merits too. The author of the opinions, Bennett Berson, is a highly experienced trademark attorney with nearly 30 years in trademark law. (St. ¶ 310 & Reply, ¶¶ 446-466 Resp.). Mr. Berson reviewed all the information he needed, including the original Rubik patents, the U.S. Registration at-issue, and a sample and pictures of the Quick Cube. (*Id.*). After considering the information, Mr. Berson correctly explained that the Rubik patents had *expired* and the registration lists a *black* cube. (St. ¶¶ 311-312). These points are well-founded and a far cry from a "sham," which RBL's own authority supports, *Cuisinarts v. Robot-Coupe*, 580 F. Supp. 634, 639 (S.D.N.Y. 1984) (upholding an opinion of counsel). RBL notes the opinions did not explicitly reference the *Polaroid* factors or dilution (Opp. 20, 24 n.15), but this places form over function. Mr. Berson reviewed facts relevant to both of those inquiries.

RBL claims the opinions were not timely (Opp. 20), but Flambeau received them before any Quick Cubes were sold (St. ¶¶ 183, 185 & Replies). The correspondence surrounding the opinions shows Flambeau proactively sought to avoid infringing any IP—and did.

***Fourth***, RBL persists in trying to create supposed "quality issues" when there are none. The cited cosmetic issues related to a pre-production inspection. (St. ¶¶ 432-436 Resp.). And the Court already dismissed RBL's "toxic" cube theory, applying the summary judgment standard to rule RBL has "offered no evidence that any consumer: (1) ever purchased a toxic Quick Cube; (2) ever suffered an injury associated with a toxic Quick Cube; or (3) ever associated an injury related to Defendant's Quick Cubes with Plaintiff's Rubik's Cubes." (Dkt. 147, at 15-16).

8

*Finally*, considering all the factors, RBL has failed to show the requisite probability of confusion. RBL admits there is no evidence of actual confusion, and has no survey to substitute. (St. ¶¶ 287-291). In fact, in arguing the supposed low quality of the Quick Cube (Opp. 21), RBL highlights that consumers understand the cubes have different sources—the consumer that sought a new Quick Cube wrote to Flambeau, not RBL, and expressed high satisfaction in the service. (St. ¶ 437 Resp.). RBL further admits it uses licensees, while Flambeau sells direct to sophisticated retailers that take care in purchasing. (St. ¶¶ 323-328).

RBL failed to carry its burden and judgment should be entered on Counts I, II, and V.

### III.     RBL Cannot Support Either Lanham Act or New York Statute Dilution.

RBL fails to carry its burden on either dilution claim. RBL has not shown the Design has distinctiveness or secondary meaning, let alone fame. RBL touts the "popular[ity]" of the Rubik's Cube, but popularity of a product or a brand is not a substitute for evidence of consumer recognition of the Design as a source indicator, *supra* p. 5. Nor has RBL put forth any evidence of blurring or tarnishment. It admittedly has no survey evidence on these topics (St. ¶¶ 335-336), and its arguments regarding "quality issues" are foreclosed, *supra* p. 8. For the reasons here and in Flambeau's opening, judgment should be entered in Flambeau's favor on Counts III and IV.

### IV.     RBL's Registration Was Procured By Fraud.

Intent need not be proven by a smoking gun admission; it may be properly inferred, as here, when an applicant knowingly fails to disclose information that it had in its possession and that bore on issues raised by the PTO. *City of New York v. Tavern on the Green*, 427 B.R. 233, 243 (S.D.N.Y. 2010). RBL's predecessors undisputedly knew about the puzzle cube patents, but did not provide them to the examiner upon request. (St. ¶¶ 349-351, 355-361, 365-372).

RBL claims this was permissible because, in RBL's estimation, the patents were immaterial as they do not claim the Design's precise six colors. (Opp. 7). But the examiner did

9

not qualify her request by asking for patents that claim puzzle cubes using six specific colors (or any other element RBL wishes to focus on now); her request was broader, for *all* patents covering "three-dimensional puzzles." (St. ¶¶ 101, 114). It is not for RBL, its predecessors, or counsel to second-guess the examiner and prevent her from weighing the patents for their worth. This omission—in the face of a pointed question—constitutes fraud. *See* 37 C.F.R. § 11.1. The pointed question makes *Metrokane v. Built NY* inapt. (Opp. 14-15). There, the applicant did not inform the trademark examiner about simultaneous patent applications, but the examiner apparently did not ask. No. 06CIV14447, 2008 WL 11397767, at *34 (S.D.N.Y. Sept. 3, 2008).

RBL takes issue with Flambeau's citation to *Specialized Seating* (Opp. 13 n.7), but the case is directly on point. There, the district court found fraud because the applicant told the examiner about one patent related to its design, but "did not tell the examiner … that it held three other patents." 616 F.3d 722, 725 (7th Cir. 2010). If anything, the facts here are more egregious.

### V. The Court Should Decline to Award RBL Any of Flambeau's Profits.

To willfully infringe, a defendant must "intend[] to trade on the owner's reputation or to cause dilution." *Sporty's Farm L.L.C. v. Sportsman's Mkt.*, 202 F.3d 489, 500 (2d Cir. 2000). There is no evidence Flambeau intended to trade off of RBL's reputation or dilute its RUBIK'S brand; rather, the record supports it simply set out to sell its own DUNCAN-branded puzzle cube, receiving a "clearance" opinion in the process. (St. ¶ 310). RBL protests that this cannot be true because "customers are likely to believe" a white cube is some sort of licensed RUBIK'S product. (Opp. 25). Not only is this sheer speculation, it completely misses the point of the willfulness inquiry, which focuses on the defendant's mindset, not consumer perceptions. With no evidence of willfulness, the Court cannot award profits under § 1125(c). With no evidence of any monetary or quantified reputational damages (facts RBL ignores), the Court should decline to award any profits. *George Basch v. Blue Coral*, 968 F.2d 1532, 1539-1541 (2d Cir. 1992).

Respectfully submitted this <u>21st</u> day of August 2020,

*/s/ Anthony Tomaselli*
Anthony Tomaselli

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2020, I caused to be electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Anita Marie Boor*
Anita Marie Boor
