**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RUBIK'S BRAND LIMITED,

                 Plaintiff,

    -against-

FLAMBEAU, INC.,

                 Defendant.

Civil Action No. 1:17-cv-6559 (PGG)

**CONFIDENTIAL VERSION**

**DEFENDANT'S REPLY TO PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS (NOS. 1-380)**
**&**
**DEFENDANT'S COUNTER-STATEMENT TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS (NOS. 381-543)**

Defendant Flambeau, Inc. ("Flambeau") hereby submits the following Reply regarding its Statement of Facts pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1:[1]

## The Parties

1.    Rubik's Brand Limited ("RBL") is a limited liability company organized under the laws of the United Kingdom, with its principal place of business in London, England. (Dkt. 1, Complaint, ¶ 5; Dkt. 28, Answer to Counterclaims, ¶ 6).

    **Plaintiff's Response:**    Admit.

        **Defendant's Reply:**    Undisputed.

2.    Flambeau is a corporation organized under the laws of the State of Wisconsin, with its principal place of business in Baraboo, Wisconsin. (Dkt. 24, Answer, ¶ 6; *id.*, Counterclaims, ¶ 5).

---

[1] "Ex." refers to the exhibits contained in the parties' Appendices, filed concurrently herewith. Exhibits 1-74 are contained in Flambeau's Opening Appendix filed with its opening materials. Exhibits 75-195 are contained in RBL's Appendix filed with its opposition materials. Exhibits 196-208 are contained in Flambeau's Reply Appendix filed with its reply materials.

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

3.    RBL asserts rights over a design mark consisting of a black puzzle cube having nine square-shaped color patches on each of its six faces, with the color patches on each face being the same when the puzzle is in the start or solved position, and consisting of the colors red, white, blue, green, yellow, and orange (hereinafter "3x3 Cube Design"). (Dkt. 1, Complaint, ¶¶ 10, 15; Ex. 67, RBL Interrog. Resp., No. 4; Ex. 37, '094 Registration; Ex. 61, Kremer Dep. Tr., at 12:9-20, 111:8-112:3, 112:10-11, 160:12-15, 160:18-21).

**Plaintiff's Response:**    Admit to the extent "rights" mean federal trademark registration rights under 15 U.S.C. § 1114(1)(a) pursuant to Reg. No. 1,265,094, and common law trademark rights in the design shown in paragraph 10 of the Complaint. Dkt. 1 (hereinafter "RUBIK'S Design").

    **Defendant's Reply:**    Undisputed.

4.    RBL does not manufacture puzzle cubes. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 49:10-18).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed

5.    RBL does not directly sell puzzle cubes. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 33:23-34:16, 50:12-51:12, 152:19-153:2).

**Plaintiff's Response:**    Disputed. The cited evidence does not support Defendant's assertion. RBL sells puzzle cubes directly to consumers through its website, https://www.rubiks.com/en-us/shop.html.

    **Defendant's Reply:**    RBL's current statement contradicts its witnesses' sworn testimony. Ms. Riehl testified that RBL's only business is marketing the Rubik's Brand. (Ex. 60, Riehl Dep. Tr., at 49:10-18). Ms. Riehl further testified

that RBL does not sell directly to consumers and does not have any direct customers. (*Id.*, at 50:12-51:12, 152:19-153:2). RBL's current statement to the contrary is unsupported by any admissible evidence (e.g., conclusory assertion, citing to a website).

6.     RBL licenses intellectual property, including the 3x3 Cube Design, to manufacturers of puzzle cubes for a royalty. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 15:9-13, 163:7-12, 166:25-167:13, 170:12-24, 171:4, 171:10-14, 171:20-25, 172:6-10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 49:10-18; Ex. 64, Vollmar Dep. Tr., at 27:17-19, 28:2-8).

**Plaintiff's Response:**     Admit to the extent "3x3 Cube Design" means the "RUBIK'S Design".

**Defendant's Reply:**     Undisputed. "3x3 Cube Design" is defined herein at Statement No. 3.

7.     Flambeau is a manufacturer and seller of plastic goods. (Ex. 1, Burke Decl., ¶ 5).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

8.     Duncan Toys Company ("Duncan") is a division of Flambeau. (Ex. 1, Burke Decl., ¶ 5).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

9.     Flambeau, through Duncan, sells a puzzle cube called the "Duncan Quick Cube" or the "Quick Cube." (Ex. 1, Burke Decl., ¶¶ 10-13).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

10.    In August 2017, RBL sued Flambeau, claiming Flambeau's sales of the Duncan Quick Cube infringe RBL's alleged rights in the 3x3 Cube Design. (Dkt. 1, Complaint, ¶¶ 15,

28-60; *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 117:21-118:6).

**Plaintiff's Response:**    Admit that in August 2017, RBL sued Flambeau, but dispute the remaining assertion as the only basis for the suit. RBL claimed federal and common law trademark infringement of the RUBIK'S Design, false designation of origin, trademark dilution and unfair business practice under New York law. Dkt. 1, Complaint ¶¶ 28-61.

> **Defendant's Reply:**    Undisputed that RBL sued Flambeau, claiming Flambeau's sales of the Duncan Quick Cube infringe RBL's alleged rights in the 3x3 Cube Design.  (Dkt. 1, Complaint, ¶¶ 15, 28-60).

### Puzzle Cubes

11.    Three-dimensional puzzles are three-dimensional objects that are composed of smaller segments that can be twisted and turned to scramble and solve the faces of the object by its external indicia.  (Ex. 16, Loetz Rep., ¶¶ 17-19).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

12.    Puzzle cubes are a type of three-dimensional puzzle that have six equal, square faces.  (Ex. 16, Loetz Rep., ¶ 17-18; Ex. 60, Riehl Dep. Tr., at 10:17-20, 53:16-19, 54:7-12, 54:17-23).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

13.    The smaller segments of puzzle cubes are typically smaller cubes.  (Ex. 16, Loetz Rep., ¶ 18).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

14.     The external indicia of puzzle cubes are typically colors.  (Ex. 16, Loetz Rep., ¶ 18).

**Plaintiff's Response:**     Disputed. Puzzles cubes are often sold with numbers, shapes, patterns or other designs. See Ex. 181, Gottlieb Rep. ¶ 30; see e.g. Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 182, Sponge Bob Cube; Ex. 183, Disney Cube.

> **Defendant's Reply:**     Undisputed that colors are typically used as external indicators for puzzle cubes.  (Ex. 16, Loetz Rep., ¶ 18; Ex. 174, Yonhjun Catalog, at FLAMBEAU000715-724, Exs. 179-180).  RBL's citation to a handful of cubes with other external indicators does not say otherwise.

15.     Puzzle cubes are in their "solved state" when each face of the cube shows the desired external indicia.  (Ex. 16, Loetz Rep., ¶ 20; Ex. 60, Riehl Dep. Tr., at 10:17-20, 73:14-19, 73:24-74:9).

**Plaintiff's Response:**     Admit.

> **Defendant's Reply:**     Undisputed.

16.     A typical "solved state" for a puzzle cube is when each face of the cube shows a single, distinct color.  (Ex. 16, Loetz Rep., ¶ 20).

**Plaintiff's Response:**     Disputed. Puzzles cubes that have numbers, shapes, patterns or other designs do not have a "solved state" with each face of the cube showing a single, distinct color. See response to Flambeau SMF ¶ 14; Ex. 181, Gottlieb Rep. ¶ 30; see e.g. Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 182, Sponge Bob Cube; Ex. 183, Disney Cube. In addition, puzzle cubes that have all six faces consisting of one color do not have each face of the cube showing a single, distinct color. See e.g. Ex. 184, Mirror Cube.

> **Defendant's Reply:**     Undisputed that a **_typical_** solved state for a puzzle cube is each face of the cube showing a distinct color.  (Ex. 16, Loetz Rep., ¶ 20).  The

evidence cited in response substantiates that the solved state is typically with each

face having only a single color shown.  (Exs. 176-180; Ex. 183).  RBL's own

solving guides explain the Rubik's Cube is "solved" when each face of the cube

shows a single color.  (Ex. 51, at RBL_00670).

17.    Puzzle cubes are classified by the number of smaller segments that compose each face of

the cube.  (Ex. 16, Loetz Rep., ¶ 21).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

18.    A 3x3 puzzle cube is a puzzle cube where each face is divided into nine equal segments

organized into three rows of three.  (Ex. 16, Loetz Rep., ¶ 21).

**Plaintiff's Response:**    Disputed. A puzzle cube where each face is divided into nine

equal segments organized into three rows of three is only one type of 3x3 puzzle cube.

3x3 puzzle cubes also include varieties where each face is divided into nine unequal

segments organized into three rows of three. Ex. 184, Mirror Cube; Ex. 185, DianSheng

Case Cube; Ex. 186, Redi Cube; Ex. 187.

**Defendant's Reply:**    RBL's current statement is contradicted by its

witnesses' sworn testimony.  RBL's corporate representative testified that a 3x3

cube refers to each face having three square cubes up and three square cubes over.

(Ex. 60, Riehl Dep. Tr., at 33:3-12).  RBL's expert has likewise concluded that a

3x3 cube has six equal square faces subdivided into smaller cubes with each face

having nine square cubes organized into three rows of three.  (Ex. 181, Gottlieb

Rep., ¶ 13).  RBL's current statement to the contrary is supported by inadmissible

hearsay exhibits.

19.    3x3 puzzle cubes are a common type of puzzle cube.  (Ex. 16, Loetz Rep., ¶ 21).

**Plaintiff's Response:**    Admit.

   **Defendant's Reply:**    Undisputed.

### Early Puzzle Cube Patents

20.    Three-dimensional puzzles and puzzle cubes have been known and used for decades. (Ex. 16, Loetz Rep., ¶ 22.a-g; Exs. 18-30 (collecting patents on puzzle cubes)).

   **Plaintiff's Response:**    Admit, but dispute the referenced Exs. 18-30 all disclose puzzle cubes. See e.g. Ex. 23 (claiming a 2x3 puzzle); Ex. 29 (claiming a spherical puzzle).

      **Defendant's Reply:**    Undisputed. The fact references both three-dimensional puzzles and puzzle cubes.

21.    U.S. Patent No. 3,081,089 for a "Manipulable Toy" was applied for February 2, 1960 and issued in the name of William O. Gustafson on March 12, 1963 ("Gustafson Patent"). (Ex. 29, Gustafson Patent, p. 1, 3).

   **Plaintiff's Response:**    Admit to the extent "Manipulable Toy" means "Manipulatable Toy". See Flambeau Ex. 29, Gustafson Patent, p. 1, 3.

      **Defendant's Reply:**    Undisputed.

22.    The Gustafson Patent discloses "a mechanical puzzle having a plurality of vari-colored parts which are movable relative to each other to form various patterns." (Ex. 29, Gustafson Patent, at FLAMBEAU001063).

   **Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

23.    The Gustafson Patent expired by the early 1980s. (Ex. 29, Gustafson Patent, at FLAMBEAU001063; Ex. 16, Loetz Rep., ¶ 23 & n. 26).

   **Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

24.    U.S. Patent No. 3,655,201 for a "Pattern Forming Puzzle and Method with Pieces Rotatable in Groups" was applied for March 4, 1970 and issued in the name of Larry D. Nichols on April 11, 1972 ("Nichols Patent").    (Ex. 18, Nichols Patent, at FLAMBEAU001072).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

25.    The Nichols Patent discloses "a cube-type assembly" wherein "[e]ach cube has colored surfaces and when properly arranged one distinct color on each of the six faces is presented."    (Ex. 18, Nichols Patent, at FLAMBEAU001072 (Abstract); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 111:16-112:3, 112:18-113:9, 113:12-25).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

26.    The Nicholas Patent discloses a subdivided cube wherein "the exposed surfaces are colored so as to allow the complete cube if its component parts are properly arranged to present one distinct coloration on each of its six faces."    (Ex. 18, Nichols Patent, at FLAMBEAU001074, Col. 1:63-65; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 111:16-112:3, 112:18-113:9, 113:12-25).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

27.    The Nichols Patent expired by the early 1990s.    (Ex. 18, Nichols Patent, at FLAMBEAU001072; Ex. 16, Loetz Rep., ¶ 23 & n. 26).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

28.  Japanese Patent No. S53-120946 for a "Rotation type stereoscopic combination toy" was applied for March 29, 1977 and was published in the name of Terutoshi Ishige on October 21, 1978 ("Ishige Patent").  (Ex. 19, Ishige Patent, at FLAMBEAU001583 (English translation)).

**Plaintiff's Response:**      Admit.

    **Defendant's Reply:**      Undisputed.

29.  The Ishige Patent discloses "stereoscopic puzzles that combine pictures, letters, patterns, etc. of each surface in which each surface of cubes is equally divided into 3 horizontally and vertically."  (Ex. 19, Ishige Patent, at FLAMBEAU001583, ¶ 3; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 125:21-25, 126:9-21).

**Plaintiff's Response:**      Admit.

    **Defendant's Reply:**      Undisputed.

30.  The Ishige Patent discloses the following figures of a 3x3 puzzle cube:



(Ex. 19, Ishige Patent, at FLAMBEAU001586 (English translation)).

**Plaintiff's Response:**      Admit.

    **Defendant's Reply:**      Undisputed.

31.    RBL agrees that Ishige is recognized as an independent inventor of the 3x3 puzzle cube

that RBL calls the Rubik's Cube.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 109:6-14).

**Plaintiff's Response:**       Disputed. RBL's "RUBIK'S CUBE" is a 3x3 puzzle cube

based upon the RUBIK'S Design with a grid pattern and distinct color patches on each

face of the cube consisting of red, white, blue, green, yellow and orange. The Ishige

Patent, on the other hand, does not disclose a 3x3 puzzle cube with a grid pattern and

distinct color patches on each face of the cube. Rather, the Ishige Patent discloses

"stereoscopic puzzles that combine pictures, letters, patterns etc. of each surface." Ex. 19,

Ishige Patent, at FLAMBEAU001583 (English translation).

> **Defendant's Reply:**       RBL's corporate representative Mr. Kremer confirmed
>
> that the inventor of the Japanese Patent No. S53-120946— Terutoshi Ishige—
>
> "has been recognized as an independent creat[or] of the 3x3 Cube that we know
>
> as the Rubik's Cube" and that the puzzle in the Ishige Patent is generally thought
>
> to be an independent creation.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 109:6-14).

### The Rubik Patents

32.    RBL credits Ernö Rubik, a Hungarian professor, with inventing the 3x3 puzzle cube at-

issue in this case.  (Dkt. 1, Complaint, ¶ 9).

**Plaintiff's Response:**       Admit.

> **Defendant's Reply:**       Undisputed.

33.    Mr. Rubik was issued at least five patents covering puzzle cubes in the 1970s and early

1980s.  (Exs. 20-24 (collecting Rubik patents)).

**Plaintiff's Response:**       Admit.

> **Defendant's Reply:**       Undisputed.

34.    Hungarian Patent No. 170062 for a "Spatial Logic Toy" was applied for January 30, 1975

and issued in the name of Mr. Rubik on December 31, 1977 ("the '062 Rubik Patent").
(Ex. 20, '062 Rubik Patent, at FLAMBEAU000640 (English translation); *see also* Ex. 61,
Kremer Dep. Tr., at 12:9-20, 187:23-188:4).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

35.    The '062 Rubik Patent discloses a 3x3 puzzle cube.  (Ex. 20, '062 Rubik Patent,
FLAMBEAU000640-641, FLAMBEAU000645 at Figs. 1-4 (English translation); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 114:1-9, 114:16-22, 116:13-15, 116:21-117:1;
Ex. 69, RBL Req. Ad. Resp., Nos. 18-19).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

36.    The '062 Rubik Patent discloses a "spatial logical toy, which may be assembled from
twenty-seven solid pieces, into with respect to its external shape, a closed cube."  (Ex. 20, '062 Rubik Patent, at FLAMBEAU000640 (English translation); *see also* Ex. 63, Simms
Dep. Tr., at 15:17-20, 114:1-9, 114:16-22, 116:13-15, 116:21-117:1).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

37.    The '062 Patent discloses "[o]f the twenty-seven elements forming the large cube the
nine solid pieces forming any face surface of the cube are arranged so that they may
rotate together and at the same time."  (Ex. 20, '062 Rubik Patent, at
FLAMBEAU000640 (English translation); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20,
114:1-9, 114:16-22, 116:13-15, 116:21-117:1).

**Plaintiff's Response:**    Admit

    **Defendant's Reply:**    Undisputed.

38.    The '062 Patent discloses "[t]he surfaces of the cubes are supplied with predetermined planar figures, or three-dimensional shapes, or numbers (coded), with which they may be differentiated from each other and matched with each other, which as a result of rotation around the spatial axes according to the very different variation or combinations appear as further, specific legible figures, number or symbol combinations on the given face of the cube."  (Ex. 20, '062 Rubik Patent, at FLAMBEAU000640 (English translation); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 114:1-9, 114:16-22, 116:13-15, 116:21-117:1).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

39.    The '062 Rubik Patent discloses the following figures of a 3x3 puzzle cube:



Figure 1

Figure 3

(Ex. 20, '062 Rubik Patent, at FLAMBEAU000641, FLAMBEAU000645 (English translation)).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

40.    Belgian Patent No. 887875 for a "Spatial logical toy" was published in the name of Mr. Rubik on July 1, 1981 ("the '875 Rubik Patent").  (Ex. 21, '875 Rubik Patent, at

FLAMBEAU000619-620 (English translation); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 117:1-5)).

**Plaintiff's Response:**     Admit.

   **Defendant's Reply:**     Undisputed.

41.   The '875 Rubik Patent discloses a 3x3 puzzle cube.   (Ex. 21, '875 Rubik Patent, FLAMBEAU000621-624 (English translation); Ex. 69, RBL Req. Ad. Resp., Nos. 20-21).

**Plaintiff's Response:**     Admit

   **Defendant's Reply:**     Undisputed.

42.   The '875 Rubik Patent discloses "a spatial logical toy that, as regards to its external appearance, consists of twenty-seven solids forming a closed cube…."   (Ex. 21, '875 Rubik Patent, FLAMBEAU000621).

**Plaintiff's Response:**     Admit.

   **Defendant's Reply:**     Undisputed.

43.   The '875 Rubik Patent discloses "Among the twenty-seven components that comprise the main cube, nine components that form any one of the sides of the cube are mounted such that they rotate together and at the same time…."   (Ex. 21, '875 Rubik Patent, FLAMBEAU000621).

**Plaintiff's Response:**     Admit.

   **Defendant's Reply:**     Undisputed.

44.   The '875 Rubik Patent discloses "The surfaces of the cubes are supplied (encoded) with predetermined flat illustrations or plastic shapes or numeric figures, by which they may be made to be distinct and identifiable from each other…." (Ex. 21, '875 Rubik Patent, FLAMBEAU000621).

13

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

45.     The '875 Rubik Patent discloses the following figures of a 3x3 puzzle cube:



(Ex. 21, '875 Rubik Patent, at FLAMBEAU000614).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

46.     Hungarian Patent No. 180387 for a "Spatial Logic Toy" was applied for October 28, 1980 and issued in the name of Mr. Rubik on October 30, 1986 ("the '387 Rubik Patent").  (Ex. 22, '387 Rubik Patent, at FLAMBEAU000659 (English translation); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 118:22-119:7).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

47.     The '387 Patent states "[s]patial logic toys are well known."  (Ex. 22, '387 Rubik Patent, at FLAMBEAU000659, ¶ 2).

14

**Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

48.    The '387 Patent references the Ishige Patent as disclosing a 3x3 puzzle cube "of which the 9 small cube faces located on each of the faces of the large cube can be arranged by rotation so that each large cube face contains the same color of small cube faces."  (Ex. 22, '387 Rubik Patent, at FLAMBEAU000659, ¶ 3).

**Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

49.    The '387 Patent discloses "a spatial logic toy, which has a given number of toy elements arrange so as to be rotatable around the spatial axes projected from the geometrical center of the logic toy."  (Ex. 22, '387 Rubik Patent, at FLAMBEAU000659, ¶ 1).

**Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

50.    The '387 Patent claims an "[embodiment of [a] spatial logic toy … characterized by … colors … on the external surfaces of the toy elements …."  (Ex. 22, '387 Rubik Patent, at FLAMBEAU000664-665, Cl. 8; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 118:22-119:7, 119:12-120:17, 121:13-15).

**Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

51.    U.S. Patent No. 4,378,116 for a "Spatial Logical Toy" was applied for August 3, 1981 and issued in the name of Mr. Rubik on March 29, 1983 ("the '116 Rubik Patent").  (Ex. 23, '116 Rubik Patent, at FLAMBEAU000667; Ex. 61, Kremer Dep. Tr., at 12:9-20, 206:22-207:15).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

52.    The '116 Rubik Patent states "[s]patial logic toys are well known."  (Ex. 23, '116 Rubik Patent, at FLAMBEAU000669, Col. 1:9).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

53.    The '116 Rubik Patent references the '062 Rubik Patent as disclosing a 3x3 puzzle cube. (Ex. 23, '116 Rubik Patent, at FLAMBEAU000667-668).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

54.    The '116 Rubik Patent references the '062 Rubik Patent as disclosing a puzzle cube wherein "[t]he surfaces of the small cubes forming each surface of the large cube are colored … [and] can be assembled into the predetermined logical order of sequence by simultaneously rotating the nine toy elements forming the surfaces of the 'large cube.'" (Ex. 23, '116 Rubik Patent, at FLAMBEAU000669, Col. 1:17-22; Ex. 61, Kremer Dep. Tr., at 12:9-20, 207:21-208:17; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 121:20-22, 122:20-123:4, 123:18-24).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

55.    The '116 Rubik Patent expired by the early 2000s.  (Ex. 23, '116 Rubik Patent, at FLAMBEAU000667; Ex. 16, Loetz Rep., ¶ 23 & n. 26).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

56.    U.S. Patent No. 4,378,117 for a "Spatial Logical Toy" was applied for August 3, 1981 and issued in the name of Mr. Rubik on March 29, 1983 ("the '117 Rubik Patent").  (Ex.

24, '117 Rubik Patent, at FLAMBEAU001361; Ex. 61, Kremer Dep. Tr., at 12:9-20, 211:15-212:3).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

57.    The '117 Rubik Patent discloses a "preferred embodiment" of a spatial logical toy wherein "the solid forming the toy is a regular geometrical solid confined by planes, preferably a cube…." (Ex. 24, '117 Rubik Patent, at FLAMBEAU001363, Col. 1:10-12; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 124:4-22, 125:2-20).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

58.    The '117 Rubik Patent discloses a "preferred embodiment" of a spatial logical toy wherein "[t]he small cubic elements forming the plane surfaces of the large cube are either colored or indicated with numbers, figures or any other symbols…." (Ex. 24, '117 Rubik Patent, at FLAMBEAU001363, Col. 1:16-18).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

59.    The '117 Rubik Patent discloses a "preferred embodiment" of a spatial logical toy wherein "by rotating the cubes, several combinations become possible in compliance with the contents yielded by the indicia." (Ex. 24, '117 Rubik Patent, at FLAMBEAU001363, Col. 1:19-21).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

60.    The '117 Rubik Patent expired by the early 2000s. (Ex. 24, '117 Rubik Patent, at FLAMBEAU001361; Ex. 16, Loetz Rep., ¶ 23 & n. 26).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

## Other Puzzle Cube Patents

61.     U.S. Patent No. 4,409,750 for a "Calender Formed from a Cube Puzzle" was applied for August 18, 1981 and issued in the name of Marvin A. Silbermintz on October 18, 1983 ("the Silbermintz Patent").  (Ex. 25, Silbermintz Patent, at FLAMBEAU001365).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

62.     When the Silbermintz Patent issued, it was assigned to the Ideal Toy Corporation.  (Ex. 25, Silbermintz Patent, at FLAMBEAU001365).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

63.     The Silbermintz Patent lists the '062 Rubik Patent in "References Cited."  (Ex. 25, Silbermintz Patent, at FLAMBEAU001365).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

64.     The Silbermintz Patent discloses that in the "Ideal 'Rubik's Cube' version of the cube puzzle, each face is colored uniformly with a distinct color, but repeated rotation of the various faces scrambles the individual cubie faces.  The object of the game then is to continue to rotate the cube faces in order to return the cubies to their original position so that all sides of the cube have a solid color."   (Ex. 25, Silbermintz Patent, at FLAMBEAU001375, Col. 1:26-32).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

18

65.    U.S. Patent No. 4,421,311 for a "Puzzle-Cube" was applied for January 29, 1982 and issued in the name of Peter Sebesteny on December 20, 1983 ("the Sebesteny Patent"). (Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

   **Plaintiff's Response:**      Admit.

         **Defendant's Reply:**      Undisputed.

66.    When the Sebesteny Patent issued, it was assigned to the Ideal Toy Corporation (Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

   **Plaintiff's Response:**      Admit.

         **Defendant's Reply:**      Undisputed.

67.    The Sebesteny Patent lists the Gustafson Patent, the Nichols Patent, the '062 Rubik Patent, and the Ishige Patent in "References Cited."   (Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

   **Plaintiff's Response:**      Admit.

         **Defendant's Reply:**      Undisputed.

68.    The Sebesteny Patent discloses:

A puzzle cube in a 3×3×3 version has been discussed and previously known (The Mathematical Intelligencer, September 1979, pages 29 and 30, Springer-Verlag). In such a puzzle cube, nine outer surfaces of the cube elements are respectively provided with one and the same color, so that in the starting position each side of the cube body is one color. Thus, the cube body has six different colored surfaces which are to be readjusted again after a random disarrangement of the individual cube elements. Each cube element may be rotated about three axes standing perpendicularly one upon another and extending through the cube center. In this rotary movement, it takes along with it all the cube elements that are disposed in the same plane with respect to the direction of rotation. Thus, each cube element forms part of three sections respectively arranged normal to each other and adapted to be rotated about a center axis of the cube. Therefore, each cube element can be rotated only together with the respectively associated section, while by itself it has to be considered as being stationary with respect to the cube body. Precluded is furthermore a diagonal rotation of the cube elements.

(Ex. 28, Sebesteny Patent, at FLAMBEAU001391).

**Plaintiff's Response:**    Admit.

   **Defendant's Reply:**    Undisputed.

69.   U.S. Patent No. 6,626,431 for a "Rotational Cubic Puzzle" was applied for May 29, 2001 and issued in the name of William Possidento on September 30, 2003 ("the Possidento Patent").  (Ex. 26, Possidento Patent, at FLAMBEAU001678).

**Plaintiff's Response:**    Admit.

   **Defendant's Reply:**    Undisputed.

70.   The Possidento Patent discloses an invention that in its "simplest form" includes "a cubic rotatable block type of puzzle" in "a 3x3 array on each of the six faces."  (Ex. 26, Possidento Patent, at FLAMBEAU001682, Col. 1:10-17).

**Plaintiff's Response:**    Admit.

   **Defendant's Reply:**    Undisputed.

71.   The Possidento Patent discloses that "Each face of the puzzle is divided into 9 sections;

in the case of Rubik's Cube, the 9 sections are supposed to all be of the same color when the puzzle is solved correctly."  (Ex. 26, Possidento Patent, at FLAMBEAU001682, Col. 1:31-33).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

72.     U.S. Patent No. 7,644,924 for a "Three Dimensional Sudoku Cube Puzzle and Method" was applied for May 8, 2007 and issued in the name of Jay Horowitz on January 12, 2010 ("the Horowitz Patent").  (Ex. 27, Horowitz Patent, at FLAMBEAU001685).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

73.     The Horowitz Patent discloses "a three dimensional puzzle bearing the shape of a cube." (Ex. 27, Horowitz Patent, at FLAMBEAU001692).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

74.     The Horowitz Patent discloses an embodiment of a three dimensional puzzle bearing the shape of a cube wherein "each face bears one of six distinct colored indicia."  (Ex. 27, Horowitz Patent, at FLAMBEAU001692, Col. 2:9-10).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

75.     UK Patent Application for a "Spatial logic puzzle" was filed June 12, 2012 and published in the name of Steven Perrin on October 3, 2012 ("the Perrin Patent").  (Ex. 30, Perrin Patent Application, at RBL_009260).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

76.    The Perrin Patent Application was filed by Seven Towns Ltd.  (Ex. 30, Perrin Patent Application, at FLAMBEAU009260).

   **Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

77.    Seven Towns Ltd. is RBL's predecessor-in-interest to intellectual property rights related to the Rubik's Cube.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 15:23-16:4, 16:12-25, 17:9-24, 21:8-22:15; Ex. 60, Riehl Dep. Tr., at 10:17-20, 23:20-24, 25:5-9, 33:18-22, 41:3-20, 34:4-9, 196:21-197:13).

   **Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

78.    The Perrin Patent Application discloses the "general arrangement of a 3 x 3 x 3 Rubik's cube puzzle."  (Ex. 30, Perrin Patent Application, at RBL_009274, ¶ 3).

   **Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

79.    The Perrin Patent Application discloses using "snap-in coloured inserts for the various face edge and corner cubes instead of more usual adhesive coloured identifiers."  (Ex. 30, Perrin Patent Application, at RBL_009287, ¶ 1).

   **Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

**Ideal, CBS & the Nichols Patent Litigation**

80.    Ideal Toy Company ("Ideal") learned of Mr. Rubik's puzzle cubes in late 1979.  (Ex. 39, 6/19/1985 Brief for Appellant, CBS, Inc., filed in *CBS, Inc. v. Moleculon Research Corp.*, No. 85-2096 (Fed. Cir.) ("CBS Brief"), at FLAMBEAU002015 (1985 WL 671390, *16)).

**Plaintiff's Response:**    Admit.

   **Defendant's Reply:**    Undisputed.

81.    In September 1979, Ideal entered into an agreement granting Ideal exclusive rights to sell

   Mr. Rubik's puzzle cubes in the U.S.  (Ex. 39, CBS Brief, at FLAMBEAU002015 (1985

   WL 671390, *16); Ex. 38, 10/2/1984 Opinion & Order, issued in *Moleculon Research*

   *Corporation v. CBS, Inc.*, No. 82-289 (D. Del.) ("1984 D. Del. Op."), at

   FLAMBEAU002072 (594 F. Supp. 1420, 1424); Ex. 63, Simms Dep. Tr., at 15:17-20,

   69:6-16; *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 29:24-30:8, 30:12-25, 32:3-10,

   32:20-24).

   **Plaintiff's Response:**    Admit to the extent "Mr. Rubik's puzzle cubes" refers to the

   3x3 Rubik's Cube. Ex. 39 at FLAMBEAU002015.

      **Defendant's Reply:**    Undisputed.

82.    In September 1979, Ideal entered into an agreement granting Ideal rights and to use the

   name "Rubik's" for puzzle cubes in the U.S.  (Ex. 39, CBS Brief, at FLAMBEAU002015

   (1985 WL 671390, *16)).

   **Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

83.    Ideal debuted its 3x3 puzzle cube, called the "Rubik's Cube," at the New York City Toy

   Fair in February 1980.  (Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390,

   *17); Ex. 61, Kremer Dep. Tr., at 12:9-20, 98:6-17).

   **Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

84.    In early 1981, a representative of Moleculon Research Corporation ("Moleculon"), wrote

   to the president of Ideal about the Nichols Patent.  (Ex. 38, 1984 D. Del. Op., at

FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

85. Ideal responded to Moleculon that it had studied the prior art and believed its Rubik's Cube did not infringe any valid patent claims.  (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed

86. In August 1981, representatives from Moleculon and Ideal discussed the possibility of Ideal licensing the Nichols Patent.  (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**    Admit

    **Defendant's Reply:**    Undisputed.

87. Moleculon filed suit against Ideal for patent infringement of the Nichols Patent in May 1982 ("the Nichols Patent Litigation").  (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002071-72 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

88. During the Nichols Patent Litigation, Ideal was acquired by CBS, Inc. ("CBS") and CBS was named as the defendant.  (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424); *see also* Ex. 66, Cube is a Problem to CBS, New York Times (1984), at FLAMBEAU002026; Ex. 61, Kremer Dep. Tr., at 12:9-20, 33:25-34:3).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

24

89.    In October 1984, the United States District Court for the District of Delaware issued an opinion finding claims of the Nichols Patent valid and infringed by variations of the Rubik's Cube.  (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002086 (594 F. Supp. 1420, 1441)).

    **Plaintiff's Response:**    Admit.

        **Defendant's Reply:**    Undisputed.

90.    In May 1986, the United States Court of Appeals for the Federal Circuit issued an opinion affirming the district court's finding that claims of the Nichols Patent were not invalid, affirming the finding that the 2x2 Rubik's Cube infringed, and vacating and remanding on the finding that the 3x3 and 4x4 Rubik's Cubes infringed.  (Ex. 40, 5/16/1986 Opinion issued in *Moleculon Research Corporation v. CBS, Inc.,* No. 85-2096 (Fed. Cir.), at FLAMBEAU002062).

    **Plaintiff's Response:**    Admit.

        **Defendant's Reply:**    Undisputed.

91.    In July 1987, the United States District Court for the District of Delaware issued an opinion and order finding that the 3x3 and 4x4 Rubik's Cubes infringe the Nichols Patent.  (Ex. 41, 7/6/1987 Opinion & Order issued in *Moleculon Research Corporation v. CBS, Inc.*, No. 82-289 (D. Del.), at FLAMBEAU002091).

    **Plaintiff's Response:**    Admit.

        **Defendant's Reply:**    Undisputed.

92.    In April 1989, the United States Court of Appeals for the Federal Circuit issued an opinion reversing the district court's finding that the 3x3 and 4x4 Rubik's Cubes infringe the Nichols Patent.   (Ex. 42, 4/5/1989 Opinion issued in *Moleculon Research Corporation v. CBS, Inc.,* No. 87-1594 (Fed. Cir.), at FLAMBEAU002096).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

### Prosecution of the '094 Registration

93.    In April 1982, Ideal's patent counsel filed an application to register a trademark on Ideal's behalf for puzzle cubes consisting of "a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow, and orange," which was assigned Application No. 358,308.    (Ex. 31, 4/5/1982 Application ("the '308 Application"), at FLAMBEAU000039-42; Ex. 15, Roberts Decl., ¶ 30; Ex. 61, Kremer Dep. Tr., at 12:9-20, 57:24-58:3, 58:7; Ex. 63, Simms Dep. Tr., at 15:17-20, 60:22-61:1).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

94.    Ideal submitted with the '308 Application the following drawing lined for the colors red, green, orange, blue, and yellow:



(Ex. 31, '308 Application, at FLAMBEAU000039, FLAMBEAU000249; Ex. 16, Loetz

Rep., ¶ 38; Ex. 15, Roberts Decl., ¶ 30).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

95.    Ideal submitted with the '308 Applications the following photographs of the puzzle cubes

that it contended used the applied-for trademark:

 

(Ex. 31, '308 Application, at FLAMBEAU000040, FLAMBEAU000253-257; Ex. 16,

Loetz Rep., ¶ 39; Ex. 61, Kremer Dep. Tr., at 12:9-20, 57:24-58:3, 58:7, 58:12-59:3,

59:12-19).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

96.    The photographs Ideal submitted with the '308 Application showed the white face of the

3x3 Rubik's Cube adjacent to the yellow and orange faces.  (Ex. 31, '308 Application, at

FLAMBEAU000040, FLAMBEAU000253-257; Ex. 16, Loetz Rep., ¶ 39; Ex. 61,

Kremer Dep. Tr., at 12:9-20, 57:24-58:3, 58:7, 58:12-59:3, 59:12-19, 99:25-100:9).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

97.    The photographs Ideal submitted with the '308 Application showed the red face was adjacent to the blue and green faces.  (Ex. 31, '308 Application, at FLAMBEAU000040, FLAMBEAU000253-257; Ex. 16, Loetz Rep., ¶ 39; Ex. 61, Kremer Dep. Tr., at 12:9-20, 57:24-58:3, 58:7, 58:12-59:3, 59:12-19).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

98.    The examiner initially refused registration in an office action dated on or about July 27, 1982.  (Ex. 32, 7/27/1982 Office Action; Ex. 15, Roberts Decl., ¶ 31; Ex. 61, Kremer Dep. Tr., at 12:9-20, 75:5-17, 79:6-14; Ex. 63, Simms Dep. Tr., at 15:17-20, 63:10-19, 64:1-7).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

99.    The examiner initially refused registration "because the design sought to be registered appears to be the configuration of applicant's goods and the configuration appears to be primarily functional in nature."  (Ex. 32, 7/27/1982 Office Action; Ex. 15, Roberts Decl., ¶ 31; Ex. 63, Simms Dep. Tr., at 15:17-20, 63:10-19, 64:1-7).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

100.    Ideal filed a response to the July 27, 1982 office action on or about September 7, 1982. (Ex. 33, 9/7/1982 Response; Ex. 15, Roberts Decl., ¶ 32; Ex. 63, Simms Dep. Tr., at 15:17-20, 64:21-65:1).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

101.    In its September 7, 1982 response, Ideal changed its identification of goods to "three

dimensional puzzles." (Ex. 33, 9/7/1982 Response, at FLAMBEAU000044; Ex. 63, Simms Dep. Tr., at 15:17-20, 65:18-22).

**Plaintiff's Response:**     Admit.

     **Defendant's Reply:**     Undisputed.

102.   In its September 7, 1982 response, Ideal conceded that the mark sought for registration is a configuration of the goods. (Ex. 33, 9/7/1982 Response, at FLAMBEAU000044; Ex. 63, Simms Dep. Tr., at 15:17-20, 65:18-22).

**Plaintiff's Response:**     Admit.

     **Defendant's Reply:**     Undisputed.

103.   In its September 7, 1982 response, Ideal argued that the applied-for design was not functional because "the design features of applicant's product, as shown in the drawings, are not essential to effective competition or to any other factor." (Ex. 33, 9/7/1982 Response, at FLAMBEAU000046).

**Plaintiff's Response:**     Admit.

     **Defendant's Reply:**     Undisputed.

104.   In its September 7, 1982 response, Ideal argued that the applied-for design was not functional because "Cube puzzles such as manufactured by applicant can be formed of any color plastic material desired. They need not be formed of black. The black color of the plastic which forms the distinctive black grid pattern of the trademark serve absolutely no function in the use of the product." (Ex. 33, 9/7/1982 Response, at FLAMBEAU000046).

**Plaintiff's Response:**     Admit.

     **Defendant's Reply:**     Undisputed.

105.   In its September 7, 1982 response, Ideal argued that the applied-for design was not

functional because "Likewise, the color patches on the faces of the product are not functional. The color patches need not be square as used by applicant nor need they be colored." (Ex. 33, 9/7/1982 Response, at FLAMBEAU000046).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

106.    In its September 7, 1982 response, Ideal argued that the applied-for design was not functional because "And, if colored, they need not be the precise colors used by applicant." (Ex. 33, 9/7/1982 Response, at FLAMBEAU000046).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

107.    Ideal cited three court decisions in its September 7, 1982 response that it claimed established the non-functionality of the applied-for design. (Ex. 33, 9/7/1982 Response, at FLAMBEAU000047).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

108.    As of August 17, 1982, all of the stock and trademark rights of Ideal were acquired by CBS. (Ex. 35, 5/31/1983 Response, at FLAMBEAU000099).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

109.    Ideal assigned the '308 Application to CBS in August or September 1982. (Ex. 37, '094 Registration (CBS, Inc. listed as "assignee of Ideal Toy Corporation"); Ex. 61, Kremer Dep. Tr., at 12:9-20, 197:3-9; Ex. 63, Simms Dep. Tr., at 15:17-20, 77:18-24).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

110.   The examiner refused the registration a second time in an office action dated on or about January 17, 1983.  (Ex. 34, 1/17/1983 Office Action; Ex. 15, Roberts Decl., ¶ 33; Ex. 61, Kremer Dep. Tr., at 12:9-20, 79:19-25, 80:14-20, 80:25-81:1; Ex. 63, Simms Dep. Tr., at 15:17-20, 78:12-14, 79:6-23).

**Plaintiff's Response:**      Admit.

    **Defendant's Reply:**      Undisputed.

111.   The examiner stated "the design sought to be registered appears to be the configuration of the applicant's goods and the configuration appears to be primarily functional in nature." (Ex. 34, 1/17/1983 Office Action).

**Plaintiff's Response:**      Admit.

    **Defendant's Reply:**      Undisputed.

112.   The examiner noted that the decisions Ideal had cited in its September 7, 1982 response involved preliminary injunctions.  (Ex. 34, 1/17/1983 Office Action).

**Plaintiff's Response:**      Admit.

    **Defendant's Reply:**      Undisputed.

113.   The examiner ordered in her January 17, 1983 office action that "Applicant must set forth the registration number of any patents which cover the goods in the application."  (Ex. 34, 1/17/1983 Office Action; Ex. 15, Roberts Decl., ¶ 34; Ex. 63, Simms Dep. Tr., at 15:17-20, 79:24-80:20).

**Plaintiff's Response:**      Admit.

    **Defendant's Reply:**      Undisputed.

114.   The examiner's January 17, 1983 request for "any patents which cover the goods in the application" included foreign patents.  (Ex. 63, Simms Dep. Tr., at 15:17-20, 81:5-11, 82:2-5, 82:10-25).

31

**Plaintiff's Response:**      Admit.

  **Defendant's Reply:**      Undisputed.

115. CBS (or Ideal on its behalf) filed a response to the January 17, 1983 office action on or about May 31, 1983.  (Ex. 35, 5/31/1983 Response; Ex. 15, Roberts Decl., ¶ 35; Ex. 63, Simms Dep. Tr., at 15:17-20, 83:1-11).

**Plaintiff's Response:**      Admit.

  **Defendant's Reply:**      Undisputed.

116. In the May 31, 1983 response, neither Ideal nor CBS set forth the registration numbers of any patents which cover three dimensional puzzles.  (Ex. 35, 5/31/1983 Response; Ex. 15, Roberts Decl., ¶¶ 38, 49).

**Plaintiff's Response:**      Admit.

  **Defendant's Reply:**      Undisputed.

117. Ideal or CBS cited two court decisions—*In the matter of Certain Puzzle Cubes* and *CBS, Inc. v. Logical Games, Inc.*—and asserted they were "determinative as to the issue of non-functionality."  (Ex. 35, 5/31/1983 Response, at FLAMBEAU000099-100).

**Plaintiff's Response:**      Admit.

  **Defendant's Reply:**      Undisputed.

118. The decision from *In the matter of Certain Puzzle Cubes* submitted by CBS referenced the '062 Rubik Patent, but no other patent.  (Ex. 35, 5/31/1983 Response, at FLAMBEAU000101, FLAMBEAU000125-126).

**Plaintiff's Response:**      Admit.

  **Defendant's Reply:**      Undisputed.

119. The decision from *In the matter of Certain Puzzle Cubes* submitted by Ideal or CBS mistakenly stated that Ideal "do[es] not have any patent rights in the United States to the

puzzle cube." (Ex. 35, 5/31/1983 Response, at FLAMBEAU000112, n.13; Ex. 63, Simms Dep. Tr., at 15:17-20, 73:17-74:1; Ex. 25, Silbermintz Patent, at FLAMBEAU001365; Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

**Plaintiff's Response:**     Disputed. The International Trade Commission decision from In the matter of Certain Puzzle Cubes correctly stated that Ideal "do[es] not have any patent rights in the United States to the cube puzzle." Ex. 35 at FLAMBEAU000112 (emphasis added). The quoted statement by the ITC is a footnote to the ITC's comment that, "Ideal claims a common-law trademark in the appearance of its cube." Id. Accordingly, "the cube puzzle" or "Ideal's cube puzzle" at issue is defined by the ITC as the "Rubik's Cube," which "is a six-sided cube made of black plastic. On each side there are nine smaller cubes, called 'cubies.'" Id. at FLAMBEAU000112-113. The ICT correctly stated that Ideal "do[es] not have any patent rights in the United States to the [Rubik's Cube]" because the referenced Rubik's Cube is a 3x3 cube puzzle with nine smaller cubes on each side of the cube puzzle. The only two U.S. patents issued in Mr. Rubik's name (the '116 Rubik Patent and the '117 Rubik Patent) do not disclose a 3x3 cube puzzle. The '116 Rubik Patent claims a 2x3 puzzle with six smaller cubes on four sides of the cube puzzle, as shown below:



Ex. 23, '116 Rubik Patent, at FLAMBEAU000667. The '117 Rubik Patent claims a 2x2

cube puzzle with four smaller cubes on each side of the cube puzzle, as shown below:



Ex. 24, '117 Rubik Patent, at FLAMBEAU001362.

    **Defendant's Reply:**    The ITC mistakenly stated that **Ideal** "do[es] not have

any patent rights in the United States to the **cube puzzle**." (Ex. 35, 5/31/1983

Response, at FLAMBEAU000112, n.13) (emphasis added). However, Ideal Toy

Corp. is the named assignee on the Silbermintz Patent (U.S. No. 4,409,750) and

the Sebesteny Patent (U.S. No. 4,421,311), which both disclosed a 3x3x3 cube

puzzle. (Ex. 25, Silbermintz Patent, at FLAMBEAU001365-1374; Ex. 28,

Sebesteny Patent, at FLAMBEAU001383, 001391).

120. The decision from *CBS, Inc. v. Logical Games, Inc.* submitted by Ideal or CBS did not reference patents.  (Ex. 35, 5/31/1983 Response, at FLAMBEAU000152-161).

**Plaintiff's Response:**      Admit.

      **Defendant's Reply:**      Undisputed.

121. After CBS's May 31, 1983 response, the '308 Application was re-assigned to a new examiner and the new examiner approved the applied-for mark for publication the same day.  (Ex. 15, Roberts Decl., ¶ 45; Ex. 36, Notice of Publication; Ex. 48, TSDR Printout, at FLAMBEAU000003).

**Plaintiff's Response:**      Admit.

      **Defendant's Reply:**      Undisputed.

122. U.S. Registration No. 1,265,094 issued to CBS, Inc. on January 24, 1984 ("the '094 Registration").  (Ex. 37, '094 Registration; Ex. 15, Roberts Decl., ¶ 46).

**Plaintiff's Response:**      Admit.

      **Defendant's Reply:**      Undisputed.

123. The '094 Registration is for "three dimensional puzzles."  (Ex. 37, '094 Registration; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13).

**Plaintiff's Response:**      Admit.

      **Defendant's Reply:**      Undisputed.

124. The '094 Registration states "the mark consists of a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow and orange."  (Ex. 37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24; Ex. 61, Kremer Dep. Tr., at 12:9-20, 54:14-18, 55:25-56:15).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**     Undisputed.

125.     The '094 Registration provides the following drawing lined for the colors red, green, orange, blue and yellow:



(Ex. 37, '094 Registration).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

126.     CBS assigned the '094 Registration to Seven Towns in 1986.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 196:21-197:2; Ex. 48, TSDR Printout, at FLAMBEAU000003-4).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

127.     Seven Towns assigned the '094 Registration to RBL in 2013.  Ex. 61, Kremer Dep. Tr., at 12:9-20, 197:10-13; Ex. 48, TSDR Printout, at FLAMBEAU000003-4).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**      Undisputed.

### Speed Cubing & the World Cubing Association

128.    By October 1982, it was reported that "the cube has become passe" and the trend for sales of the Rubik's Cube "clearly is downward."  (Ex. 73, Rubik's Cube:  A Craze Ends, New York Times (Oct. 30, 1982).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

129.    By 1984, it was reported that popularity of the 3x3 Rubik's Cube had "dropped off dramatically."   (Ex. 66, Cube is a Problem to CBS, New York Times (1984), at FLAMBEAU002026; Ex. 62, Gottlieb Dep. Tr., at 309:16-310:1, 310:8-311:6).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

130.    Speed cubing is an activity where individuals strive to solve three dimensional puzzles as quickly as possible.  (Ex. 16, Loetz Rep., ¶ 97; Ex. 60, Riehl Dep. Tr., at 10:17-20, 192-193:20, 202:6-8, 220:15-221:4, 222:11-14, 225:3-10, 226:3-8; Ex. 61, Kremer Dep. Tr., at 12:9-20, 216:12-22; Ex. 63, Simms Dep. Tr., at 15:17-20, 148:2-10; Ex. 69, RBL Req. Ad. Resp., No. 16).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

131.    The popularity of speed cubing has grown exponentially in recent years.   (Ex. 58, Children of the Cube, New York Times (Aug. 15, 2018), at FLAMBEAU002607; *see also* Ex. 16, Loetz Rep., ¶ 99-100).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

132.    The World Cubing Association ("WCA"), the largest organization for speed cubing, formed in 2004 to approve and administer speed cubing events and competitions.  (Ex. 58, Children of the Cube, New York Times (Aug. 15, 2018), at FLAMBEAU002613; *see also* Ex. 16, Loetz Rep., ¶ 98; Ex. 60, Riehl Dep. Tr., at 10:17-20, 203:14-22; Ex. 61, Kremer Dep. Tr., at 12:9-20, 239:20-240:3).

**Plaintiff's Response:**        Admit to the extent the WCA approves and administer speed cubing events and competitions that are hosted or endorsed by the WCA. Dispute that the WCA approves and administers all speed cubing events and competitions. For example, RBL approves and administers its own speed cubing events and competitions through its You CAN Do The RUBIK'S CUBE Program without WCA participation.  See Ex. 76, Riehl Decl. ¶¶ 22, 25, 30. In addition, the annual Red Bull Rubik's Cube World Championship is a speed cubing event and competition approved and administered by RBL and Red Bull Mind Gamers. See Ex. 150 at RBL_006078-RBL_006079. Dispute that the citations to the Riehl and Kremer deposition transcripts support Flambeau's statements in SMF ¶ 132.

> **Defendant's Reply:**        Plaintiff's response does not dispute Statement No. 132. This statement does not claim, as Plaintiff's response addresses, that "WCA approves and administers ***all*** speed cubing events and competitions."  Nor does Statement No. 132 address or mention "Red Bull Rubik's Cube World Championship."  Accordingly, RBL admits to the actual proffered statements in Statement No. 132.

133.    In 2017, the number of first-time competitors at WCA events was about 24,000, which was five times more than the number of first-time competitors at WCA events in 2012. (Ex. 58, Children of the Cube, New York Times (Aug. 15, 2018), at

FLAMBEAU002607; Ex. 16, Loetz Rep., ¶ 99).

**Plaintiff's Response:**    Admit.

   **Defendant's Reply:**    Undisputed.

134.   The WCA publishes regulations that apply to all official competitions sanctioned by the WCA ("WCA Regulations").  (Ex. 9, WCA Regulations, at FLAMBEAU002484; Ex. 60, Riehl Dep. Tr., at 10:17-20, 247:2-8).

**Plaintiff's Response:**    Admit.

   **Defendant's Reply:**    Undisputed.

135.   Competitors at WCA events may use any brand of three-dimensional puzzle, so long as the puzzle conforms with Article 3 of the WCA Regulations.  (Ex. 9, WCA Regulations, at FLAMBEAU002488-2489; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 230:7-231:3, 257:18-22).

**Plaintiff's Response:**    Admit.

   **Defendant's Reply:**    Undisputed.

136.   Article 3a of WCA Regulations provides:

> 3a) Competitors must provide their own puzzles for the competition.
> ○ 3a1) Competitors must be ready to submit their puzzles when they are called (see Regulation 2u).
> ○ 3a2) Puzzles must be fully operational, such that normal scrambling is possible.
> ○ 3a3) Polyhedral puzzles must use a color scheme with one unique color per face in the solved state. Each puzzle variation must have moves, states, and solutions functionally identical to the original puzzle.

Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:**    Admit.

   **Defendant's Reply:**    Undisputed.

137.   Article 3d of the WCA Regulations provides:

3d) Puzzles must have colored parts, which define the color scheme of the puzzle and must be one and only one of the following: colored stickers, colored tiles, colored plastic, or painted/printed colors. All colored parts of a puzzle must be made of a similar material.

- 3d1) For competitors with a medically documented visual disability, the following exceptions apply:
  - 3d1a) Blind competitors may use textured puzzles with different textures on different faces. Each face should have a distinct color, to aid in scrambling and judging.
  - 3d1b) Color blind competitors who cannot distinguish between the necessary number of colors may use colored parts with patterns, if it has been explicitly approved according to Regulation 2s. Patterns may come from stickers or be drawn.
- 3d2) The colors of the colored parts must be solid, with one uniform color per face. Each color must be clearly distinct from the other colors.

Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

138.   Article 3h of the WCA Regulations provides:

- 3h) Modifications that enhance the basic concept of a puzzle are not permitted. Modified versions of puzzles are permitted only if the modification does not make any additional information available to the competitor (e.g. orientation or identity of pieces), compared to an unmodified version of the same puzzle.
  - 3h1) "Pillowed" puzzles are permitted.
  - 3h2) Puzzles whose colored plastic is visible inside the puzzle (e.g. "stickerless" puzzles) are permitted. This does not include the following puzzles:
    - 3h2a) Puzzles with transparent parts. Exception: An overlay sticker (see Regulation 3l).
  - 3h3) Any modifications to a puzzle that result in poor performance by a competitor are not grounds for additional attempts.
  - 3h4) For Clock, custom "inserts" (the same shape and size as the traditional paper inserts) are permitted, at the discretion of the WCA Delegate. The inserts must have a clear indication of 12 o'clock that matches the original inserts.

Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

139.   Article 3j of the WCA Regulations provides:

3j) Puzzles must be clean, and must not have any markings, elevated pieces, damage, or other differences that significantly distinguish any piece from a similar piece. Exception: a logo (see Regulation 3l).

- 3j1) Puzzles are permitted to have reasonable wear, at the discretion of the WCA Delegate.
- 3j2) Definition: Two pieces are similar to each other if they are identical in shape and size, or mirrored in shape and identical in size.
- 3j3) Corrugated/textured parts which permit the orientation of pieces to be distinguished by feel are not permitted for blindfolded events.

Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

140.    Article 3l of the WCA Regulations provides:

> 3l) A puzzle may have a logo on a colored part. If it does, it must have at most one colored part with a logo. Exception: For blindfolded events, a puzzle must not have a logo.
> - 3l1) The logo must be placed on a center piece. Exceptions for puzzles that do not have center pieces:
>   - 3l1a) For Pyraminx and 2x2x2, the logo may be on any piece.
>   - 3l1b) For Square-1, the logo must be on a piece in the equatorial slice.
> - 3l2) The logo may be embossed, engraved, or consist of an overlay sticker.

(Ex. 9, WCA Regulations, at FLAMBEAU002489).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

141.    To be eligible for WCA 3x3 puzzle cube events, the puzzle "must use a color scheme with one unique color per face in the solved state."  (Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

142.    To be eligible for WCA 3x3 puzzle cube events, the puzzle "must have colored parts" and the "colors of the colored parts must be solid, with one uniform color per face" and "[e]ach color must be clearly distinct from the other colors."  (Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

143.    To be eligible for WCA 3x3 puzzle cube events, the puzzle "must be clean, and must not have any markings, elevated pieces, damage, or other differences that significantly

distinguish any piece from a similar piece." (Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

144.    To be eligible for WCA 3x3 puzzle cube events, any logo on the puzzle "must be placed on a center piece." (Ex. 9, WCA Regulations, at FLAMBEAU002489).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

145.    Because of the nature of speedcubing, competitors are interested in using cubes that can be solved most quickly. (Ex. 16, Loetz Rep., ¶ 101; Ex. 60, Riehl Dep. Tr., at 10:17-20, 110:6-18, 110:24-111:9, 112:21-113:10, 181:16-182:4; Ex. 61, Kremer Dep. Tr., at 12:9-20, 216:12-22; *see also* Ex. 62, Gottlieb Dep. Tr., at 186:19-187:7, 188:11-189:3, 195:18-196:14, 197:1-10, 261:17-262:2).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

146.    RBL targets speedcubing competitors with its products. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 224:13-22, 225:5-11; *see also* Ex. 62, Gottlieb Dep. Tr., at 250:1-6, 250:10-21, 252:14-25, 253:9-13, 268:3-15).

**Plaintiff's Response:**     Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 146. Mr. Kremer's testimony is specifically with regard to only one of RBL products, the Rubik's Speed Cube, which is a RBL licensed 3x3 puzzle cube created in partnership with Gan, a puzzle cube manufacturing company. Ex. 61, Kremer Dep. Tr.: 123:2-5; 172:2-10. Mr. Kremer testified that The Rubik's Speed Cube generally targets the speed cubing community through its relationship with Gan

because, "Gan produces a cube which purports to be the fastest rotating cube, and therefore, those small segments of the population that are involved in trying to be the fastest would be interested in purchasing a Gan Rubik Gan cube [the Rubik's Speed Cube]." Id. at 225:5-11.

> **Defendant's Reply:**    RBL admits that at least "one of RBL['s] products, the Rubik's Speed Cube" is targeted to the speedcubing community, which supports Statement No. 146 in its entirety.

147.  RBL sponsors WCA competitions to promote its products.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 239:6-17).

**Plaintiff's Response:**    Admit to the extent that Mr. Kremer testified that "From time to time, [RBL] ha[s] contributed sponsorship or physical items such as medals for competitions." Ex. 61, Kremer Dep. Tr., at 12:9-20, 239:15-19.

> **Defendant's Reply:**    Undisputed.

148.  3x3 puzzle cubes sold under the "Valk," "GAN," and "MoYu" brands are commonly recommended for speedcubing.  (Ex. 16, Loetz Rep., ¶ 101).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

## RBL and the RUBIK'S Brand

149.  RBL licenses toy makers and sellers to use the RUBIK'S brand and the 3x3 Cube Design. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 15:9-13, 163:7-12, 166:25-167:13, 170:12-24, 171:4, 171:10-14, 171:20-25, 172:6-10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 49:10-18; Ex. 16, Loetz Rep., ¶ 29).

**Plaintiff's Response:**    Admit to the extent "3x3 Cube Design" means the "RUBIK'S Design".

**Defendant's Reply:** Undisputed. "3x3 Cube Design" is defined herein at Statement No. 3.

150. One of RBL's licensed products is the 3x3 Rubik's Cube, a 3x3 puzzle cube with black 90-degree segments and square, solid color patches on each side in the solved state:



(Ex. 16, Loetz Rep., ¶¶ 29-30; Ex. 60, Riehl Dep. Tr., at 10:17-20, 26:8-13, 53:5-11, 62:10-13, 65:3-16, 71:19-72:6, 109:6-19, 137:13-138:11; Ex. 63, Simms Dep. Tr., at 15:17-20, 85:16-86:5).

**Plaintiff's Response:** Admit.

**Defendant's Reply:** Undisputed.

151. RBL requires its licensees to follow a style guide. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15; Ex. 70, Style Guide).

**Plaintiff's Response:** Admit.

**Defendant's Reply:** Undisputed.

152. RBL's style guide requires a specific color scheme for the 3x3 Rubik's Cube. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15, 145:8-146:21; Ex. 16, Loetz Rep., ¶¶ 32-33; Ex. 70, Style Guide, at RBL_003628).

**Plaintiff's Response:** Admit.

**Defendant's Reply:** Undisputed.

153.    RBL's style guidelines require the 3x3 Rubik's Cube to have a black base and uniform, square patches in six colors specified by Pantone color number.  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15, 145:8-146:21; Ex. 16, Loetz Rep., ¶ 33; Ex. 74, Geek Took Kit, at BOSTONA_000040; Ex. 46, Pantone Color Scheme; Ex. 47, Using Official Rubik's Cube Colors).

   **Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

154.    RBL's style guidelines currently require the 3x3 Rubik's Cube to have the white face opposite the yellow face, the red face opposite the orange face, and the blue face opposite the green face, and that is how the 3x3 Rubik's Cubes are currently marketed and sold. (Ex. 44, Rubik's Colour Orientation; Ex. 61, Kremer Dep. Tr., at 12:9-20, 60:24-61:9, 64:2-7; Ex. 60, Riehl Dep. Tr., at 10:17-20, 68:4-7, 69:13-20, 69:23-70:6; Ex. 16, Loetz Rep., ¶ 32).

   **Plaintiff's Response:**    Admit.

      **Defendant's Reply:**    Undisputed.

155.    RBL changed the orientation of the colors for the 3x3 Rubik's Cube to have the white face opposite the yellow face because it was aesthetically more pleasing.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 62:3-16).

   **Plaintiff's Response:**    Admit to the extent "RBL" refers to "RBL or its predecessors." Ex. 61, Kremer Dep. Tr., at 62:3-16.

      **Defendant's Reply:**    Undisputed.

156.    RBL's style guide requires the RUBIK'S name in the center of the white face of the 3x3 Rubik's Cube.  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15, 85:25-86:7, 91:19-20, 91:24-92:2; Ex. 16, Loetz Rep., ¶¶ 32, 34; Ex. 70, Style Guide, at

RBL_003627, RBL_003629; Ex. 74, Geek Took Kit, at BOSTONA_000039).

**Plaintiff's Response:**     Admit.

   **Defendant's Reply:**     Undisputed.

157. The RUBIK'S name is currently featured on the center white segment of the 3x3 Rubik's Cube.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:18-20, 267:22-268:7, 269:22-270:10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 76:12-18, 76:25-77:15, 111:10-16, 126:19-22, 141:13-25; Ex. 16, Loetz Rep., ¶ 34; Ex. 62, Gottlieb Dep. Tr., at 22:2-12, 22:22-23:4; Ex. 63, Simms Dep. Tr., at 15:17-20, 129:2-7; Ex. 69, RBL Req. Ad. Resp., No. 27).

**Plaintiff's Response:**     Admit.

   **Defendant's Reply:**     Undisputed.

158. RBL's corporate representative could not think of a time when a RBL licensee or a retailer promoted the 3x3 Rubik's Cube without the Rubik's name.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:18-20, 267:22-268:7, 269:22-270:10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 76:12-18, 76:25-77:15, 111:10-16, 126:19-22).

**Plaintiff's Response:**     Admit.

   **Defendant's Reply:**     Undisputed.

159. The RUBIK'S name is currently featured on the packaging for the 3x3 Rubik's Cube in multiple locations.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:21-24, 265:17-266:17, 268:8-10, 268:16-23, 269:19-21; Ex. 60, Riehl Dep. Tr., at 10:17-20, 79:16-21, 81:9-14, 81:25-82:4, 111:17-112:2; Ex. 16, Loetz Rep., ¶ 34; Ex. 62, Gottlieb Dep. Tr., at 22:2-12, 22:22-23:4; Ex. 63, Simms Dep. Tr., at 15:17-20, 129:2-7; Ex. 69, RBL Req. Ad. Resp., No. 26).

**Plaintiff's Response:**     Admit.

   **Defendant's Reply:**     Undisputed.

160.    RBL's corporate representative could not think of a time when a Rubik's Cube point of sale display that did not use the Rubik's name.  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 138:16-17, 138:21-139:14).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

### RBL's Promotional Materials

161.    RBL's product book states that Mr. Rubik's original invention was a "solid Cube [that] twisted and turned – and still it did not break or fall apart.  With colourful stickers on its sides, the Cube got scrambled and thus emerged the first 'Rubik's Cube.'"  (Ex. 43, Product Book, at RBL_000245; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 127:2-10).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

162.    RBL's product book states "Colour is a key aspect of the DNA of Rubik's Cube, with its multiple squares of red, orange, yellow, green, blue and white."  (Ex. 43, Product Book, at RBL_000246; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 127:2-10).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

163.    RBL's product book and website state "The Rubik's Cube is the classic colour-matching puzzle that's a great mental challenge at home or on the move.  Twist and turn the sides of the Cube so that each of the six faces only have one colour."  (Ex. 43, Product Book, at RBL_000260; Ex. 49, New Rubik's 3x3 Cube; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 127:2-10).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

164.    RBL's website states "the aim is to twist and turn the Rubik's Cube to return it to its original state, with every side having one solid colour."  (Ex. 49, New Rubik's 3x3 Cube).

    **Plaintiff's Response:**    Admit.

        **Defendant's Reply:**    Undisputed.

165.    RBL publishes guides on how to solve the 3x3 Rubik's Cube on its website to download for free.  (Ex. 50, How to solve the 3x3 Rubik's cube?; Ex. 60, Riehl Dep. Tr., at 10:17-20, 205:20-206:12; Ex. 69, RBL Req. Ad. Resp., No. 13; *see also* Ex. 62, Gottlieb Dep. Tr., at 95:17-23, 96:4-15 (confirming solving guide from official RBL website)).

    **Plaintiff's Response:**    Admit.

        **Defendant's Reply:**    Undisputed.

166.    RBL's Solution Guide for the 3x3 Rubik's Cube provides step-by-step instructions on how to solve the cube by using the six specific colors of the cube's pieces.  (Ex. 51, Solution Guide 3x3 Rubik's Cube; Ex. 60, Riehl Dep. Tr., at 10:17-20, 205:20-207:6, 208:5-19, 208:24-209:15; Ex. 62, Gottlieb Dep. Tr., at 99:6-20; Ex. 69, RBL Req. Ad. Resp., No. 15; Ex. 16, Loetz Rep., ¶ 62).

    **Plaintiff's Response:**    Admit.

        **Defendant's Reply:**    Undisputed.

167.    RBL's Solution Guide for the 3x3 Rubik's Cube teaches center pieces are "pieces with one (1) color, there are six (6) center pieces located in the center of each side, center pieces do not move and represent the color of their side."  (Ex. 51, Solution Guide 3x3 Rubik's Cube, at RBL_000662).

    **Plaintiff's Response:**    Admit.

        **Defendant's Reply:**    Undisputed.

168.    RBL's Solution Guide for the 3x3 Rubik's Cube teaches "center piece colours are always opposite each other:  white opposite yellow; orange opposite red; green opposite blue." (Ex. 51, Solution Guide 3x3 Rubik's Cube, at RBL_000662).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

169.    RBL's Solution Guide for the 3x3 Rubik's Cube teaches "move the blue/white edge piece to the bottom (D) face, then rotate it on the bottom until it is directly under the blue center piece."  (Ex. 51, Solution Guide 3x3 Rubik's Cube, at RBL_000664).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

170.    Entities and individuals other than RBL have created solving guides for 3x3 puzzle cubes that provide step-by-step instructions on how to solve the cube by using the colors of the cube's pieces.   (Ex. 71, The Ideal Solution; Ex. 72, Scientific American, Magic Cubology; Ex. 16, Loetz Rep., ¶ 64 (discussing solving guide provided by Ideal).

**Plaintiff's Response:**    Admit to the extent the referenced solving guides provide step-by-step instructions on how to specifically solve the Rubik's Cube. The Ideal Solution was created by RBL's predecessor, Ideal Toy Corporation. Ex. 71, The Ideal Solution at FLAMBEAU002461. The title of the The Ideal Solution guide is, "Rubik's Cube ™ Puzzle – an Introduction and Solution," and shows an image of an officially licensed 3x3 Rubik's Cube. Id. at FLAMBEAU002460-FLAMBEAU002461. The Scientific American article recites the history of Mr. Rubik and the Rubik's Cube, and specifically teaches how to solve "the Magic Cube, also known as Rubik's Cube." Ex. 72, Scientific American, Magic Cubology at FLAMBEAU001170. Mr. Rubik had originally named his puzzle cube the "Magic Cube" before Ideal Toy Corporation changed its name to

"Rubik's Cube" in 1980. See Ex. 75, Kremer Decl. ¶ 3.

**Defendant's Reply:**    Undisputed.

171.    RBL publishes lesson plans for educators to teach students how to solve a 3x3 puzzle cube by using the six specific colors of the cube's pieces. (E.g., Ex. 52, Lesson 1; Ex. 53, Lesson 2; Ex. 16, Loetz Rep., ¶ 63; Ex. 60, Riehl Dep. Tr., at 10:17-20, 205:20-206:12; Ex. 63, Simms Dep. Tr., at 15:17-20, 141:3-12).

**Plaintiff's Response:**    Admit to the extent that "a 3x3 puzzle cube" specifically refers to "the 3x3 Rubik's Cube". Ex. 52, Lesson 1; Ex. 53, Lesson 2.

**Defendant's Reply:**    Undisputed. The 3x3 Rubik's Cube is undisputedly a 3x3 puzzle cube.

172.    RBL's Lesson 1 Plan explains how to use the 3x3 Rubik's Cube to "[h]ave students identify a specific color face" and "identify the color of the opposite face." (Ex. 52, Lesson 1, at RBL_000344).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

173.    RBL publishes a check list for solving the 3x3 Rubik's Cube. (Ex. 56, Check List for Solving the Rubik's Cube; Ex. 60, Riehl Dep. Tr., at 10:17-20, 214:8-24).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

174.    RBL's check list for solving the 3x3 Rubik's Cube lists stages of solving the cube based on matching the six specific colors of the pieces. (Ex. 56, Check List for Solving the Rubik's Cube; Ex. 16, Loetz Rep., ¶ 66; Ex. 60, Riehl Dep. Tr., at 10:17-20, 214:8-24, 215:19-22).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

175.  RBL provides instructions on how to solve the Rubik's Cube by the colors red, green, orange, blue, yellow, and white.  (Ex. 63, Simms Dep. Tr., at 15:17-20, 137:5-138:8).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

### Flambeau & The Duncan Quick Cube

176.  Flambeau's toy division, Duncan Toys Company, is a well-known and respected name in the toy industry.  (Ex. 1, Burke Decl., ¶ 5; Ex. 60, Riehl Dep. Tr., at 10:17-20, 260:22-261:8; Ex. 61, Kremer Dep. Tr., at 12:9-20, 91:22-24, 92:11-18; Ex. 62, Gottlieb Dep. Tr., at 11:18-12:6, 12:13-18, 13:2-10; Ex. 63, Simms Dep. Tr., at 15:17-20, 31:25-32:15, 32:25-33:3; Ex. 64, Vollmar Dep. Tr., at 20:7-12).

**Plaintiff's Response:**    Admit that Flambeau's toy division, Duncan Toys Company, is a well-known name in the toy industry, which is supported by the cited exhibits. Dispute the remaining statement in SMF ¶ 176 and that the cited exhibits support the remaining statement.

**Defendant's Reply:**    Undisputed.  RBL admits "Duncan Toys Company, is a well-known name in the toy industry."  Mr. Burke's testimony supports that the Duncan name is respected as well—the Duncan Yo-Yo was inducted into the National Toy Hall of Fame in 1999.  (Ex. 1, Burke Decl., ¶ 5).  RBL cites no evidence to the contrary.

177.  Flambeau's DUNCAN mark has been continuously used since 1929.  (Ex. 1, Burke Decl., ¶ 6).

**Plaintiff's Response:**    Admit that Flambeau makes the representation contained in SMF ¶ 177.

**Defendant's Reply:**        Plaintiff does not provide any factual evidence to dispute this statement and the statement is thus admitted in its entirety.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

178.    Flambeau owns a U.S. Trademark Registration for DUNCAN for toys, games, and playthings.  (Ex. 1, Burke Decl., ¶ 6; Ex. 2, U.S. Registration No. 5,920,928).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**        Undisputed.

179.    Flambeau's DUNCAN-branded Yo-Yo has been sold for decades and has been inducted into the National Toy Hall of Fame.  (Ex. 1, Burke Decl., ¶ 5; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 260:22-261:8; Ex. 62, Gottlieb Dep. Tr., at 11:18-12:6, 12:13-18, 13:2-10).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**        Undisputed.

180.    In 2015, Flambeau began looking into developing a DUNCAN-branded 3x3 puzzle cube for speed cubing.  (Ex. 1, Burke Decl., ¶ 10).

**Plaintiff's Response:**        Disputed. Flambeau did not develop a Duncan-branded 3x3 puzzle cube for the purpose of targeting speed cubers. Flambeau sought to develop a Duncan-branded 3x3 puzzle cube that would target the same users and purchasers of its Duncan-branded yo-yos – namely, users aged 8-15 years and purchasers that are parents of users aged 8-15 years. Ex. 162, 8/16/18 Burke Dep. Tr. at 77:1-15; Ex. 161, Project Summary at Flambeau001091. The head of Duncan and person responsible for developing the puzzle cube, Michael Burke, became interested in a cube product after a Duncan-sponsored yo-yo player named Taka, who helps Duncan with yo-yo demonstrations and product development and also performs yo-yo demonstrations for

Yongjun (the current manufacturer of the Duncan Quick Cube), gave Mr. Burke the idea of offering a Duncan-branded 3x3 puzzle cube selected from a Yongjun catalog. See Ex. 188, D. Roberts Dep. Tr. at 8:12-14; Ex. 162, 8/16/18 Burke Dep. Tr. at 116:19-119:8. Further, according to an internal Flambeau document with the project name "Quick Cube Puzzle," dated June 15, 2015, Flambeau states that it sought to offer a product with the "same overall look and size as Rubik's Cube." Ex. 161, Project Summary at Flambeau001091. SMF ¶¶ 381-82. Burke 8/16/18 Dep. Tr. 81:3-82:4.

> **Defendant's Reply:**      Mr. Burke testified that they sought to create a DUNCAN-branded 3x3 puzzle cube for speed cubing and thus named the puzzle the "Quick Cube" early in development. (Ex. 1, Burke Decl., ¶ 10; Ex. 197, 8/16/18 Burke Dep. Tr., at 61:6-62:10, 63:24-64:4, 64:20-23). Mr. Burke testified they desired a cube for speed cubing prior to creating the Basis for Interest. (Ex. 197, 8/16/18 Burke Dep. Tr., at 64:20-23; Ex. 161). Flambeau chose the design that had the smoothest and quickest operation. (Ex. 1, Burke Decl., ¶ 10). RBL's response is immaterial and raises no dispute.

181. Duncan reviewed catalogues from various manufactures, ordered samples, and selected a cube that had features favorable for speed cubing. (Ex. 1, Burke Decl., ¶ 11).

**Plaintiff's Response:**      Disputed. Duncan only reviewed catalogues from Yongjun after receiving the idea to offer a 3x3 puzzle cube manufactured by Yongjun from a Duncan sponsored yo-yo player named Taka who performs yo-yo demonstrations for Yongjun. See Response to SMF ¶ 180. After Taka recommended that Mr. Burke take a look at Yongjun's product line, Mr. Burke asked Flambeau's China team to send him Yongjun's product offerings so that he could select what type of products he could receive physical samples of. Ex. 162, 8/16/18 Burke Dep. Tr. at 116:19-119:8. Mr. Burke

testified as to his awareness of the RUBIK'S CUBE puzzles' introduction in the U.S. "in the early '80's." (Ex. 162, 8/16/18 Burke Dep. Tr. at 29:6-14.) Before or during the process of developing the Duncan Quick Cube, Mr. Burke also researched the Rubik's Cube. Id. at 31:23-32:7. Duncan specifically selected a cube with the "Same overall look and size as Rubik's Cube." See Response to SMF ¶ 180.

> **Defendant's Reply:**    RBL's response does not dispute Statement No. 181. Prior to selecting a final design or manufacturer of its commercial puzzle cube, Flambeau reviewed catalogues from various manufacturers. (Ex. 1, Burke Decl., ¶ 11). Flambeau then selected Yongjun as the manufacturer sometime before it completed the Basis for Interest, which was completed on June 15, 2015 and several months after the start of the project. (Ex. 162, 8/16/18 Burke Dep. Tr., at 72:19-73:3). RBL's response is immaterial and raises no dispute.

182. Flambeau branded the 3x3 puzzle cube it selected to sell as the "Duncan Quick Cube." (Ex. 1, Burke Decl., ¶ 12).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

183. Flambeau's Duncan Quick Cube design was finalized after consulting with Flambeau's legal counsel.   (Ex. 1, Burke Decl., ¶ 15; Ex. 10, Berson Decl., ¶¶ 6-10).

**Plaintiff's Response:**    Disputed. The Duncan Quick Cube was not designed by Flambeau. The Duncan Quick Cube was selected from a Yongjun catalog. See Responses to SMF ¶¶ 180-181; Ex. 162, 8/16/18 Burke Dep. Tr. at 121:10-122:25. According to an internal Flambeau document with the project name "Quick Cube Puzzle," dated June 15, 2015, Flambeau states the "Vendor already has the design." In that document, Flambeau also states that it sought to offer a product with the "same overall look and size as

Rubik's Cube." Ex. 161, Project Summary at Flambeau001091.  SMF ¶¶ 381-82.

**Defendant's Reply:**       Plaintiff's response does not dispute that "Flambeau's Duncan Quick Cube design was finalized after consulting with Flambeau's legal counsel."  Contrary to Plaintiff's response, Statement. No. 183 does not suggest the Duncan Quick Cube was "designed by Flambeau."  Flambeau selected the design of a white cube that was smooth and quick, and sought legal counsel's opinion before finalizing the design with the DUNCAN logo for Flambeau's commercial sale of the Duncan Quick Cube.  (*See* Statement Nos. 180-183; Ex. 1, Burke Decl., ¶ 15; Ex. 10, Berson Decl., ¶¶ 6-10; Ex. 162, 8/16/18 Burke Dep. Tr. at 121:10-122:25, 123:3-15; Ex. 201, Dana Roberts Dep. Tr., at 35:4-12, 56:6-19, 57:6-58:7, 69:13-70:15).

184.    Duncan's Quick Cube design was adopted in good faith.  (Ex. 1, Burke Decl., ¶ 15; *see also* Ex. 10, Berson Decl., ¶¶ 6-10).

**Plaintiff's Response:**       Disputed. The opinion provided by Flambeau's legal counsel, Mr. Berson, regarding non-infringement of the Rubik's Cube by Duncan's Quick Cube was not properly founded and of no professional value. Mr. Berson's opinion is not properly founded because his analysis is based on patent law, not trademark law. Mr. Berson was asked at his deposition whether he was "reading the product description in the trademark description as you would a claim limitation in a utility patent." (Berson 89:20-23.) Mr. Berson refused to answer the question "yes" or "no" (Berson 88:24-95:5.) Although refusing to acknowledge it, this is precisely what Mr. Berson did – he assessed the trademark infringement question by applying utility patent law. In addition, Flambeau did not provide Mr. Berson a full and accurate disclosure of the design of the Quick Cube since Mr. Berson did not have a sample or exemplar of the Quick Cube, and had not even

been informed of the colors that would be used on the cube. Ex. 173, Berson Dep. Tr. 127:2-128:16. After failing to provide Mr. Berson any information about what colors Duncan would be using for the final Quick Cube design, Duncan specifically chose to adopt a puzzle cube design with the "Same overall look and size as Rubik's Cube." See Response to SMF ¶ 181. Mr. Berson's conclusion that "Duncan will avoid [trademark infringement] by offering a white cube" is based solely on his reading the Rubik's Design trademark registration, from which he concluded "require the cube to be black" and nothing else. (Ex. 13 at FLAMBEAU001087-88) Mr. Berson's conclusion is contrary to fundamental principles of trademark law and without an analysis of the Polaroid factors. Further, Flambeau intentionally adopted the RUBIK'S Design for the packaging for the Quick Cube. In another Flambeau internal document, the "Project Description" reads: "Need packaging for a new cube (like Rubik's Cube)...." Ex. 189 at FLAMBEAU002606. Flambeau's first purchase order of Quick Cubes contained packaging with a logo that included a puzzle cube with a black grid, as shown below:



Ex. 165, Quick Cube Presentation at FLAMBEAU000893-894; see also FLAMBEAU001850; FLAMBEAU001851. Duncan did not request Mr. Berson's opinion regarding using a logo with a black grid puzzle cube until after the first purchase order was shipped to Flambeau customers and sold to the public. Ex. 165 at

FLAMBEAU000893; Ex. 12 at FLAMBEAU001085; Ex. 162, 8/16/18 Burke Dep. Tr.,

164:25-165:6; 166:4-23; 154:17-24. SMF ¶¶ 446-66.

> **Defendant's Reply:**    ***At the outset***, RBL's response is procedurally improper.
>
> RBL has not moved to strike or challenge Attorney Berson's opinions or
>
> testimony and responses to statements of material facts are insufficient to make
>
> such a challenge.  To the extent RBL believes that Flambeau's proffered
>
> testimony "was not based on personal knowledge or is otherwise not competent,
>
> the remedy is a motion to strike; failure to do so waives any objection to that
>
> evidence." *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011
>
> WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011) (granting partial summary judgment
>
> and holding defendant's denials in response to plaintiff's statement of undisputed
>
> facts did not create genuine issue of fact where defendant did not move to strike
>
> witness testimony).  ***First***, Attorney Berson is an intellectual property attorney
>
> with nearly 30 years of experience with trademarks, trade secrets, copyrights, and
>
> patents.  Attorney Berson has nearly 30 years of experience advising clients in a
>
> wide variety of trademark issues, including domestic and international trademark
>
> prosecution and enforcement.  (Ex. 10, Berson Decl., ¶¶ 2-3; Ex. 200, Berson
>
> Dep. Tr. at 8:2-4, 8:13-16, 11:22-12:9, 13:4-17, 15:9-16:6, 18:2-15, 19:9-11).  As
>
> Plaintiff's acknowledges in its Additional Statement of Fact No. 452, Attorney
>
> Berson, at Flambeau's request, rendered a legal opinion regarding the Quick Cube
>
> and both potential patent infringement and trademark infringement.  (Ex. 10,
>
> Berson Decl., ¶¶ 6-10).  Attorney Berson provided those opinions and testified
>
> that his trademark opinion was not limited to patent law and instead was based on
>
> his nearly 30 years of patent and trademark experience, including routinely

providing opinions regarding a client's ability to adopt trademarks or designs and opinions on risks associated with certain marks or designs. (Ex. 200, Berson Dep. Tr., at 15:22-16:6, 18:2-15; Ex. 10, Berson Decl., ¶ 3, 6-10). Contrary to Plaintiff's Response, Attorney Berson testified, in response to questioning on trademark opinions or analysis, that regarding the scope of trademark registrations, it was his opinion that "to the extent that anything in that [trademark] registration would be viewed as distinctive, it would be, in the words of the applicant, that the cube was black; and, indeed, that, I think described cubes sold then and now by Rubik as black cubes. In fact, the cubes are black." (Ex. 200, Berson Dep. Tr., at 89:24-90:8; *See also* Ex. 10, Berson Decl., ¶¶ 6-10).

*Second*, Attorney Berson reviewed everything he needed to render a competent and complete legal opinion. Attorney Berson testified that in connection with rendering his legal opinion he reviewed several puzzle cube patents, which bear on the issue of a design's functionality, RBL's trademark registration, articles reviewing the historic IP associated with the Rubik's Cube, patents resulting from independent searches, a pre-sale Duncan puzzle cube, and a legal decision from the European Court of Justice regarding the protectability of RBL's trademark registration. (Ex. 10, Berson Decl., ¶¶ 9-10; Ex. 200, Berson Dep. Tr., at 38:5-16, 53:10-16, 71:5-12, 72:9-14, 126:14-127:11, 133:4-134:5). Moreover, Attorney Berson testified that prior to reaching his legal opinion he reviewed a physical 3x3 puzzle cube provided by Flambeau in connection with Flambeau's Quick Cube puzzle project and Flambeau's request for a legal opinion regarding the same. (Ex. 173, Berson Dep. Tr., at 125:17-127:1). Attorney Berson could not recall if the physical 3x3 puzzle cube he reviewed was the final Quick Cube

puzzle or a near-final prototype, (Ex. 173, Berson Dep. Tr., at 126:10-24), but this is immaterial as RBL points to no meaningful difference between the sample cubes and pictures Mr. Berson reviewed and the final Quick Cube. *Third*, Attorney Berson reviewed samples and pictures of the Quick Cube, information on the historic IP associated with the Rubik's Cube, and RBL's asserted trademark registration. (Ex. 10, Berson Decl., ¶¶ 6-10). While Attorney Berson may not have referenced these points as *Polaroid* factors, he necessarily reviewed and considered many of the factors, including (i) the similarity of the designs; (ii) the similarity of the products; (iii) the strength of the asserted design; and (iv) Flambeau's good faith. As RBL concedes, not all factors must be considered. (RBL Opp. Br., p. 16). Attorney Berson could not have anticipated that RBL would have sued Flambeau in the Second Circuit, where the *Polaroid* factors are applied. *Finally*, the first order of Quick Cubes shipped with packaging that was thereafter changed to show a 3x3 puzzle cube with fluorescent color patches on a white puzzle cube base—evidencing Flambeau's good faith. (Ex. 162, 8/16/18 Burke Dep. Tr. at 164:25-166:23). RBL has not submitted any evidence that the initial packaging with a puzzle cube with a black base made any difference to any purchasing decision.

185.    Flambeau began selling the Duncan Quick Cube in March 2016. (Ex. 1, Burke Decl., ¶¶ 27-28).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

186.    The Duncan Quick Cube has a white base:



(Ex. 1, Burke Decl., ¶ 13; Ex. 6, Quick Cubes; Ex. 7, Quick Cube 3x3; *see also* Ex. 3, Quick Cube & Packaging).

**Plaintiff's Response:**     Admit.

    **Defendant's Reply:**     Undisputed.

187.   The Duncan Quick Cube has bright, fluorescent color patches.  (Ex. 1, Burke Decl., ¶ 13; Ex. 3, Quick Cube & Packaging).

**Plaintiff's Response:**     Disputed. The Quick Cubes shown in Mr. Burke's Declaration ¶13 and Exhibit 3 appear to have standard red and blue colored patches. Further, the white patches shown in Mr. Burke's Declaration ¶ 13 is devoid of color and cannot be characterized as bright or fluorescent.

    **Defendant's Reply:**     RBL fails to raise a dispute.  The Duncan Quick Cube visibly has bright, fluorescent color patches.  (Ex. 1, Burke Decl., ¶ 13; Ex. 3, Quick Cube & Packaging; *see also* Ex. 6, Quick Cubes; Ex. 7, Quick Cube 3x3). RBL cites no evidence to the contrary and its use of "standard" to modify colors is ambiguous and undefined.  Contrary to RBL's statements now, RBL's corporate representative, Ms. Riehl, agreed that the colors in the Quick Cube are different shades of color than those used in RBL's 3x3 Cube Design.  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 265:16-266:12).

188.   The Duncan Quick Cube's white face is opposite the yellow face.  (Ex. 1, Burke Decl., ¶

13).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

189.    Because the Duncan Quick Cube is for speed cubing, the inner corners of the smaller

cube segments and patches are cut away to allow "corner cutting" for faster solving.  (Ex.

1, Burke Decl., ¶¶ 14, 18; Ex. 3, Quick Cube & Packaging).

**Plaintiff's Response:**     Disputed. The Duncan Quick Cube was not developed for the

purpose of speed cubing. See Response to ¶ 180. In addition, the inner corners of smaller

cube segments do not necessarily allow for faster solving. Flambeau's expert, Lee Loetz,

alleges in his report that RBL's Speed Cube (as shown in Figure 24 of his report) also

features rounded inner corners on the smaller segments similar to the Quick Cube. Ex. 16

at ¶ 107. However, the screenshot of RBL's website cited by Mr. Loetz does not promote

the Rubik's Speed Cube as being faster due to the inner corners of the smaller cube

segments being cut away. Rather, the Rubik's Speed Cube encourages faster solving

because the inner mechanism of the Rubik's Speed Cube has a strong and stable core and

lubricating tracks. Ex.190 at FLAMBEAU002579-FLAMBEAU002581.

**Defendant's Reply:**     Mr. Burke testified that Flambeau sought to create a

DUNCAN-branded 3x3 puzzle cube for speed cubing and thus named the puzzle

the "Quick Cube" early in development.  (Ex. 1, Burke Decl., ¶ 10; Ex. 197,

8/16/18 Burke Dep. Tr., at 61:6-62:10, 63:24-64:4, 64:20-23).  Flambeau chose

the design that had the smoothest and quickest operation.  (Ex. 1, Burke Decl., ¶

10).  RBL does not dispute that the rounded corners of the Quick Cube allow for

faster solving; nor does it provide any evidence to the contrary.

190.    Flambeau promotes the Duncan Quick Cube for speedcubing:  "The Duncan® Quick

Cube[TM] features smooth, easy turning design to allow the user to 'corner cut' for superior performance and play." (Ex. 1, Burke Decl., ¶ 18; Ex. 6, Quick Cubes; Ex. 8, Duncan Travel / Brain Games; Ex. 62, Gottlieb Dep. Tr., at 249:19-25).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

191.    Flambeau promotes the Duncan Quick Cube's "corner-cutting design for speed solving." (Ex. 1, Burke Decl., ¶ 18; Ex. 8, Duncan Travel / Brain Games).

**Plaintiff's Response:**    Admit.

    **Defendant's Reply:**    Undisputed.

192.    The Duncan Quick Cube is always branded with the DUNCAN house mark on its white face. (Ex. 1, Burke Decl., ¶ 16; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 262:8-12, 263:18-25, 270:14-25; Ex. 62, Gottlieb Dep. Tr., at 24:22-25:5; Ex. 63, Simms Dep. Tr., at 15:17-20, 128:24-129:1).

**Plaintiff's Response:**    Admit that Flambeau makes the representation contained in SMF ¶ 192.

    **Defendant's Reply:**    Plaintiff does not provide any factual evidence to dispute this statement and the statement is thus admitted in its entirety. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

193.    The Duncan Quick Cube's packaging contains the DUNCAN house mark in several locations. (Ex. 1, Burke Decl., ¶ 17; Ex. 3, Quick Cube & Packaging; Ex. 4, Duncan Quick Cube 3902QC; Ex. 5, Duncan Quick Cube 3901QC; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 262:22-263:7, 271:2-3, 271:8-9; Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:14-17; Ex. 62, Gottlieb Dep. Tr., at 24:22-25:5; Ex. 63, Simms Dep. Tr., at 15:17-20, 128:21-23).

**Plaintiff's Response:**    Admit that Flambeau makes the representation contained in SMF ¶ 193.

> **Defendant's Reply:**    Plaintiff does not provide any factual evidence to dispute this statement and the statement is thus admitted in its entirety.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

194.    Flambeau does not use either the word mark RUBIK's or the word mark RUBIK's CUBE for its Duncan Quick Cube or otherwise.  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 270:14-25; Ex. 61, Kremer Dep. Tr., at 12:9-20, 91:10-17).

**Plaintiff's Response:**    Admit that Flambeau makes the representation contained in SMF ¶ 194.

> **Defendant's Reply:**    Plaintiff does not provide any factual evidence to dispute this statement and the statement is thus admitted in its entirety.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

## The 3x3 Cube Design

195.    RBL's 3x3 Cube Design consists of a black 3x3 puzzle cube having nine square-shaped color patches on each of its six faces, with the color patches on each face being the same when the puzzle is in the start or solved position, and consisting of the colors red, white, blue, green, yellow, and orange.  (Dkt. 1, Complaint, ¶¶ 10, 15; Ex. 67, RBL Interrog. Resp., No. 4; Ex. 37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24; Ex. 61, Kremer Dep. Tr., at 12:9-20, 54:14-18, 55:25-56:15, 111:8-112:3, 112:10-11; Ex. 63, Simms Dep. Tr., at 15:17-20, 40:12-18, 45:21-46:4).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

196.    RBL's 3x3 Cube Design specifies three rows of three smaller cube segments on each of

its six faces.  (Dkt. 1, Complaint, ¶¶ 10, 15; Ex. 67, RBL Interrog. Resp., No. 4; Ex. 37,

'094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24;

Ex. 61, Kremer Dep. Tr., at 12:9-20, 54:14-18, 55:25-56:15; Ex. 68, RBL Interrog. Resp.,

No. 24).

**Plaintiff's Response:**    Disputed. The RUBIK'S Design trademark registration

describes the mark as "consist[ing] of a black cube having nine color patches on each of

its six faces with the color patches on each face being the same and consisting of the

colors red, white, blue, green, yellow and orange" Ex. 37, '094 Registration.

> **Defendant's Reply:**    Plaintiff's response here supports Statement No. 196
>
> and it is unclear what portion of Defendant's statement Plaintiff disputes. (*See* J.
>
> Gardephe Indiv. R. of Prac., Sec. V.B.; *see also* L. Civ. R. 56.1 (c), (d)).  RBL has
>
> consistently agreed that its 3x3 Cube Design includes six faces, with each face
>
> consisting of three row and each row having three smaller cube segments.  (Ex.
>
> 68, RBL Interrog. Resp., No. 24; Ex. 67, RBL Interrog. Resp., No. 4; Ex. 37, '094
>
> Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24;
>
> Ex. 61, Kremer Dep. Tr., at 12:9-20, 54:14-18, 55:25-56:15).

197.    RBL's 3x3 Cube Design specifies square color patches in three primary colors (red, blue,

and yellow), two secondary colors (green and orange), and white.  (Dkt. 1, Complaint, ¶¶

10, 15; Ex. 67, RBL Interrog. Resp., No. 4; Ex. 37, '094 Registration; *see also* Ex. 60,

Riehl Dep. Tr., at 10:17-20, 311:2-18; Ex. 68, RBL Interrog. Resp., No. 24).

**Plaintiff's Response:**    Disputed. The RUBIK'S Design trademark registration

describes the mark as "consist[ing] of a black cube having nine color patches on each of

its six faces with the color patches on each face being the same and consisting of the

colors red, white, blue, green, yellow and orange" Ex. 37, '094 Registration.

**Defendant's Reply:**    Plaintiff's response here supports Statement No. 197 and it is unclear what portion of Defendant's statement Plaintiff disputes. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; *see also* L. Civ. R. 56.1 (c), (d)).  RBL has consistently agreed that its 3x3 Cube Design specifies square color patches in three primary colors (red, blue, and yellow), two secondary colors (green and orange), and white.  (Ex. 68, RBL Interrog. Resp., No. 24; Ex. 67, RBL Interrog. Resp., No. 4; Ex. 37, '094 Registration; *see also* Ex. 60, Riehl Dep. Tr., at 311:2-18).

## Functionality

198.  Lee Loetz has over 23 years of experience in toy design, working at and with leaders in the toy industry like Walt Disney Company and Fischer Price.  (Ex. 16, Loetz Rep., ¶¶ 6-8).

**Plaintiff's Response:**    Admit that Mr. Loetz's report makes the representation contained in SMF ¶ 198.

**Defendant's Reply:**    Plaintiff does not provide any factual evidence to dispute this statement and the statement is thus admitted in its entirety.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

199.  Mr. Loetz has taught toy design at the college level, including teaching color theory as it applies to toys and other consumer products.  (Ex. 16, Loetz Rep., ¶ 10).

**Plaintiff's Response:**    Admit that Mr. Loetz's report makes the representation contained in SMF ¶ 199.

**Defendant's Reply:**    Plaintiff does not provide any factual evidence to dispute this statement and the statement is thus admitted in its entirety.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

200.   Mr. Loetz is the named inventor on at least five utility patents claiming inventions related to toy products and at least one design patent for the design of a toy product. (Ex. 16, Loetz Rep., ¶ 12).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

201.   Mr. Loetz analyzed the 3x3 Cube Design and determined that it is functional in nature. (Ex. 16, Loetz Rep., ¶¶ 51-96).

**Plaintiff's Response:**      Disputed. Mr. Loetz is not a lawyer, does not possess any legal degrees, has not taking any courses in trademark law or patent law, and has never given an expert opinion relating to an issue of patent law. Ex. 164, Loetz Dep. Tr.: 14:4-15. Accordingly, Mr. Loetz's opinion on whether the RUBIK'S Design is functional is entirely unfounded. Further, Mr. Loetz's determination regarding functionality is not based on a legal understanding of utilitarian or aesthetic "functionality" as applied by the courts of law or defined by the U.S. Patent and Trademark Office in TMEP §1202. Rather, he uses the term "functional" in the sense of how a toy designer would use it, which he defines as, "what is the function of the product that you're design designing." Id. at 169:16-170:2. Further, Mr. Loetz acknowledged that a puzzle cube with any six colors that can be discerned from one another can be scrambled and solved, which is contrary to his determination of functionality of the 3x3 Cube Design in his report. Id. at Loetz Dep. Tr. 132:5-17. SMF ¶¶ 533-37.

**Defendant's Reply:**      *First*, RBL's response is procedurally improper. RBL has not moved to strike or challenge Mr. Loetz's opinions or testimony and responses to statements of material facts are insufficient to make such a challenge. To the extent RBL believes that Flambeau's proffered testimony "was not based

66

on personal knowledge or is otherwise not competent, the remedy is a motion to strike; failure to do so waives any objection to that evidence." *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011) (granting partial summary judgment and holding defendant's denials in response to plaintiff's statement of undisputed facts did not create genuine issue of fact where defendant did not move to strike witness testimony). ***Second***, Mr. Loetz is well qualified to opine on the functionality of a puzzle cube. Mr. Loetz has over 23 years of experience in the toy industry, specifically in toy design, product development, and marketing. (Ex. 16, Loetz Rep., ¶ 6). Mr. Loetz's experience includes designing manipulative toys, including supervising the design of a three dimensional puzzle cube. (*Id.*, ¶ 7). Mr. Loetz is a named inventor on at least five U.S. utility patents claiming inventions related to toy products and is also a named inventor on a U.S. design patent for a toy product design. (*Id.*, ¶ 12). ***Third***, Mr. Loetz properly analyzed the 3x3 Cube Design, assessing whether it was essential to the cube's use and purpose, whether it affected the cost or quality, and whether it hindered competition. (Ex. 16, Loetz Rep., ¶¶ 51-96). RBL does not dispute these are the correct inquiries. ***Finally***, RBL mischaracterizes Mr. Loetz's testimony; he stated that puzzle cubes may use colors other than those in the 3x3 Cube Design, but it would not be as effective." (Ex. 204, Loetz Dep., at 111:6-112:3).

202. The 3x3 Cube Design is functional in nature. (Ex. 16, Loetz Rep., ¶¶ 51-96).

   **Plaintiff's Response:**     Disputed. The Rubik's Design is registered on the Principal Trademark register of the U.S. Patent and Trademark Office, and thus, the mark is prima facie valid, which means it is not functional. The '094 Registration is in full force and is

incontestable under Section 15 of the Lanham Act. 15 U.S.C. § 1065. See Ex. 48, TSDR

Printout, at FLAMBEAU000003-4. There is also a plethora of third-party 3x3 puzzle

cubes that are distinct from the appearance of the Rubik's Design. See Ex. 181, Gottlieb

Rep. ¶ 30; see e.g. Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 182, Sponge Bob

Cube; Ex. 183, Disney Cube; Ex. 167, Gottlieb Dep. Tr. 170:23-173:24. All of these

third-party cubes are used and operate in the same way as the Rubik's Cube puzzle.  SMF

¶¶ 468-510. Further, Flambeau's expert Mr. Loetz acknowledged that a puzzle cube with

any six colors that can be discerned from one another can be scrambled and solved. See

SMF ¶ 510, Loetz Dep. Tr. 132:5-17. Mr. Loetz also testified that "[t]he specific colors of

the stickers most likely would not affect cost." See SMF ¶ 511, Loetz Dep. Tr. 132:5-12.

> **Defendant's Reply:**        ***First***, marks that are the subject of even incontestable
>
> registrations may be invalidated as functional.  (*See* 15 U.S.C. § 1065; 15 U.S.C.
>
> § 1064(3), (5)).  ***Second***, RBL should not be allowed to claim now, after refusing
>
> to clarify its theory of non-infringing alternatives during discovery, that certain
>
> third-party cubes are non-infringing alternatives.  (*See* Flambeau's Motion to
>
> Strike, filed herewith).  ***Third***, RBL's statements regarding third-party cubes are
>
> not properly supported with admissible evidence.  The cited exhibits are hearsay
>
> and the supporting witness (RBL's counsel) does not have the proper foundation
>
> to offer these exhibits or proffer opinions about how the puzzle cubes purportedly
>
> depicted in them function.  ***Finally***, RBL mischaracterizes Mr. Loetz's
>
> testimony—he stated that puzzle cubes may use colors other than those in the 3x3
>
> Cube Design, but it would not be as effective.  (Ex. 204, Loetz Dep., at 111:6-
>
> 112:3).

## Intended Use and Purpose

203. The 3x3 Cube Design is essential to the use or purpose of a 3x3 puzzle cube.  (Ex. 16, Loetz Rep., ¶¶ 52-67).

**Plaintiff's Response:**    Disputed. See Response to SMF ¶ 202.

**Defendant's Reply:**    See Defendant's Reply to Statement No. 202.

204. The intended use and purpose of a 3x3 puzzle cube, like the 3x3 Rubik's Cube, is for it to be scrambled and solved.  (Ex. 16, Loetz Rep., ¶ 52; Ex. 63, Simms Dep. Tr., at 15:17-20, 34:24-35:4, 38:1-4, 69:22-70:3; Ex. 68, RBL Interrog. Resp., No. 23).

**Plaintiff's Response:**    Admit that a purpose of a 3x3 puzzle cube, like the 3x3 Rubik's Cube, is for it to be scrambled and solved, but dispute that it is the only use and purpose of a 3x3 puzzle cube. Ex. 167, Gottlieb Dep. Tr. at 161:23-162:12.

**Defendant's Reply:**    Mr. Gottlieb testified regarding other uses for "manipulative products" but did not describe other uses of puzzle cubes in specific terms.  (Ex. 167, Gottlieb Dep. Tr., at 162:13-17).   RBL's expert, Mr. Simms, testified that the purpose of the 3x3 Rubik's Cube is to "return the cube to the original position where you have colors on each side of the particular device." Ex. 63, Simms Dep. Tr., at 34:24-35:4; *see also id.*, at 38:1-4, 69:22-70:3).

205. The play value of the 3x3 Rubik's Cube is to scramble the smaller colored segments and then solve the puzzle by matching the like-colored segments on each side of the larger cube.  (Ex. 16, Loetz Rep., ¶¶ 53-55; Ex. 63, Simms Dep. Tr., at 15:17-20, 142:7-18).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

206. The smaller cube segments of the 3x3 Cube Design allow a 3x3 puzzle cube to be twisted and turned.  (Ex. 16, Loetz Rep., ¶¶ 56-60).

**Plaintiff's Response:**    Disputed. The 3x3 Cube Design (defined by RBL as RUBIK'S Design in SMF ¶ 3) covers the trade dress of the 3x3 Rubik's Cube and does not participate in allowing a 3x3 puzzle cube to be twisted and turned. Smaller cube segments of a 3x3 puzzle cube can be twisted and turned, regardless of the design. See SMF ¶¶ 468-510.

> **Defendant's Reply:**    The "3x3 Cube Design" is defined by Defendant at Statement No 3—to which Plaintiff admitted.  The design consists of "of a black puzzle cube having nine square-shaped color patches on each of its six faces, with the color patches on each face ***being the same when the puzzle is in the start or solved position***, and consisting of the colors red, white, blue, green, yellow, and orange."  (Statement No. 3) (emphasis added).  According to RBL's witnesses and statements, an important aspect to the 3x3 Cube Design is the ability for it to twisted and turned such that the puzzle can be scrambled and ultimately solved. (Statement No. 205; *See, e.g.*, Ex. 63, Simms Dep. Tr., at 15:17-20, 34:24-35:4, 38:1-4, 69:22-70:3, 142:7-18; Ex. 68, RBL Interrog. Resp., No. 23).  RBL admits that the 3x3 Cube Design includes separate smaller segments.  (*See* Statement Nos. 3, 205, 208).  RBL admits that the separate smaller segments allow a 3x3 puzzle cube to be twisted, turned, and ultimately scrambled then solved.  (*See* Statement Nos. 208-209).

207.   The smaller cube segments of the 3x3 Cube Design allow a 3x3 puzzle cube to be scrambled and solved.  (Ex. 16, Loetz Rep., ¶¶ 56-60).

**Plaintiff's Response:**    Disputed. The smaller cube segments of a 3x3 puzzle cube can be scrambled and solved, regardless of the design. See SMF ¶¶ 468-510.

> **Defendant's Reply:**    The "3x3 Cube Design" is defined by Defendant at

Statement No 3—to which Plaintiff admitted.  The design consists of "of a black puzzle cube having nine square-shaped color patches on each of its six faces, with the color patches on each face *being the same when the puzzle is in the start or solved position*, and consisting of the colors red, white, blue, green, yellow, and orange."  (Statement No. 3) (emphasis added).  According to RBL's witnesses and statements, an important aspect to the 3x3 Cube Design is the ability for it to twisted and turned such that the puzzle can be scrambled and ultimately solved.  (Statement No. 205; *See, e.g.,* Ex. 63, Simms Dep. Tr., at 15:17-20, 34:24-35:4, 38:1-4, 69:22-70:3, 142:7-18; Ex. 68, RBL Interrog. Resp., No. 23).  RBL admits that the 3x3 Cube Design includes separate smaller segments.  (*See* Statement Nos. 3, 205, 208).  RBL admits that the separate smaller segments allow a 3x3 puzzle cube to be twisted, turned, and ultimately scrambled then solved.  (*See* Statement Nos. 208-209).

208.  Without separate smaller segments, a 3x3 puzzle cube could not be twisted or turned.  (Ex. 16, Loetz Rep., ¶¶ 57-58).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

209.  Without separate smaller segments, a 3x3 puzzle cube could not be scrambled and solved.  (Ex. 16, Loetz Rep., ¶¶ 57-58).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

210.  The color patches of the 3x3 Cube Design allow a 3x3 puzzle cube to be scrambled and solved.  (Ex. 16, Loetz Rep., ¶¶ 61-66; Ex. 60, Riehl Dep. Tr., at 10:17-20, 73:14-19, 73:24-74:9, 74:15-17, 76:5-10, 218:18-22, 219:25-220:6).

**Plaintiff's Response:**        Disputed. The color patches are a part of the trade dress of the 3x3 Rubik's Cube and do not participate in allowing a 3x3 puzzle cube to be scrambled and solved. A 3x3 puzzle cube can be scrambled and solved with any variety of colors or designs of the patches on the smaller cube segments. See SMF ¶¶ 468-510. Further, Flambeau's expert Mr. Loetz acknowledged that a puzzle cube with any six colors that can be discerned from one another can be scrambled and solved. See SMF ¶ 510. Loetz Dep. Tr. 132:5-17.

> **Defendant's Reply:**        RBL's corporate representative testified that the colored patches of the 3x3 Cube Design allow the puzzle to be scrambled and solved. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 73:14-19, 73:24-74:9, 74:15-17, 76:5-10, 218:18-22, 219:25-220:6).  Moreover, Ms. Riehl testified that if color was removed or absent from the small segments in the 3x3 Cube Design it could not be scrambled or solved because "It would always be in the solved state."  (Ex. 60, Riehl Dep. Tr., at 215:23-216:5).  Ms. Riehl further testified that a 3x3 puzzle cube which used 6 different colors for its indicia could only be solved using the colors and "following a sequence that puts it back in its solved state by color." (Ex. 60, Riehl Dep. Tr., at 219:11-220:6).  Finally, RBL mischaracterizes Mr. Loetz's testimony—he stated that puzzle cubes may use colors other than those in the 3x3 Cube Design, but it would not be as effective.  (Ex. 204, Loetz Dep., at 111:6-112:3).

211.    An all-black 3x3 puzzle cube could not be scrambled or solved.  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 215:23-216:5).

**Plaintiff's Response:**        Disputed. The Rubik's Mirror Block puzzle cube is a 3x3 cube that has one single color, silver, for all six faces of the cube and can be scrambled and

solved. See Ex. 191, Rubik's Mirror Block. Flambeau also produced two puzzle cubes whereby each cube also has only one single color, silver or gold, for all six faces of the cube and can be scrambled and solved. See Ex. 184. Similarly, the same type of 3x3 cube can be created in an all-black color and be scrambled and solved.

**Defendant's Reply:**        Ms. Riehl testified that if color was removed or absent from the small segments in the 3x3 Cube Design, including if each small segment was black, it could not be scrambled or solved because "It would always be in the solved state." (Ex. 60, Riehl Dep. Tr., at 215:23-216:5). Ms. Riehl further testified that a 3x3 puzzle cube which used 6 different colors for its indicia could only be solved using the colors and "following a sequence that puts it back in its solved state by color." (Ex. 60, Riehl Dep. Tr., at 219:11-220:6).

RBL's response is immaterial, unsupported, and cites to information that was not produced in discovery. Exhibit 191—an apparent website printout—was not produced to Flambeau in discovery. Moreover, the cited exhibits are hearsay and the supporting witness (RBL's counsel) does not have the proper foundation to offer these exhibits or proffer opinions about how the puzzle cubes purportedly depicted in them function.

### <u>Quality of the Cube – Color v. Other Indicia</u>

212.    The 3x3 Cube Design improves the quality of a 3x3 puzzle cube. (Ex. 16, Loetz Rep., ¶¶ 72-96).

**Plaintiff's Response:**        Disputed. The Rubik's Design has nothing to do with the quality of a 3x3 puzzle cube. There is a plethora of third-party 3x3 puzzle cubes that are distinct from the appearance of the Rubik's Design. See Ex. 181, Gottlieb Rep. ¶ 30; see e.g. Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 182, Sponge Bob Cube; Ex. 183,

Disney Cube; Ex. 167, Gottlieb Dep. Tr. 170:23-173:24. All of these third-party cubes are used and operate in the same way as the Rubik's Cube puzzle. SMF ¶¶ 468-510. Mr. Loetz alleges in his report that "[t]he [Rubik's Design] uses bright, contrasting colors to allow for easier and faster solving". Ex. 16, Loetz Rep., ¶ 73. However, the Rubik's Speed Cube has the exact same Rubik's Design as the classic 3x3 Rubik's Cube, but is faster because the inner mechanism of the Rubik's Speed Cube has a strong and stable core and lubricating tracks. Ex.190 at FLAMBEAU002579-FLAMBEAU002581; *see also* Response to SMF ¶ 189.

> **Defendant's Reply:**      RBL fails to raise any dispute.  *First*, RBL references third-party cubes.  RBL should not be allowed to claim now, after refusing to clarify the issue in discovery, that certain third-party cubes are non-infringing alternatives.  (*See* Flambeau's Motion to Strike, filed herewith).  *Second***,** RBL cites unsupported hearsay exhibits, which fail to support the conclusory assertion that any of the purported cubes "operate in the same way" as other cubes.  The sponsoring witness (RBL's counsel) does not have the foundation to provide this expert testimony.  *Third***,** even if there are third-party cubes on the market, this fails to rebut Mr. Loetz's well-founded opinion that the 3x3 Cube Design's use of contrasting colors makes solving the cube easier and quicker, which improves the quality and operation of the cube.  (Ex. 16, Loetz Rep., ¶¶ 72).   RBL mischaracterizes Mr. Loetz's testimony on this point—he stated that puzzle cubes may use colors other than those in the 3x3 Cube Design, but it would not be *as effective*.  (Ex. 204, Loetz Dep., at 111:6-112:3). *Fourth*, RBL references its Speed Cube, but the Speed Cube has the same design as the 3x3 Cube Design. (Ex.190 at FLAMBEAU002579-FLAMBEAU002581; *See* Ex. 16, Loetz Rep., ¶

107).  Simply because the Speed Cube may have an internal mechanism that offers *further* improvement, does not mean it does not already enjoy the benefits conferred by the 3x3 Cube Design.

213.  Color patches provide a simple and easy way to gauge whether a 3x3 puzzle cube is solved.  (Ex. 16, Loetz Rep., ¶¶ 67-68; Ex. 60, Riehl Dep. Tr., at 10:17-20, 73:14-19, 73:24-74:9, 74:15-17, 76:5-10).

**Plaintiff's Response:**     Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 213. The citations only support the contention that the color patches on the 3x3 Rubik's Cube provide a way to gauge whether the 3x3 Rubik's Cube is solved. 3x3 puzzle cubes that do not have color patches use other indicia to gauge whether the 3x3 puzzle cube is solved. *See e.g.*, SMF ¶¶ 468-510; Response to SMF ¶ 211.

**Defendant's Reply:**     RBL admits "the color patches on the 3x3 Rubik's Cube provide a way to gauge whether the 3x3 Rubik's Cube is solved."  RBL otherwise fails to raise any dispute.  *First*, RBL references third-party cubes. RBL should not be allowed to claim now, after refusing to clarify the issue in discovery, that certain third-party cubes are non-infringing alternatives.  (*See* Flambeau's Motion to Strike, filed herewith).  *Second***,** RBL cites unsupported hearsay exhibits, which fail to support the conclusory assertion that any of the purported cubes "operate in the same way" as other cubes.  The sponsoring witness (RBL's counsel) does not have the foundation to provide this expert testimony.  *Third***,** RBL ignores Mr. Loetz' testimony that color is more easily discerned and matched than other indicia.  (Ex. 16, Loetz Rep., ¶ 91).

214.  Color is more quickly and easily discerned than non-color indicia like numbers and

shapes.  (Ex. 16, Loetz Rep., ¶¶ 67, 88-92; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 119:3-9; *see also* Ex. 62, Gottlieb Dep. Tr., at 168:11-18, 169:2-8, 169:23-170:1, 170:8-12, 170:19-22).

**Plaintiff's Response:**    Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 214. The articles cited by Mr. Loetz do not support the contention that color is more quickly and easily discernable than non-color indicia, but simply discuss the influence of color on memory. "The common belief is that speedcubers have incredible memory capacity… [h]owever, th[is] [is] not true. Learning algorithms, which can greatly help to increase your speed when solving the cube, is all about muscle memory." Ex. 192 at p. 2. A speedcuber describes this use of algorithms and "tactile memory" to solve a Rubik's Cube and his experiences at the 2013 Rubik's Cube World Championship in the article, *"Cracking The Cube, Going Slow To Go Fast and Other Unexpected Turns In The World Of Competitive Rubik's Cube Solving."* Exhibit 193, FLAMBEAU002117 at FLAMBEAU002212-FLAMBEAU002213.

> In practice, of course, learning algorithms is much harder. It takes a certain tactile memory, not unlike that required to memorize scales on a musical instrument. When I asked cubers at competitions, like the World Championship, if they wouldn't mind demonstrating a particular algorithm, they sometimes had trouble; the moves had bypassed their conscious thinking, and entered the murky world of knee-jerk reflexes.

*Id.* As described by the speedcuber, learning to solve the Rubik's Cube and learning to solve it fast has nothing to do with the colors of the Rubik's Cube or Rubik's Design – it is about learning the algorithms associated with the indicia provided by the puzzle cube. Accordingly, learning algorithms to solve a 3x3 puzzle cube and muscle memory has nothing to do with the indicia used for the 3x3 puzzle cube – any type of indicia, e.g. numbers and shapes, can be used to learn algorithms and promote muscle memory.

>**Defendant's Reply:**    *First*, RBL does not provide any evidence to refute that "color is more quickly and easily discerned than non-color indicia like numbers and shapes."  RBL's response consists of hearsay quotes and unsupported attorney argument on topics that are immaterial to the proposed fact.  *Second*, RBL's characterization of the articles upon which Mr. Loetz relied is wrong.  The articles consisted of scholarly and scientific research showing color is more easily and quickly discerned and identified than non-colored indicia.  (Ex. 16, Loetz Rep., ¶ 91).  As a toy designer, Mr. Loetz properly applied the findings from this research to conclude that "[p]eople are more easily and quickly able to identify differences in colors than differences in shapes."  (*Id.*).

215.    Matching segments of a puzzle cube by numbers or shapes is not as intuitive as matching segments by color.  (Ex. 16, Loetz Rep., ¶¶ 93-94; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 119:3-9; *see also* Ex. 62, Gottlieb Dep. Tr., at 130:8-14 (using letters instead of colors "changes the play pattern").

**Plaintiff's Response:**    Disputed. *See* Response to SMF ¶ 214.

>**Defendant's Reply:**    *First*, RBL does not provide any evidence to refute the statement's assertion.  (*See* Defendant's Reply to Statement No. 214).  *Second*, Mr. Loetz's opinion, based on more than 23 years in toy design and scholarly and scientific research, is color indicia is easily discernible and provides immediate guidance on what you need to do—solve the puzzle by color.  (Ex. 16, Loetz Rep., ¶ 67).  Erno Rubik himself stated he chose color indicia because color is "very easy to distinguish" and is "the most simple way to mark the solved state." (*Id.*, ¶¶ 68, 70).  Mr. Loetz's report included scholarly and scientific research showing color is more easily and quickly discerned and identified than non-

colored indicia.  (*Id.*, ¶ 91).  Research thus shows "[p]eople are more easily and

quickly able to identify differences in colors than differences in shapes."  (*Id.*).

"Color has a stronger effect on capturing and distracting attention than shape."

(*Id.*).

216.  A cube with different numbers on its smaller cube segments may not require matching,

but ordering.  (Ex. 16, Loetz Rep., ¶ 93).

**Plaintiff's Response:**     Disputed. *See* Response to SMF ¶ 214.

**Defendant's Reply:**     RBL does not provide any evidence to refute the

statement's assertion.  (*See* Defendant's Reply to Statement No. 214).   RBL's

response to Statement No. 214 does not refute that number indicia could be

matched or ordered on a puzzle cube.

217.  Mr. Rubik said that he used color on his puzzle cube because "it was necessary to  …

identify the elements" and color is "very simple and … very easy to distinguish."  (Ex.

16, Loetz Rep., ¶ 68).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

218.  Mr. Rubik said that color was "the most simple way to mark the solved state" of his

puzzle cube.   (Ex. 16, Loetz Rep., ¶ 70; Ex. 62, Gottlieb Dep. Tr., at 80:19-82:10; Ex.

57, Ruwix).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

### **Quality of the Cube – Color Options**

219.  Color is a spectrum that can be represented by the color wheel.  (Ex. 16, Loetz Rep., ¶

74).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

220.    There are only three primary colors:  red, yellow, and blue.  (Ex. 16, Loetz Rep., ¶ 75).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

221.    Primary colors cannot be mixed or formed by any combination of other colors.  (Ex. 16, Loetz Rep., ¶ 75).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

222.    There are only three secondary colors:  green, orange, and purple.  (Ex. 16, Loetz Rep., ¶ 76).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

223.    Each secondary color is derived by mixing two primary colors:  blue and yellow make green; yellow and red make orange; red and blue make purple.  (Ex. 16, Loetz Rep., ¶ 76).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

224.    There are twelve tertiary colors that are derived by mixing a primary and secondary color.  (Ex. 16, Loetz Rep., ¶ 77).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

225.    In the toy-making context, primary and secondary colors are preferred over gray, white, and brown.  (Ex. 62, Gottlieb Dep. Tr., at 217:1-11, 223:24-224:2, 225:1-226:5).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support

Flambeau's statements in SMF ¶ 225. Mr. Gottlieb's testimony supports his contention

that,

> The toy industry's focus is not on using contrasting colors, but on using primary colors for young children, up to approximately four years old. While it is believed in the industry that children in that age group are particularly attracted to primary colors, this belief is not held for children approximately aged five years and older. Further, there are many toys that are successfully marketed and sold to older children that do not have contrasting colors or do not focus on primary colors.

Ex. 181, Gottlieb Rep, at ¶¶ 21-23.

> **Defendant's Reply:**    Mr. Gotlieb testified, in reviewing a chart showing
>
> overall color preferences for the general public, that he was not surprised that
>
> "primary and secondary colors are preferred more than gray, white, and brown."
>
> (Ex. 62, Gottlieb Dep. Tr., at 223:24-224:2).

226.    Analogous colors are any three adjacent colors on a twelve-part color wheel.  (Ex. 16,

Loetz Rep., ¶ 78).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

227.    Analogous colors are perceived as similar shades and thus have minimum contrast.  (Ex.

16, Loetz Rep., ¶ 78).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support

Flambeau's statements in SMF ¶ 227. In particular, the citation in Mr. Loetz's Report to

"Color Matters, Basic Color Theory" does not support Flambeau's statements in SMF ¶

227.

> **Defendant's Reply:**    Mr. Loetz's concluded, after reviewing scholarly and
>
> scientific articles on color theory, that "[a]nalogous colors are perceived as similar

shades and thus have minimum contrast." (Ex. 16, Loetz Rep., ¶ 78). RBL does

not provide any evidence to support its dispute of Statement No. 227, let alone to

directly refute Mr. Loetz's properly founded expert opinion based in part on Mr.

Loetz's more than 23 years in toy design, which includes teaching color theory at

the college level. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1

(c), (d)).

228.    Complementary colors are those which are directly opposite on the color wheel. (Ex. 16,

Loetz Rep., ¶ 79).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

229.    Complementary colors are perceived as opposite shades and thus have maximum

contrast. (Ex. 16, Loetz Rep., ¶ 79).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

230.    Colors with maximum contrast are those that fall opposite of each other on the color

wheel (e.g., red and green, blue and orange, and yellow and purple). (Ex. 16, Loetz Rep.,

¶¶ 79, 83; *see also* Ex. 62, Gottlieb Dep. Tr., at 173:25-174:3, 197:20-23, 198:14-17,

198:20-22, 200:11-24, 201:17-25).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

231.    There are eight maximum contrasting colors or shades: the shades of the six primary and

secondary colors of the color wheel, plus white and black. (Ex. 16, Loetz Rep., ¶ 83).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

232.   It is well-known and accepted in the industry that children respond better to contrasting colors than to analogous colors.  (Ex. 16, Loetz Rep., ¶ 80).

**Plaintiff's Response:**      Disputed. *See* Response to SMF ¶ 225.

>   **Defendant's Reply:**      RBL does not provide any evidence to refute the statement's assertion.  (*See* Defendant's Reply to Statement No. 214).   RBL's response to Statement No. 214 does not refute that that children respond well to contrasting colors; rather it supports that they respond well to primary colors— colors that are non-adjacent on the color well.  The remainder of the cited quote merely purports to describe what colors toy makers use, not what colors children respond well to.

233.   In the puzzle cube context, segments bearing six different colors with maximum contrast tell the user to match segments of the same color on each of the six sides.  (Ex. 16, Loetz Rep., ¶ 82).

**Plaintiff's Response:**      Disputed. *See* Responses to SMF ¶¶ 213-214; Ex. 167, Gottlieb Dep. Tr. 170:23-173:11.

>   **Defendant's Reply:**      Mr. Loetz's opinion, based on more than 23 years in toy design, is color indicia is easily discernible and provides immediate guidance on what you need to do—solve the puzzle by color.  (Ex. 16, Loetz Rep., ¶¶ 67, 82). Mr. Loetz's report included scholarly and scientific research showing color is more easily and quickly discerned and identified than non-colored indicia.  (*Id.*, ¶ 91).  Research thus shows "[p]eople are more easily and quickly able to identify differences in colors than differences in shapes." (*Id.*). Mr. Gottlieb also testified that maximum contrasting colors in a puzzle cube allow the puzzle to be solved fastest.  (Ex. 62, Gottlieb Dep. Tr., at 240:5-12).

234.    In the puzzle cube context, colors with maximum contrast allow the user to match segments of the same color *easily* because the user does not need to focus on discerning the colors and can focus exclusively on matching segments of the same color.  (Ex. 16, Loetz Rep., ¶ 82).

**Plaintiff's Response:**    Disputed. *See* Responses to SMF ¶¶ 213-214; Ex. 167, Gottlieb Dep. Tr. 170:23-173:11.

> **Defendant's Reply:**    See Replies to Statement Nos. 213-214.  Mr. Loetz's opinion, based on more than 23 years in toy design, is color indicia is easily discernible and provides immediate guidance on what you need to do—solve the puzzle by color.  (Ex. 16, Loetz Rep., ¶¶ 67, 82).  Mr. Gottlieb also testified that maximum contrasting colors in a puzzle cube allow the puzzle to be solved fastest.  (Ex. 62, Gottlieb Dep. Tr., at 240:5-12).

235.    In the puzzle cube context, colors with maximum contrast allow the user to match segments of the same color *quickly* because the user does not need to focus on discerning the colors and can focus exclusively on matching segments of the same color.  (Ex. 16, Loetz Rep., ¶ 82).

**Plaintiff's Response:**    Disputed. *See* Responses to SMF ¶¶ 213-214; Ex. 167, GottliebDep. Tr. 170:23-173:11.

> **Defendant's Reply:**    See Replies to Statement Nos. 213-214.  Mr. Loetz's opinion, based on more than 23 years in toy design, is color indicia is easily discernible and provides immediate guidance on what you need to do—solve the puzzle by color.  (Ex. 16, Loetz Rep., ¶¶ 67, 82).  Mr. Gottlieb also testified that maximum contrasting colors in a puzzle cube allow the puzzle to be solved fastest.  (Ex. 62, Gottlieb Dep. Tr., at 240:5-12).

236.    Puzzle cubes that use maximum contrasting colors enable the solver to more quickly and
easily distinguish the cube segments and match the segments by color than puzzle cubes
that use less contrasting colors.  (Ex. 16, Loetz Rep., ¶¶ 80-82, 157; Ex. 62, Gottlieb Dep.
Tr., at  201:17-203:23,  204:8-205:12,  207:22-208:1,  209:9-22,  210:1-13;  Exs.  54-55
(color wheels marked at Mr. Gottlieb's deposition)).

**Plaintiff's Response:**    Disputed. The citations to the exhibits do not support
Flambeau's statements in SMF ¶ 236. *See* Response to SMF ¶ 214; Ex. 167, Gottlieb
Dep. Tr. 170:23-173:11.

> **Defendant's Reply:**    RBL fails to raise a dispute.  Mr. Gottlieb testified that
> maximum contrasting colors in a puzzle cube allow the puzzle to be solved
> fastest.  (Ex. 62, Gottlieb Dep. Tr., at 240:5-12).  Mr. Gottlieb also testified and
> agreed that it is well known that colors further apart on a color wheel are more
> easily distinguishable and colors closer together on the wheel are less
> distinguishable.  (*Id.* at 201:17-25).  Mr. Gottlieb then agreed that a puzzle cube
> with different shades of the same color, such as orange, or similar colors likes
> orange and red would "certainly be more challenging" to solve and would be
> slower.  (*Id.* at 202:1-203:23).

237.    A solver would need to take more time and mental energy to distinguish the cube
segments of a 3x3 puzzle cube that used less contrasting colors than to distinguish the
cube segments of a 3x3 puzzle cube that used maximum contrasting colors.  (Ex. 16,
Loetz Rep., ¶¶ 80-82; Ex. 62, Gottlieb Dep. Tr., at 201:17-203:23, 204:8-205:12, 207:22-
208:1, 209:9-22, 210:1-13, 301:10-17; Exs. 54-55 (color wheels marked at Mr. Gottlieb's
deposition)).

**Plaintiff's Response:**    Disputed. The citations to the exhibits do not support

Flambeau's statements in SMF ¶ 237. *See* Response to SMF ¶ 214.

> **Defendant's Reply:**    RBL fails to raise a dispute.  Mr. Gottlieb testified that
> maximum contrasting colors in a puzzle cube allow the puzzle to be solved
> fastest.  (Ex. 62, Gottlieb Dep. Tr., at 240:5-12).  Mr. Gottlieb also testified and
> agreed that it is well known that colors further apart on a color wheel are more
> easily distinguishable and colors closer together on the wheel are less
> distinguishable.  (*Id.* at 201:17-25).  Mr. Gottlieb then agreed that a puzzle cube
> with different shades of the same color, such as orange, or similar colors likes
> orange and red would "certainly be more challenging" to solve and would be
> slower.  (*Id.* at 202:1-203:23).

238.   A solver would need to take more time and mental energy to distinguish the cube
segments of a 3x3 puzzle cube that used six shades of orange than to distinguish the cube
segments of a 3x3 puzzle cube that used maximum contrasting colors.  (Ex. 16, Loetz
Rep., ¶¶ 80-82; Ex. 62, Gottlieb Dep. Tr., at 201:17-203:23, 204:8-205:12, 207:22-208:1,
209:9-22, 210:1-13, 301:10-17; Exs. 54-55 (color wheels marked at Mr. Gottlieb's
deposition)).

**Plaintiff's Response:**    Disputed. The citations to the exhibits do not support
Flambeau's statements in SMF ¶ 238. See Response to SMF ¶ 214; Ex. 167, Gottlieb
Dep. Tr. 170:23-173:11.

> **Defendant's Reply:**    RBL fails to raise a dispute.  Mr. Gottlieb testified that
> maximum contrasting colors in a puzzle cube allow the puzzle to be solved
> fastest.  (Ex. 62, Gottlieb Dep. Tr., at 240:5-12).  Mr. Gottlieb also testified and
> agreed that it is well known that colors further apart on a color wheel are more
> easily distinguishable and colors closer together on the wheel are less

distinguishable.  (*Id.* at 201:17-25).  Mr. Gottlieb then agreed that a puzzle cube

with different shades of the same color, such as orange, or similar colors likes

orange and red would "certainly be more challenging" to solve and would be

slower.  (*Id.* at 202:1-203:23).  The testimony cited by RBL does not address how

color affects ease or speed.

239.    Maximum contrasting colors on a puzzle cube are relevant to speed cubers because speed

cubers are trying to go fastest.  (Ex. 62, Gottlieb Dep. Tr., at 240:5-12).

**Plaintiff's Response:**      Disputed. The citation to the exhibit does not support

Flambeau's statements in SMF ¶ 239. See Response to SMF ¶ 214; Ex. 167, Gottlieb

Dep. Tr. 170:23-173:11.

**Defendant's Reply:**      Mr. Gottlieb confirmed "maximum contrasting colors

on a puzzle cube are most relevant to the speed cubers" because "they're trying to

go fastest."  (Ex. 62, Gottlieb Dep. Tr., at 240:5-12).  RBL's cited testimony does

not relate to speed cubers.

240.    The 3x3 Cube Design uses seven of the eight maximum contrasting colors or shades:

black for its base and red, white, blue, green, yellow, and orange for its color patches.

(Ex. 16, Loetz Rep., ¶¶ 73-79; Ex. 60, Riehl Dep. Tr., at 10:17-20, 311:2-18).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

### Utility Patents on the 3x3 Cube Design

241.    Mr. Loetz charted the features of the 3x3 Cube Design against those features disclosed in

twelve different utility patents covering puzzle cubes and found the utility patents

disclosed all of the 3x3 Cube Design's features.  (Ex. 16, Loetz Rep., ¶¶ 118-148 &

Appendix 5; *see also* Ex. 62, Gottlieb Dep. Tr., at 83:24-84:4 (Mr. Gottlieb testified he is

"really not knowledgeable in any area of the patent of the Rubik's Cube"); *see also id.* at 84:14-16 (did not review any patents), 84:20-85:6 (did not find patents "germane"), 85:7-11)).

**Plaintiff's Response:**        Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 241. The sole basis for a foundation for Mr. Loetz's opinion is that Mr. Loetz "holds numerous utility patents." (Def's Mem. at p.12.) Mr. Loetz is not an attorney, much less a patent attorney, nor does he have any proffered expertise in U.S. patent law. *See* SMF ¶ 533. He is therefore unqualified to render opinions or analyses on utility patent claims and disclosures. *Id.* Further, none of the utility patents cited disclose the Rubik's Design. *See* SMF ¶¶ 515-532. More specifically, the cited utility patents cited do not claim any colors for the six faces of the puzzle cube, do not claim a black colored cube, and do not claim a black grid design. *Id.*

   **Defendant's Reply:**        *First*, RBL's response is procedurally improper.  RBL has not moved to strike or challenge Mr. Loetz's opinions or testimony and responses to statements of material facts are insufficient to make such a challenge. To the extent RBL believes that Flambeau's proffered testimony "was not based on personal knowledge or is otherwise not competent, the remedy is a motion to strike; failure to do so waives any objection to that evidence." *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011) (granting partial summary judgment and holding defendant's denials in response to plaintiff's statement of undisputed facts did not create genuine issue of fact where defendant did not move to strike witness testimony).  *Second*, Mr. Loetz has over 23 years of experience in the toy industry, specifically in toy design, product development, and marketing.  (Ex. 16,

Loetz Rep., ¶ 6).  Mr. Loetz's experience includes designing manipulative toys, including supervising the design of a three dimensional puzzle cube.  (*Id.*, ¶ 7). Mr. Loetz is a named inventor on at least five U.S. utility patents claiming inventions related to toy products and is also a named inventor on a U.S. design patent for a toy product design.  (*Id.*, ¶ 12).  Mr. Loetz has also taken online patent courses given by lawyers. (Ex. 164, 12/18/18 Loetz Dep., at 15:13-16:3). As such, Mr. Loetz is undisputedly an expert in toy design; he is precisely the type of individual to read and interpret toy patents and form opinions about them.  ***Third***, The patents speak for themselves, disclosing the relevant elements of the 3x3 Cube Design, including the use of a 3x3 array of smaller cube segments, which creates a grid, and the use of color to scramble and solve.  (*See* Statements Nos. 242-244).

242.    Utility patents disclose puzzle cubes comprised of smaller cube segments so that the puzzle can be twisted and turned.  (Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5).

**Plaintiff's Response:**      Admit, but dispute the referenced Appendix all disclose puzzle cubes. *See* e.g. Fig. 37 shows a 2x3 puzzle. Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5.

**Defendant's Reply:**      Undisputed.

243.    Utility patents disclose comprising each face of a puzzle cube of three rows of three smaller cube segments.  (Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5).

**Plaintiff's Response:**      Admit, but dispute the referenced Appendix all disclose puzzle cube of three rows of three smaller cube segments. *See e.g.* Fig. 27 shows a 2x2 puzzle with each face of a puzzle cube of two rows of two smaller cube segments and 37 shows a 2x3 puzzle with four faces of the puzzle cube having three rows of two smaller cube

segments. Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5.

> **Defendant's Reply:**   Undisputed.

244.   Utility patents disclose using color patches to scramble and solve a puzzle cube.  (Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5).

**Plaintiff's Response:**   Disputed. *See* Response to SMF ¶ 241.

> **Defendant's Reply:**   *See* Defendant's Reply to Statement No. 241. RBL's Response to SMF ¶ 241 does not address whether utility patents disclose using color patches to scramble and solve a puzzle cube.  RBL admitted this disclosure for numerous patents.  (*See* Statement Nos. 51-60).

245.   RBL is aware of at least one U.S. Patent covering Mr. Rubik's puzzle cube invention. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 107:23-108:2).

**Plaintiff's Response:**   Admit to the extent "Mr. Rubik's puzzle cube invention" refers to the internal mechanism of the 2x2 cube puzzle claimed in the '116 Rubik Patent, which does not include the Rubik's Design. Ex. 23, '116 Rubik Patent, at FLAMBEAU000667; *see also* Response to SMF ¶ 119.

> **Defendant's Reply:**   RBL fails to raise a dispute.  Mr. Kremer testified only that he was aware of a U.S. Patent covering a cube that Mr. Rubik was the inventor on; he did not specify the patent.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 107:23-108:2).

246.   RBL is aware of at least one Hungarian Patent covering Mr. Rubik's puzzle cube invention.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 187:23-188:4).

**Plaintiff's Response:**   Admit to the extent "Mr. Rubik's puzzle cube invention" refers to the internal mechanism of the 3x3 cube puzzle claimed in the '062 Rubik Patent, which does not include the Rubik's Design. Ex. 20, '062 Rubik Patent; *see also* Response

to SMF ¶¶ 521-24.

> **Defendant's Reply:**    RBL fails to raise a dispute.  Mr. Kremer testified RBL
> was aware of the '062 Hungarian Patent, but only "in a limited way" and could
> not provide specifics.  (Ex. 61, Kremer Dep. Tr., at 187:23-188:4).

247.    RBL is aware of a Japanese Patent on a 3x3 puzzle cube.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 108:23-109:14).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

248.    RBL advertised that its 3x3 Rubik's Cube was patented.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 95:15-18).

**Plaintiff's Response:**    Admit to the extent "patented" refers to the internal mechanism of the 3x3 Rubik's Cube was patented and not the Rubik's design. *See* Response to Response to SMF ¶ 246.

> **Defendant's Reply:**    RBL fails to create a dispute and its qualifier is
> unsupported.  Mr. Kremer testified that RBL certainly knew there was a patent on
> the cube and that it used the patent in its advertising to indicate the cube was
> patented.  (Ex. 61, Kremer Dep. Tr., at 95:15-18).  Mr. Kremer did not express
> any additional understanding of the patent or its use in advertising.

249.    RBL removed references to the 3x3 Rubik's Cube being patented because the patent rights are no longer in force.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 96:14-19, 96:25-97:6).

**Plaintiff's Response:**    Admit to the extent "patented" and "patent rights" refers to the internal mechanism of the 3x3 Rubik's Cube was patented and not the Rubik's design. *See* Response to Response to SMF ¶¶ 246, 249.

90

**Defendant's Reply:**     RBL fails to create a dispute.  Mr. Kremer testified that it removed references to the patent because the patent is no longer in force and RBL didn't "want to be making statements seemingly not true."  (Ex. 61, Kremer Dep. Tr., at 96:14-19, 96:25-97:6).  Mr. Kremer did not express any additional understanding of the patent or its use in advertising.  RBL does not provide any evidence to the contrary.

### Lack of Alternatives to the 3x3 Cube Design

250. A cube is more easily handled and manipulated than other shapes, like a sphere or triangle.  (Ex. 16, Loetz Rep., ¶¶ 60, 153)

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

251. 2x2 puzzle cubes are easier to solve than 3x3 puzzle cubes.  (Ex. 16, Loetz Rep., ¶ 154).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

252. 4x4 puzzle cubes are harder to solve than 3x3 puzzle cubes.  (Ex. 16, Loetz Rep., ¶ 154).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

253. The 3x3 puzzle cube presents a challenge, but an achievable one for average individuals. (Ex. 16, Loetz Rep., ¶ 155).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

254. To achieve maximum contrast with colors, a puzzle cube maker is limited to eight options:  shades of the three primary colors, shades of the three secondary colors, white, and black.  (Ex. 16, Loetz Rep., ¶ 159).

**Plaintiff's Response:**    Disputed. *See* Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 181, Gottlieb Rep. at ¶¶ 19-23; Ex. 167, Gottlieb Dep. Tr. 170:23-173:24; *see also* Responses to ¶¶ 213, 214.

> **Defendant's Reply:**    Mr. Loetz explains that there are only eight options for using maximum contrasting colors on a puzzle cube: shades of each primary and secondary color, plus white and black.  (Ex. 16, Loetz Rep., ¶ 159).  In total, this means there are only 28 different combinations of six colors to maximize contrasting shades on a puzzle cube.  (*Id.*).  The evidence cited by RBL does not address maximum contrast or the combinations described by Mr. Loetz. Moreover, Mr. Gottlieb agreed that it is well known that colors further apart on a color wheel are more easily distinguishable and colors closer together on the wheel are less distinguishable.  (Ex. 62, Gottlieb Dep. Tr., at 201:17-25).

255.    Because white provides the best background for a logo, puzzle cube makers prefer to make one side of the cube white.  (Ex. 16, Loetz Rep., ¶ 160).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 256. More specifically, the cited mathematical equation in Mr. Loetz's report does not support Mr. Loetz's contention in ¶ 160 of his report. *See* Ex. 16, Loetz Rep., ¶ 160.

> **Defendant's Reply:**    Mr. Loetz states that "white is a preferable choice because it allows puzzle cube makers to easily display their logos" on a "clean, easily-readable white surface."  (Ex. 16, Loetz Rep., ¶¶ 85, 160).  Plaintiff does not provide any factual evidence to dispute this statement and the statement is thus admitted in its entirety.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

256.    The human eye can more easily detect differences in green hues than differences in blue

or purple hues.  (Ex. 16, Loetz Rep., ¶ 84).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support

Flambeau's statement in SMF ¶ 257. More specifically, the cited article is unavailable,

and Mr. Loetz is not an expert in the retinal neurocircuitry field he is opining on.

**Defendant's Reply:**    *First*, RBL's response is procedurally improper.  RBL

has not moved to strike or challenge Mr. Loetz's opinions or testimony and

responses to statements of material facts are insufficient to make such a challenge.

To the extent RBL believes that Flambeau's proffered testimony "was not based

on personal knowledge or is otherwise not competent, the remedy is a motion to

strike; failure to do so waives any objection to that evidence." *Arista Records*

*LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 1641978, at *4

(S.D.N.Y. Apr. 29, 2011) (granting partial summary judgment and holding

defendant's denials in response to plaintiff's statement of undisputed facts did not

create genuine issue of fact where defendant did not move to strike witness

testimony).  *Second*, Mr. Loetz is well qualified to opine on the functionality of a

puzzle cube.  Mr. Loetz has over 23 years of experience in the toy industry,

specifically in toy design, product development, and marketing.  (Ex. 16, Loetz

Rep., ¶ 6).  Mr. Loetz's experience includes designing manipulative toys,

including supervising the design of a three dimensional puzzle cube.  (*Id.*, ¶ 7).

Mr. Loetz's experience includes teaching toy design at the Art Center College of

Design in Pasadena, CA and the Otis School of Design in El Segundo, CA.  (*Id.*, ¶

10).  Mr. Loetz's teaching experience covered color theory, particularly as it

applies to consumer products like toys.  (*Id.*). Mr. Loetz is therefore qualified and

knowledgeable regarding the color theory as it relates to toys and toy design.

*Third*, Plaintiff does not provide any factual evidence to dispute this statement and the statement is thus admitted in its entirety.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d))..

257.    The human eye can more easily detect differences in red hues than differences in blue or purple hues.  (Ex. 16, Loetz Rep., ¶ 84).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 258. More specifically, the cited article is unavailable, and Mr. Loetz is not an expert in the retinal neurocircuitry field he is opining on.

**Defendant's Reply:**    *See* Defendant's Reply to Statement No. 256.

Moreover, the article Mr. Loetz cites was available at the time Mr. Loetz's report was served.  (Ex. 196, 8/21/20 Boor Declaration, ¶ 8, Ex. 202).

258.    Because blue and purple are comparatively more difficult to distinguish from one another than other colors, puzzle cube makers prefer to use only one of those two colors.  (Ex. 16, Loetz Rep., ¶ 161).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 259. More specifically, Mr. Loetz provides no support for his contentions in his report and is not an expert in the retinal neurocircuitry field he is opining on.

**Defendant's Reply:**    *See* Defendant's Reply to Statement No. 256.

259.    With one side fixed on white, and another side fixed on either blue or purple, there are only five different combinations of maximum contrasting colors for the remaining four sides of a puzzle cube.  (Ex. 16, Loetz Rep., ¶ 161).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support

Flambeau's statement in SMF ¶ 259. More specifically, Mr. Loetz provides no support for his contentions in his report. There are numerous color combinations that could be used for a 3x3 puzzle cube that do not infringe on the Rubik's Design. *See* Ex. 181, Gottlieb Rep., at ¶¶ 19-23; Ex. 167, Gottlieb Dep. Tr. 170:23-173:24. RBL's toy expert, Richard Gottlieb, confirmed that, "All that's required for a user to operate and solve a 3x3 puzzle cube is for the puzzle cube to have any six colors that are contrasting and easily distinguished from one another. As long as six easily distinguishable colors are used, the 3x3 puzzle cube will operate the precisely the same manner as a 3x3 puzzle cube that contains the same six colors as the RUBIK'S CUBE puzzle." Mr. Gottlieb further states that, "A 3x3 puzzle cube can have six contrasting colors, that are not primary and secondary colors, and effectively operate in the same manner as a puzzle cube with primary and secondary colors." Ex. 181, Gottlieb Rep. at ¶ 19.

> **Defendant's Reply:**      ***First***, RBL references third-party cubes.  RBL should not be allowed to claim now, after refusing to clarify the issue during discovery, that certain third-party cubes are non-infringing alternatives.  (*See* Flambeau's Motion to Strike, filed herewith).  ***Second***, Mr. Loetz explains that there are only eight options for using maximum contrasting colors on a puzzle cube: shades of each primary and secondary color, plus white and black.  (Ex. 16, Loetz Rep., ¶ 159).  In total, this means there are only 28 different combinations of six colors to maximize contrasting shades in the puzzle.  (*Id.*).  Mr. Loetz further explains that there are practical reasons for making one side white and another side either blue or purple.  (*Id.*, ¶¶ 159-161).  Taking these practical constraints into account, Mr. Loetz concludes there are only five different combinations of "***maximum*** contrasting colors" for the four remaining sides of a puzzle cube.  (*Id.*, ¶ 161).

The evidence cited by RBL does not address that maximum contrast is achieved by the combination described by Mr. Loetz, although Mr. Gottlieb concedes that maximum contrasting colors in a puzzle cube allow the puzzle to be solved faster. (Ex. 62, Gottlieb Dep. Tr., at 240:5-12).

260. There are more than five puzzle cube makers and sellers in the industry. (Ex. 16, Loetz Rep., ¶ 163).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

261. The number of possible 3x3 puzzle cube designs with maximum contrasting colors are fewer than the number of entities that wish to manufacture and/or sell puzzle cubes. (Ex. 16, Loetz Rep., ¶ 164).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 261. *See* Response to SMF ¶ 259.

**Defendant's Reply:**    *See* Defendant's Reply to Statement No. 259.

262. Colors appear more brilliantly when they are shown on a black background. (Ex. 16, Loetz Rep., ¶ 87).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 262. More specifically, the article cited by Mr. Loetz only mentions the color red shown on a black background and does not make a generalization about colors shown on a black background. Ex. 16, Loetz Rep., ¶ 87.

**Defendant's Reply:**    Mr. Loetz, based on his 23 years of experience in toy design, and having taught color theory at the college level, concluded that "colors appear more brilliantly when they are shown on a black background." (Ex. 16, Loetz Rep., ¶¶ 6-10, 87). Plaintiff has not challenged Mr. Loetz's opinions or

analysis and does not provide any factual evidence to dispute this statement.  The statement is thus admitted in its entirety.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

263.   Mr. Gottlieb did not know whether his proposed alternative designs could be solved as easily as a cube with the Rubik's Cube Design.  (Ex. 62, Gottlieb Dep. Tr., at 284:13-285:2).

**Plaintiff's Response:**    Disputed. Mr. Gottlieb was asked whether his proposed alternative designs could be solved as quickly, not easily, as a cube with the Rubik's Cube Design.

**Defendant's Reply:**    Mr. Gottlieb responded "I do not" to both of the following questions regarding his proposed alternative designs:  (a) "Do you know whether these cubes can be solved as easily as a cube with the Rubik's Cube design?" and (b) "Do you know whether any of these cubes can be solved *as quickly* as a cube with the Rubik's Cube design?"  (Ex. 62, Gottlieb Dep. Tr., at 284:13-285:6)

264.   Mr. Gottlieb did not know the cost of manufacturing any of his proposed alternative designs.  (Ex. 62, Gottlieb Dep. Tr., at 286:6-10).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

265.   Mr. Gottlieb did not know whether his proposed alternative designs could be used at WCA competitions.  (Ex. 62, Gottlieb Dep. Tr., at 288:4-12).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

266.   Mr. Gottlieb had "no comment" on whether RBL considered all 3x3 puzzle cubes, like

his alternative designs, infringing.  (Ex. 62, Gottlieb Dep. Tr., at 291:12-22).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 266. More specifically, Flambeau misrepresents Mr. Gottlieb's testimony. Mr. Gottlieb was asked the hypothetical, "If RBL claims all 3x3 puzzle cubes are infringing… Would it call into question whether these [alternative design] cubes that you've put in the chart on pages 11 and 12 report are actually alternative designs?" Mr. Gottlieb answered, "I have no comment on that… because it gets into a legal area and I don't want to go there, it's not part of my report." (Ex. 62, Gottlieb Dep. Tr., at 291:12-292:1).

> **Defendant's Reply:**    Mr. Gottlieb included several 3x3 puzzle cubes in his report as "alternative designs" to RBL's 3x3 Cube Design.  (Ex. 62, Gottlieb Dep. Tr., at 291:12-22).  Mr. Gottlieb had "no comment" when asked whether RBL considering all 3x3 puzzles infringing called into question whether the designs included in his report were actually alternative.  (Ex. 62, Gottlieb Dep. Tr., at 291:12-22).

## Manufacturing 3x3 Puzzle Cubes

267.    The initial manufacturing of the 3x3 Rubik's Cube created the 3x3 Cube Design at-issue in this case.  (Ex. 16, Loetz Rep., ¶¶ 168-169).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 267. More specifically, Mr. Loetz cannot possibly know and opine on the reasons for Mr. Rubik's design choices when Mr. Rubik invented the Rubik's Cube puzzle in 1974. (*See* Kremer Decl. ¶ 3).

> **Defendant's Reply:**    Statement No. 267 does not concern or describe "the reasons for Mr. Rubik's design choices."  Rather, Mr. Loetz concluded from his

23 years in the toy industry and the evidence before him, which included an RBL-produced document describing the application of stickers to the original Rubik's Cubes, that the 3x3 Cube Design was a result of that manufacturing process. (Ex. 16, Loetz Rep., ¶¶ 168-169). RBL does not proffer any evidence to the contrary.

*See also* Statement Nos. 268-274 regarding changes to the 3x3 Rubik's Cube.

268.  Initially, the base of the 3x3 Rubik's Cube was manufactured from black plastic. (Ex. 16, Loetz Rep., ¶ 168).

**Plaintiff's Response:**    Admit to the extent "manufactured" refers to manufacture in the U.S. See Ex. 78, RBL_002974 at RBL_002993.

**Defendant's Reply:**    Undisputed.

269.  Initially, the color patches of the 3x3 Rubik's Cube were applied with colored stickers. (Ex. 16, Loetz Rep., ¶ 168; Ex. 60, Riehl Dep. Tr., at 10:17-20, 172:22-24, 178:2-8, 178:19-179:2).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 269. More specifically, Mr. Loetz cannot possibly know and opine on how the original Rubik's Cube was manufactured. In fact, at one point, in 1980, the predecessor the to the 3x3 Rubik's Cube did not have colored stickers. The Hungarian toy manufacturer of the original 3x3 Rubik's Cube sold puzzle Rubik's Cubes with colors printed directly onto the black plastic base. *See* Ex. 78 RBL_002974 at RBL_002986.

**Defendant's Reply:**    RBL fails to raise a dispute. Ms. Riehl testified that the color patches of the 3x3 Rubik's Cube were initially applied with colored stickers. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 172:22-24, 178:2-8, 178:19-179:5). Mr. Simm's testified that the new 3x3 Rubik's Cube model, with the colored squares

made from plastic which are then inserted and glued into the black cubes, replaced the previous version—which had "adhesive squares" for the colors.  (Ex. 63, Simms Dep. Tr., at 85:18-87:6).  Moreover, Mr. Loetz cited an RBL-produced document describing the application of stickers to the original Rubik's Cubes. (Ex. 16, Loetz Rep., ¶¶ 168-169).

270.    When the colored stickers were applied to the 3x3 Rubik's Cube, they did not extend to the edges of the smaller cube segments for practical reasons, creating a black grid.  (Ex. 16, Loetz Rep., ¶ 168; Ex. 63, Simms Dep. Tr., at 15:17-20, 87:2-16).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 270. *See* Response to SMF ¶ 267.

> **Defendant's Reply:**    RBL fails to raise a dispute.  RBL's response to Statement Nos. 267 and 270 do not address the statements' facts and do not provide any evidence to the contrary.  RBL thus admits this statement in its entirety.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

271.    The 3x3 Rubik's Cube is no longer stickered and now uses colored tiles.  (Ex. 16, Loetz Rep., ¶ 168; Ex. 60, Riehl Dep. Tr., at 10:17-20, 172:22-24, 178:2-8, 178:19-179:2).

**Plaintiff's Response:**    Disputed. RBL currently sells a 3x3 "Retro Rubik's Cube" that has stickers. Ex. 154.

> **Defendant's Reply:**    Mr. Simm's testified that the new 3x3 Rubik's Cube model has colored squares made from plastic which are then inserted and glued into the black cubes.  (Ex. 63, Simms Dep. Tr., at 85:18-87:6).

272.    Manufacturing the base of a puzzle cube from a single color of plastic generates efficiencies in sourcing material, molding parts, and assembly.  (Ex. 16, Loetz Rep., ¶¶ 166-167; Ex. 61, Kremer Dep. Tr., at 12:9-20, 253:24-6, 254:9-12; *see also* Ex. 62,

Gottleib Dep. Tr., at 226:12-16, 228:1-5; Ex. 65, Cipolla Dep. Tr., at 74:6-20, 77:22-25, 81:2-8).

**Plaintiff's Response:**     Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 272. For example, Flambeau's expert, Mark Cipolla, testified that different types of plastics are used for toy products depending on the application. *See* Ex. 65, Cipolla Dep. Tr., at 52:22-25. However, he did not know what types of plastic are used for the base of 3x3 puzzle cubes and did not consider whether different types of plastic could have an effect on manufacturing costs and/or efficiencies. *See id.*, at 69:15-19; 82:10-17.

> **Defendant's Reply:**     RBL's corporate representative testified that "it's easier to have products being manufactured that are of the same shape and size" because "if you have commonality, you can – you can save money on the production tools." (Ex. 61, Kremer Dep. Tr., at 253:24-254:12).  Moreover, Flambeau's expert, Mr. Cipolla, testified that manufacturing the base of a puzzle cube from a single color of plastic generates efficiencies in sourcing material, molding parts, and assembly. (Ex. 65, Cipolla Dep. Tr., at 74:6-20, 77:22-25, 81:2-8).  RBL does not provide any affirmative evidence disputing this statement, including affirmative evidence that different plastic types would ***eliminate*** efficiencies in sourcing material, molding parts, and assembling.

273.   Black plastic is generally more readily available and cheaper than other colored plastic. (Ex. 65, Cipolla Dep. Tr., at 88:1-91:3).

**Plaintiff's Response:**     Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 273. For example, Flambeau's expert, Mark Cipolla, testified that different types of plastics are used for toy products depending on the

application. *See* Ex. 65, Cipolla Dep. Tr., at 52:22-25. However, he did not know what types of plastic are used for the base of 3x3 puzzle cubes and did not consider whether different types of plastic could have an effect on manufacturing costs and/or efficiencies. *See id.*, at 69:15-19; 82:10-17. Despite his testimony, Mr. Cipolla only considered one type of plastic in supporting his contention described that black plastic is generally more readily available and cheaper than other colored plastic. *See id.*, at 91:1-19.

> **Defendant's Reply:**     Mr. Cipolla testified that *in general* black is more readily available and cheaper that other colors of plastic because "black is typically the easiest and cheapest color to achieve in plastic because it can be achieved even with re-ground material." (Ex. 65, Cipolla Dep. Tr., at 88:1-89:16). Mr. Cipolla testified that his opinion applied widely to all plastics types, but that he chose one type of plastic—polypropylene—to give concrete pricing numbers for a plastic that Flambeau uses a lot. (Ex. 65, Cipolla Dep. Tr., at 88:1-91:3, 91:7-19). RBL does not introduce any affirmative evidence to contradict this supported statement. For example, even though RBL relies on "one type of plastic," RBL does not provide affirmative evidence that different types of plastic black would be more expensive or the same cost as colored plastic. RBL must provide factual evidence to dispute this statement and must do more than misdirect. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

274. Applying color to a puzzle cube with stickers is a cost-effective means of creating the external indicia of the puzzle. (Ex. 65, Cipolla Dep. Tr., at 76:9-77:9, 77:22-25, 94:16-22, 95:14-96:8).

**Plaintiff's Response:**     Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 274. Mr. Cipolla testified he does not have expertise in

the design and manufacture of stickers. Ex. 65, Cipolla Dep. Tr., at 80:18-20. Mr. Cipolla also testified that different stickers have different costs and did not perform a comparison of different sticker costs to applying color to a puzzle cube without stickers. *See id.*, at 78:1-80:20; 97:14-98:9.

> **Defendant's Reply:**      ***First***, RBL's reliance on "expertise in the design and manufacture of stickers" is not relevant to this statement—directed to cost-effectiveness of creating external indicia of the puzzle.  Mr. Cipolla testified that his opinion regarding stickers as a cost-effective means of creating the external indicia of the puzzle is based on his "experience of applying color to plastic objects." (Ex. 65, Cipolla Dep. Tr., at 76:9-77:9).   Mr. Cipolla does not have to have expertise in the design and manufacture of stickers to know what is more efficient and cost-effective when it comes to the ***application*** of stickers to plastic objects versus other means of coloring the plastic.  Moreover, RBL does not cite any affirmative evidence to dispute this statement or dispute Mr. Cipolla's statements regarding applying stickers to plastic objects.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

### Hindering Competition

275.    RBL's corporate representative testified that RBL believes *every* 3x3 puzzle cube infringes RBL's trademark rights—i.e., "is a Rubik's knock-off"—it is only a matter of degree.  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 289:19-22; *see also* Ex. 61, Kremer Dep. Tr., at 148:22-149:8; Ex. 62, Gottlieb Dep. Tr., at 291:12-22).

**Plaintiff's Response:**      Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 275. Ms. Riehl testified that not all 3x3 puzzle cube competitors of the Rubik's Cube are knock offs, but competitors that have 3x3 puzzle

designs that are too close to the Rubik's Design, such as the Duncan Quick Cube, are considered knock offs. Ex. 60, Riehl Dep. Tr., at 290:2-10. Mr. Kremer's testimony referred to protection of the grid feature of the Rubik's Design in the EU. Ex. 61, Kremer Dep. Tr., at 148:22-149:11. Mr. Gottlieb is not a corporate representative, but nonetheless provided several examples of 3x3 puzzle cubes that compete fairly with the Rubik's Cube and do not infringe the Rubik's Design. Ex. 181, Gottlieb Rep. at ¶ 30.

> **Defendant's Reply:**    RBL's corporate representative answered with an unqualified "Yes" in response to "In your mind, every twisty puzzle is a Rubik's knock-off.  It's only a matter of degree?"  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 289:19-22).  Moreover, RBL references third-party cubes.  RBL should not be allowed to claim now, after refusing to clarify the issue during discovery, that certain third-party cubes are non-infringing alternatives.  (*See* Flambeau's Motion to Strike, filed herewith).

276.    The 3x3 Cube Design is just one of a limited set of competitively viable 3x3 puzzle cube designs.  (Ex. 16, Loetz Rep., ¶¶ 152-164).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 276. There is a plethora of third-party 3x3 puzzle cubes that are distinct from the appearance of the Rubik's Design. See Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 181, Gottlieb Rep., at ¶ 30; Ex. 167, Gottlieb Dep. Tr. 170:23-173:24; see SMF ¶¶ 468-510. All of these third-party cubes are used and operate in the same way as the Rubik's Cube puzzle. SMF at ¶¶ 468-510. Further, Flambeau's expert Mr. Loetz acknowledged that a puzzle cube with *any* six colors that can be discerned from one another can be scrambled and solved. *See* SMF ¶ 510, Loetz Dep. Tr. 132:5-17.

> **Defendant's Reply:**    ***First***, RBL references third-party cubes.  RBL should

not be allowed to claim now, after refusing to clarify the issue during discovery, that certain third-party cubes are non-infringing alternatives. (*See* Flambeau's Motion to Strike, filed herewith). ***Second***, Mr. Loetz concluded that "[g]iven the purpose of the 3x3 puzzle cubes, there are not adequate alternatives designs to the 3x3 Cube Design." (Ex. 16, Loetz Rep., ¶¶ 152). Mr. Loetz explained that the maximum contrasting colors in the 3x3 Cube Design provide a competitive functional advantage in solving the puzzle and the WCA permits only colors on the puzzles for competitions. (*Id.*, ¶¶ 157-158). Mr. Loetz explained the limited number of color combinations that can be used to achieve maximum contrast for competitive advantage. (*Id.*, ¶¶ 159-164). RBL's response does not dispute these factors or dispute their competitive impact. RBL does not provide any evidence supporting that the third party cubes it mentions are ***competitively viable***.

277. Cubes with numbers and/or shapes as their external indicial are not eligible to be used at WCA competitions. (Ex. 16, Loetz Rep., ¶ 158).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 277. For example, the WCA regulations allow textured puzzles and puzzles with colored parts with patterns. *See* Ex. 9 at FLAMBEAU002488.

> **Defendant's Reply:**    WCA regulations allow textured puzzles and puzzles with colored parts with patterns ***as an exception*** for competitors with a "medically documented visual disability." (Ex. 9 at FLAMBEAU002488). RBL admitted that the external indicia of WCA approved puzzles must be colors, limited to "colored stickers, colored tiles, colored plastic, or painted/printed colors." (Statement No. 137). RBL admitted WCA Regulations require the puzzle to use a color scheme with one unique color per face in the solved state.

(Statement No. 141).   (*See also* Statement Nos. 135-144).

278.    If a puzzle cube maker's 3x3 puzzle cube was not eligible to be used at WCA competitions, the puzzle cube marker would not have the opportunity to promote its products and brand and goodwill throughout the world.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 241:13-17).

**Plaintiff's Response:**      Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 278. Mr. Kremer's testimony relates to RBL sponsorship of WCA competitions.

**Defendant's Reply:**      Mr. Kremer testified that if a puzzle maker's cube, like RBL cube, was not eligible for WCA competition, the company would lose the opportunity to promote its products and brand and goodwill throughout the world. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 241:13-17).  RBL does not cite any evidence that the exclusion from WCA would not have the same effects on other puzzle makers.

279.    Granting RBL a monopoly over the 3x3 Cube Design would put puzzle cube makers at a disadvantage and hinder competition in the industry.  (Ex. 16, Loetz Rep., ¶¶ 108-109).

**Plaintiff's Response:**      Disputed. *See* Response to SMF ¶ 276.

**Defendant's Reply:**      *See* Defendant's Reply to Statement No. 276.

### European Union Decisions

280.    In *Simba Toys GmbH & Co. KG v. Seven Towns Ltd.*, the Court of Justice of the European Union (First Chamber) considered whether the following "[t]hree-dimensional mark in the shape of a cube with surfaces having a grid structure" was invalid as functional:



(Ex. 59, Judgment of the Court, ¶¶ 1, 7-10; *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 83:4-23).

**Plaintiff's Response:**    Disputed. The Court of Justice of the European Union (First Chamber) considered whether the proper legal standard for functionality was applied. Ex. 59, Judgment of the Court, ¶¶ 14-18.

> **Defendant's Reply:**    The Court of Justice of the European Union (First Chamber) considered whether the following "[t]hree-dimensional mark in the shape of a cube with surfaces having a grid structure" was invalid as functional and ultimately found it was functional and not protectable as a trademark.  (Ex. 59, Judgment of the Court, ¶¶ 1, 7-10, 33-58).

281.    In a November 10, 2016 Judgment, the Court of Justice of the European Union (First Chamber) entered final judgment that the "[t]107ere-dimensional mark in the shape of a cube with surfaces having a grid structure" was not protectable as a trademark because it was functional.  (Ex. 59, Judgment of the Court, ¶¶ 33-58).

**Plaintiff's Response:**    Disputed. The Court of Justice of the European Union (First Chamber) found that the General Court infringed Article 7(1)(e)(ii) of Regulation No 40/94 and set aside the judgement of the General Court and annulled the decision of the Second Board of Appeal of the European Union Intellectual Property Office. Ex. 59,

Judgment of the Court, at FLAMBEAU000559.

> **Defendant's Reply:**    The Court of Justice of the European Union (First Chamber) considered whether the following "[t]hree-dimensional mark in the shape of a cube with surfaces having a grid structure" was invalid as functional and ultimately found it was functional and not protectable as a trademark.  (Ex. 59, Judgment of the Court, ¶¶ 1, 7-10, 33-58).

282.    In *Rubik's Brand Ltd. V. Simba Toys GmbH & Co. KG*, the European General Court (Eighth Chamber) considered whether the following "[t]hree-dimensional mark in the shape of a cube with surfaces having a grid structure" was invalid as functional:



(Ex. 45, Judgment of the General Court, ¶¶ 1-2).

**Plaintiff's Response:**    Admit to the extent "functional" refers to the definition of "functional" under the laws of the European Union.

> **Defendant's Reply:**    Undisputed.  Plaintiff's response does not provide any distinction between a "functional" design under the laws of the European Union and a "functional" design as defined by U.S. law.

283.    The European General Court reasoned the "black lines actually represent a physical

separation between the different small cubes, allowing a player to rotate each row of small cubes independently of each other in order to gather those small cubes, in the desired colour scheme, on the cube's six faces. Such a physical separation is necessary to rotate, vertically and horizontally, the different rows of small cubes by means of a mechanism located in the centre of the cube. Without such a physical separation, the cube would be nothing more than a solid block in which none of the individual elements could move independently of the others."  (Ex. 45, Judgment of the General Court, ¶ 86).

**Plaintiff's Response:**        Admit.

**Defendant's Reply:**        Undisputed.

284.    The European General Court reasoned "[T]he cube shape is inseparable, on the one hand, from the grid structure, which consists of the black lines that intersect on each of the faces of the cube and divide each of them into nine small cubes of equal size divided into rows of 3 x 3, and, on the other, from the function of the actual goods at issue, which is to rotate, horizontally and vertically, the rows of small cubes. In the light of those factors, the shape of the product is necessarily that of a cube, that is, a regular hexahedron."  (Ex. 45, Judgment of the General Court, ¶ 89).

**Plaintiff's Response:**        Admit.

**Defendant's Reply:**        Undisputed.

285.    The European General Court (Eighth Chamber) determined that the "[t]hree-dimensional mark in the shape of a cube with surfaces having a grid structure" was functional and not protectable as a trademark.  (Ex. 45, Judgment of the General Court, ¶ 87).

**Plaintiff's Response:**        Admit to the extent "functional and not protectable as a trademark" refers to the definitions of "functional" and "not protectable as a trademark" under the laws of the European Union."

**Defendant's Reply:**    Undisputed.  Plaintiff's response does not distinguish between "functional[ity]" or protectability under the laws of the European Union and "functional[ilty]" and protectability as defined by U.S. law

### No Actual Confusion

286.    RBL has no evidence of actual confusion (i.e., mistaken association) between the Duncan Quick Cube and the 3x3 Rubik's Cube.  (Ex. 67, RBL Interrog. Resp., No. 11; Ex. 61, Kremer Dep. Tr., at 12:9-20, 92:19-93:2, 141:2-142:5; Ex. 60, Riehl Dep. Tr., at 10:17-20, 266:13-18, 268:8-11).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

287.    RBL has no evidence of actual confusion (i.e., mistaken association) between the Duncan Quick Cube and RBL.  (Ex. 67, RBL Interrog. Resp., No. 11; Ex. 61, Kremer Dep. Tr., at 12:9-20, 92:19-93:2, 141:2-142:5; Ex. 60, Riehl Dep. Tr., at 10:17-20, 267:2-5).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

288.    RBL has no survey evidence that the Duncan Quick Cube causes confusion with the 3x3 Cube Design.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17; Ex. 62, Gottlieb Dep. Tr., at 142:21-143:4).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

289.    RBL has no survey evidence that the Duncan Quick Cube causes confusion with RBL. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17; Ex. 62, Gottlieb Dep. Tr., at 142:21-143:4).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**        Undisputed.

290.    Flambeau is aware of no actual confusion (i.e., mistaken association) between the Duncan Quick Cube and the Rubik's Cube.  (Ex. 1, Burke Decl., ¶ 27).

**Plaintiff's Response:**        Admit.

**Defendant's Reply:**        Undisputed.

291.    Flambeau is aware of no actual confusion (i.e., mistaken association) between the Duncan Quick Cube and RBL.  (Ex. 1, Burke Decl., ¶ 28).

**Plaintiff's Response:**        Admit.

**Defendant's Reply:**        Undisputed.

292.    Consumers are aware that there are many 3x3 puzzle cube makers and that not all 3x3 puzzle cubes originate or are authorized by RBL.  (Ex. 16, Loetz Rep., ¶ 205).

**Plaintiff's Response:**        Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 292. More specifically, the exhibit does not cite to a consumers' awareness of many 3x3 puzzle cube makers and does not support the statement consumers are aware the referenced 3x3 puzzle cubes do not originate or are authorized by RBL.

**Defendant's Reply:**        *First*, Mr. Loetz surveyed major U.S. toy retailers such as Amazon, Walmart, Toys R' Us, Target, and Kmart (which make up more than 85% of all retail toy sales) and "analyzed what the purchasing public would see if they were shopping for a 3x3 puzzle cube in the present day." (Ex. 16, Loetz Rep., ¶¶ 178-182).  Mr. Loetz concluded that consumers at each retailer "see a toy market saturated with non-Rubik's branded puzzle cubes in the 3x3 Cube Design configuration." (*Id.*, ¶¶ 182-187).  For example, a search on Amazon.com for "3x3 puzzle cube" returned hundreds of results with dozens of 3x3 cubes from

111

various manufacturers; and comments from the consuming public that showed they understood the cubes came from many different manufacturers, including Joyin, D-FantiX, QiYi, Suvevic, Roxenda, Joy Town, Dreampark, and Coogam. (*Id.*)  The same was true for searches on Walmart's, Target's, and Kmart's websites.  (*Id.*, ¶¶184-186).  ***Second***, RBL does not cite or offer any affirmative evidence to dispute this statement.  For example, RBL does not have any of its own evidence regarding consumer awareness and thus cannot rebut this statement. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

## Dissimilarities in Designs

293.   The overall impressions of RBL's 3x3 Cube Design and Flambeau's Duncan Quick Cube are different.  (*Ex. 16*, Loetz Rep., ¶¶ 190-194).

**Plaintiff's Response:**   Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 293. Mr. Loetz states his opinion on alleged differences in features between the Duncan Quick Cube and Rubik's Cube but does not comment on the overall impressions of the cubes.

**Defendant's Reply:**   ***First****,* Mr. Loetz describes in detail the collective differences between the two cubes' designs—i.e. their overall impressions.  Mr. Loetz describes how the two cubes' bases are different colors and how the use of opposite colors suggests no sponsorship or affiliation.  (Ex. 16, Loetz Rep., ¶ 191).  Mr. Loetz also describes how the Quick Cube cubies and color patches are not uniform and some cubies are round compared to the uniform squares on RBL's 3x3 Cube Design.  (*Id.*, ¶¶ 192-193).  Mr. Loetz describes the differences in the shades of colors used between the two cubes.  (*Id*., ¶ 194).  Mr. Loetz then concludes that each packages' prominent use of house marks gives the impression

112

of different sources. (*Id.*, ¶¶ 195-196).    ***Second***, RBL does not provide any affirmative evidence to dispute this statement.  RBL does not provide evidence that the overall impressions of the two cubes are ***the same or similar***.  RBL fails to dispute this statement and it is therefore admitted. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

294.  RBL's 3x3 Cube Design specifies a black cube, and every single "core puzzle cube" that RBL offers in its product book has black-edges and no "core puzzle cube" that RBL offers in its product book has white edges.  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 137:13-138:11; Ex. 69, RBL Req. Ad. Resp., No. 7).

**Plaintiff's Response:**    Admit to the extent SMF ¶ 294 is referring to RBL's product offerings in the product book that were available when the product book was made. Ex. 60, Riehl Dep. Tr., at 127:7-128:7. Dispute that the citation to the Ex. 69 supports Flambeau's statement in SMF ¶ 294.

> **Defendant's Reply:**    Plaintiff does not provide any evidence to dispute Defendant's statement either historically or currently.  Plaintiff did not cite any evidence that RBL's "core puzzle cubes" are different and/or offer anything other than black-edges.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).  Moreover, Plaintiff did not supplement its response to Flambeau's Request for Admission No. 7.

295.  The Duncan Quick Cube is a white cube.  (Ex. 1, Burke Decl., ¶ 13; Ex. 16, Loetz Rep., ¶ 191; Ex. 60, Riehl Dep. Tr., at 10:17-20, 264:7-14).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

296.  In branding, white and black are perceived as opposites.  (Ex. 16, Loetz Rep., ¶ 191)

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 296. More specifically, Mr. Loetz provides no support for his opinion, does not explain how he reached his conclusion, does not explain how white and black are perceived as opposites in branding, and does not identify the target audience for the alleged perception.

> **Defendant's Reply:**    ***First***, Mr. Loetz is an expert on color theory on toy design and teaches color theory at the college level.  Based on that experience and a review of the puzzle cubes at-issue, he opined "white and black are often perceived as opposites in branding" and the use of opposite colors suggests no sponsorship or affiliation between two products.  (Ex. 16, Loetz Rep., ¶ 191).  Mr. Loetz further testified that "having a white base to the cube…makes it visually significantly different than the Rubik's 3x3 design."  (Ex. 164, Loetz Dep. Tr., at 171:10-16).  ***Second***, RBL has not moved to exclude or strike any of Mr. Loetz's opinions or testimony.  *See Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011) (granting partial summary judgment and holding defendant's denials in response to plaintiff's statement of undisputed facts did not create genuine issue of fact where defendant did not move to strike witness testimony).  RBL had a chance during Mr. Loetz's deposition to follow up on Mr. Loetz's opinion regarding the differences between white and black.  RBL cannot complain that "Mr. Loetz provides no support for his opinion."  Moreover, RBL does not provide any factual evidence to dispute this statement and the statement is thus admitted in its entirety.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).,

297.    A white cube is unlikely to suggest affiliation with a design using a black cube.  (Ex. 16,

Loetz Rep., ¶ 191).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support

Flambeau's statement in SMF ¶ 297. *See* Response to SMF ¶ 296.

    **Defendant's Reply:**    *See* Defendant's Reply to Statement No. 296.

298. RBL's 3x3 Cube Design specifies uniform, square-shaped smaller cube segments. (Ex.
37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-
24; Ex. 69, RBL Req. Ad. Resp., No. 9).

**Plaintiff's Response:**    Disputed. The RUBIK'S Design trademark registration

describes the mark as "consist[ing] of a black cube having nine color patches on each of

its six faces with the color patches on each face being the same and consisting of the

colors red, white, blue, green, yellow and orange" Ex. 37, '094 Registration.

    **Defendant's Reply:**    RBL's registration pictures uniform, square-shaped

    smaller cube segments, and RBL does not state otherwise. (Ex. 37, '094

    Registration). RBL's corporate representative testified that RBL's 3x3 Cube

    Design has always had individual cubies with uniform square face and equal

    sides. (Ex. 60, Riehl Dep. Tr., at 70:4-72:6)

299. The Duncan Quick Cube's smaller segments are not uniformly square. (Ex. 1, Burke
Decl., ¶ 14; Ex. 16, Loetz Rep., ¶ 192; Ex. 60, Riehl Dep. Tr., at 10:17-20, 264:25-
265:2).

**Plaintiff's Response:**    Disputed. *See* Ex. 3, Duncan Quick Cube, at

FLAMBEAU001444.

    **Defendant's Reply:**    In response to the Duncan Quick Cube "corner cubbies

    are not perfectly square are they?" RBL's corporate representative testified "They

    are not, no." (Ex. 60, Riehl Dep. Tr., at 10:17-20, 264:25-265:2). Ms. Riehl

went on to testify that the rounded edges of several pieces on the Quick Cube meant not all cubies were perfectly square and some edges were shorter than others. (Ex. 60, Riehl Dep. Tr., at 265:3-12). Plaintiff's response does not cite any evidence to the contrary.

300. The inner corners of the Duncan Quick Cube's smaller segments are cut away for quicker turning, resulting in four diamond shapes holes around the center segment of each face. (Ex. 1, Burke Decl., ¶ 14; Ex. 16, Loetz Rep., ¶ 192).

**Plaintiff's Response:**    Disputed. *See* Ex. 3, Duncan Quick Cube, at FLAMBEAU001444.

**Defendant's Reply:**    Ms. Riehl testified that the rounded edges of several pieces on the Quick Cube meant not all cubies were perfectly square and some edges were shorter than others. (Ex. 60, Riehl Dep. Tr., at 265:3-12). Mr. Burke and Mr. Loetz had testified that inner corners being cut results in quicker turning. (Ex. 1, Burke Decl., ¶ 14; Ex. 16, Loetz Rep., ¶ 192). Plaintiff does not cite any evidence to the contrary.

301. RBL's 3x3 Cube Design specifies uniform, square-shaped color patches. (Ex. 37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24).

**Plaintiff's Response:**    Disputed. The RUBIK'S Design trademark registration describes the mark as "consist[ing] of a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow and orange" Ex. 37, '094 Registration.

**Defendant's Reply:**    RBL's registration pictures uniform, square-shaped smaller cube segments, and RBL does not state otherwise. (Ex. 37, '094 Registration). RBL's corporate representative testified that RBL's 3x3 Cube

116

Design has always had individual cubies with uniform square face and equal

sides.  (Ex. 60, Riehl Dep. Tr., at 70:4-72:6).

302.  The color patches on the Duncan Quick Cube are not uniformly square.  (Ex. 1, Burke

Decl., ¶ 14; Ex. 16, Loetz Rep., ¶ 193).

**Plaintiff's Response:**    *See* Ex. 3, Duncan Quick Cube, at

FLAMBEAU001444.

> **Defendant's Reply:**    In response to the Duncan Quick Cube "corner cubbies
>
> are not perfectly square are they?" RBL's corporate representative testified "They
>
> are not, no."  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 264:25-265:2).  Ms. Riehl
>
> went on to testify that the rounded edges of several pieces on the Quick Cube
>
> meant not all cubies were perfectly square and some edges were shorter than
>
> otehrs.  (Ex. 60, Riehl Dep. Tr., at 265:3-12).  Plaintiff's response does not cite
>
> any evidence to the contrary.

303.  The inner corners of the color patches on the Duncan Quick Cube and are cut away.  (Ex.

1, Burke Decl., ¶ 14).

**Plaintiff's Response:**    Disputed. See Ex. 3, Duncan Quick Cube, at

FLAMBEAU001444.

> **Defendant's Reply:**    RBL's corporate representative, Ms. Riehl, testified that
>
> the rounded edges of several pieces on the Quick Cube meant not all cubies were
>
> perfectly square and some edges were shorter than others.  (Ex. 60, Riehl Dep.
>
> Tr., at 265:3-12).  Mr. Burke and Mr. Loetz had testified that inner corners being
>
> cut away results in quicker turning.  (Ex. 1, Burke Decl., ¶ 14; Ex. 16, Loetz Rep.,
>
> ¶ 192).  Plaintiff does not cited any evidence to the contrary.

304.  RBL's 3x3 Cube Design specifies color patches of three traditional primary colors—red

blue, and yellow, two traditional secondary colors—green and orange, and white. (Ex. 37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24).

**Plaintiff's Response:**     Disputed. The RUBIK'S Design trademark registration describes the mark as "consist[ing] of a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow and orange" Ex. 37, '094 Registration.

> **Defendant's Reply:**     RBL's corporate representative, Ms. Riehl, testified that RBL's 3x3 Cube Design has all three primary colors (red, blue, and yellow) and two of the three secondary colors. (Ex. 60, Riehl Dep. Tr., at 311:2-18). Those are the same colors specified in RBL's registration. (Ex. 37, '094 Registration).

305.     The Quick Cube's patches use a bright, fluorescent color palette. (Ex. 1, Burke Decl., ¶ 13; Ex. 16, Loetz Rep., ¶ 194; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 265:16-266:12).

**Plaintiff's Response:**     Disputed. *See* Response to SMF ¶ 187.

> **Defendant's Reply:**     The Duncan Quick Cube visibly has bright, fluorescent color patches. (Ex. 6, Quick Cubes; Ex. 7, Quick Cube 3x3; Ex. 1, Burke Decl., ¶ 13; Ex. 3, Quick Cube & Packaging). Moreover, RBL's corporate representative, Ms. Riehl, agreed that the colors in the Quick Cube are a different shade of color used in RBL's 3x3 Cube Design. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 265:16-266:12).

306.     As registered, the 3x3 Cube Design requires a certain orientation to these colors, with the white face adjacent to the yellow and orange faces and the red face adjacent to the blue and green faces. (Ex. 37, '094 Registration; Ex. 31, '308 Application, at

FLAMBEAU000040, FLAMBEAU000253-257; Ex. 16, Loetz Rep., ¶ 39; Ex. 61, Kremer Dep. Tr., at 12:9-20, 57:24-58:3, 58:7, 58:12-59:3, 59:12-19).

**Plaintiff's Response:**    Disputed. The '094 Registration does not describe the orientation of colors on the cube. Ex. 37, '094 Registration.

> **Defendant's Reply:**    The "3x3 Cube Design" is defined herein at Statement No. 3.  RBL's registration states the design drawing is lined for colors.  (Ex. 37, '094 Registration).  The specimen submitted to obtain the registration corresponded to the lined drawing, and showed white face adjacent to the yellow and orange faces and the red face adjacent to the blue and green faces, as RBL admits.  (Ex. 31, '308 Application, at FLAMBEAU000040, FLAMBEAU000253-257).

307.    The white face of the Duncan Quick Cube is opposite the yellow face, which is not the case in the 3x3 Cube Design, as registered.  (Ex. 1, Burke Decl., ¶ 13; Ex. 16, Loetz Rep., ¶ 39).

**Plaintiff's Response:**    Admit that the white face of the Duncan Quick Cube is opposite the yellow face, but dispute the remaining statements in SMF ¶ 307. *See* Response to SMF ¶ 306.

> **Defendant's Reply:**    *See* Defendant's Reply to Statement No. 306.

**Use of House Marks**

308.    Both parties use their house marks on their respective products as source identifiers:

| 3x3 Rubik's Cube | Duncan Quick Cube |
|---|---|
|  | |
| (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:18-20, 267:22-268:7, 269:22-270:10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 76:12-18, 76:25-77:15, 111:10-16, 126:19-22, 141:13-25; Ex. 16, Loetz Rep., ¶¶ 34, 190; Ex. 62, Gottlieb Dep. Tr., at 22:2-12, 22:22-23:4). | (Ex. 1, Burke Decl., ¶¶ 13, 16; Ex. 61, Kremer Dep. Tr., at 12:9-20, 40:10-41:3, 48:10-49:2; Ex. 60, Riehl Dep. Tr., at 10:17-20, 262:8-12, 263:18-25, 270:14-25; Ex. 16, Loetz Rep., ¶ 190; Ex. 62, Gottlieb Dep. Tr., at 24:22-25:5). |

      **Plaintiff's Response:**     Admit.

         **Defendant's Reply:**     Undisputed.

309.    Both parties use their house marks on their respective products' packaging as source

      identifiers:

| 3x3 Rubik's Cube | Duncan Quick Cube |
|---|---|
|  |  |
| (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:21-24, 265:17-266:17, 268:8-10, 268:16-23, 269:19-21, 270:6-13; Ex. 60, Riehl Dep. Tr., at 10:17-20, 79:16-21, 81:9-14, 81:25-82:4, 111:17-112:2, 138:16-17, 138:21-139:14; Ex. 16, Loetz Rep., ¶¶ 34, 195; Ex. 62, Gottlieb Dep. Tr., at 22:2-12, 22:22-23:4). | (Ex. 1, Burke Decl., ¶ 17; Ex. 3, Quick Cube & Packaging; Ex. 4, Duncan Quick Cube 3902QC; Ex. 5, Duncan Quick Cube 3901QC; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 262:22-263:7, 271:2-3, 271:8-9; Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:14-17; Ex. 16, Loetz Rep., ¶ 195; Ex. 62, Gottlieb Dep. Tr., at 24:22-25:5). |

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**     Undisputed.

### Good Faith & Advice of Counsel

310.    Prior to launching the Duncan Quick Cube in the U.S., Flambeau sought and received advice on how to avoid potential IP risks.  (Ex. 1, Burke Decl., ¶ 15; Ex. 10, Berson Decl., ¶¶ 6-10).

**Plaintiff's Response:**     Disputed. *See* SMF ¶¶ 446-66.

**Defendant's Reply:**     *See* Defendant's replies to Statement Nos. 446-66.

RBL has not moved to strike or challenge Attorney Berson's opinions or

testimony and responses to statements of material facts are insufficient to make

such a challenge.  To the extent RBL believes that Flambeau's proffered

testimony "was not based on personal knowledge or is otherwise not competent,

the remedy is a motion to strike; failure to do so waives any objection to that

evidence."  *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011

WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011) (granting partial summary judgment

and holding defendant's denials in response to plaintiff's statement of undisputed

facts did not create genuine issue of fact where defendant did not move to strike

witness testimony).  In sum, Attorney Berson has nearly 30 years prosecuting

both trademarks and patents.  (Ex. 10, Berson Decl., ¶¶ 2-3; Ex. 200, Berson Dep.

Tr. at 8:2-4, 8:13-16, 11:22-12:9, 13:4-17, 15:9-16:6, 18:2-15, 19:9-11).   RBL

does not dispute that prior to sale of the Quick Cube Flambeau sought Attorney

Berson's legal opinion regarding whether the Quick Cube design infringed any

intellectual property owned by RBL.  (*See* Statement Nos. 452-55; Ex. 10, Berson

Decl., ¶¶ 8-9).  Attorney Berson, at Flambeau's request, rendered a legal opinion

regarding potential patent and trademark infringement of the Quick Cube design.

(Ex. 10, Berson Decl., ¶¶ 6-10).

311.   Counsel informed Flambeau that the Duncan Quick Cube appeared conventional, that it was well known in the field that Mr. Rubik's original patents on the conventional 3x3 puzzle cube had expired, and that Flambeau could avoid patent infringement by practicing what was disclosed in the expired patents.  (Ex. 10, Berson Decl., ¶ 7; Ex. 11, 5/28/15 Patent Opinion).

**Plaintiff's Response:**     Admit.

**Defendant's Reply:**    Undisputed.

312.    Counsel informed Flambeau that the '094 Registration specified a black cube and thus Flambeau could avoid infringement with a white cube.  (Ex. 10, Berson Decl., ¶¶ 8-9; Ex. 12, 1/28/16 Trademark Opinion; Ex. 13, 2/1/2016 Trademark Opinion).

**Plaintiff's Response:**    Disputed. The citations to the exhibits do not support Flambeau's statement in SMF ¶ 312. *See* SMF ¶¶ 446-66. Further, in Ex. 12, Mr. Berson provides his opinion regarding the packaging for the Duncan Quick Cube and not the design of the Duncan Quick Cube itself.

**Defendant's Reply:**    Attorney Berson's 1/28/16 Trademark Opinion (Ex. 12) speaks for itself—Attorney Berson's opinion in that email was that RBL's registered trademarks asserted in pending lawsuits "cover black CUBES with sides having certain attributes" and the trademark does not extend to other representation of cubes.  (Ex. 12, at FLAMBEAU001085).  Moreover, Attorney Berson testified, in response to questioning on his trademark opinions or analysis delivered to Flambeau, that regarding the scope of RBL's trademark registration, it was his opinion that "to the extent that anything in that registration would be viewed as distinctive, it would be, in the words of the applicant, that the cube was black; and, indeed, that, I think described cubes sold then and now by Rubik as black cubes. In fact, the cubes are black."  (Ex. 200, Berson Dep. Tr., at 89:24-90:8; *See also* Ex. 10, Berson Decl., ¶¶ 6-10).

313.    Counsel informed Flambeau that the European Court of Justice found RBL's registration for 3x3 puzzle cube design functional in the European Union.  (Ex. 10, Berson Decl., ¶ 10; Ex. 14, 11/11/2016 Trademark Opinion).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**      Undisputed.

## Genericness of the 3x3 Cube Design

314.  Mr. Loetz conducted a review of the 3x3 puzzle cube market and concluded that the 3x3 Cube Design lacks distinctiveness because it no longer indicates to the purchasing public that a puzzle cube bearing that design is sourced from any one particular manufacturer or seller.  (Ex. 16, Loetz Rep., ¶¶ 176-187).

**Plaintiff's Response:**      Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 314. More specifically, Mr. Loetz does not provide any evidence regarding a lack of distinctiveness for the Rubik's Design or the views of the purchasing public.

**Defendant's Reply:**      *First*, RBL has not moved to strike or challenge Mr. Loetz's opinions or testimony and responses to statements of material facts are insufficient to make such a challenge.  To the extent RBL believes that Flambeau's proffered testimony "was not based on personal knowledge or is otherwise not competent, the remedy is a motion to strike; failure to do so waives any objection to that evidence." *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936 KMW, 2011 WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011) (granting partial summary judgment and holding defendant's denials in response to plaintiff's statement of undisputed facts did not create genuine issue of fact where defendant did not move to strike witness testimony).  *Second*, Mr. Loetz surveyed major U.S. toy retailers such as Amazon, Walmart, Toys R' Us, Target, and Kmart (which make up more than 85% of all retail toy sales) and "analyzed what the purchasing public would see if they were shopping for a 3x3 puzzle cube in the present day." (Ex. 16, Loetz Rep., ¶¶ 178-182).  Mr. Loetz concluded that

consumers at each retailer "see a toy market saturated with non-Rubik's branded

puzzle cubes in the 3x3 Cube Design configuration." (*Id.*, ¶¶ 182-187). For

example, a search on Amazon.com for "3x3 puzzle cube" returned hundreds of

results with dozens of 3x3 cubes from various manufacturers, including "cubes

branded with Joyin, D-FantiX, QiYi, Suvevic, Roxenda, Joy Town, Dreampark,

and Coogam. (*Id.*, ¶ 183). The first page of the Amazon search results did not

feature any Rubik's-branded 3x3 puzzle cube at all. (*Id.*, ¶ 183). The same was

true for searches on Walmart's, Target's, and Kmart's websites. (*Id.*, ¶¶184-186).

From these results Mr. Loetz concluded "[b]ecause of this market saturation, the

3x3 Cube Design has come to indicate a generic 3x3 puzzle cube to today's U.S.

toy consumers, not necessarily a 3x3 puzzle cube originating with RBL or sold

exclusively or even primarily under the Rubik's brand." (*Id.*, ¶ 187).

315.    There are dozens of different non-Rubik's 3x3 puzzle cubes available for purchase in the

U.S. (Ex. 16, Loetz Rep., ¶¶ 183-186 & Appendix 7; Ex. 61, Kremer Dep. Tr., at 12:9-

20, 250:5-15; *see also* Ex. 62, Gottlieb Dep. Tr., at 65:20-66:5 (Mr. Gottlieb "wouldn't

know" how many brands or models of speed cubes are available on the market)).

    **Plaintiff's Response:**    Admit.

        **Defendant's Reply:**    Undisputed.

316.    There are dozens of different non-Rubik's 3x3 puzzle cubes using the 3x3 Cube Design

available for purchase in the U.S. (Ex. 16, Loetz Rep., ¶¶ 183-186 & Appendix 7; Ex.

61, Kremer Dep. Tr., at 12:9-20, 250:5-15; *see also* Ex. 62, Gottlieb Dep. Tr., at 65:20-

66:5 (Mr. Gottlieb "wouldn't know" how many brands or models of speed cubes are

available on the market)).

    **Plaintiff's Response:**    Admit to the extent "using" refers to unauthorized use of the

Rubik's Design.

> **Defendant's Reply:**    Undisputed. The "3x3 Cube Design" is defined by
>
> Defendant at Statement No 3—to which Plaintiff admitted.

317. The 3x3 Cube indicates to the purchasing public that the product is a generic 3x3 puzzle

cube, not any particular brand of cube. (Ex. 16, Loetz Rep., ¶¶ 176, 182, 187).

**Plaintiff's Response:**    Disputed. RBL expends tremendous resources in the United

States and throughout the world to enforce and protect its intellectual property rights,

including those in and to the Rubik's Design. Kremer Decl. ¶¶12-18. These enforcement

efforts have included instituting federal litigations, cease and desist letters, registration of

the Rubik's Design with the U.S. Customs and Border Protection and engagement of a

company called Yellow Brand Protection. *Id. See* SMF ¶ 430.

> **Defendant's Reply:**    Plaintiff's response does not dispute the allegations
>
> made in Statement No. 317. Nor does Plaintiff provide any factual evidence to
>
> dispute this statement in and of itself and the statement is thus admitted in its
>
> entirety. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d))).
>
> Moreover, contrary to Mr. Kremer's declaration, RBL has knowingly *allowed*
>
> non-RBL puzzle cubes bearing the 3x3 Cube Design to persist in the market. (Ex.
>
> 203, Agreement, § 2.b; Ex. 207, The Cubicle).

318. RBL's corporate representative represented that over half of WCA competitors use non-

RBL branded 3x3 puzzle cubes. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 230:7-231:2,

257:18-258:14).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

**Different Play Value**

319.    Flambeau's Quick Cube is designed for speed solving.  (Ex. 1, Burke Decl., ¶¶ 10-12, 14; Ex. 16, Loetz Rep., ¶ 197).

**Plaintiff's Response:**    Disputed. According to an internal Flambeau document, dated June 15, 2015, Flambeau sought to develop a product with the "same overall look and size as Rubik's Cube." Ex. 161 at FLAMBEAU001091. SMF ¶¶ 380-81.

> **Defendant's Reply:**    *First*, Mr. Burke testified that Flambeau sought to create a DUNCAN-branded 3x3 puzzle cube for speed cubing and thus named the puzzle the "Quick Cube" early in development.  (Ex. 1, Burke Decl., ¶ 10; Ex. 197, 8/16/18 Burke Dep. Tr., at 61:6-62:10, 63:24-64:4, 64:20-23).  Mr. Burke testified they desired a cube for speed cubing prior to creating the Basis for Interest, which is why the Basis for Interest (Ex. 161) includes the name "Quick Cube".  (Ex. 197, 8/16/18 Burke Dep. Tr., at 64:20-23; Ex. 161).  Flambeau chose the design that had the smoothest and quickest operation.  (Ex. 1, Burke Decl., ¶ 10).  *Second*, Plaintiff's response does not provide any evidence to dispute that the design of Flambeau's Quick Cube is for speed solving.  RBL's response is a red herring.  (*See also* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

320.    The inner corners of the Quick Cube's smaller segments are cut-away so that the segments can turn quickly and easily.  (Ex. 1, Burke Decl., ¶ 14; Ex. 16, Loetz Rep., ¶ 197; *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 218:9-12).

**Plaintiff's Response:**    Disputed. *See* Response to SMF ¶ 300.

> **Defendant's Reply:**    *See* Defendant's Reply to Statement No. 300.

321.    Puzzle cubes that bear the 3x3 Cube Design, like the 3x3 Rubik's Cube, have uniform

square segments that catch on each other when the puzzle is twisted and turned.  (Ex. 16, Loetz Rep., ¶¶ 197-98).

**Plaintiff's Response:**    Disputed. The Rubik's Speed Cube has the exact same Rubik's Design as the classic 3x3 Rubik's Cube, but is faster because the inner mechanism of the Rubik's Speed Cube has a strong and stable core and lubricating tracks. Ex. 190 at FLAMBEAU002579-FLAMBEAU002581; *see also* Response to SMF ¶ 189.

> **Defendant's Reply:**    *First*, Plaintiff does not provide any evidence to dispute the actual statement—puzzle cubes with uniform square segments catch on each other when the puzzle is twisted and turned.  Plaintiff's response, referencing the Rubik's Speed Cube, does not dispute that uniform square segments catch on each other and does not proffer evidence that the Rubik's Speed Cube's square segments do not catch on each other.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).  *Second*, Mr. Kremer testified that rounding the cubies' edges allow the cube to be solved faster.  (Ex. 61, Kremer Dep. Tr., at 218:9-12).  *Third*, Mr. Loetz, an expert with over 23 years in the toy industry, after playing with both puzzle cubes concluded that the "Duncan Quick Cube turns more easily and quickly, while the Rubik's 3x3 Cube feels rougher and catches at times."  (Ex. 16, Loetz Rep., ¶¶ 197-198).  Mr. Loetz also played with Rubik's Speed Cube and concluded it still felt different than the Duncan Quick Cube's movement.  (*Id.*, ¶ 199).

322.    The Duncan Quick Cube turns more smoothly, quickly, and easily than puzzle cubes that bear the 3x3 Cube Design, like the 3x3 Rubik's Cube.  (Ex. 16, Loetz Rep., ¶¶ 197-98).

**Plaintiff's Response:**    Disputed. *See* Response to SMF ¶¶ 189, 321.

> **Defendant's Reply:**    *First*, Plaintiff does not provide any evidence to dispute

the actual statement.  (*See* Statements Nos. 189, 321);  Plaintiff has yet to provide

any evidence to dispute that the Duncan's Quick Cube's rounded corners allow it

to turn more smoothly, quickly, and easily than cubes with the 3x3 Cube Design.

(*See* Statements Nos. 189, 321).  This statement is thus admitted.  (*See* J.

Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).  ***Second***, Mr.

Kremer testified that rounding the cubies' edges allow the cube to be solved

faster.  (Ex. 61, Kremer Dep. Tr., at 218:9-12).  ***Third***, Mr. Loetz, an expert with

over 23 years in the toy industry, after playing with both puzzle cubes concluded

that the "Duncan Quick Cube turns more easily and quickly, while the Rubik's

3x3 Cube feels rougher and catches at times."  (Ex. 16, Loetz Rep., ¶¶ 197-198).

Mr. Loetz also played with Rubik's Speed Cube and concluded it still felt

different to the Duncan Quick Cube's movement.  (*Id.*, ¶ 199).  Plaintiff has not

provided any evidence to contradict Mr. Loetz's conclusions.

### Different Customers

323.  RBL does not sell puzzle cubes directly to retailers.   (Ex. 60, Riehl Dep. Tr., at 10:17-20,

33:23-34:16, 50:12-51:12, 152:19-153:2).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

324.  RBL licenses its alleged trademark rights, including the 3x3 Cube Design, to puzzle cube

manufacturers for a royalty.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 15:9-13, 163:7-12,

166:25-167:13, 170:12-24, 171:4, 171:10-14, 171:20-25, 172:6-10; Ex. 60, Riehl Dep.

Tr., at 10:17-20, 49:10-18, 50:22-51:9).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

325.    RBL's licensees include large manufacturers, like Hasbro.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:25-136:5; Ex. 60, Riehl Dep. Tr., at 10:17-20, 33:23-34:16, 50:12-51:12, 161:11-22).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

326.    Flambeau sells its Quick Cubes directly to retailers.  (Ex. 1, Burke Decl., ¶ 24).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

327.    Flambeau's customers include large retailers, like Target and Staples.  (Ex. 1, Burke Decl., ¶ 24).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

### Sophistication of Customers

328.    Flambeau's retail customers are sophisticated.  (Ex. 1, Burke Decl., ¶ 25; Ex. 16, Loetz Rep., ¶ 220-203).

**Plaintiff's Response:**    Admit.

> **Defendant's Reply:**    Undisputed.

329.    Retailers of the Duncan Quick Cube have dedicated purchasing departments with individuals highly specialized in and knowledgeable regarding purchasing products for re-sale.  (Ex. 1, Burke Decl., ¶ 25; Ex. 16, Loetz Rep., ¶ 201; *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 136:9-25; Ex. 62, Gottlieb Dep. Tr., at 149:5-13, 149:18-151:25).

**Plaintiff's Response:**    Admit that retailers have sophisticated people in their purchasing department and purchase products as a part of their job duties, but dispute the remaining statements in SMF ¶ 329. Ex. 61, Kremer Dep. Tr., at 135:25-136:25; Ex. 62,

Gottlieb Dep. Tr., at 150:20-151:17.

> **Defendant's Reply:**    RBL has admitted that large retailers, like Target and Staples, purchase Flambeau's Quick Cube for resale.  (Statement No. 327).  RBL now admits these large retailers have sophisticated people in their purchasing departments.  RBL's corporate representatives testified that the purchasing individuals at these large retailers are sophisticated when it comes to purchasing products for resale at the retailer.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 136:9-25; Ex. 62, Gottlieb Dep. Tr., at 149:5-13, 149:18-151:25).  Specifically, Mr. Gotlieb testified that these purchasers are specialized in certain narrow product categories within toys, for example puzzles.  (Ex. 62, Gottlieb Dep. Tr., at 149:5-13, 149:18-151:25).

330.    Individuals in the retailers' purchasing departments are typically buying large, bulk orders, so they exercise a high degree of care when reviewing products and making purchases.  (Ex. 1, Burke Decl., ¶ 26; Ex. 16, Loetz Rep., ¶ 202; Ex. 62, Gottlieb Dep. Tr., at 149:5-13, 149:18-151:25).

**Plaintiff's Response:**    Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 330. The citations do not support retailer buying trends or motivations regarding products they decide to purchase.

> **Defendant's Reply:**    Mr. Loetz concluded that U.S. retailers purchasing the Duncan Quick Cube and Rubik's 3x3 Cube are sophisticated and have purchasing departments with representatives dedicated to sourcing and purchasing products at large quantities ("in bulk").  (Ex. 16, Loetz Rep., ¶ 202).  Mr. Burke likewise stated large "retailers' purchasing departments are typically buying large, bulk orders of toys, so they exercise a high degree of care when reviewing products

and making purchases." (Ex. 1, Burke Decl., ¶ 26). Plaintiff does not provide any evidence to dispute these statements and thus Statement No. 330 is admitted in its entirety. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

331.    Flambeau's and its customers' purchasing agreements are arms-length deals reached through negotiation where each side is familiar with the other and does due diligence before entering into the formal arrangement. (Ex. 1, Burke Decl., ¶ 26; Ex. 16, Loetz Rep., ¶ 203; Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:2-12).

**Plaintiff's Response:**    Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 331. The citations do not include supporting evidence regarding the negotiations or due diligence of Flambeau's customers.

**Defendant's Reply:**    In referring to "retailers of the Duncan Quick Cube," Mr. Burke stated these "retailers' purchasing departments are typically buying large, bulk orders of toys, so they exercise a high degree of care when reviewing products and making purchases." (Ex. 1, Burke Decl., ¶¶ 25-26). According to Mr. Burke, "[t]hese are arms-length deals reached through negotiation. Each side is familiar with the other and does due diligence before entering into the formal agreement." (*Id.*). Mr. Loetz likewise concluded that "most if not all U.S. retailers have established relationships with the companies that provide their products. So, representatives are unlikely to be confused about any particular product's source." (Ex. 16, Loetz Report, ¶ 203). Plaintiff does not provide any evidence to dispute this statement and thus Statement No. 330 is admitted in its entirety. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).

332.    RBL concedes that retailers, like those that buy the 3x3 Rubik's Cube and the Duncan

Quick Cube, are knowledgeable about the products they purchase.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 136:9-15, 136:18-137:12; Ex. 60, Riehl Dep. Tr., at 10:17-20, 153:17-24, 155:6-12, 158:7-159:8).

**Plaintiff's Response:**    Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 332. See Response to SMF ¶ 329. The cited deposition testimony also simply supports the fact that certain retailers have relationships with RBL's licensees.

**Defendant's Reply:**    *First*, this statement concerns retailers that **buy** the 3x3 Rubik's Cube and the Duncan Quick Cube.  RBL's response that the cited evidence "supports the fact that certain retailers have relationships with RBL's licensees" is an admission regarding "those that buy the 3x3 Rubik's Cube."  (Ex. 60, Riehl Dep. Tr., at 10:17-20, 153:17-24, 155:6-12, 158:7-159:8).  *Second*, RBL has admitted that large retailers, like Target and Staples, purchase Flambeau's Quick Cube for resale.  (Statement No. 327).  RBL also admits the retailers that purchase the 3x3 Rubik's Cube are "are mass market retailers such as Walmart and Target, and formerly Toys "R" Us."  (*See* Statement No. 379).  RBL therefore does not dispute that large retailers purchase the 3x3 Rubik's Cube and the Duncan Quick Cube.   RBL admits these large retailers have sophisticated people in their purchasing departments with specialized knowledge of products in a certain category.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 136:9-25; Ex. 62, Gottlieb Dep. Tr., at 149:5-13, 149:18-151:25).  Specifically, Mr. Gotlieb testified that these purchasers are specialized in certain narrow product categories within toys, for example puzzles.  (Ex. 62, Gottlieb Dep. Tr., at 149:5-13, 149:18-151:25).

**No Evidence of Dilution**

333.   RBL has no survey evidence that shows the 3x3 Cube Design has secondary meaning.
(Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17; Ex. 60, Riehl Dep. Tr., at 10:17-20,
183:23-25; Ex. 62, Gottlieb Dep. Tr., at 141:5-8, 141:12-15; *see also id.* at 124:14-19 (no
survey on cube purchaser interests)).

    **Plaintiff's Response:**    Admit.

         **Defendant's Reply:**    Undisputed.

334.   RBL has no survey evidence that shows the 3x3 Cube Design is famous.   (Ex. 61,
Kremer Dep. Tr., at 12:9-20, 137:13-17; Ex. 60, Riehl Dep. Tr., at 10:17-20, 183:23-25;
Ex. 62, Gottlieb Dep. Tr., at 141:5-8, 141:12-15; *see also id.* at 114:3-9 (Mr. Gottlieb did
not know sales data for the number of Rubik's Cubes in the U.S.), 124:14-19 (no survey
on cube purchaser interests).

    **Plaintiff's Response:**    Admit.

         **Defendant's Reply:**    Undisputed.

335.   RBL has no survey evidence that the Quick Cube has caused blurring of the 3x3 Cube
Design.   (Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17; Ex. 60, Riehl Dep. Tr., at
10:17-20, 183:23-25).

    **Plaintiff's Response:**    Admit.

         **Defendant's Reply:**    Undisputed.

336.   RBL has no survey evidence that the Quick Cube has tarnished the 3x3 Cube Design.
(Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17).

    **Plaintiff's Response:**    Admit.

         **Defendant's Reply:**    Undisputed.

337.   RBL has no survey evidence that the Quick Cube has diluted the 3x3 Cube Design.   (Ex.

61, Kremer Dep. Tr., at 12:9-20, 137:13-17).

**Plaintiff's Response:**      Admit.

    **Defendant's Reply:**      Undisputed.

## Fraud on the PTO

338.   Jessie Roberts worked as trademark examiner and administrator with the USPTO for over 26 years.  (Ex. 15, Roberts Rep., ¶¶ 3-4).

**Plaintiff's Response:**      Admit to the extent "administrator" refers to her position as "Administrator for Trademark Identifications, Classification and Practice". Ex. 15, J. Roberts Rep. (*see* Ex. A of the Report, CV, at pp. 1-2).

    **Defendant's Reply:**      Undisputed.

339.   In her position as Trademark Lead Attorney, Ms. Roberts was responsible for training new examining attorneys and handling difficult and complex trademark applications. (Ex. 15, Roberts Rep., ¶ 3).

**Plaintiff's Response:**      Admit to the extent "Trademark Lead Attorney" refers to the position Ms. Roberts held from December 1985 to November 1987. Ex. 15, J. Roberts Rep. (*see* Ex. A of the Report, CV at p. 2).

    **Defendant's Reply:**      Ms. Roberts was a Trademark Lead Attorney (now Trademark Senior Attorney) at the USPTO from December 1985 to *December* 1987.  (Ex. 15, Robert Rep., ¶¶ 3-4).

340.   In her position as Administrator for Trademark Identifications, Classifications and Practice, Ms. Roberts set policy concerning the identification of goods and services for purposes of trademark registrations.  (Ex. 15, Roberts Rep., ¶ 4).

**Plaintiff's Response:**      Admit.

    **Defendant's Reply:**      Undisputed.

341.    Ms. Roberts is the author of *International Trademark Classification: A Guide to the Nice Agreement* published by Oxford University Press, now in its fifth edition (published in 2017).  (Ex. 15, Roberts Rep., ¶ 4).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

342.    Ms. Roberts reviewed the file history of the '094 Registration and concluded that the application to register the 3x3 Cube Design should have been refused for functionality. (Ex. 15, Roberts Rep., ¶¶ 38-44 *see also id.*, ¶¶ 50-54, 57-58).

**Plaintiff's Response:**    Admit to the extent the conclusion of Ms. Roberts was based on her belief that the referenced Rubik's U.S. patents and the Hungarian Patent No. 180,307 were relevant to the examiner's determination of functionality and, in addition, on her belief that an external design can be functional if there is a reference to it in any part of a utility patent even if the patent does not claim any feature of the external design. Ex. 194, J. Roberts Dep. Tr., 215:24-217:3; 132:17-133:9; Ex. 195, Simms Rep., ¶¶ 3, 27-33.

**Defendant's Reply:**    Ms. Roberts concluded that, after reviewing the file history, she, as a former Examining Attorney and Senior Examining Attorney would have refused the application for functionality.  (Ex. 15, Roberts Rep., ¶¶ 38-44 *see also id.*, ¶¶ 50-54, 57-58).  Mr. Simms does not say otherwise—nor could he.

343.    Ms. Roberts concluded that Ideal's and CBS' failure to provide known patents to the examiner during prosecution of the '094 Registration after the examiner requested the patents constituted fraud on the USPTO.  (Ex. 15, Roberts Rep., ¶¶ 59-60).

**Plaintiff's Response:**    Admit to the extent Ms. Roberts formed her conclusion based

136

on the allegation that Ideal and CBS committed fraud by allegedly failing to provide

certain patents, but this conclusion was based on a lack of knowledge regarding the

subjective mental impressions of the applicant in determining not to submit the Rubik's

U.S. patents and the Hungarian Patent No. 180,307. Ex. 194, J. Roberts Dep. Tr., 222:20-

224:24; Ex. Ex. 195, Simms Rep., ¶¶ 2, 20-26.

> **Defendant's Reply:**      Ms. Roberts' conclusion was not, as RBL claims, based
>
> on a lack of understanding regarding the subjective mental impressions of the
>
> applicant; rather she merely testified she did not have "first hand" knowledge of
>
> the applicant's mental state.  Regardless, Ms. Roberts concluded the evidence
>
> supported the conclusion that applicant and its counsel was aware of Rubik
>
> patents during the prosecution of the '094 Registration.  (Ex. 15, Roberts Rep., ¶¶
>
> 59-60; *see also* Statement of Material Fact Nos. 338-376).  Ms. Roberts testified
>
> the evidence supported that the applicant of the '094 Registration intentionally
>
> failed to provide known patents to the examiner after a pointed request during
>
> prosecution and that failure constituted fraud on the USPTO.  (Ex. 15, Roberts
>
> Rep., ¶¶ 59-60).

344.    Ms. Roberts concluded that Ideal's and CBS' fraud caused injury not only to the USPTO,

but to puzzle cube makers, like Flambeau, against whom RBL has asserted the '094

Registration.  (Ex. 15, Roberts Rep., ¶ 61).

**Plaintiff's Response:**      Admit to the extent Ms. Roberts formed her conclusion based

on the allegation that Ideal and CBS committed fraud by allegedly failing to provide

certain patents, but this conclusion was based on a lack of knowledge regarding the

subjective mental impressions of the applicant in determining not to submit the Rubik's

U.S. patents and the Hungarian Patent No. 180,307. Ex. 194, J. Roberts Dep. Tr., 222:20-

224:24.

**Defendant's Reply:**       Ms. Roberts conclusion was not, as RBL claims, based on a lack of understanding regarding the subjective mental impressions of the applicant rather she merely testified she did not have "first hand" knowledge of the applicant's mental state.  Regardless, Ms. Roberts concluded the evidence supported the conclusion that applicant and its counsel was aware of Rubik patents during the prosecution of the '094 Registration.  (Ex. 15, Roberts Rep., ¶¶ 59-60; *see also* Statement of Material Fact Nos. 338-376).  Ms. Roberts testified the evidence supported that the applicant of the '094 Registration intentionally failed to provide known patents to the examiner after a pointed request during prosecution and that failure constituted fraud on the USPTO.  (Ex. 15, Roberts Rep., ¶¶ 59-60).

### Knowledge of Patents

345.   Ms. Roberts created a timeline of events related to Ideal's and CBS's knowledge of certain utility patents, which is attached as Exhibit G to her report.  (Ex. 15, Roberts Rep., ¶ 47 & Exhibit G; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 47:15-18, 48:6-11 (Mr. Simms reviewed only a single patent), 49:1-6, 49:10-13, 49:20-25, 52:9-53:4, 53:8-54:25, 55:18-57:4).

**Plaintiff's Response:**     Admit that Ms. Roberts created a timeline of alleged events attached as Exhibit G to her report, but dispute the remaining statements in SMF 345. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 345 regarding Ideal's and CBS's knowledge of certain utility patents.

**Defendant's Reply:**       RBL admits that Ideal and/or CBS had knowledge of or should have been aware of several utility patents during the prosecution of the

094 Registration.  (*See* Statement Nos. 346-368).  The timeline of events Ms.
Roberts created directly relates to Ideal's and CBS's knowledge of the utility
patents described in Exhibit G to her report.  (Ex. 15, Roberts Rep., ¶ 47 &
Exhibit G).  The timeline includes events, ordered chronologically, including
moments in the relevant patents' prosecution histories and Ideal's or CBS's
actions corresponding to the relevant patents.  (*Id.*).

346.   In September 1982, Ideal was in a business relationship with Mr. Rubik's and certain
Hungarian authorities that gave Ideal exclusive rights to sell the 3x3 Rubik's Cube in the
U.S.  (Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); *see also* Ex.
61, Kremer Dep. Tr., at 12:9-20, 29:24-30:8, 30:12-25, 32:3-10, 32:20-24).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

347.   It is reasonable to infer that patent counsel is aware of the patents related to the goods of
his or her client.  (Ex. 63, Simms Dep. Tr., at 15:17-20, 61:2-10, 97:15-98:4)

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

348.   The '308 Application was submitted by Ideal's patent counsel.  (Ex. 63, Simms Dep. Tr.,
at 15:17-20, 60:22-61:1; Ex. 31, '308 Application).

**Plaintiff's Response:**      Admit.

**Defendant's Reply:**      Undisputed.

349.   In September 1982, Ideal was aware of the '062 Rubik Patent, which had issued in
December 1977 and named Mr. Rubik as an inventor, because Ideal was in a business
relationship with Mr. Rubik regarding Ideal's puzzle cube business at that time.  (Ex. 15,
Roberts Rep., ¶¶ 36, 55; Ex. 20, '062 Rubik Patent, at FLAMBEAU000640; Ex. 39, CBS

Brief, at FLAMBEAU002015 (1985 WL 671390, *16)).

**Plaintiff's Response:**    Admit to the extent "business relationship" refers to the agreement Ideal entered into granting it exclusive rights to sell the 3x3 Rubik's Cube in the U.S. and "Ideal's puzzle cube business" refers to Ideal's business in selling the 3x3 Rubik's Cube in the U.S. See Response to SMF ¶ 346.

**Defendant's Reply:**    Undisputed.

350.    In September 1982, Ideal was aware of the '062 Rubik Patent because Ideal listed the '062 Patent in patent applications that Ideal filed in August 1981 and January 1982. (Ex. 25, Silbermintz Patent, at FLAMBEAU001365; Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**    Undisputed.

351.    In September 1982, Ideal was aware of the '875 Rubik Patent, which had published in July 1981 and named Mr. Rubik as an inventor, because Ideal was in a business relationship with Mr. Rubik regarding Ideal's puzzle cube business at that time. (Ex. 15, Roberts Rep., ¶¶ 36, 55; Ex. 21, '875 Rubik Patent, at FLAMBEAU000619-620; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16)).

**Plaintiff's Response:**    Admit to the extent Ideal was in a business relationship with Mr. Rubik's regarding selling the 3x3 Rubik's Cube in the U.S. and it would be reasonable to assume Ideal was aware of the '875 Rubik Patent. *See* Response to SMF ¶ 349.

**Defendant's Reply:**    Undisputed.

352.    In September 1982, Ideal was aware of the application that gave rise to the '387 Rubik Patent, which was filed in October 1980 and named Mr. Rubik as an inventor, because

Ideal was in a business relationship with Mr. Rubik regarding Ideal's puzzle cube business at that time. (Ex. 15, Roberts Rep., ¶¶ 36, 55; Ex. 22, '387 Rubik Patent, at FLAMBEAU000659; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16)).

**Plaintiff's Response:**    Admit that in September 1982 Ideal was in a business relationship with Mr. Rubik's regarding selling the 3x3 Rubik's Cube in the U.S. Also admit that the '387 Rubik Patent was filed in October 1980 and named Mr. Rubik's as an inventor, but dispute the remaining statements in SMF ¶ 352. The '387 Rubik Patent claims a 2x3 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume Ideal was aware of the '387 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 22, '387 Rubik Patent, at FLAMBEAU000666.

> **Defendant's Reply:**    RBL does not provide any factual evidence to support its claim that (a) a 2x3 puzzle cube patent owned by Rubik was not relevant to Ideal's cube business or business relationship with Mr. Rubik and (b) that it is not reasonable to assume the Ideal was aware of the '387 Rubik Patent. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)). Ideal was sued in 1980 by Moleculon regarding 2x2 and 3x3 versions of the cube and would be aware of the relevant patents concerning both 3x3 puzzles and other variations. (*See* Statement Nos. 84-92). Ms. Roberts concluded that Ideal's business relationship with Mr. Rubik concerning Mr. Rubik's puzzle cubes supports that Ideal was aware of those patents held by Mr. Rubik, including the '387 Rubik Patent. (Ex. 15, Roberts Rep., ¶¶ 36, 55).

353.    In September 1982, Ideal was aware of the application that gave rise to the '116 Rubik Patent, which was filed in August 1981 and named Mr. Rubik as an inventor, because

Ideal was in a business relationship with Mr. Rubik regarding Ideal's puzzle cube business at that time.  (Ex. 15, Roberts Rep., ¶¶ 36, 55; Ex. 23, '116 Rubik Patent, at FLAMBEAU000667; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16)).

**Plaintiff's Response:**    Admit that in September 1982 Ideal was in a business relationship with Mr. Rubik's regarding selling the 3x3 Rubik's Cube in the U.S. Also admit that the '116 Rubik Patent was filed in August 1981 and named Mr. Rubik's as an inventor, but dispute the remaining statements in SMF ¶ 353. The '116 Rubik Patent claims a 2x3 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume Ideal was aware of the '116 Rubik Patent. See Response to SMF ¶ 349; Ex. 23, '116 Rubik Patent, at FLAMBEAU000667.

> **Defendant's Reply:**    RBL does not provide any factual evidence to support its claim that (a) a 2x3 puzzle cube patent owned by Rubik was not relevant to Ideal's cube business or business relationship with Mr. Rubik and (b) that it is not reasonable to assume the Ideal was aware of the '116 Rubik Patent.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).  Ideal was sued in 1980 by Moleculon regarding 2x2 and 3x3 versions of the cube and would be aware of the relevant patents concerning both 3x3 puzzles and other variations. (*See* Statement Nos. 84-92).  Ms. Roberts concluded that Ideal's business relationship with Mr. Rubik concerning Mr. Rubik's puzzle cubes supports that Ideal was aware of those patents held by Mr. Rubik, including the '116 Rubik Patent.  (Ex. 15, Roberts Rep., ¶¶ 36, 55).

354.    In September 1982, Ideal was aware of the application that gave rise to the '117 Rubik Patent, which was filed in August 1981 and named Mr. Rubik as an inventor, because

Ideal was in a business relationship with Mr. Rubik regarding Ideal's puzzle cube business at that time. (Ex. 15, Roberts Rep., ¶¶ 36, 55; Ex. 24, '117 Rubik Patent, at FLAMBEAU001361; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16)).

**Plaintiff's Response:**       Admit that in September 1982 Ideal was in a business relationship with Mr. Rubik's regarding selling the 3x3 Rubik's Cube in the U.S. Also admit that the '117 Rubik Patent was filed in August 1981 and named Mr. Rubik's as an inventor, but dispute the remaining statements in SMF ¶ 354. The '117 Rubik Patent claims a 2x2 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume Ideal was aware of the '117 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 23, '117 Rubik Patent, at FLAMBEAU001362.

> **Defendant's Reply:**       RBL does not provide any factual evidence to support its claim that (a) a 2x2 puzzle cube patent owned by Rubik was not relevant to Ideal's cube business or business relationship with Mr. Rubik and (b) that it is not reasonable to assume the Ideal was aware of the '117 Rubik Patent. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)). Ideal was sued in 1980 by Moleculon regarding 2x2 and 3x3 versions of the cube and would be aware of the relevant patents concerning both 3x3 puzzles and other variations. (*See* Statement Nos. 84-92). Ms. Roberts concluded that Ideal's business relationship with Mr. Rubik concerning Mr. Rubik's puzzle cubes supports that Ideal was aware of those patents held by Mr. Rubik, including the '117 Rubik Patent. (Ex. 15, Roberts Rep., ¶¶ 36, 55).

355.    In September 1982, Ideal was aware of the Nichols Patent because it had been sued on that patent in May 1982. (Ex. 15, Roberts Rep., ¶ 37; Ex. 38, 1984 D. Del. Op., at

FLAMBEAU002072 (594 F. Supp. 1420, 1424); Ex. 63, Simms Dep. Tr., at 15:17-20, 155:20-156:5).

**Plaintiff's Response:**    Admit.

     **Defendant's Reply:**    Undisputed.

356.    In September 1982, Ideal was aware of the application that gave rise to the Silbermintz Patent because it was the named assignee when it was applied for in August 1981.  (Ex. 25, Silbermintz Patent, at FLAMBEAU001365).

**Plaintiff's Response:**    Admit.

     **Defendant's Reply:**    Undisputed.

357.    In September 1982, Ideal was are of the application that gave rise to the Sebesteny Patent because it was the named assignee when it was applied for in January 1982.  (Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

**Plaintiff's Response:**    Admit.

     **Defendant's Reply:**    Undisputed.

358.    In September 1982, Ideal was aware of the Ishige Patent because Ideal listed the Ishige Patent in a patent application that Ideal filed in January 1982.  (Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

**Plaintiff's Response:**    Admit.

     **Defendant's Reply:**    Undisputed.

359.    In August or September 1982, CBS acquired Ideal's 3x3 Rubik's Cube business, including all intellectual property rights.  (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424); *see also* Ex. 66, Cube is a Problem to CBS, New York Times (1984), at FLAMBEAU002026).

**Plaintiff's Response:**    Admit.

**Defendant's Reply:**        Undisputed.

360.    By May 1983, CBS was made aware of the '062 Rubik Patent when it purchased Ideal's puzzle cube business, which included exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S.  (Ex. 15, Roberts Rep., ¶ 36; Ex. 20, '062 Rubik Patent, at FLAMBEAU000640; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424); *see also* Ex. 25, Silbermintz Patent, at FLAMBEAU001365 (listing '062 Rubik Patent as reference); Ex. 28, Sebesteny Patent, at FLAMBEAU001383 (same)).

**Plaintiff's Response:**        Admit.

**Defendant's Reply:**        Undisputed.

361.    By May 1983, CBS was aware of the '875 Rubik Patent when it purchased Ideal's puzzle cube business, which included exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S.  (Ex. 15, Roberts Rep., ¶ 36; Ex. 21, '875 Rubik Patent, at FLAMBEAU000619-620; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**        Admit that it would be reasonable to assume CBS was aware of the '875 Rubik Patent by May 1983.

**Defendant's Reply:**        Undisputed.

362.    By May 1983, CBS was aware of the application that gave rise to the '387 Rubik Patent when it purchased Ideal's puzzle cube business, which included exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S.  (Ex. 15, Roberts Rep., ¶ 36; Ex. 22, '387 Rubik Patent, at FLAMBEAU000659; Ex. 39, CBS

Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**      Admit that CBS purchased Ideal's puzzle cube business with regard to its exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S., but dispute the remaining statements in SMF ¶ 362.  The '387 Rubik Patent claims a 2x3 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume CBS was aware of the '387 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 22, '387 Rubik Patent, at FLAMBEAU000666.

> **Defendant's Reply:**      RBL does not provide any factual evidence to support its claim that (a) a 2x3 puzzle cube patent owned by Rubik was not relevant to Ideal's cube business or business relationship with Mr. Rubik and (b) that it is not reasonable to assume the Ideal was aware of the '387 Rubik Patent.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).  Ideal was sued in 1980 by Moleculon regarding 2x2 and 3x3 versions of the cube and would be aware of the relevant patents concerning both 3x3 puzzles and other variations. (*See* Statement Nos. 84-92).  Ms. Roberts concluded that Ideal's business relationship with Mr. Rubik concerning Mr. Rubik's puzzle supports that Ideal was aware of those patents held by Mr. Rubik, including the '387 Rubik Patent. (Ex. 15, Roberts Rep., ¶¶ 36, 55).

363.  By May 1983, CBS was aware of the '116 Rubik Patent when it purchased Ideal's puzzle cube business, which included exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S.  (Ex. 15, Roberts Rep., ¶ 36; Ex. 23, '116 Rubik Patent, at FLAMBEAU000667; Ex. 39, CBS Brief, at FLAMBEAU002015

(1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**     Admit that CBS purchased Ideal's puzzle cube business with regard to its exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S., but dispute the remaining statements in SMF ¶ 363.  The '116 Rubik Patent claims a 2x3 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume CBS was aware of the '116 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 23, '116 Rubik Patent, at FLAMBEAU000667.

> **Defendant's Reply:**     RBL does not provide any factual evidence to support its claim that (a) a 2x3 puzzle cube patent owned by Rubik was not relevant to Ideal's cube business or business relationship with Mr. Rubik and (b) that it is not reasonable to assume the Ideal was aware of the '116 Rubik Patent.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).  Ideal was sued in 1980 by Moleculon regarding 2x2 and 3x3 versions of the cube and would be aware of the relevant patents concerning both 3x3 puzzles and other variations. (*See* Statement Nos. 84-92).  Ms. Roberts concluded that Ideal's business relationship with Mr. Rubik concerning Mr. Rubik's puzzle supports that Ideal was aware of those patents held by Mr. Rubik, including the '116 Rubik Patent. (Ex. 15, Roberts Rep., ¶¶ 36, 55).

364.    By May 1983, CBS was aware of the '117 Rubik Patent when it purchased Ideal's puzzle cube business, which included exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S.  (Ex. 15, Roberts Rep., ¶ 36; Ex. 24, '117 Rubik Patent, at FLAMBEAU001361; Ex. 39, CBS Brief, at FLAMBEAU002015

(1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**    Admit that CBS purchased Ideal's puzzle cube business with regard to its exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S., but dispute the remaining statements in SMF ¶ 364. The '117 Rubik Patent claims a 2x2 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume Ideal was aware of the '117 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 23, '117 Rubik Patent, at FLAMBEAU001362.

> **Defendant's Reply:**    RBL does not provide any factual evidence to support its claim that (a) a 2x2 puzzle cube patent owned by Rubik was not relevant to Ideal's cube business or business relationship with Mr. Rubik and (b) that it is not reasonable to assume the Ideal was aware of the '117 Rubik Patent. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)). Ideal was sued in 1980 by Moleculon regarding 2x2 and 3x3 versions of the cube and would be aware of the relevant patents concerning both 3x3 puzzles and other variations. (*See* Statement Nos. 84-92). Ms. Roberts concluded that Ideal's business relationship with Mr. Rubik concerning Mr. Rubik's puzzle cubes supports that Ideal was aware of those patents held by Mr. Rubik, including the '117 Rubik Patent. (Ex. 15, Roberts Rep., ¶¶ 36, 55).

365. By May 1983, CBS was aware of the Nichols Patent because it had been named as a defendant in a patent infringement lawsuit regarding that patent. (Ex. 15, Roberts Rep., ¶ 37; Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424); Ex. 63, Simms Dep. Tr., at 15:17-20, 155:20-156:5).

148

**Plaintiff's Response:**    Admit.

        **Defendant's Reply:**    Undisputed.

366.    By May 1983, CBS was made aware of the application that gave rise to the Silbermintz Patent when it purchased Ideal's intellectual property rights.  (Ex. 25, Silbermintz Patent, at FLAMBEAU001365; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**    Admit that it would be reasonable to assume, by May 1983, CBS was aware of the application that gave rise to the Silbermintz Patent when it purchased Ideal's intellectual property rights.

        **Defendant's Reply:**    Undisputed.

367.    By May 1983, CBS was made aware of the application that gave rise to the Sebesteny Patent when it purchased Ideal's intellectual property rights.  (Ex. 28, Sebesteny Patent, at FLAMBEAU001383; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**    Admit that it would be reasonable to assume, by May 1983, CBS was aware of the application that gave rise to the Sebesteny Patent when it purchased Ideal's intellectual property rights.

        **Defendant's Reply:**    Undisputed.

368.    By May 1983, CBS was made aware of the Ishige Patent when it purchased Ideal's intellectual property rights, which included a patent application listing the Ishige Patent. (Ex. 28, Sebesteny Patent, at FLAMBEAU001383; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**    Admit that it would be reasonable to assume, by May 1983,

CBS was aware of the Ishige Patent when it purchased Ideal's intellectual property rights.

**Defendant's Reply:**    Undisputed.

## **Material Omission**

369.    Despite knowing about patents covering three-dimensional puzzles, Ideal did not provide any of those patents to the trademark examiner in prosecuting the '308 Application.  (Ex. 15, Roberts Rep., ¶¶ 38, 49, 56; Ex. 63, Simms Dep. Tr., at 15:17-20, 206:20-207:1).

**Plaintiff's Response:**    Admit that Ideal knew about utility patents that claimed the internal mechanism of the 3x3 Rubik's Cube, but dispute the remaining statements in ¶ 369. During prosecution of the '308 Application, Ideal submitted the International Trade Commission decision from *In the matter of Certain Puzzle Cubes*, which discussed the '062 Rubik's Patent and correctly affirmed that Ideal did not have any relevant patent rights in the U.S. with regard to the 3x3 Rubik's Cube. *See* Ex. 35 at FLAMBEAU000112; SMF ¶ 118; Response to SMF ¶ 119.

> **Defendant's Reply:**    RBL does not provide any evidence to dispute that Ideal did not provide any of the patents on three-dimensional puzzles known to it to the trademark examiner in prosecuting the '308 Application.  (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d)).  It is undisputed that, despite knowing about patents covering three-dimensional puzzles, Ideal did not provide any of those patents to the trademark examiner in prosecuting the '308 Application.  (Ex. 15, Roberts Rep., ¶¶ 38, 49, 56; Ex. 63, Simms Dep. Tr., at 15:17-20, 206:20-207:1).

370.    RBL has no idea whether Ideal ever provided any patents to the trademark examiner in prosecuting the '308 Application.  (Ex. 61, Kremer Dep. Tr., at 12:9-20, 81:4-6).

**Plaintiff's Response:**    Admit, except RBL is aware that during prosecution of the

'308 Application, Ideal submitted the International Trade Commission decision from *In the matter of Certain Puzzle Cubes*, which discussed the '062 Rubik's Patent and correctly affirmed that Ideal did not have any relevant patent rights in the U.S. with regard to the 3x3 Rubik's Cube. *See* Ex. 35 at FLAMBEAU000112; SMF ¶ 118; Response to SMF ¶ 119.

> **Defendant's Reply:** RBL admits the entirety of Defendant's Statement No. 370. RBL's additional response regarding an ITC decision does not concern Ideal providing "any patents to the trademark examiner in prosecuting the '308 Application."

371. RBL has not conducted any investigation into whether Ideal ever provided any patents to the trademark examiner in prosecuting the '308 Application. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 81:4-15).

**Plaintiff's Response:** Admit, subject to its response to SMF ¶ 370.

> **Defendant's Reply:** RBL admits the entirety of Defendant's Statement No. 370. RBL's additional response regarding an ITC decision does not concern Ideal providing "any patents to the trademark examiner in prosecuting the '308 Application."

372. Despite knowing about patents covering three-dimensional puzzles, CBS did not provide any of those patents to the trademark examiner in prosecuting the '308 Application. (Ex. 15, Roberts Rep., ¶¶ 38, 49, 56; Ex. 63, Simms Dep. Tr., at 15:17-20, 206:20-207:1).

**Plaintiff's Response:** Admit that CBS knew about utility patents that claimed the internal mechanism of the 3x3 Rubik's Cube but dispute the remaining statements in ¶ 372. During prosecution of the '308 Application, Ideal submitted the International Trade Commission decision from *In the matter of Certain Puzzle Cubes*, which discussed the

'062 Rubik's Patent and correctly affirmed that Ideal did not have any relevant patent rights in the U.S. with regard to the 3x3 Rubik's Cube. *See* Ex. 35 at FLAMBEAU000112; SMF ¶ 118; Response to SMF ¶ 119.

> **Defendant's Reply:**    RBL admits the entirety of Defendant's Statement No. 372. RBL's additional response regarding an ITC decision does not concern CBS providing "any patents to the trademark examiner in prosecuting the '308 Application."

373. RBL has no idea whether CBS ever provided any patents to the trademark examiner in prosecuting the '308 Application. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 81:4-6).

**Plaintiff's Response:**    Admit, except RBL is aware that during prosecution of the '308 Application, Ideal submitted the International Trade Commission decision from *In the matter of Certain Puzzle Cubes*, which discussed the '062 Rubik's Patent and correctly affirmed that Ideal did not have any relevant patent rights in the U.S. with regard to the 3x3 Rubik's Cube. *See* Ex. 35 at FLAMBEAU000112; SMF ¶ 118; Response to SMF ¶ 119.

> **Defendant's Reply:**    RBL admits the entirety of Defendant's Statement No. 373. RBL's additional response regarding an ITC decision does not concern CBS providing "any patents to the trademark examiner in prosecuting the '308 Application."

374. RBL has not conducted any investigation into whether CBS ever provided any patents to the trademark examiner in prosecuting the '308 Application. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 81:4-15).

**Plaintiff's Response:**    Admit, subject to its response to SMF ¶ 373.

> **Defendant's Reply:**    *See* Defendant's Reply to Statement No. 373.

375.   Had Ideal provided the Rubik Patents to the examiner, they should have led to a refusal of the '308 Application based on functionality.  (Ex. 15, Roberts Rep., ¶¶ 38-44; *see also id.*, ¶¶ 50-54, 57-58).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statements in SMF ¶ 375. Ms. Roberts' conclusion with regard to the allegations made in SMF ¶ 375 are based on an erroneous underlying assumption. *See* Response to SMF ¶ ¶ 342; Ex. 195, Simms Rep., ¶¶ 3, 27-33.

> **Defendant's Reply:**    Ms. Roberts conclusion was not based on a lack of understanding regarding the subjective mental impressions of the applicant or "an erroneous underlying assumption."  Ms. Roberts testified the evidence supported that the applicant of the '094 Registration intentionally failed to provide known patents to the examiner during prosecution and that failure constituted fraud on the USPTO.  (Ex. 15, Roberts Rep., ¶¶ 59-60).  Ms. Roberts concluded the evidence supported that applicant and its counsel was aware of Rubik patents during the prosecution of the '094 Registration.  (*Id.*; *see also* Statement of Material Fact Nos. 338-376).  Ms. Roberts therefore concluded that, after reviewing the file history, she, as a former Examining Attorney and Senior Examining Attorney, would have refused the application for functionality.  (Ex. 15, Roberts Rep., ¶¶ 38-44 *see also id.*, ¶¶ 50-54, 57-58).

376.   Had CBS provided the Rubik Patents to the examiner, they should have led to a refusal of the '308 Application based on functionality.  (Ex. 15, Roberts Rep., ¶¶ 38-44 *see also id.*, ¶¶ 50-54, 57-58).

**Plaintiff's Response:**    Disputed. The citation to the exhibit does not support Flambeau's statements in SMF ¶ 376. Ms. Roberts' conclusion with regard to the

allegations made in SMF ¶ 376 are based on an erroneous underlying assumption. *See* Responses to SMF ¶ ¶ 343; Ex. 195, Simms Rep., ¶¶ 2, 20-26

> **Defendant's Reply:**     Ms. Roberts conclusion was not based on a lack of understanding regarding the subjective mental impressions of the applicant or "an erroneous underlying assumption."  Ms. Roberts testified the evidence supported the conclusion that the applicant of the '094 Registration intentionally failed to provide known patents to the examiner during prosecution and that failure constituted fraud on the USPTO.  (Ex. 15, Roberts Rep., ¶¶ 59-60).  Ms. Roberts concluded the evidence supported the conclusion that applicant and its counsel was aware of Rubik patents during the prosecution of the '094 Registration.  (*Id.*; *see also* Statement of Material Fact Nos. 338-376).  'Ms. Roberts therefore concluded that, after reviewing the file history, she, as a former Examining Attorney and Senior Examining Attorney, would have refused the application for functionality.  (Ex. 15, Roberts Rep., ¶¶ 38-44 *see also id.*, ¶¶ 50-54, 57-58).

### No Damage to RBL

377.    Sales of the 3x3 Rubik's Cube increased for RBL's U.S. licenses from 2015 to 2016. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 292:19-22).

> **Plaintiff's Response:**     Admit.

> **Defendant's Reply:**      Undisputed.

378.    Sales of the 3x3 Rubik's Cube increased for RBL's U.S. licenses from 2016 to 2017. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 292:19-24).

> **Plaintiff's Response:**      Disputed. By 2017, sales of 3x3 RUBIK'S CUBES for RBL's U.S. licensees had decreased by several millions. *See* Ex. 76, Riehl Decl. at ¶ 32; Exhibit 142, RBL_006453; Ex. 75, Kremer Decl. ¶ 19.

154

**Defendant's Reply:** Ms. Riehl testified that RBL's licensees and retailers experienced increased sales of the 3x3 Rubik's Cube from 2016 to 2017. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 292:19-24). RBL's statements regarding "by 2017" does not dispute that actual assertions contained in Statement No. 378, which is concerned with sales from 2016 to 2017. In fact, Ms. Riehl's declaration supports that sales peaked 2016 to 2017, with an additional increase of 60% over 2015 to 2016 sales. (Ex. 76, Riehl Decl., ¶ 32).

379. Sales of the 3x3 Rubik's Cube for RBL's U.S. licenses were up from 2017 to 2018 as of August 2018. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 292:19-293:2-4).

**Plaintiff's Response:** Disputed. Overall sales for the 3x3 Rubik's Cube declined from 2017 to 2018. See Ex. 75, Kremer Decl. ¶ 19. In particular, sales of the 3x3 Rubik's Cube declined for Hasbro, RBL's biggest licensee for the 3x3 Rubik's Cube, which sells the 3x3 Rubik's Cube to mass market retailers such as Walmart and Target, and formerly Toys "R" Us. Ex. 60, Riehl Dep. Tr., at 292:25-293:-2; Ex. 75, Kremer Decl. ¶ 7.

**Defendant's Reply:** Ms. Riehl testified that while Hasbro's sales decreased from 2017 to August 2018, unit sales for RBL's U.S. licensees as a whole increased in 2017 to 2018. (Ex. 60, Riehl Dep. Tr., at 292:25-294:4).

380. RBL has not quantified any damage to its reputation allegedly caused by the Duncan Quick Cube. (Ex. 64, Vollmar Dep. Tr., at 35:25-36:10).

**Plaintiff's Response:** Disputed. Duncan's actions have been harmful to RBL's reputation. RBL's licensees of the 3x3 RUBIK'S CUBE have expressed their concern to RBL about the promotion and sale of the Duncan Quick Cube. RBL has had to assure them that it is taking action to assert RBL's trade dress rights. The RUBIK'S CUBE has been a success ever since it debuted in the U.S. in 1980. By 1981, the RUBIK'S CUBE

155

puzzle had become a worldwide sensation with many millions of sales. Over the past 40 years, RBL and its predecessors have steadfastly worked and invested immense resources to protect the RUBIK'S Design. They have also expended massive resources to promote the RUBIK'S brand and oversee the manufacture of twisty puzzles that adhere to its high quality and safety standards. The goodwill symbolized by the Rubik's Design is of extraordinary value and is among RBL's most valuable IP assets. As a result of the extraordinary success of the RUBIK'S CUBE, the RUBIK'S Design is instantly recognizable to the public as signifying the source of the puzzle (Ex. 167, Gottlieb Depo. Tr. at 156:11-157:4.) A cheaper priced 3x3 twisty puzzle that uses the RUBIK'S Design without authorization tarnishes RBL's reputation and dilutes the distinctiveness of the world famous RUBIK'S Design. Ex 75, Kremer Decl. ¶¶ 3, 5, 22, 24; SMF ¶¶ 431-45.

> **Defendant's Reply:**      RBL's damages expert testified "I certainly didn't quantify any damages in" regard to "damage to [RBL's] reputation." (Ex. 64, Vollmar Dep. Tr., at 35:25-36:10). Mr. Vollmar further testified that he did not quantify, let alone form any opinions, with respect to trademark dilution. (*Id.*). RBL's response to Statement No. 380 does not provide any evidence to dispute that it has not "***quantified*** any damage to its reputation allegedly caused by the Duncan Quick Cube." Moreover, RBL's response cites to unsupported, conclusory testimony, while RBL admits it has no survey evidence on its secondary meaning, fame, dilution, or tarnishment. Statement No. 380 is therefore undisputed and admitted in its entirety. (*See* J. Gardephe Indiv. R. of Prac., Sec. V.B.; L. Civ. R. 56.1 (c), (d); *see also* Flambeau's Motion to Strike).

Flambeau hereby submits the following Response to RBL's Statement of Additional Material Facts:

## **RESPONSES TO RBL'S STATEMENT OF ADDITIONAL MATERIAL FACTS**

381.    Flambeau created an internal company document with the project name "Quick Cube Puzzle." (Ex. 161, Project Summary at Flambeau001091).

**Defendant's Response:**   Undisputed the cited exhibit is a Flambeau-produced document entitled "Basis For Interest (BFI)" and was initially created by Mike Burke, a Flambeau employee, to gauge interest in launching a DUNCAN-branded 3x3 puzzle cube. (Ex. 162, 8/16/18 Burke Dep. Tr., at 71:12-19).

382.    Flambeau described the Quick Cube puzzle as having the "same overall look and size as the Rubik's Cube." (Ex. 161, Project Summary at Flambeau001091; Ex. 162, 8/16/18 Burke Dep. Tr. at 71:12-19).

**Defendant's Response:**   Undisputed the Basis For Interest document described the proposed Quick Cube as such to gauge interest in a DUNCAN-branded 3x3 puzzle cube. (Ex. 162, 8/16/18 Burke Dep. Tr., at 71:12-19). The Basis For Interest document also states "Initial design will be a 3x3 cube. Vendor already has the design." (Ex. 161, Project Summary at Flambeau001091).

383.    Flambeau stated that the Quick Cube base be colored white "(instead of black)." (Ex. 161, Project Summary at Flambeau001091).

**Defendant's Response:**   Undisputed. Flambeau chose a white base, among other reasons, because the Duncan sales team liked white better than black.  (Ex. 197, 8/16/18 Burke Dep. Tr., at 79:10-23, 123:3-10).

384.    The Quick Cube puzzle is a 3x3 puzzle cube. (Ex. 161, Project Summary at

Flambeau001091; Ex. 3, Duncan Quick Cube at FLAMBEAU001444).

**Defendant's Response:**   Undisputed.

385.    The Quick Cube puzzle is the same size as the Rubik's Cube puzzle. (Ex. 163, RUBIK'S

CUBE; Ex. 3, Duncan Quick Cube).

**Defendant's Response:**   Disputed.  Defendant disputes this statement as unsupported

because neither of the cited references contain dimensions, measurements, or scale

information to judge the "size" of either puzzle cube.  Undisputed to the extent that the

Quick Cube and the 3x3 Rubik's cube are both 3x3 puzzle cubes.  (Ex. 163, RUBIK'S

CUBE; Ex. 3, Duncan Quick Cube).

386.    The color patches on the Rubik's Cube puzzle are colored red, orange, yellow, green,

blue, and white. (Ex. 163, RUBIK'S CUBE).

**Defendant's Response:**   Undisputed to the extent the listed colors are the six specific

shades RBL specifies by Pantone number for its Rubik's Cubes. (Ex. 60, Riehl Dep. Tr.,

at 10:17-20, 84:15-20, 85:9-15, 145:8-146:21; Ex. 16, Loetz Rep., ¶ 33; Ex. 74,

GeekvTook Kit, at BOSTONA_000040; Ex. 46, Pantone Color Scheme; Ex. 47, Using

Official Rubik's Cube Colors).  Disputed to the extent RBL suggests the Rubik's Cube

uses every shade of the six listed colors—it does not per RBL's own official guidelines.

(Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15, 145:8-146:21; Ex. 74,

GeekvTook Kit, at BOSTONA_000040).

387.    The color patches on the Quick Cube are colored red, orange, yellow, green, blue, and

white. (Ex. 3, Duncan Quick Cube; Ex. 162, 8/16/18 Burke Dep. Tr. at 164:3-24; Ex.

164, Loetz Dep. Tr. at 245:6-22).

**Defendant's Response:**   Disputed in part.  The color patches on the Quick Cube are

bright, fluorescent shades, distinct from the six specific shades used on the Rubik's Cube.

Undisputed that the Quick Cube patches are bright fluorescent shades of red, orange, yellow, green, blue, and white that are distinct from the Pantone-specified shades used on the Rubik's Cube. (*Compare* Ex. 1, Burke Decl., ¶ 13; Ex. 3, Quick Cube & Packaging *with* Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15, 145:8-146:21; Ex. 74, GeekvTook Kit, at BOSTONA_000040; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 265:16-266:12).

388.    Each of the color patches on the Rubik's Cube puzzle is smaller than the underlying cube section, such that it is framed by the black cube base. (Ex. 163, RUBIK'S CUBE).

**Defendant's Response:**   Disputed in part.  Undisputed that the Rubik's 3x3 Cube Design calls for a black base with red, white, blue, green, yellow, and orange for its color patches.  (Ex. 16, Loetz Rep., ¶¶ 73-79; Ex. 60, Riehl Dep. Tr., at 10:17-20, 311:2-18). Further undisputed that in its present form the Rubik's Cube puzzle color patches do not extend to the edge of the smaller cube segments.

389.    Each of the color patches on the Quick Cube puzzle is smaller than the underlying cube section, such that it is framed by the white cube base. (Ex. 3, Duncan Quick Cube).

**Defendant's Response:**   Undisputed.

390.    Each side of the Rubik's Cube Puzzle has a grid appearance. (Ex. 163, RUBIK'S CUBE).

**Defendant's Response:**   RBL's use of the term "grid appearance" is ambiguous, vague, and impermissibly broad. Undisputed to the to the extent that each of the color patches on the Rubik's Cube is framed by some portion of the black base.  Disputed to the extent that this "grid appearance" is the same as the supposed "grid appearance" of the Quick Cube.  Unlike the smaller segments and patches of the Rubik's Cube, the smaller segments and the patches of the Quick Cube are not square, so the visible portion of its white base takes on a different shape than the visible portion of the Rubik's Cube's black

base. (*Compare* Ex. 1, Burke Decl., ¶ 14; Ex. 16, Loetz Rep., ¶¶ 192-193; Ex. 60, Riehl

Dep. Tr., at 10:17-20, 264:25-265:2 *with* Ex. 37, '094 Registration; Ex. 60, Riehl Dep.

Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24; Ex. 69, RBL Req. Ad. Resp., No. 9).

391.    Each side of the Quick Cube Puzzle has a grid appearance. (Ex. 3, Duncan Quick Cube).

**Defendant's Response:**   RBL's use of the term "grid appearance" is ambiguous, vague,

and impermissibly broad.  Undisputed to the to the extent that each of the color patches

on the Quick Cube is framed by some portion of the white base.  Disputed to the extent

that this "grid appearance" is the same as the supposed "grid appearance" of the Rubik's

Cube.  Unlike the smaller segments and patches of the Rubik's Cube, the smaller

segments and the patches of the Quick Cube are not square, so the visible portion of its

white base takes on a different shape than the visible portion of the Rubik's Cube's black

base. (*Compare* Ex. 1, Burke Decl., ¶ 14; Ex. 16, Loetz Rep., ¶¶ 192-193; Ex. 60, Riehl

Dep. Tr., at 10:17-20, 264:25-265:2 *with* Ex. 37, '094 Registration; Ex. 60, Riehl Dep.

Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24; Ex. 69, RBL Req. Ad. Resp., No. 9).

392.    The Quick Cube puzzle was initially sold in packaging that depicted a 3x3 puzzle cube

with color patches colored red, orange, yellow, blue, green and white with a black cube

base. (Ex. 3, Duncan Quick Cube; Ex. 162, 8/16/18 Burke Dep. Tr. at 164:25-165:21; Ex.

165, Quick Cube Presentation at FLAMBEAU000893-894).

**Defendant's Response:**   Undisputed to the extent the first order of Quick Cubes shipped

with packaging that was thereafter changed to show a 3x3 puzzle cube with fluorescent

color patches on a white puzzle cube base.  (Ex. 162, 8/16/18 Burke Dep. Tr. at 164:25-

166:23).

393.    A PowerPoint presentation for the Quick Cube puzzle for customers and sales

representatives shows an image of a 3x3 puzzle cube with color patches colored red,

orange, yellow, blue, green, and white with a black cube base. (Ex. 165, Quick Cube Presentation at FLAMBEAU000893-894).

**Defendant's Response:**   Disputed as unsupported.  The cited evidence does not support that the cited presentation was for customers or sales representatives.  Moreover, Mr. Burke testified he could not recall if the cited presentation was ever shown to a customer. (Ex. 197, 8/16/18 Burke Dep. Tr. At 141:25-143:9).  Rather, the referenced presentation could have been an early draft that was not used in an actual presentation.  (*Id.*).  Mr. Burke further testified that if this presentation was shown to a customer, it would include the customer's name and/or logo as a cover page like—which is absent in the cited presentation. (*Id.*, at 143:21-144:18).

394.    The Quick Cube puzzle has the same overall look and size as the Rubik's Cube puzzle. (Ex. 161, Project Summary at Flambeau001091; Ex. 3, Duncan Quick Cube; Ex. 163, RUBIK'S CUBE).

**Defendant's Response:**   Disputed in part.  Undisputed to the extent both are 3x3 puzzle cubes.  Defendant disputes the remaining allegations.  Defendant's Quick Cube has a white puzzle base and bright, fluorescent color patches that are distinct in appearance to the Rubik's Cube's black puzzle base and jewel-tone color patches.  (Ex. 1, Burke Decl., ¶ 13; Ex. 3, Quick Cube & Packaging; Ex. 163, RUBIK'S CUBE).  Unlike the smaller segments and patches of the Rubik's Cube, the smaller segments and the patches of the Quick Cube are not square, so the visible portion of its white base takes on a different shape than the visible portion of the Rubik's Cube's black base.  (*Compare* Ex. 1, Burke Decl., ¶ 14; Ex. 16, Loetz Rep., ¶¶ 192-193; Ex. 60, Riehl Dep. Tr., at 10:17-20, 264:25-265:2 *with* Ex. 37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24; Ex. 69, RBL Req. Ad. Resp., No. 9).  Moreover, the Quick Cube is

prominently branded with the well-known DUNCAN mark, whereas the Rubik's Cube is branded with the RUBIK'S mark. (*Compare* Ex. 1, Burke Decl., ¶¶ 13, 16; Ex. 61, Kremer Dep. Tr., at 12:9-20, 40:10-41:3, 48:10-49:2; Ex. 60, Riehl Dep. Tr., at 10:17-20, 262:8-12, 263:18-25, 270:14-25; Ex. 16, Loetz Rep., ¶ 190; Ex. 62, Gottlieb Dep. Tr., at 24:22-25:5 *with* Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:18-20, 267:22-268:7, 269:22-270:10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 76:12-18, 76:25- 77:15, 111:10-16, 126:19-22, 141:13-25; Ex. 16, Loetz Rep., ¶¶ 34, 190; Ex. 62, Gottlieb Dep. Tr., at 22:2-12, 22:22-23:4).

395.    The Rubik's Cube puzzle was introduced in the United States in 1980. (Ex. 75, Kremer Decl. ¶ 3.)

**Defendant's Response:**   Undisputed.

396.    Since 1980, the Rubik's Cube puzzle has been sold in the United States with the same six colors – red, orange, yellow, blue, green and white. (Ex. 75, Kremer Decl. ¶4.)

**Defendant's Response:**   Disputed to the extent this suggests the six listed colors are the only colors used on the Rubik's Cube—the Rubik's Cube also has a black base, which has been the case since its originally manufacturing. (Ex. 16, Loetz Rep., ¶ 168). With black added, undisputed to the extent the listed colors are the specific shades RBL specifies by Pantone number for its Rubik's Cubes. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15, 145:8-146:21; Ex. 16, Loetz Rep., ¶ 33; Ex. 74, GeekvTook Kit, at BOSTONA_000040; Ex. 46, Pantone Color Scheme; Ex. 47, Using Official Rubik's Cube Colors). Disputed to the extent RBL suggests the Rubik's Cube uses every shade of the six listed colors—it does not per RBL's own official guidelines. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15, 145:8-146:21; Ex. 74, GeekvTook Kit, at BOSTONA_000040).

397.    The Rubik's Cube puzzle has been sold in the United States continuously since 1980.
(Ex. 75, Kremer Decl. ¶4.)

**Defendant's Response:**    Disputed.  The cited evidence only supports that RBL and
Seven Towns have used the trademark depicted in the '094 Registration since 1986.  (Ex.
75, Kremer Decl. ¶4).

398.    Over 45 million Rubik's Cube puzzles have been sold in the United States. (Ex. 75,
Kremer Decl. ¶ 19.)

**Defendant's Response:**    Disputed as unsupported. Mr. Kremer's declaration includes
data only from 2010 to 2019. (Ex. 75, Kremer Decl. ¶ 19). Apart from these years, Mr.
Kremer purports to provide an "estimate" of sales since 1980, but does not include any
data for the three decades prior to 2010. (*Id.*).  Moreover, Mr. Kremer's statements refer
generally to "twisty puzzles" and are not specific to the 3x3 Rubik's Cube. (*Id.*).

399.    The Rubik's Cube puzzle was inducted into the National Toy Hall of Fame in 2014. (Ex.
76, Riehl Decl. ¶ 15).

**Defendant's Response:**    Undisputed to the extent "Rubik's Cube puzzle" refers to a 3x3
puzzle cube bearing the characteristics set forth in undisputed Statement Nos. 150-157,
which notably bears a black base.

400.    The Rubik's Cube puzzle is in the design collection of the Museum of Modern Art in
New York City. (Ex. 76, Riehl Decl. ¶14).

**Defendant's Response:**    Undisputed to the extent that the Rubik's Cube was included in
the Museum of Modern Art's 1981 Design Collection and "Rubik's Cube puzzle" refers
to a 3x3 puzzle cube bearing the characteristics set forth in undisputed Statement Nos.
150-157, which notably bears a black base.  (Ex. 76, Riehl Decl. ¶14).

401.    The Rubik's Cube puzzle is included in Time Magazine's "ALL-TIME 100 Greatest

Toys." (Ex. 76, Riehl Decl. ¶ 16).

**Defendant's Response:**    Undisputed to the extent that in 2011 the Rubik's Cube puzzle was included in Time Magazine's 2011 "ALL-TIME 100 Greatest Toys" list and "Rubik's Cube puzzle" refers to a 3x3 puzzle cube bearing the characteristics set forth in undisputed Statement Nos. 150-157, which notably bears a black base.  (Ex. 76, Riehl Decl. ¶ 16).

402.    The Rubik's Cube puzzle is included in an October 29, 2014 article in Time Magazine entitled, "The 13 Most Influential Toys of All Time." (Ex. 76, Riehl Decl. ¶ 16).

**Defendant's Response:**    Undisputed to the extent "Rubik's Cube puzzle" refers to a 3x3 puzzle cube bearing the characteristics set forth in undisputed Statement Nos. 150-157, which notably bears a black base.  (Ex. 76, Riehl Decl. ¶ 16).

403.    The Rubik's Cube puzzle has appeared in numerous motion pictures, print advertisements, television commercials, music videos and elsewhere. (Ex. 75, Riehl Decl. ¶¶ 5-10).

**Defendant's Response:**    Undisputed to the extent "Rubik's Cube puzzle" refers to a 3x3 puzzle cube bearing the characteristics set forth in undisputed Statement Nos. 150-157, which notably bears a black base.  All of the cited examples show a cube with a black base.

404.    Third-party companies have utilized the Rubik's Cube in media campaigns, including Apple, Google, Kia Motors and Office Depot. (Ex. 75, Riehl Decl. ¶ 5.)

**Defendant's Response:**    Undisputed to the extent "Rubik's Cube puzzle" refers to a 3x3 puzzle cube bearing the characteristics set forth in undisputed Statement Nos. 150-157, which notably bears a black base. All of the cited examples show a cube with a black base.

405.   According to the World Cube Association ("WCA") website, the WCA governs competitions for mechanical puzzles that are operated by twisting groups of pieces. (Ex. 166 at FLAMBEAU002505).

**Defendant's Response:**  Undisputed.

406.   The WCA describes the Rubik's Cube puzzle as the "most famous of these [mechanical] puzzles. (Ex. 166 at FLAMBEAU002505).

**Defendant's Response:**  Undisputed.

407.   RBL owns the Rubik's Cube business and all associated intellectual property rights, including all of the common law trademark rights in and to the Rubik's Design in the United States. (Ex. 75, Kremer Decl. ¶4.)

**Defendant's Response:**  Undisputed to the extent RBL asserts rights in the product design of the Rubik's Cube.  Disputed that the product design is protectable, as set forth in Flambeau's Opening Brief.

408.   The Rubik's Cube puzzle and the Rubik's Design have been promoted in the United States by RBL and its predecessors in interest from 1980 through the present day. (Ex. 75 Kremer Decl. ¶ 5).

**Defendant's Response:**  Undisputed that RBL and its predecessors have promoted the Rubik's Cube *product* and the RUBIK'S *brand*.  Disputed that RBL has shown it has promoted the Rubik's Cube's product *design* separate and apart from the product itself or the RUBIK'S brand name. To the extent the design was promoted, all the cited evidence shows such promotion was intermingled with promotion of the product itself and the RUBIK'S brand.

409.   RBL has engaged in substantial promotional and marketing activities in the United States for the Rubik's Design and that features the Rubik's Design. (Ex. 75 Kremer Decl. ¶¶ 6-

11; Ex. 76, Riehl Decl. ¶¶19-35).

**Defendant's Response:**   Undisputed to the extent RBL and its predecessors have

promoted the Rubik's Cube *product* and the RUBIK'S *brand*.  Disputed that RBL has

shown it has promoted the Rubik's Cube's product *design* separate and apart from the

product itself or the RUBIK'S brand name.  To the extent the design was promoted, all

the cited evidence shows such promotion was intermingled with promotion of the product

itself and the RUBIK'S brand.  Disputed as unsupported that this marketing rises to the

level of "substantial."  (Ex. 75 Kremer Decl. ¶¶ 6-11; Ex. 76, Riehl Decl. ¶¶19-35).

410.    RBL and its licensees have spent several millions to advertise and promote the Rubik's

Cube puzzle in the United States. (Ex. 75, Kremer Decl. 10-11; Ex. 76, Riehl Decl. ¶¶25-

26).

**Defendant's Response:**   Undisputed to the extent RBL and its licensees have promoted

the Rubik's Cube *product* and the RUBIK'S *brand*.  Disputed that RBL has shown it has

promoted the Rubik's Cube's product *design* separate and apart from the product itself or

the RUBIK'S brand name.  To the extent the design was promoted, all the cited evidence

shows such promotion was intermingled with promotion of the product itself and the

RUBIK'S brand.

411.    The target users of the Quick Cube puzzle are children aged 8-15 years. (Ex. 162, 8/16/18

Burke Dep. Tr. at 77:1-15; Ex. 161, Project Summary at Flambeau001091).

**Defendant's Response:**   Undisputed.

412.    The purchasers of the Quick Cube puzzle are parents of children aged 8-15 years. (Ex.

161, Project Summary at Flambeau001091; Ex. 167, Gottlieb Dep. Tr. at 123:11-124:13,

269:2-17).

**Defendant's Response:**   Disputed in part.  Undisputed that parents of children aged 8-

15 years could be a target end-user purchaser.  (Ex. 162, 8/16/2018 Burke Dep. Tr., at 77:20-78:20).  Disputed to the extent parents of children aged 8-15 are not the only purchasers of the Quick Cube puzzle.  (*Id.*).  Direct purchasers of the Quick Cube puzzle are sophisticated retail customers.  (Ex. 1, Burke Decl., ¶ 25; Ex. 16, Loetz Rep., ¶¶ 200-203).

413. The target users of the Rubik's Cube puzzle are children aged 8-17. (Ex. 76, Riehl Decl. at ¶ 39).

**Defendant's Response:**  Disputed as unsupported.  See Flambeau's Motion to Strike, filed concurrently herewith.

414. The target purchasers of the Rubik's Cube puzzle are parents of children aged 8-17. (Ex. 76, Riehl Decl. at ¶ 39; Gottlieb Dep. Tr. at 123:11-124:13, 269:2-17).

**Defendant's Response:**  Disputed as unsupported.  See Flambeau's Motion to Strike, filed concurrently herewith.

415. The Quick Cube puzzle has been sold in Target, Staples and Toys "R" Us before it went out of business. (Ex. 1, Burke Decl., ¶ 24).

**Defendant's Response:**  Undisputed to the extent the cited list is not exhaustive; the Quick Cube is also sold on the DUNCAN website (Exs. 205, 206).  Target, Staples and Toys "R" Us are example direct purchasers of the Quick Cube. (Ex. 1, Burke Decl., ¶ 25; Ex. 16, Loetz Rep., ¶¶ 200-203).

416. The Rubik's Cube puzzle has been sold in Target, Staples and Toys "R" Us before it went out of business. (Ex. 75, Kremer Decl. at ¶ 7; Ex. 76, Riehl Decl. at ¶ 37).

**Defendant's Response:**  Undisputed to the extent this does not suggest that RBL sold its 3x3 Rubik's Cube puzzle direct to any retailer, including Target, Staples, and Toys "R" Us, because RBL does not sell direct to retailers. (Ex. 60, Riehl Dep. Tr., at 10:17-20,

33:23-34:16, 50:12-51:12, 152:19-153:2; *see also* Statement No. 323).

417. ==Flambeau stated that the "target competitor" of the Quick Cube is "Rubik's Cube" and the Quick Cube product would be sold at "roughly ½ the retail of Rubik's Cube." (Ex. 161, Project Summary at Flambeau001091).==

**Defendant's Response:**    Undisputed.

418. The Quick Cube puzzle is sold at an approximate retail price of $5.99. (Ex. 76, Riehl Decl. at ¶ 39; Ex. 157, Duncan Website).

**Defendant's Response:**    Undisputed.

419. The Rubik's Cube puzzle is sold at an approximate retail price of $9.99-$13.95. (Ex. 76, Riehl Decl. at ¶ 39; Ex. 154, RBL Website; Ex. 155; Hasbro Website; Ex. 156; Winning Moves Website; Ex. 157, Duncan Website).

**Defendant's Response:**    Undisputed.

420. The Rubik's Cube puzzle and the Quick Cube puzzle have been displayed and sold side by side at retailers. (Ex. 76, Riehl Decl. ¶ 37, Exs. 151-153).

**Defendant's Response:**    Disputed as unsupported as it relates to any and all retailers. The cited evidence shows a maximum of three settings, which is an insufficient sample size to speak to the entire U.S. retail market.  Moreover, the Rubik's Cube and Quick Cube are not the only puzzle cubes marketed in the U.S.  There are dozens of third-party 3x3 puzzle cubes available for purchase. (Ex. 16, Loetz Rep., ¶ 26, Appx. 7).

421. The Rubik's Cube is licensed and sold by Hasbro, Inc. ("Hasbro") (Ex. 75, Kremer Decl. ¶ 7).

**Defendant's Response:**    Undisputed.

422. Hasbro sells the Rubik's Cube puzzle to major retailers such as Walmart, Target and Best Buy. (Ex. 75, Kremer Decl. at ¶ 7)

**Defendant's Response:** Undisputed.

423. Hasbro is a well-known toy company. (Ex. 16, Loetz Rep., ¶¶ 9, 35, 178; Ex. 76, Riehl Decl. at ¶ 2).

**Defendant's Response:** Disputed as unsupported. RBL cites no evidence that shows the relevant consuming public would recognize "Hasbro" or consider it well-known. The cited report of Mr. Loetz does not support the proposition that Hasbro is "well-known." Furthermore, Ms. Riehl's cited declaration does not state that Hasbro is well-known or anything akin to that. Rather, Ms. Riehl simply states her background at Hasbro, Inc. (Ex. 76, Riehl Decl. at ¶ 2). Undisputed to the extent Hasbro is one of several players in the toy industry. (Ex. 16, Loetz Rep., ¶¶ 9, 35, 178).

424. Rubik's Cube puzzles sold by Hasbro are sold in packaging that contains the Hasbro name and trademark. (Ex. 163, RUBIK'S CUBE).

**Defendant's Response:** Undisputed that "Hasbro" appears in small font in the lower right-hand side of the Rubik's Cube packaging underneath the "RUBIK'S" name which appears in much larger font. The Rubik's Cube itself is branded with "RUBIK'S" not "Hasbro." (*See* Statement No. 308).

425. The Rubik's Cube is licensed and sold by Winning Moves, Inc. ("Winning Moves"). (Ex. 75, Kremer Decl. ¶ 7).

**Defendant's Response:** Undisputed.

426. Winning Moves sells the Rubik's Cube puzzle to specialty stores such as Restoration Hardware, Barnes & Noble and Staples. (Ex. 75, Kremer Decl. ¶ 7).

**Defendant's Response:** Undisputed.

427. The Rubik's Cube is licensed and sold by Super Impulse USA. (Ex. 75, Kremer Decl. ¶7).

**Defendant's Response:**   Undisputed.

428.   Super Impulse USA sells a miniature keychain version of the 3x3 Rubik's Cube puzzle. (Ex. 75, Kremer Decl. ¶ 7).

**Defendant's Response:**   Undisputed but immaterial.

429.   RBL maintains strict quality control standards by requiring licensees, for example, to follow a style guide with regard to the visual display of the Rubik's Design. (Ex. 75, Kremer Decl. ¶ 35; Ex. 70, Style Guide; Ex. 74, Geek Took Kit, at BOSTONA_000039).

**Defendant's Response:**   Undisputed.

430.   RBL take steps in the United States and throughout the world to enforce and protect its intellectual property rights, including those in and to the Rubik's Design, which have included instituting federal litigations, cease and desist letters, registration of the Rubik's Design with the U.S. Customs and Border Protection and engagement of a company called Yellow Brand Protection. (Ex. 75, Kremer Decl. ¶ 12-18).

**Defendant's Response:**   Disputed. There are dozens of different non-Rubik's 3x3 puzzle cubes available for purchase in the U.S. that have not been the target of RBL's enforcement enforcements. (Ex. 16, Loetz Rep., ¶¶ 183-186 & Appendix 7; Ex. 61, Kremer Dep. Tr., at 12:9-20, 250:5-15; *see also* Statement of Material Fact Nos. 314-318). Moreover, contrary to Mr. Kremer's declaration, RBL has knowingly *allowed* non-RBL puzzle cubes bearing the 3x3 Cube Design to persist in the market.  (Ex. 203, Cubicle Agreement, ).

431.   The manufacturer and supplier of the Quick Cube puzzle is a company named Yongjun, located in China. (Ex. 162, 8/16/18 Burke Dep. Tr. at 72:17-75:14; 121:23-122:25).

**Defendant's Response:**   Undisputed.

432.   Samples of the Yongjun cube puzzles received by Flambeau had poor stickers. (Ex. 168,

Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000922, Flambeau000924).

**Defendant's Response:**  Undisputed but immaterial to the extent that one out of the 50 pre-production samples of the Yongjun puzzle cube had a poor sticker on it and did not meet Flambeau's quality standards.  (Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919). Flambeau requested the samples for the very purpose of correcting quality issues prior to any production runs. (Ex. 197, 8/16/18 Burke Dep. Tr., at 75:5-76:25, 106:5-107:10, 108:10-20, 123:23-124:2).

433.    Samples of the Yongjun cube puzzles received by Flambeau had grease, hair and dirt on them.  (Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919-Flambeau000920).

**Defendant's Response:**  Undisputed but immaterial to the extent that some pre-production samples of the Yongjun puzzle cube were not up to Flambeau's quality standards.  (*See* Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000923 ; Ex. 162, Burke Dep. Tr., at 75:5-76:25, 123:23-124:2).  Flambeau requested the samples for the very purpose of correcting quality issues prior to any production runs. (Ex. 197, 8/16/18 Burke Dep. Tr., at 75:5-76:25, 106:5-107:10, 108:10-20, 123:23-124:2).

434.    Samples of the Yongjun cube puzzles received by Flambeau had air bubbles under the stickers.  (Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000921).

**Defendant's Response:**  Undisputed but immaterial to the extent that some pre-production samples of the Yongjun puzzle cube had air bubbles trapped under stickers and did not meet Flambeau's quality standards.  (Ex. 168, Quick Cube Quality Inspection

Report at Flambeau000919). Flambeau requested the samples for the very purpose of correcting quality issues prior to any production runs. (Ex. 197, 8/16/18 Burke Dep. Tr., at 75:5-76:25, 106:5-107:10, 108:10-20, 123:23-124:2).

435. The packaging for samples of the Yongjun cube puzzles received by Flambeau had grease stains. (Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000923).

**Defendant's Response:** Undisputed but immaterial to the extent that some pre-production packaging samples for the Yongjun puzzle cube were not up to Flambeau's quality standards. (*See* Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000923; Ex. 162, Burke Dep. Tr., at 75:5-76:25, 123:23-124:2). Flambeau requested the packaging samples for the very purpose of correcting quality issues prior to any production runs. (Ex. 197, 8/16/18 Burke Dep. Tr., at 75:5-76:25, 106:5-107:10, 108:10-20, 123:23-124:2).

436. Flambeau noted that samples of the Yongjun cube puzzles received by Flambeau had loose center pieces that fall out easily over time. (Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000925).

**Defendant's Response:** Undisputed but immaterial to the extent that some pre-production samples of the Yongjun puzzle cube were not up to Flambeau's quality standards. (*See* Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000923; Ex. 162, 8/16/18 Burke Dep. Tr., at 75:5-76:25, 123:23-124:2). Flambeau requested the samples for the very purpose of correcting quality issues prior to any production runs. (Ex. 197, 8/16/18 Burke Dep. Tr., at 75:5-76:25, 106:5-107:10, 108:10-20, 123:23-124:2).

437. A purchaser of the Quick Cube puzzle wrote to Flambeau that shortly after purchase, "the

entire cube fell apart." (Ex. 169, Customer Email at Flambeau001489).

**Defendant's Response:**   Disputed in part.  Undisputed that Flambeau received a one-off report about a Quick Cube falling apart, which was immediately replaced by Flambeau. (Ex. 169, at Flambeau001489-1491).  After interacting with Flambeau's customer service, the Quick Cube purchaser responded:  "Thank you very much! My son will be very happy. Excellent customer service!" (*Id.* at FLAMBEAU001490). Other than this one report, there were no further issues with the Quick Cube.  (Ex. 197, 8/16/18 Burke Dep. Tr., at 196:9-22, 197:17-198:12).

438.   Flambeau had its Quick Cube Puzzles tested for compliance with the Consumer Product Safety Improvement Act ("CPSIA") by a laboratory named SGS. (Ex. 170, SGS Test Report).

**Defendant's Response:**   Undisputed but immaterial. ***First,*** the cited SGS report is immaterial and irrelevant as a result of the Court denying RBL's request for leave to amend.  The Court concluded RBL's claims of harm from alleged "failed testing" was speculative and unsupported.  (Dkt. 147, Leave to Amend Order).  Any statement regarding the SGS report is immaterial because, as the Court concluded, there is no evidence of anyone being harmed by the Quick Cube and no evidence that any nonexistent harm could be imputed onto RBL.  (*Id.*, at 15-16).  ***Second***, the cited SGS report is unsupported hearsay expert opinion. The contents of the report are undisputedly scientific and technical; yet RBL has not proffered any witness, let alone a witness with the requisite expertise to testify to its contents. Fed. R. Evid. 701-703. ***Third,*** even taking the report at face value, RBL's statement mischaracterizes the report, its findings, and its significance.  The report states on its face that it is preliminary and cannot be relied upon. (Ex. 170, SGS Report, at FLAMBEAU002729; Ex. 198, 11/29/18 Burke Dep. Tr., at

50:9-13, 151:14-152:11).  The cited report was preliminary and the cubes that failed the preliminary report were remediated.  (Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 71:15-21, 73:24-74:3, 74:21-25, 75:10-13, 97:16-20, 106:10-19, 151:14-152:11). There is no evidence that a consumer (1) ever purchased a toxic Quick Cube; (2) ever suffered any injury associated with a toxic Quick Cube; or (3) ever associated a purported injury related to Flambeau's Quick Cube with Rubik's 3x3 Puzzle cube.  (Dkt. 147, Leave to Amend Order, at 15; Dkt. 121, Flambeau Opposition to Leave to Amend Request, at 1-2).  Flambeau's protocol required testing before shipment and its quality control ensured that any other shipments of cubes would have been tested and passed before shipping.  (Ex. 198, 11/29/18 Burke Dep. Tr., at 71:15-21, 129:25-130:6, 131:12-132:6).

439.  A report from SGS dated March 15, 2016 indicates that the Quick Cube puzzles failed the test for certain toxic components, including phthalates. (Ex. 170, SGS Test Report at FLAMBEAU002729).

**Defendant's Response:**   Disputed as unsupported and immaterial.  ***First***, the cited SGS report is immaterial and irrelevant as a result of the Court denying RBL's request for leave to amend.  The Court concluded RBL's supposed claims of harm from alleged "failed testing" was speculative and unsupported.  (Dkt. 147, Leave to Amend Order). Any statement regarding the SGS report is immaterial because, as the Court concluded, there is no evidence of anyone being harmed by the Quick Cube and no evidence that any nonexistent harm could be imputed onto RBL.  (*Id.*, at 15-16).  ***Second***, the cited SGS report is unsupported hearsay expert opinion. The contents of the report are undisputedly scientific and technical; yet RBL has not proffered any witness, let alone a witness with the requisite expertise to testify to its contents. Fed. R. Evid. 701-703. ***Third***, even taking the report at face value, RBL's proposed statement mischaracterizes the report, its

findings, and its significance. The report states on its face that it is preliminary and cannot be relied upon. (Ex. 170, SGS Report, at FLAMBEAU002729; Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 151:14-152:11). The cited report was preliminary and the cubes that failed the preliminary report were remediated. (Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 71:15-21, 73:24-74:3, 74:21-25, 75:10-13, 97:16-20, 106:10-19, 151:14-152:11). There is no evidence that a consumer (1) ever purchased a toxic Quick Cube; (2) ever suffered any injury associated with a toxic Quick Cube; or (3) ever associated a purported injury related to Flambeau's Quick Cube with Rubik's 3x3 Puzzle cube. (Dkt. 147, Leave to Amend Order, at 15; Dkt. 121, Flambeau Opposition to Leave to Amend Request, at 1-2). Flambeau's protocol required testing before shipment and its quality control ensured that any other shipments of cubes would have been tested and passed before shipping. (Ex. 198, 11/29/18 Burke Dep. Tr., at 71:15-21, 129:25-130:6, 131:12-132:6).

440. Phthalates are suspected of causing cancer and other serious illnesses. (Exhibit 171, Kitzes Rep. at pp. 12-13).

**Defendant's Response:** Disputed as unsupported and immaterial. *First*, Phthalates and their purported health effects are immaterial and irrelevant as a result of the Court denying RBL's request for leave to amend. The Court concluded RBL's supposed claims of harm from alleged "failed testing" was speculative and unsupported. (Dkt. 147, Leave to Amend Order). Any statement regarding the SGS report or phthalates are immaterial because, as the Court concluded, there is no evidence of anyone being harmed by the Quick Cube and no evidence that any nonexistent harm could be imputed onto RBL. (*Id.*, at 15-16). *Second*, RBL's cited expert, Mr. Kitzes, testified he is not a scientist and lacked any professional foundation to testify or opine regarding phthalates or any other

chemical items.  Fed. R. Evid. 701-703; (Ex. 199, Kitzes Dep. Tr., at 59:10-61:11).  Mr. Kitzes also did not test any of the Quick Cubes and cannot opine regarding phthalate levels in Quick Cubes.  (*Id.*, Kitzes Dep. Tr., at 63:4-18).

441.    The color decals (stickers) on the Quick Cube puzzles contained up to 150 times the permissible limit of certain phthalates under the CPSIA. (Ex. 170, SGS Test Report at FLAMBEAU002730-2731).

**Defendant's Response:**    Disputed as unsupported, immaterial, and misleading.  ***First***, the SGS report is immaterial and irrelevant as a result of the Court denying RBL's request for leave to amend.  The Court concluded RBL's supposed claims of harm from alleged "failed testing" was speculative and unsupported.  (Dkt. 147, Leave to Amend Order).  Any statement regarding the SGS report is immaterial because, as the Court concluded, there is no evidence of anyone being harmed by the Quick Cube and no evidence that any nonexistent harm could be imputed onto RBL.  (*Id.*, at 15-16).  ***Second***, the cited SGS report is unsupported hearsay expert opinion. The contents of the report are undisputedly scientific and technical; yet RBL has not proffered any witness, let alone a witness with the requisite expertise to testify to its contents.  Fed. R. Evid. 701-703.

***Third***, even taking the report at face value, RBL's proposed statement mischaracterizes the report, its findings, and its significance.  The report states on its face that it is preliminary and cannot be relied upon.  (Ex. 170, SGS Report, at FLAMBEAU002729; Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 151:14-152:11).  The cited report was preliminary and the cubes that failed the preliminary report were remediated.  (Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 71:15-21, 73:24-74:3, 74:21-25, 75:10-13, 97:16-20, 106:10-19, 151:14-152:11). There is no evidence that a consumer (1) ever purchased a toxic Quick Cube; (2) ever suffered any injury associated with a toxic Quick Cube; or

(3) ever associated a purported injury related to Flambeau's Quick Cube with Rubik's 3x3 Puzzle cube. (Dkt. 147, Leave to Amend Order, at 15; Dkt. 121, Flambeau Opposition to Leave to Amend Request, at 1-2). Flambeau's protocol required testing before shipment and its quality control ensured that any other shipments of cubes would have been tested and passed before shipping. (Ex. 198, 11/29/18 Burke Dep. Tr., at 71:15-21, 129:25-130:6, 131:12-132:6).

442.    The SGS report specified that "Accessible Materials can be placed in the Mouth." (Ex. 170, SGS Test Report at FLAMBEAU002730).

**Defendant's Response:**    Disputed as unsupported and immaterial. ***First,*** the SGS report is immaterial and irrelevant as a result of the Court denying RBL's request for leave to amend. The Court concluded RBL's supposed claims of harm from alleged "failed testing" was speculative and unsupported. (Dkt. 147, Leave to Amend Order). Any statement regarding the SGS report is immaterial because, as the Court concluded, there is no evidence of anyone being harmed by the Quick Cube and no evidence that any nonexistent harm could be imputed onto RBL. (*Id.*, at 15-16). ***Second***, the cited SGS report is unsupported hearsay expert opinion. The contents of the report are undisputedly scientific and technical; yet RBL has not proffered any witness, let alone a witness with the requisite expertise to testify to its contents. Fed. R. Evid. 701-703. ***Third***, even taking the report at face value, RBL's proposed statement mischaracterizes the report, its findings, and its significance. The report states on its face that it is preliminary and cannot be relied upon. (Ex. 170, SGS Report, at FLAMBEAU002729; Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 151:14-152:11). The cited report was preliminary and the cubes that failed the preliminary report were remediated. (Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 71:15-21, 73:24-74:3, 74:21-25, 75:10-13, 97:16-20, 106:10-19, 151:14-

152:11). There is no evidence that a consumer (1) ever purchased a toxic Quick Cube; (2) ever suffered any injury associated with a toxic Quick Cube; or (3) ever associated a purported injury related to Flambeau's Quick Cube with Rubik's 3x3 Puzzle cube.  (Dkt. 147, Leave to Amend Order, at 15; Dkt. 121, Flambeau Opposition to Leave to Amend Request, at 1-2).  Flambeau's protocol required testing before shipment and its quality control ensured that any other shipments of cubes would have been tested and passed before shipping.   (Ex. 198, 11/29/18 Burke Dep. Tr., at 71:15-21, 129:25-130:6, 131:12-132:6).

443.    Flambeau considers children as young as eight years old to be the target market users of the Quick Cube puzzle. (Ex. 161, Project Summary at Flambeau001091).

**Defendant's Response:**   Undisputed.

444.    Flambeau shipped the Quick Cube puzzles from the lots received, samples of which failed the SGS phthalates tests, to its direct customers for sale to the public. (Ex. 170, SGS Test Report at FLAMBEAU002729-2731; Ex. 162, 8/16/18 Burke Dep. Tr. at 154:17-24).

**Defendant's Response:**   Disputed as unsupported, immaterial, and misleading.  ***First***, the SGS report and phthalates tests are immaterial and irrelevant as a result of the Court denying RBL's request for leave to amend.  The Court concluded RBL's supposed claims of harm from alleged "failed testing" was speculative and unsupported.  (Dkt. 147, Leave to Amend Order).  Any statement regarding the SGS report is immaterial because, as the Court concluded, there is no evidence of anyone being harmed by the Quick Cube and no evidence that any nonexistent harm could be imputed onto RBL.  (*Id.*, at 15-16).  ***Second***, the cited SGS report is unsupported hearsay expert opinion. The contents of the report are undisputedly scientific and technical; yet RBL has not proffered any witness, let alone a

witness with the requisite expertise to testify to its contents. Fed. R. Evid. 701-703. *Third*, even taking the report at face value, RBL's proposed statement mischaracterizes the report, its findings, and its significance. The report states on its face that it is preliminary and cannot be relied upon. (Ex. 170, SGS Report, at FLAMBEAU002729; Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 151:14-152:11). The cubes that failed the preliminary report were remediated and were not shipped from China until they were remediated. (Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 71:15-21, 73:24-74:3, 74:21-25, 75:10-13, 97:16-20, 106:10-19, 151:14-152:11). There is no evidence that a consumer (1) ever purchased a toxic Quick Cube; (2) ever suffered any injury associated with a toxic Quick Cube; or (3) ever associated a purported injury related to Flambeau's Quick Cube with Rubik's 3x3 Puzzle cube. (Dkt. 147, Leave to Amend Order, at 15; Dkt. 121, Flambeau Opposition to Leave to Amend Request, at 1-2). Even though Flambeau shipped some cubes from China before the preliminary test, Flambeau's standard protocol required testing before shipment and its quality control ensured that any shipments of cubes would have been tested and passed before shipping from China. (Ex. 198, 11/29/18 Burke Dep. Tr., at 71:15-21, 129:15-130:11, 131:12-132:6, 145:6-16).

445. Flambeau did not recall any of the Quick Cube puzzles after it shipped them to its direct customers for sale to the public. (Ex. 172, 11/29/18 Burke Dep. Tr. at 133:25-12).

**Defendant's Response:** Disputed unsupported, immaterial, and misleading. *First*, the SGS report, any phthalates tests, and any recalls, whether completed or not, are immaterial and irrelevant as a result of the Court denying RBL's request for leave to amend. The Court concluded RBL's supposed claims of harm from alleged "failed testing" was speculative and unsupported. (Dkt. 147, Leave to Amend Order). Any statement related to the SGS report is immaterial because, as the Court concluded, there

179

is no evidence of anyone being harmed by the Quick Cube and no evidence that any nonexistent harm could be imputed onto RBL.  (*Id.*, at 15-16).  ***Second***, the cited SGS report is unsupported hearsay expert opinion. The contents of the report are undisputedly scientific and technical; yet RBL has not proffered any witness, let alone a witness with the requisite expertise to testify to its contents. Fed. R. Evid. 701-703. ***Third***, even taking the report at face value, RBL's proposed statement mischaracterizes the report, its findings, and its significance.  The report states on its face that it is preliminary and cannot be relied upon.  (Ex. 170, SGS Report, at FLAMBEAU002729; Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 151:14-152:11).  The cubes that failed the preliminary report were remediated and were not shipped from China until they were remediated.  (Ex. 198, 11/29/18 Burke Dep. Tr., at 50:9-13, 71:15-21, 73:24-74:3, 74:21-25, 75:10-13, 97:16-20, 106:10-19, 151:14-152:11). There is no evidence that a consumer (1) ever purchased a toxic Quick Cube; (2) ever suffered any injury associated with a toxic Quick Cube; or (3) ever associated a purported injury related to Flambeau's Quick Cube with Rubik's 3x3 Puzzle cube.  (Dkt. 147, Leave to Amend Order, at 15; Dkt. 121, Flambeau Opposition to Leave to Amend Request, at 1-2)  Even though Flambeau shipped some cubes from China before the preliminary test, Flambeau's standard protocol required testing before shipment and its quality control ensured that any shipments of cubes would have been tested and passed before shipping from China.   (Ex. 198, 11/29/18 Burke Dep. Tr., at 71:15-21, 129:15-130:11, 131:12-132:6, 145:6-16).

446.    Flambeau voluntarily waived the attorney-client privilege and produced in discovery a purported opinion of counsel concerning functionality and trademark infringement. (Exs. 11-13; Ex. 162, 8/16/18 Burke Dep. Tr. at 72:17-73:12).

   **Defendant's Response:**   Undisputed Flambeau produced opinions of counsel on the

Quick Cube and relevant patents and trademarks and allowed the authoring attorney to be deposed on those limited topics.

447. Bennett Berson of Quarles & Brady, LLP is a patent attorney. (Ex. 173, Berson Dep. Tr. at 8:1-9:5).

**Defendant's Response:** Disputed as incomplete and misleading. Attorney Berson is an intellectual property attorney with nearly 30 years of experience with trademarks, trade secrets, copyrights, and patents. Attorney Berson has nearly 30 years of experience advising clients in a wide variety of trademark issues, including domestic and international trademark prosecution and enforcement. (Ex. 10, Berson Decl., ¶¶ 2-3; Ex. 200, Berson Dep. Tr. at 8:2-4, 8:13-16, 11:22-12:9, 13:4-17, 15:9-16:6, 18:2-15, 19:9-11). Attorney Berson has applied and maintained hundreds of domestic and foreign trademark registrations on behalf of his clients, including professional sports teams, such as the Green Bay Packers, and research institutions. (*Id.*). Attorney Berson testified he had 40 or 50 active clients in the trademark world. (Ex. 200, Berson Dep. Tr., at 15:17-18). Attorney Berson routinely conducts trademark clearance searches for availability for trademarks and offering opinions on risks involved in adopting certain marks or designs. (Ex. 200, Berson Dep. Tr., at 15:22-16:6, 18:2-15; Ex. 10, Berson Decl., ¶ 3). Attorney Berson has received multiple honors and awards for his trademark work, including being recognized as Best Lawyers® 2020 Madison Trademark Law "Lawyer of the Year." (Ex. 10, Berson Decl., ¶ 4). Attorney Berson testified that his practice for nearly 30 years has comprised roughly 35 percent trademark work, with the balance related to patents. (Ex. 173, Berson Dep. Tr., at 8:22-9:5). Attorney Berson subscribes and keeps abreast of trademark publications and regularly participates in intellectual property organizations, including attending annual International Trademark Association meetings. (Ex. 10,

Berson Decl., ¶ 5; Ex. 200, Berson Dep. Tr., at 12:7-13:7).

448.    Bennett Berson's area of focus is biotechnology. (Ex. 173, Berson Dep. Tr. At 9:16-10:2).

**Defendant's Response:**   Disputed as incomplete and misleading.  In response to being asked whether there is a particular industrial sector that he works in, Attorney Berson testified "[i]t's fairly varied" and that he work with, for example, a professional sports team, an agricultural biological product company, Flambeau—which specializes in plastics—and others.  (Ex. 200, Berson Dep. Tr., at 15:11-18).  Attorney Berson has expertise in biotechnology, including prosecuting and advising clients in regards to trademark and patent matters in that field.  (*Id.*, at 10:1-5; Ex. 10, Berson Decl., ¶¶ 2-3).

449.    Bennett Berson considers himself to be a prosecution attorney. (Ex. 173, Berson Dep. Tr. at 8:13-14).

**Defendant's Response:**   Disputed in part.  Undisputed to the extent that Attorney Berson has nearly 30 years prosecuting both trademarks and patents.  (Ex. 10, Berson Decl., ¶¶ 2-3; Ex. 200, Berson Dep. Tr. at 8:2-4, 8:13-16, 11:22-12:9, 13:4-17, 15:9-16:6, 18:2-15, 19:9-11).  As Attorney Berson testified to, he considers himself to be a prosecution attorney and "[m]ost of [his] work on the trademark and patent side is in the patent office and advising clients about prosecution."  (Ex. 173, Berson Dep. Tr. at 8:13-16).  Attorney Berson also routinely conducts trademark clearance searches for availability for trademarks and offering formal opinions on risks involved in adopting certain marks or designs.  (Ex. 200, Berson Dep. Tr., at 15:22-16:6, 18:2-15; Ex. 10, Berson Decl., ¶ 3).

450.    Bennett Berson was unable to recall if he had ever been involved in a federal court trademark litigation. (Ex. 173, Berson Dep. Tr. at 17:7-9).

**Defendant's Response:**   Disputed. When asked "have you been involved in any trademark litigation," Attorney Berson testified "Certainly. Certainly." (Ex. 173, Berson Dep. Tr., at 16:10-13). Attorney Berson could not identify specific federal trademark litigations cases he was involved with, but Attorney Berson testified he routinely works with Intellectual Property litigators and occasionally helps with litigation. (Ex. 173, Berson Dep. Tr., at 8:17-20). Attorney Berson further testified he routinely assists litigators with the early stages of trademark litigation cases. (Ex. 173, Berson Dep. Tr., at 16:16-20).

451. Bennett Berson was unable to recall if he had given any opinions on the protectability of a claimed trade dress. (Ex. 173, Berson Dep. Tr. at 17:14-16).

**Defendant's Response:**   Disputed. Attorney Berson testified that in his nearly 30 years of practice he had provided professional opinions on the availability or protectability of a claimed trade dress. (Ex. 200, Berson Dep. Tr., at 17:10-13; Ex. 10, Berson Decl., ¶ 3).

452. Flambeau sought Bennett Berson's opinion as to whether the Quick Cube design infringes any trademarks owned by RBL. (Ex. 173, Berson Dep. Tr. at 54:8-12).

**Defendant's Response:**   Undisputed to the extent considering whether the Quick Cube design infringes any trademarks owned by RBL was one aspect of Attorney Berson's considerations and ultimate legal opinion. (Ex. 10, Berson Decl., ¶¶ 6-10).

453. Flambeau sought Mr. Berson's legal opinion on trademark infringement after its Quick Cube puzzles were designed. (Ex. 173, Berson Dep. Tr. at 52:18-54:19; Ex. 13 at FLAMBEAU001088).

**Defendant's Response:**   Disputed as unsupported and misleading. The cited evidence does not support the fact as proposed. The cited deposition testimony relates to a product discussed in an article and bears no relation to the timing of either the design or the first

sale of the Duncan Quick Cube puzzle. (Ex. 173, Berson Dep. Tr., at 53:22-54:5). Moreover, Flambeau did not *design* the underlying cube of the Quick Cube, it selected a ready-made 3x3 puzzle cube from its supplier's catalogue and then worked to brand it with the DUNCAN name. (Ex. 162, 8/16/18 Burke Dep. Tr., at 74:24-75:12). Flambeau simply was not in a position to seek the opinions of counsel prior to the design of the underlying cube. Defendant does not dispute that prior to finalizing the ultimate design and the first sale of the Quick Cube in the U.S., Attorney Berson provided legal opinions regarding both patents and trademarks as they relate to the Duncan Quick Cube puzzle. (Ex. 10, Berson Decl., ¶¶ 8-9).

454. Flambeau sought Mr. Berson's legal opinion on trademark infringement after its Quick Cube puzzles were produced. (Ex. 173, Berson Dep. Tr. at 52:18-54:19; Ex. 13 at FLAMBEAU001088).

**Defendant's Response:** Disputed as unsupported and misleading. The cited evidence does not support the fact as proposed. The cited deposition testimony relates to a product discussed in an article and bears no relation to the timing of either the production or the first sale of the Duncan Quick Cube puzzle. (Ex. 173, Berson Dep. Tr., at 53:22-54:5). Defendant does not dispute that prior to finalizing the ultimate design and the first sale of the Quick Cube in the U.S., Attorney Berson provided legal opinions regarding both patents and trademarks as they relate to the Duncan Quick Cube puzzle. (Ex. 10, Berson Decl., ¶¶ 8-9).

455. Flambeau sought Mr. Berson's legal opinion on trademark infringement after its Quick Cube puzzles were shipped from its supplier in China. (Ex. 173, Berson Dep. Tr. at 52:18-54:19; Ex. 162, 8/16/18 Burke Dep. Tr. at 97:2-98:3; Ex. 13 at FLAMBEAU001088).

**Defendant's Response:**   Disputed as unsupported and misleading.  The cited evidence does not support the fact as proposed.  The cited deposition testimony from Attorney Berson relates to a product discussed in an article and bears no relation to the timing of either the production, shipment, or the first sale of the Duncan Quick Cube puzzle.  (Ex. 173, Berson Dep. Tr., at 53:22-54:5).  Likewise, the cited deposition testimony from Mr. Burke discusses a "preproduction issue" and does not establish or discuss timing of Attorney Berson's opinion in connection with any shipment from China.  (Ex. 162, Berson Dep. Tr., at 97:2-98:3).  Defendant does not dispute that prior to finalizing the ultimate design and the first sale of the Quick Cube in the U.S., Attorney Berson provided legal opinions regarding both patents and trademarks as they relate to the Duncan Quick Cube puzzle.  (Ex. 10, Berson Decl., ¶¶ 8-9).

456.   Quarles & Brady, LLP did not conduct any legal research on any trademark law issues in connection with Mr. Berson's opinion as to whether the Quick Cube design infringes any RBL trademarks. (Ex. 173, Berson Dep. Tr. at 58:15-59:3; 64:3-7; 70:2-17; 123:10-17).

**Defendant's Response:**   Disputed as unsupported and misleading.  *First*, "legal research" and "trademark law issues" are overly broad, undefined, ambiguous, and call for a legal conclusion.  Moreover, the cited testimony does not refer to the entire firm of "Quarles & Brady LLP."  *Second*, Attorney Berson testified that in connection with rendering his legal opinion he reviewed several puzzle cube patents, which bear on the issue of a design's functionality, RBL's trademark registration, articles reviewing the historic IP associated with the Rubik's Cube, patents resulting from independent searches, a pre-sale Duncan puzzle cube, and a legal decision from the European Court of Justice regarding the protectability of RBL's trademark registration.  (Ex. 10, Berson Decl., ¶¶ 9-10; Ex. 200, Berson Dep. Tr., at 38:5-16, 53:10-16, 71:5-12, 72:9-14, 126:14-

185

127:11, 133:4-134:5). Apart from these materials, Attorney Berson did not need to research any trademark law basics—he has nearly 30 years of experience in the field. (Ex. 10, Berson Decl., ¶ 2).

457.     Mr. Berson did not conduct an analysis of the Polaroid confusion factors in reaching his conclusion on trademark infringement rendered to Flambeau. (Ex. 173, Berson Dep. Tr. at 58:15-59:8; 116:21-118:14; 122:24-125:15).

**Defendant's Response:**   Disputed. Attorney Berson reviewed a sample and pictures of the Quick Cube, information on the historic IP associated with the Rubik's Cube, and RBL's asserted trademark registration. (Ex. 10, Berson Decl., ¶¶ 6-10). While Attorney Berson may not have referenced these points as *Polaroid* factors, he necessarily reviewed and considered many of the factors, including (i) the (dis)similarity of the designs; (ii) the (dis)similarity of the products; (iii) the strength/weakness of the asserted design; and (iv) Flambeau's good faith.  As RBL concedes, not all factors must be considered. (RBL Opp. Br., p. 16). Attorney Berson could not have anticipated that RBL would have sued Flambeau in the Second Circuit, where the *Polaroid* factors are applied.  RBL puts form over substance.

458.     Quarles & Brady, LLP did not research whether any prior trademark decisions concerned the use of a white cube base by a defendant in an action to enforce the Rubik's Design. (Ex. 173, Berson Dep. Tr. at 122:24-125:15).

**Defendant's Response:**   Disputed as unsupported. The cited testimony is limited to Attorney Berson's testimony regarding the legal opinions he provided in connection with Flambeau's Quick Cube and his knowledge.  Attorney Berson was unaware what research or work another Quarles & Brady attorney completed.  (Ex. 173, Berson Dep. Tr. at 122:24-125:15).

186

459. A case captioned CBS Inc. v. Logical Games, Inc., No. CIV.A. 82-0473-A, 1982 WL 52131 (E.D. Va. Dec. 28, 1982) concerned claims of trademark infringement by a predecessor of RBL against a defendant that was selling a 3x3 cube puzzle with a white cube base. (Ex. 82, CBS Inc. v. Logical Games, Inc. (Berson Dep. Ex. 18)).

**Defendant's Response:**   Undisputed but immaterial to the extent the case also included stipulations by both parties regarding functionality and likelihood of confusion. Further undisputed that the subject cubes were not branded with the DUNCAN mark.

460. Mr. Berson had not reviewed the opinion in CBS, Inc. v. Logical Games prior to or in connection with his legal opinion that Flambeau will avoid infringement of the Rubik's Design by "offering a white cube." (Ex. 173, Berson Dep. Tr. at 122:24-125:15).

**Defendant's Response:**   Undisputed but immaterial to the extent the case also included stipulations by both parties regarding functionality and likelihood of confusion. Further undisputed that the subject cubes were not branded with the DUNCAN mark.

461. Mr. Berson would have wanted to review the opinion in CBS, Inc. v. Logical Games in connection with his legal opinion that Flambeau will avoid infringement of the Rubik's Design by "offering a white cube" had he known about it. (Ex. 173, Berson Dep. Tr. at 130:22-131:5).

**Defendant's Response:**   Disputed. Attorney Berson was asked an incomplete hypothetical about whether he would want to have reviewed a case where a white three-by-three cube was found to be infringing by the Rubik's Cube trademark, which drew objections from Attorney Berson's counsel.  (Ex. 173, Berson Dep. Tr., at 123:19-124:3). Further, the *CBS, Inc. v. Logical Games* decision referenced here involved both parties stipulating to nonfuctionality and likelihood of confusion of the cubes at issue.  (Ex. 173, Berson Dep. Tr., at 129:11-24).  Attorney Berson's counsel timely objected to the line of

questioning cited as support for this statement based on foundation and the parties' stipulations in the *CBS, Inc. v. Logical Games* decision. (*Id.*).

462. Mr. Benson did not review an actual, physical sample of the Quick Cube puzzle before he reached his legal conclusion as expressed in his opinion. (Ex. 173, Berson Dep. Tr. At 125:17-22).

**Defendant's Response:** Disputed. Attorney Berson testified that prior to reaching his legal opinion he reviewed a physical 3x3 puzzle cube provided by Flambeau in connection with Flambeau's Quick Cube puzzle project and Flambeau's request for a legal opinion regarding the same. (Ex. 173, Berson Dep. Tr., at 125:17-127:1). Attorney Berson could not recall if the physical 3x3 puzzle cube he reviewed was the final Quick Cube puzzle or a near-final prototype, (Ex. 173, Berson Dep. Tr., at 126:10-24), but this is immaterial as RBL points to no meaningful difference between the sample cube and pictures Mr. Berson reviewed and the final Quick Cube.

463. Mr. Berson had no information from Flambeau on what colors would be used on the patches of the Quick Cube puzzle before he reached his legal conclusion as expressed in his opinion. (Ex. 173, Berson Dep. Tr. at 127:17-128:16; Ex. 162, 8/16/18 Burke Dep. Tr. at 125:6-14).

**Defendant's Response:** Disputed. Attorney Berson did not have "no information" on the colors—he had reviewed a physical sample and pictures of the Quick Cube prior to giving his opinion. Attorney Berson was not aware whether the color patches shown on the samples and pictures were absolutely final, (Ex. 173, Berson Dep. Tr., at 127:17-128:6), but this is immaterial as RBL points to no meaningful difference between the sample cube and pictures Attorney Berson reviewed and the final Quick Cube.

464. Mr. Berson did not know what colors would be used on the patches of the Quick Cube

puzzle when he rendered his legal opinion on trademark infringement to Flambeau. (Ex. 173, Berson Dep. Tr. at 127:17-128:16).

**Defendant's Response:**  Disputed. Attorney Berson reviewed a physical sample and pictures of the Quick Cube prior to giving his opinion.  Attorney Berson was not aware whether the color patches shown on the samples and pictures were absolutely final, (Ex. 173, Berson Dep. Tr., at 127:17-128:6), but this is immaterial as RBL points to no meaningful difference between the sample cube and pictures Attorney Berson reviewed and the final Quick Cube.

465.    Mr. Berson did not render a legal opinion to Flambeau on whether the Quick Cube puzzle gives rise to a claim of dilution. (Ex. 13, Berson Email, at FLAMBEAU001087).

**Defendant's Response:**  Disputed. Attorney Berson's legal opinion did not expressly reference dilution, but his analysis implicates numerous dilution factors.  (*See* Ex. 10, Berson Decl., ¶¶ 6-10; Ex. 13, Berson Email.  RBL concedes that there is overlap between infringement and dilution analyses—it cross-references them in its opposition brief. (RBL Opp. Br., at 23-24).

466.    Mr. Berson did not mention "dilution" in his legal opinion to Flambeau regarding this Quick Cube puzzle. (Ex. 13, Berson Email).

**Defendant's Response:**  Disputed in part. Attorney Berson's legal opinion did not expressly reference dilution, but his analysis implicates numerous dilution factors.  (*See* Ex. 10, Berson Decl., ¶¶ 6-10; Ex. 13, Berson Email).  RBL concedes that there is overlap between infringement and dilution analyses—it cross-references them in its opposition brief. (RBL Opp. Br., at 23-24).

467.    Parents of children aged 8-15 years are not sophisticated buyers of 3x3 puzzle cubes. (Ex. 76, Riehl Decl. ¶ 33; Ex. 167, Gottlieb Dep. Tr. at 123:11-124:13).

**Defendant's Response:**   Disputed as unsupported.  The cited deposition testimony from Mr. Gottlieb is concerned with whether parents understand the differences between cubes used for speed cubing.  (Ex. 167, Gottlieb Dep. Tr. at 123:11-124:13).  Mr. Gottlieb testified he did have any survey or actual data to understand what cube purchasers consider when purchasing puzzle cubes.  (*Id.*, at 124:14-19).  Mr. Gottlieb also refused to provide any information regarding sophistication of purchasers of the Rubik's 3x3 puzzle cube and is not qualified to opine on the topic.  (*Id.*, at 153:18-154:14).   Moreover, paragraph 33 of the cited declaration from Ms. Riehl discusses RBL-sponsored competitions and does not mention or apply to consumer sophistication.  (Ex. 76, Riehl Decl., ¶ 33).

468.   Yongjun manufactures and offers for sale 3x3 puzzle cubes that do not contain the Rubik's Design. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720-723).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed in part**. To the extent "Rubik's Design" refers to a 3x3 puzzle cube bearing the characteristics set forth in undisputed Statement Nos. 150-157, which notably bears a black base, Yongjun does manufacture 3x3 puzzle cubes, like the Quick Cube, that "do not contain the Rubik's Design" (*See, e.g.*, Ex. 174, at FLAMBEAU000716-723) while also manufacturing some cubes that do (*See, e.g.*, Ex. 174, at FLAMBEAU000716-719, 721-723).

469. A Yongjun Toy Catalog produced in this action by Flambeau includes 3x3 puzzle cubes that do not contain the Rubik's Design. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720-723).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed in part**. To the extent "Rubik's Design" refers to a 3x3 puzzle cube bearing the characteristics set forth in undisputed Statement Nos. 150-157, which notably bears a black base, Yongjun does manufacture 3x3 puzzle cubes, like the Quick Cube, that "do not contain the Rubik's Design" (*See, e.g.*, Ex. 174, at FLAMBEAU000716-723) while also manufacturing some cubes that do (*See, e.g.*, Ex. 174, at FLAMBEAU000716-719, 721-723).

470. The product shown on page 12 of the Yongjun Toy Catalog called "Guanlong pink stickerless" is a 3x3 puzzle cube. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed in part**.

Undisputed to the extent that the depicted cube appears to be a version of a 3x3 puzzle cube.  Disputed to the extent that RBL attempts to proffer this cube as a true competitive alternative to its Rubik's Cube.  RBL offers no evidence, let alone properly founded testimony, that this cube is competition eligible, or that it could be manufactured as efficiently and cost-effectively as other "sticker" cubes like the Quick Cube.  Indeed, the only support cited is the exhibit itself, for whom RBL's counsel (improperly) serves as the supposed sponsoring witness.  In contrast, Flambeau has proffered evidence that cubes like the one shown in the cited exhibit are not competition eligible and/or are not as efficiently or inexpensively manufactured and thus are not true competitive alternatives. (Ex. 16, Loetz Rep., ¶¶ 111-116, 165-170; Ex. 65, Cipolla Dep. Tr., at 74:6-13, 77:22-25, 81:2-8).

471.    The "Guanlong pink stickerless" puzzle cube color patches are not framed by an underlying color of the puzzle cube base. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and improper legal conclusion.

Should the statement be considered over Flambeau's objection, **<u>Disputed as unsupported</u>**.  It is unclear from the cited exhibit whether the referenced cube has color patches.  The cited exhibit is hearsay and does not provide the information. Fed. R. Evid. 802. The sponsoring witness—RBL's counsel—does not have the proper foundation to provide this information.  Fed. R. Evid. 601-602.

472.    The "Guanlong pink stickerless" puzzle cube can be scrambled and solved the same way as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).

**Defendant's Response:**    As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**. The proposed fact—whether two different puzzle cubes operate "the same way"—calls for expert testimony, which RBL has not provided. Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not operate the same way as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720). The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic. Fed. R. Evid. 601-602; Fed. R. Evid. 701-703. Such an opinion would require an analysis of color theory and puzzle cube mechanics, topics for which RBL's counsel does not profess to possess expertise. (*Contra* Ex. 16, Loetz Rep., ¶¶ 53-63, 66-71, 80-84, 88-96).

473.    The "Guanlong pink stickerless" puzzle cube has the same use and purpose as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).

**Defendant's Response:**    As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing

alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**.  The proposed fact—whether two different puzzle cubes have "the same use and purpose"—calls for expert testimony, which RBL has not provided.  Fed. R. Evid. 701-703.  The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not have the same use and purpose as the Rubik's Cube.  Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).  The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic.  Fed. R. Evid. 601-602; Fed. R. Evid. 701-703.  Such an opinion would require an analysis of play theory, a topic for which RBL's counsel does not profess to possess expertise. Not all puzzle cubes are used the same. (*Contra* Ex. 16, Loetz Rep., ¶¶ 88-96; *See also id.* Appx 5, at p. 5-7).

474.    The product shown on page 14 of the Yongjun Toy Catalog called "LingGan" is a 3x3 puzzle cube. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000721).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed in part**. Undisputed to the extent that the depicted cube appears to be a version of a 3x3 puzzle cube.  Disputed to the extent that RBL attempts to proffer this cube as a true competitive

alternative to its Rubik's Cube. RBL offers no evidence, let alone properly founded testimony, that this cube is competition eligible, or that it could be manufactured as efficiently and cost-effectively as other "sticker" cubes like the Quick Cube. Indeed, the only support cited is the exhibit itself, for whom RBL's counsel (improperly) serves as the supposed sponsoring witness. In contrast, Flambeau has proffered evidence that cubes like the one shown in the cited exhibit are not competition eligible and/or are not as efficiently or inexpensively manufactured and thus are not true competitive alternatives. (Ex. 16, Loetz Rep., ¶¶ 111-116, 165-170; Ex. 65, Cipolla Dep. Tr., at 74:6-13, 77:22-25, 81:2-8).

475. The "LingGan" puzzle cube contains color patches that are round in shape. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000721).

**Defendant's Response:** As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **<u>Undisputed</u>** to the extent that the depicted cube appears to have elevated, circular-shaped color patches.

476. The "LingGan" puzzle cube can be scrambled and solved the same way as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000721).

**Defendant's Response:** As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an

improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**.  The proposed fact—whether two different puzzle cubes operate "the same way"—calls for expert testimony, which RBL has not provided.  Fed. R. Evid. 701-703.  The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not operate the same way as the Rubik's Cube.  Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).  The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic.  Fed. R. Evid. 601-602; Fed. R. Evid. 701-703.  Such an opinion would require an analysis of color theory and puzzle cube mechanics, topics for which RBL's counsel does not profess to possess expertise.  (*Contra* Ex. 16, Loetz Rep., ¶¶ 53-63, 66-71, 80-84, 88-96).

477.  The "LingGan" puzzle cube has the same use and purpose as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000721)

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**.  The proposed fact—whether two different puzzle cubes have "the same use and purpose"—calls for expert testimony, which RBL has not provided.  Fed. R. Evid. 701-703.  The cited exhibit is hearsay and does not provide the requisite

information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not have the same use and purpose as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720). The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic. Fed. R. Evid. 601-602; Fed. R. Evid. 701-703. Such an opinion would require an analysis of play theory, a topic for which RBL's counsel does not profess to possess expertise. Not all puzzle cubes are used the same. (*Contra* Ex. 16, Loetz Rep., ¶¶ 88-96; *See also id.* Appx 5, at p. 5-7).

478. The product shown on page 16 of the Yongjun Toy Catalog called "Carat Diamond" is a 3x3 puzzle cube. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000722)

**Defendant's Response:** As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed in part**. Undisputed to the extent that the depicted cube appears to be a version of a 3x3 puzzle cube. Disputed to the extent that RBL attempts to proffer this cube as a true competitive alternative to its Rubik's Cube. RBL offers no evidence, let alone properly founded testimony, that this cube is competition eligible, or that it could be manufactured as efficiently and cost-effectively as other "sticker" cubes like the Quick Cube. Indeed, the only support cited is the exhibit itself, for whom RBL's counsel (improperly) serves as the supposed sponsoring witness. In contrast, Flambeau has proffered evidence that cubes like the one shown in the cited exhibit are not competition eligible and/or are not as

efficiently or inexpensively manufactured and thus are not true competitive alternatives. (Ex. 16, Loetz Rep., ¶¶ 111-116, 165-170; Ex. 65, Cipolla Dep. Tr., at 74:6-13, 77:22-25, 81:2-8).

479.   The "Carat Diamond" puzzle cube contains color patches that are octagonal in shape. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000722)

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Undisputed** to the extent that the depicted cube appears to have elevated, octagonal-shaped color patches that do no fill the entire face of the square.

480.   The "Carat Diamond" puzzle cube can be scrambled and solved the same way as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000722)

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**.  The proposed fact—whether two different puzzle cubes operate "the same way"—calls for expert testimony, which RBL has not provided.  Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the

composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not operate the same way as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720). The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic. Fed. R. Evid. 601-602; Fed. R. Evid. 701-703. Such an opinion would require an analysis of color theory and puzzle cube mechanics, topics for which RBL's counsel does not profess to possess expertise. (*Contra* Ex. 16, Loetz Rep., ¶¶ 53-63, 66-71, 80-84, 88-96).

481. The "Carat Diamond" puzzle cube has the same use and purpose as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000722)

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**. The proposed fact—whether two different puzzle cubes have "the same use and purpose"—calls for expert testimony, which RBL has not provided. Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not have the same use and purpose as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720). The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic. Fed. R. Evid. 601-602;

Fed. R. Evid. 701-703. Such an opinion would require an analysis of play theory, a topic for which RBL's counsel does not profess to possess expertise. Not all puzzle cubes are used the same. (*Contra* Ex. 16, Loetz Rep., ¶¶ 88-96; *See also id.* Appx 5, at p. 5-7).

482. The product shown on page 18 of the Yongjun Toy Catalog called "Love cube" is a 3x3 puzzle cube. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000723)

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **<u>Disputed in part</u>**. Undisputed to the extent that the depicted cube appears to be a version of a 3x3 puzzle cube. Disputed to the extent that RBL attempts to proffer this cube as a true competitive alternative to its Rubik's Cube. RBL offers no evidence, let alone properly founded testimony, that this cube is competition eligible, or that it could be manufactured as efficiently and cost-effectively as other "sticker" cubes like the Quick Cube. Indeed, the only support cited is the exhibit itself, for whom RBL's counsel (improperly) serves as the supposed sponsoring witness. In contrast, Flambeau has proffered evidence that cubes like the one shown in the cited exhibit are not competition eligible and/or are not as efficiently or inexpensively manufactured and thus are not true competitive alternatives. (Ex. 16, Loetz Rep., ¶¶ 111-116, 165-170; Ex. 65, Cipolla Dep. Tr., at 74:6-13, 77:22-25, 81:2-8).

483. The "Love cube" puzzle cube contains color patches that are heart shaped. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000723)

**Defendant's Response:** As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Undisputed** to the extent that the depicted cube appears to have elevated heart-shaped color patches that do no fill the entire face of the square.

484.    The "Love cube" puzzle cube can be scrambled and solved the same way as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000723)

**Defendant's Response:** As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**. The proposed fact—whether two different puzzle cubes operate "the same way"—calls for expert testimony, which RBL has not provided. Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not operate the same way as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720). The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic. Fed. R. Evid. 601-602; Fed. R. Evid. 701-703. Such an

opinion would require an analysis of color theory and puzzle cube mechanics, topics for which RBL's counsel does not profess to possess expertise.  (*Contra* Ex. 16, Loetz Rep., ¶¶ 53-63, 66-71, 80-84, 88-96).

485.    The "Love cube" puzzle cube has the same use and purpose as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000723)

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**.  The proposed fact—whether two different puzzle cubes have "the same use and purpose"—calls for expert testimony, which RBL has not provided.  Fed. R. Evid. 701-703.  The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not have the same use and purpose as the Rubik's Cube.  Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).  The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic.  Fed. R. Evid. 601-602; Fed. R. Evid. 701-703.  Such an opinion would require an analysis of play theory, a topic for which RBL's counsel does not profess to possess expertise. Not all puzzle cubes are used the same. (*Contra* Ex. 16, Loetz Rep., ¶¶ 88-96; *See also id.* Appx 5, at p. 5-7).

486.    The product shown below and in Exhibit 175 to the Declaration of Darren W. Saunders ("Casino Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 16; Ex. 175).



**Defendant's Response:**    As set forth in Flambeau's Motion to Strike, RBL should be

barred from taking a position on third-party cubes that supposedly do not infringe its

asserted "Rubik's Design," because it refused to clarify its theory on non-infringing

alternatives during discovery. Moreover, this statement calls for an unsupported and an

improper legal conclusion.

Should the statement be considered over Flambeau's objection, **<u>Disputed in part</u>**.

Undisputed to the extent that the depicted cube appears to be a version of a 3x3 puzzle

cube.  Disputed to the extent that RBL attempts to proffer this cube as a true competitive

alternative to its Rubik's Cube.  RBL offers no evidence, let alone properly founded

testimony, that this cube is competition eligible, or that it could be manufactured as

efficiently and cost-effectively as other "sticker" cubes like the Quick Cube.  Indeed, the

only support cited is the exhibit itself, for whom RBL's counsel (improperly) serves as

the supposed sponsoring witness.  In contrast, Flambeau has proffered evidence that

cubes like the one shown in the cited exhibit are not competition eligible and/or are not as

efficiently or inexpensively manufactured and thus are not true competitive alternatives.

(Ex. 16, Loetz Rep., ¶¶ 111-116, 165-170; Ex. 65, Cipolla Dep. Tr., at 74:6-13, 77:22-25,

81:2-8).

487. The Casino Cube contains patches with images of six different common slot machine symbols. (Saunders Decl. ¶ 16; Ex. 175).

**Defendant's Response:** As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**. The cited exhibit does not show what three of the six sides of the cube depict or contain. (Ex. 175). Undisputed that one side appears to show "7"s, another appears to show watermelon, and another side appears to show "BAR." The cited exhibit is hearsay and does not provide the remaining information. Fed. R. Evid. 802. The sponsoring witness—RBL's counsel—does not have the proper foundation to provide the remaining information. Fed. R. Evid. 601-602.

488. The Casino Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Saunders Decl. ¶ 16; Ex. 175).

**Defendant's Response:** As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**. The proposed fact—whether two different puzzle cubes operate "the same

way"—calls for expert testimony, which RBL has not provided.  Fed. R. Evid. 701-703.
The cited exhibit is hearsay and does not provide the requisite information on the
composition and layout of the referenced puzzle cube, let alone the operation of the cube
and an analysis of how it may or may not operate the same way as the Rubik's Cube.
Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).  The
sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to
provide an opinion on the topic.  Fed. R. Evid. 601-602; Fed. R. Evid. 701-703.  Such an
opinion would require an analysis of color theory and puzzle cube mechanics, topics for
which RBL's counsel does not profess to possess expertise.  (*Contra* Ex. 16, Loetz Rep.,
¶¶ 53-63, 66-71, 80-84, 88-96).  Moreover, the cited evidence, on its face, does not
describe the operation of the puzzle cube and does not show all 6 sides of the cube.  (Ex.
175).

489.    The Casino Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders
Decl. ¶ 16; Ex. 175).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be
barred from taking a position on third-party cubes that supposedly do not infringe its
asserted "Rubik's Design," because it refused to clarify its theory on non-infringing
alternatives during discovery. Moreover, this statement calls for an unsupported and an
improper legal conclusion.

Should the statement be considered over Flambeau's objection, **<u>Disputed as
unsupported</u>**.  The proposed fact—whether two different puzzle cubes have "the same
use and purpose"—calls for expert testimony, which RBL has not provided.  Fed. R.
Evid. 701-703.  The cited exhibit is hearsay and does not provide the requisite
information on the composition and layout of the referenced puzzle cube, let alone the

operation of the cube and an analysis of how it may or may not have the same use and

purpose as the Rubik's Cube.  Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at

FLAMBEAU000720).  The sponsoring witness—RBL's counsel—does not have the

proper foundation or expertise to provide an opinion on the topic.  Fed. R. Evid. 601-602;

Fed. R. Evid. 701-703.  Such an opinion would require an analysis of play theory, a topic

for which RBL's counsel does not profess to possess expertise. Not all puzzle cubes are

used the same. (*Contra* Ex. 16, Loetz Rep., ¶¶ 88-96; *See also id.* Appx 5, at p. 5-7).

490.    The product shown below and in Exhibit 176 to the Declaration of Darren W. Saunders

("Emoji Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 17; Ex. 176).



**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be

barred from taking a position on third-party cubes that supposedly do not infringe its

asserted "Rubik's Design," because it refused to clarify its theory on non-infringing

alternatives during discovery. Moreover, this statement calls for an unsupported and an

improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed in part**.

Undisputed to the extent that the depicted cube appears to be a version of a 3x3 puzzle

cube.  Disputed to the extent that RBL attempts to proffer this cube as a true competitive

alternative to its Rubik's Cube. RBL offers no evidence, let alone properly founded testimony, that this cube is competition eligible, or that it could be manufactured as efficiently and cost-effectively as other "sticker" cubes like the Quick Cube. Indeed, the only support cited is the exhibit itself, for whom RBL's counsel (improperly) serves as the supposed sponsoring witness. In contrast, Flambeau has proffered evidence that cubes like the one shown in the cited exhibit are not competition eligible and/or are not as efficiently or inexpensively manufactured and thus are not true competitive alternatives. (Ex. 16, Loetz Rep., ¶¶ 111-116, 165-170; Ex. 65, Cipolla Dep. Tr., at 74:6-13, 77:22-25, 81:2-8).

491.    The Emoji Cube contains patches with images of six different emoji characters. (Saunders Decl. ¶ 17; Ex. 176).

   **Defendant's Response:**    As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

   Should the statement be considered over Flambeau's objection, **<u>Disputed as unsupported</u>**. The cited exhibit does not show what three of the six sides of the cube depict or contain. (Ex. 176). Undisputed three sides appear to show variations of "emoji" faces. The cited exhibit is hearsay and does not provide the remaining information. Fed. R. Evid. 802. The sponsoring witness—RBL's counsel—does not have the proper foundation to provide the remaining information. Fed. R. Evid. 601-602.

492.    The Emoji Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Saunders Decl. ¶ 17; Ex. 176).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**. The proposed fact—whether two different puzzle cubes operate "the same way"—calls for expert testimony, which RBL has not provided. Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not operate the same way as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720). The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic. Fed. R. Evid. 601-602; Fed. R. Evid. 701-703. Such an opinion would require an analysis of color theory and puzzle cube mechanics, topics for which RBL's counsel does not profess to possess expertise. (*Contra* Ex. 16, Loetz Rep., ¶¶ 53-63, 66-71, 80-84, 88-96). Moreover, the cited evidence, on its face, does not describe the operation of the puzzle cube and does not show all 6 sides of the cube. (Ex. 176).

493.    The Emoji Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders Decl. ¶ 17; Ex. 176).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing

alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**. The proposed fact—whether two different puzzle cubes have "the same use and purpose"—calls for expert testimony, which RBL has not provided. Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not have the same use and purpose as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720). The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic. Fed. R. Evid. 601-602; Fed. R. Evid. 701-703. Such an opinion would require an analysis of play theory, a topic for which RBL's counsel does not profess to possess expertise. Not all puzzle cubes are used the same. (*Contra* Ex. 16, Loetz Rep., ¶¶ 88-96; *See also id.* Appx 5, at p. 5-7). Moreover, the cited evidence, on its face, does not describe the operation of the puzzle cube, let alone its intended use or purpose and does not show all six sides of the cube. (Ex. 176).

494.    The product shown below and in Exhibit 177 to the Declaration of Darren W. Saunders ("Dice Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 18; Ex. 177).



**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **<u>Disputed in part</u>**. Undisputed to the extent that the depicted cube appears to be a version of a 3x3 puzzle cube. Disputed to the extent that RBL attempts to proffer this cube as a true competitive alternative to its Rubik's Cube. RBL offers no evidence, let alone properly founded testimony, that this cube is competition eligible, or that it could be manufactured as efficiently and cost-effectively as other "sticker" cubes like the Quick Cube. Indeed, the only support cited is the exhibit itself, for whom RBL's counsel (improperly) serves as the supposed sponsoring witness. In contrast, Flambeau has proffered evidence that cubes like the one shown in the cited exhibit are not competition eligible and/or are not as efficiently or inexpensively manufactured and thus are not true competitive alternatives. (Ex. 16, Loetz Rep., ¶¶ 111-116, 165-170; Ex. 65, Cipolla Dep. Tr., at 74:6-13, 77:22-25, 81:2-8).

495.     The Dice Cube contains patches with images of six different faces of a die. (Saunders
        Decl. ¶ 18; Ex. 177).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be
barred from taking a position on third-party cubes that supposedly do not infringe its
asserted "Rubik's Design," because it refused to clarify its theory on non-infringing
alternatives during discovery. Moreover, this statement calls for an unsupported and an
improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as
unsupported**.  The cited exhibit does not show what three of the six sides of the cube
depict or contain.  (Ex. 177).  Undisputed that three sides contain three different faces of
a die.  The cited exhibit is hearsay and does not provide the remaining information. Fed.
R. Evid. 802. The sponsoring witness—RBL's counsel—does not have the proper
foundation to provide the remaining information.  Fed. R. Evid. 601-602.

496.     The Dice Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle.
        (Saunders Decl. ¶ 18; Ex. 177).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be
barred from taking a position on third-party cubes that supposedly do not infringe its
asserted "Rubik's Design," because it refused to clarify its theory on non-infringing
alternatives during discovery. Moreover, this statement calls for an unsupported and an
improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as
unsupported**.  The proposed fact—whether two different puzzle cubes operate "the same
way"—calls for expert testimony, which RBL has not provided.  Fed. R. Evid. 701-703.
The cited exhibit is hearsay and does not provide the requisite information on the

composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not operate the same way as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720). The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic. Fed. R. Evid. 601-602; Fed. R. Evid. 701-703. Such an opinion would require an analysis of color theory and puzzle cube mechanics, topics for which RBL's counsel does not profess to possess expertise. (*Contra* Ex. 16, Loetz Rep., ¶¶ 53-63, 66-71, 80-84, 88-96). Moreover, the cited evidence, on its face, does not describe the operation of the puzzle cube and does not show all 6 sides of the cube. (Ex. 177).

497.   The Dice Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders Decl. ¶ 18; Ex. 177).

**Defendant's Response:**  As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**. The proposed fact—whether two different puzzle cubes have "the same use and purpose"—calls for expert testimony, which RBL has not provided. Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not have the same use and purpose as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at

FLAMBEAU000720).  The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic.  Fed. R. Evid. 601-602; Fed. R. Evid. 701-703.  Such an opinion would require an analysis of play theory, a topic for which RBL's counsel does not profess to possess expertise. Not all puzzle cubes are used the same. (*Contra* Ex. 16, Loetz Rep., ¶¶ 88-96; *See also id.* Appx 5, at p. 5-7). Moreover, the cited evidence, on its face, does not describe the operation of the puzzle cube, let alone its intended use or purpose and does not show all six sides of the cube. (Ex. 177).

498.    The product shown below and in Exhibit 178 to the Declaration of Darren W. Saunders ("Numbers Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 19; Ex. 178).



**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **<u>Disputed in part</u>**.

Undisputed to the extent that the depicted cube appears to be a version of a 3x3 puzzle cube.  Disputed to the extent that RBL attempts to proffer this cube as a true competitive alternative to its Rubik's Cube.  RBL offers no evidence, let alone properly founded testimony, that this cube is competition eligible, or that it could be manufactured as efficiently and cost-effectively as other "sticker" cubes like the Quick Cube.  Indeed, the only support cited is the exhibit itself, for whom RBL's counsel (improperly) serves as the supposed sponsoring witness.  In contrast, Flambeau has proffered evidence that cubes like the one shown in the cited exhibit are not competition eligible and/or are not as efficiently or inexpensively manufactured and thus are not true competitive alternatives. (Ex. 16, Loetz Rep., ¶¶ 111-116, 165-170; Ex. 65, Cipolla Dep. Tr., at 74:6-13, 77:22-25, 81:2-8).

499.    The Numbers Cube contains patches with six different colored images of the numbers 1-9. (Saunders Decl. ¶ 19; Ex. 178).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**.  The cited exhibit does not show what three of the six sides of the cube depict or contain.  (Ex. 178).   Undisputed that three sides contain three different colored faces with the numbers 1-9.  The cited exhibit is hearsay and does not provide the remaining information. Fed. R. Evid. 802. The sponsoring witness—RBL's counsel— does not have the proper foundation to provide the remaining information.  Fed. R. Evid.

601-602.

500.   The Numbers Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Saunders Decl. ¶ 19; Ex. 178).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and improper legal conclusion.

Should the statement be considered over Flambeau's objection, **_Disputed as unsupported_**. The proposed fact—whether two different puzzle cubes operate "the same way"—calls for expert testimony, which RBL has not provided. Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not operate the same way as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720). The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic. Fed. R. Evid. 601-602; Fed. R. Evid. 701-703. Such an opinion would require an analysis of color theory and puzzle cube mechanics, topics for which RBL's counsel does not profess to possess expertise. (*Contra* Ex. 16, Loetz Rep., ¶¶ 53-63, 66-71, 80-84, 88-96). Moreover, the cited evidence, on its face, does not describe the operation of the puzzle cube and does not show all 6 sides of the cube. (Ex. 178).

501.   The Numbers Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders Decl. ¶ 19; Ex. 178).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**.  The proposed fact—whether two different puzzle cubes have "the same use and purpose"—calls for expert testimony, which RBL has not provided.  Fed. R. Evid. 701-703.  The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not have the same use and purpose as the Rubik's Cube.  Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).  The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic.  Fed. R. Evid. 601-602; Fed. R. Evid. 701-703.  Such an opinion would require an analysis of play theory, a topic for which RBL's counsel does not profess to possess expertise. Not all puzzle cubes are used the same. (*Contra* Ex. 16, Loetz Rep., ¶¶ 88-96; *See also id.* Appx 5, at p. 5-7). Moreover, the cited evidence, on its face, does not describe the operation of the puzzle cube, let alone its intended use or purpose and does not show all six sides of the cube. (Ex. 178).

502.    The product shown below in Exhibit 179 to the Declaration of Darren W. Saunders ("Squares and Circles Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 20; Ex. 179)..



**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be

barred from taking a position on third-party cubes that supposedly do not infringe its

asserted "Rubik's Design," because it refused to clarify its theory on non-infringing

alternatives during discovery. Moreover, this statement calls for an unsupported and an

improper legal conclusion.

     Should the statement be considered over Flambeau's objection, **<u>Disputed in part</u>**.

Undisputed to the extent that the depicted cube appears to be a version of a 3x3 puzzle

cube.  Disputed to the extent that RBL attempts to proffer this cube as a true competitive

alternative to its Rubik's Cube.  RBL offers no evidence, let alone properly founded

testimony, that this cube is competition eligible, or that it could be manufactured as

efficiently and cost-effectively as other "sticker" cubes like the Quick Cube.  Indeed, the

only support cited is the exhibit itself, for whom RBL's counsel (improperly) serves as

the supposed sponsoring witness.  In contrast, Flambeau has proffered evidence that

cubes like the one shown in the cited exhibit are not competition eligible and/or are not as

efficiently or inexpensively manufactured and thus are not true competitive alternatives.

(Ex. 16, Loetz Rep., ¶¶ 111-116, 165-170; Ex. 65, Cipolla Dep. Tr., at 74:6-13, 77:22-25,

81:2-8).

503.    The Squares and Circles Cube contains patches with six different colored images of a circle in the center cube on each side with patches of six different colored images of squares comprising the remaining cubes. (Saunders Decl. ¶ 20; Ex. 179).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**.  It is unclear from the cited exhibit whether the referenced cube has six different color patches.  The cited exhibit is hearsay and does not provide the information. Fed. R. Evid. 802. The sponsoring witness—RBL's counsel—does not have the proper foundation to provide this information.  Fed. R. Evid. 601-602.

504.    The Squares and Circles Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Saunders Decl. ¶ 20; Ex. 179).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**.  The proposed fact—whether two different puzzle cubes operate "the same way"—calls for expert testimony, which RBL has not provided.  Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the

composition and layout of the referenced puzzle cube, let alone the operation of the cube

and an analysis of how it may or may not operate the same way as the Rubik's Cube.

Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).  The

sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to

provide an opinion on the topic.  Fed. R. Evid. 601-602; Fed. R. Evid. 701-703.  Such an

opinion would require an analysis of color theory and puzzle cube mechanics, topics for

which RBL's counsel does not profess to possess expertise.  (*Contra* Ex. 16, Loetz Rep.,

¶¶ 53-63, 66-71, 80-84, 88-96).  Moreover, the cited evidence, on its face, does not

describe the operation of the puzzle cube and does not show all 6 sides of the cube.  (Ex.

179).

505.  The Squares and Circles Cube has the same use and purpose as the Rubik's Cube puzzle.

(Saunders Decl. ¶ 20; Ex. 179).

**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be

barred from taking a position on third-party cubes that supposedly do not infringe its

asserted "Rubik's Design," because it refused to clarify its theory on non-infringing

alternatives during discovery. Moreover, this statement calls for an unsupported and an

improper legal conclusion.

Should the statement be considered over Flambeau's objection, **<u>Disputed as

unsupported</u>**.  The proposed fact—whether two different puzzle cubes have "the same

use and purpose"—calls for expert testimony, which RBL has not provided.  Fed. R.

Evid. 701-703.  The cited exhibit is hearsay and does not provide the requisite

information on the composition and layout of the referenced puzzle cube, let alone the

operation of the cube and an analysis of how it may or may not have the same use and

purpose as the Rubik's Cube.  Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at

FLAMBEAU000720).  The sponsoring witness—RBL's counsel—does not have the

proper foundation or expertise to provide an opinion on the topic.  Fed. R. Evid. 601-602;

Fed. R. Evid. 701-703.  Such an opinion would require an analysis of play theory, a topic

for which RBL's counsel does not profess to possess expertise. Not all puzzle cubes are

used the same. (*Contra* Ex. 16, Loetz Rep., ¶¶ 88-96; *See also id.* Appx 5, at p. 5-7).

Moreover, the cited evidence, on its face, does not describe the operation of the puzzle

cube, let alone its intended use or purpose.  (Ex. 179).

506.    The product shown below and in Exhibit 180 to the Declaration of Darren W. Saunders

("Colored Circles Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 20; Ex. 179).



**Defendant's Response:**   As set forth in Flambeau's Motion to Strike, RBL should be

barred from taking a position on third-party cubes that supposedly do not infringe its

asserted "Rubik's Design," because it refused to clarify its theory on non-infringing

alternatives during discovery. Moreover, this statement calls for an unsupported and an

improper legal conclusion.

Should the statement be considered over Flambeau's objection, **<u>Disputed in part</u>**.

Undisputed to the extent that the depicted cube appears to be a version of a 3x3 puzzle

cube.  Disputed to the extent that RBL attempts to proffer this cube as a true competitive

alternative to its Rubik's Cube.  RBL offers no evidence, let alone properly founded

testimony, that this cube is competition eligible, or that it could be manufactured as

efficiently and cost-effectively as other "sticker" cubes like the Quick Cube.  Indeed, the

only support cited is the exhibit itself, for whom RBL's counsel (improperly) serves as

the supposed sponsoring witness.  In contrast, Flambeau has proffered evidence that

cubes like the one shown in the cited exhibit are not competition eligible and/or are not as

efficiently or inexpensively manufactured and thus are not true competitive alternatives.

(Ex. 16, Loetz Rep., ¶¶ 111-116, 165-170; Ex. 65, Cipolla Dep. Tr., at 74:6-13, 77:22-25,

81:2-8).

507.    The Colored Circles Cube contains patches with six different colored circles. (Saunders

Decl. ¶ 21; Ex. 180).

**Defendant's Response:**    As set forth in Flambeau's Motion to Strike, RBL should be

barred from taking a position on third-party cubes that supposedly do not infringe its

asserted "Rubik's Design," because it refused to clarify its theory on non-infringing

alternatives during discovery. Moreover, this statement calls for an unsupported and an

improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed in part**.

It is unclear from the cited exhibit whether the referenced cube has six different color

patches—only two sides are visible.  Undisputed that the two visible sides show

"elevated" circles.  (Ex. 180).  The cited exhibit is hearsay and does not provide the

information. Fed. R. Evid. 802. The sponsoring witness—RBL's counsel—does not have

the proper foundation to provide this information.  Fed. R. Evid. 601-602..

508.    The Colored Circles Cube can be scrambled and solved in the same way as the Rubik's

Cube puzzle. (Saunders Decl. ¶ 21; Ex. 180).

**Defendant's Response:**  As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**.  The proposed fact—whether two different puzzle cubes operate "the same way"—calls for expert testimony, which RBL has not provided.  Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not operate the same way as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).  The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic.  Fed. R. Evid. 601-602; Fed. R. Evid. 701-703.  Such an opinion would require an analysis of color theory and puzzle cube mechanics, topics for which RBL's counsel does not profess to possess expertise.  (*Contra* Ex. 16, Loetz Rep., ¶¶ 53-63, 66-71, 80-84, 88-96).  Moreover, the cited evidence, on its face, does not describe the operation of the puzzle cube and does not show all 6 sides of the cube.  (Ex. 180).

509.    The Colored Circles Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders Decl. ¶ 21; Ex. 180).

**Defendant's Response:**  As set forth in Flambeau's Motion to Strike, RBL should be barred from taking a position on third-party cubes that supposedly do not infringe its asserted "Rubik's Design," because it refused to clarify its theory on non-infringing

alternatives during discovery. Moreover, this statement calls for an unsupported and an improper legal conclusion.

Should the statement be considered over Flambeau's objection, **Disputed as unsupported**. The proposed fact—whether two different puzzle cubes have "the same use and purpose"—calls for expert testimony, which RBL has not provided. Fed. R. Evid. 701-703. The cited exhibit is hearsay and does not provide the requisite information on the composition and layout of the referenced puzzle cube, let alone the operation of the cube and an analysis of how it may or may not have the same use and purpose as the Rubik's Cube. Fed. R. Evid. 802; (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720). The sponsoring witness—RBL's counsel—does not have the proper foundation or expertise to provide an opinion on the topic. Fed. R. Evid. 601-602; Fed. R. Evid. 701-703. Such an opinion would require an analysis of play theory, a topic for which RBL's counsel does not profess to possess expertise. Not all puzzle cubes are used the same. (*Contra* Ex. 16, Loetz Rep., ¶¶ 88-96; *See also id.* Appx 5, at p. 5-7). Moreover, the cited evidence, on its face, does not describe the operation of the puzzle cube, let alone its intended use or purpose and does not show all six sides of the cube. (Ex. 180).

510.   A 3x3 puzzle cube that contains color patches of any six colors that can be discerned from one another can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Ex. 164, Loetz Dep. Tr. 132:5-17).

**Defendant's Response:**   Disputed. Mr. Loetz testified, after objection on an incomplete hypothetical, that a cube with "any six colors regardless of contrast" theoretically "could be scrambled and solved;" but with less contrast between the colors, "it's a less effective design." (Ex. 164, Loetz Dep. Tr. 132:5-19). Thus, the proposed statement that any such

223

cube could be scrambled and solved "in the same way as the Rubik's Cube" is unsupported, and refuted by Mr. Loetz's overall opinions. (Ex. 16, Loetz Rep., ¶¶ 53-63, 67-71, 73-84, 88-96).

511. A 3x3 puzzle cube that uses colored stickers that are different colors from the colors of the Rubik's Cube most likely would not affect the cost of manufacture of the cube. (Ex. 164, Loetz Dep. Tr. at 132:5-12).

**Defendant's Response:** Disputed as unsupported. The cited deposition testimony does not discuss the manufacturing cost of a cube in any way. (Ex. 164, Loetz Dep. Tr. at 132:5-12).

512. The WCA rules for competitions require "one uniform color per face" of a puzzle cube. (Ex. 9, WCA Regulations at FLAMBEAU002488).

**Defendant's Response:** Undisputed. (*See* Statement of Material Fact No. 136).

513. The WCA rules provide that "each color must be clearly distinct from the other colors." (Ex. 9, WCA Regulations at FLAMBEAU002488).

**Defendant's Response:** Undisputed. (*See* Statement of Material Fact No. 137).

514. The WCA rules do not specify or require any specific colors for use on compliant puzzle cubes. (Ex. 9, WCA Regulations).

**Defendant's Response:** Disputed in part. The WCA rules require "each color must be clearly distinct from the other colors." (Ex. 9, WCA Regulations at FLAMBEAU002488). Based on constraints imposed by the color wheel, this results in a limited number of specific color combinations. (Ex. 16, Loetz Rep., ¶¶ 110-116, 157-164).

515. Hungarian patent no. 170062 entitled "Spatial Logical Toy" does not claim any colors for the six faces of the puzzle cube. (Ex. 20 at FLAMBEAU000644).

**Defendant's Response:**   Undisputed.

516.   Hungarian patent no. 170062 does not claim a black colored cube. (Ex. 20 at FLAMBEAU000644).

**Defendant's Response:**   Undisputed.

517.   Hungarian patent no. 170062 does not claim a black grid design. (Ex. 20 at FLAMBEAU000644).

**Defendant's Response:**   Disputed in part. Hungarian patent no. 170062 claims a 3x3 puzzle cube with 9 square segments on each face of the cube, which form a 3x3 grid. (Ex. 20, at FLAMBEAU000644-645).

518.   Belgian patent no. 887.875 entitled "Spatial Logical Toy" does not claim does not claim any colors for the six faces of the puzzle cube. (Ex. 21 at FLAMBEAU000629-630).

**Defendant's Response:**   Undisputed.

519.   Belgian patent no. 887.875 does not claim a black colored cube. (Ex. 21 at FLAMBEAU000629-630).

**Defendant's Response:**   Undisputed.

520.   Belgian patent no. 887.875 does not claim a black grid design. (Ex. 21 at FLAMBEAU000629-630).

**Defendant's Response:**   Disputed in part.  Belgian patent no. 887.875 claims a 3x3 puzzle cube with 9 square segments on each face of the cube, which form a 3x3 grid. (Ex. 21, at FLAMBEAU000614, 629).

521.   Hungarian patent no. 180387 entitled "Spatial Logical Toy" does not claim any colors for the six faces of the puzzle cube. (Ex. 22 at FLAMBEAU000664-665).

**Defendant's Response:**   Disputed in part.  Claim 8 of the '387 Patent claims an "[embodiment of [a] spatial logic toy … characterized by … colors … on the external

225

surfaces of the toy elements …." (*See* Statement of Material Fact No. 50). And the patent's specification contemplates different colors for each side and references "each large cube face contains the same color of small cube faces." (Ex. 22, '387 Rubik Patent, at FLAMBEAU000659, ¶ 3). Undisputed to the extent the patent's claims do not claim any specific colors.

522. Hungarian patent no. 180387 does not claim a black colored cube. (Ex. 22 at FLAMBEAU000664-665).

   **Defendant's Response:** Undisputed.

523. Hungarian patent no. 180387 does not claim a black grid design. (Ex. 22 at FLAMBEAU000664-665).

   **Defendant's Response:** Disputed in part. Hungarian patent no. 180387 claims a 3x2 puzzle cube with 6 square segments on each face of the cube, which form a 3x2 grid. (Ex. 22, at FLAMBEAU000657, 664).

524. Hungarian patent no. 180387 claims an embodiment of the spatial logical toy characterized by "colors, or letters, numbers or other symbols…" (Ex. 22 at FLAMBEAU000665).

   **Defendant's Response:** Undisputed.

525. U.S. patent no. 4,378,116 entitled "Spatial Logical Toy" does not claim does not claim any colors for the six faces of the puzzle cube. (Ex. 23 at FLAMBEAU000671).

   **Defendant's Response:** Disputed in part. Undisputed to the extent the patent's claims do not claim any specific colors. The '116 Patent references the '062 Patent as disclosing a puzzle cube wherein "[t]he surfaces of the small cubes forming each surface of the large cube are colored … [and] can be assembled into the predetermined logical order of sequence by simultaneously rotating the nine toy elements forming the surfaces of the

226

'large cube.'"  (*See* Statement of Material Fact No. 54).

526.    U.S. patent no. 4,378,116 does not claim a black colored cube. (Ex. 23 at FLAMBEAU000671).

**Defendant's Response:**    Undisputed.

527.    U.S. patent no. 4,378,116 does not claim a black grid design. (Ex. 23 at FLAMBEAU000671).

**Defendant's Response:**    Disputed in part.  U.S. patent no. 4,378,116 claims a 3x2

puzzle cube with 6 square segments on each face of the cube, which form a 3x2 grid. (Ex. 23, at FLAMBEAU006068).

528.    U.S. patent no. 4,378,116 states that the "surfaces of the small cubes forming each surface of the larger cube are colored, or carry numbers, figures or other symbols…" (Ex. 23 at FLAMBEAU000669).

**Defendant's Response:**    Undisputed.

529.    U.S. patent no. 4,378,117 entitled "Spatial Logical Toy" does not claim does not claim any colors for the six faces of the puzzle cube. (Ex. 24 at FLAMBEAU001364).

**Defendant's Response:**    Disputed in part.  Undisputed to the extent the patent's claims do not claim any specific colors.  The '117 Patent does disclose as a "preferred embodiment" of a spatial logical toy wherein "[t]he small cubic elements forming the plane surfaces of the large cube are either colored or indicated with numbers, figures or any other symbols…."  (*See* Statement of Material Fact No. 58).

530.    U.S. patent no. 4,378,117 does not claim a black colored cube. (Ex. 24 at FLAMBEAU001364).

**Defendant's Response:**    Undisputed.

531.    U.S. patent no. 4,378,117 does not claim a black grid design. (Ex. 24 at

227

FLAMBEAU001364).

**Defendant's Response:** Disputed in part. U.S. patent no. 4,378,117 claims a 3x2 puzzle cube with 6 square segments on each face of the cube, which form a 3x2 grid. (Ex. 24, at FLAMBEAU001362, 1364).

532. U.S. patent no. 4,378,117 states that the "small cubic elements forming the plane surfaces of the large cube are either colored or indicated with numbers, figures or any other symbols." (Ex. 23 at FLAMBEAU001363).

**Defendant's Response:** Undisputed. (Ex. 24, at FLAMBEAU001363, Col. 1:16-18).

533. Lee R. Loetz is not an attorney. (Ex. 164, Loetz Dep. Tr. at 14:4-5).

**Defendant's Response:** Undisputed but immaterial.

534. Lee R. Loetz has not taken any courses in patent law. (Ex. 164, Loetz Dep. Tr. at 14:11-12).

**Defendant's Response:** Disputed. Mr. Loetz has taken online patent courses given by lawyers. (Ex. 164, 12/18/18 Loetz Dep., at 15:13-16:3). Further immaterial and misleading to the extent it claims Mr. Loetz lacks professional experience with patents in the toy industry. Mr. Loetz is a named inventor on at least five U.S. utility patents claiming inventions related to toy products and is also a named inventor on a U.S. design patent for a toy product design. (Ex. 16, Loetz Rep., ¶ 12).

535. Lee R. Loetz has never given an expert opinion relating to an issue of patent law. (Ex. 164, Loetz Dep. Tr. at 14:13-16).

**Defendant's Response:** The term "issue of patent law" is vague, ambiguous, and confusing; and counsel objected to the form accordingly. To the extent that the term is construed strictly, undisputed but immaterial. To the extent that the term is construed broadly and suggests Mr. Loetz lacks professional experience with toy patents or never

formed an opinion about such patents, disputed.  Mr. Loetz is a named inventor on at least five U.S. utility patents claiming inventions related to toy products and is also a named inventor on a U.S. design patent for a toy product design.  (Ex. 16, Loetz Rep., ¶ 12).  Further disputed to the extent the proposed statement suggests Mr. Loetz is unable to review a toy patent and form an opinion.  Mr. Loetz is undisputedly an expert in toy design; he is precisely the type of individual to read and interpret toy patents and form opinions about them.

536.   Lee R. Loetz has never acted in an expert capacity with respect to claim construction of a patent. (Ex. 164, Loetz Dep. Tr. at 17:3-7).

**Defendant's Response:**   The term "claim construction of a patent" is vague, ambiguous, and confusing; and counsel objected to the form accordingly.  To the extent that the term is construed strictly, undisputed but immaterial.  To the extent that the term is construed broadly and suggests Mr. Loetz lacks professional experience with toy patents or never formed an opinion about such patents, disputed.  Mr. Loetz is a named inventor on at least five U.S. utility patents claiming inventions related to toy products and is also a named inventor on a U.S. design patent for a toy product design.  (Ex. 16, Loetz Rep., ¶ 12).  Further disputed to the extent the proposed statement suggests Mr. Loetz is unable to review a toy patent and form an opinion.  Mr. Loetz is undisputedly an expert in toy design; he is precisely the type of individual to read and interpret toy patents and form opinions about them.

537.   Lee R. Loetz has never given an opinion on what a U.S. utility patent discloses. (Ex. 164, Loetz Dep. Tr. at 17:16-19).

**Defendant's Response:**   The term "what a U.S. utility patent discloses" is vague, ambiguous, and confusing; and counsel objected to the form accordingly. To the extent

that the term is construed strictly, undisputed but immaterial. To the extent that the term

is construed broadly and suggests Mr. Loetz lacks professional experience with toy

patents or never formed an opinion about such patents, disputed. Mr. Loetz is a named

inventor on at least five U.S. utility patents claiming inventions related to toy products

and is also a named inventor on a U.S. design patent for a toy product design. (Ex. 16,

Loetz Rep., ¶ 12). Further disputed to the extent the proposed statement suggests Mr.

Loetz is unable to review a toy patent and form an opinion. Mr. Loetz is undisputedly an

expert in toy design; he is precisely the type of individual to read and interpret toy patents

and form opinions about them.

538.    No one at Flambeau knows what the subjective intent of the applicant of U.S. Trademark

Reg. No. 1,265,094 was during the prosecution of the underlying trademark application

in 1982-1983. (Ex. 92, Jessie N. Roberts Dep. Tr. at 227:6-19).

**Defendant's Response:** Disputed. The proposed statement is unsupported by the cited

evidence. The cited exhibit, Exhibit 92, is a RBL produced presentation regarding the

Rubik's cube puzzle. (Ex. 92, RBL_003317-003347). Regardless, Ms. Roberts'

deposition testimony merely establishes that Ms. Roberts did not claim to have "first

hand" knowledge of the applicant's mental state when it intentionally failed to provide

the examiner known patents after the examiner requested them. Ms. Roberts made clear,

however, that this "first hand" knowledge was not necessary to her opinion because the

record evidence supports her conclusion that the applicant intentionally failed to provide

known patents to the examiner after the examiner requested them, and that intentional

omission constitutes fraud on the USPTO. (Ex. 15, Roberts Rep., ¶¶ 59-60; Ex. 208,

12/12/18 Roberts Dep., at 224:25-225:14, 226:5-227:5). Ms. Roberts concluded the

evidence established a reasonable inference that applicant and its counsel was aware of

numerous puzzle cube patents during the prosecution of the '094 Registration and intentionally withheld them after the examiner requested them. (*Id.*; *see also* Statement of Material Fact Nos. 338-376). Ms. Roberts—a former trademark examiner herself— testified "I can't think of a reason not to submit [the known puzzle cube patents], except that they were supportive of the functionality of the mark presented in the trademark application." (Ex. 208, 12/12/18 Roberts Dep., at 225:11-14).

539. Jessie N. Roberts does not know what the subjective intent of the applicant of U.S. Trademark Reg. No. 1,265,094 was during the prosecution of the underlying trademark application in 1982-1983. (Ex. 92, Jessie N. Roberts Dep. Tr. at 224:3-15; 19-20; 227:6-19).

**Defendant's Response:** Disputed. The proposed statement is unsupported by the cited evidence. The cited exhibit, Exhibit 92, is a RBL produced presentation regarding the Rubik's cube puzzle. (Ex. 92, RBL_003317-003347). Regardless, Ms. Roberts' deposition testimony merely establishes that Ms. Roberts did not claim to have "first hand" knowledge of the applicant's mental state when it intentionally failed to provide the examiner known patents after the examiner requested them. Ms. Roberts made clear, however, that this "first hand" knowledge was not necessary to her opinion because the record evidence supports her conclusion that the applicant intentionally failed to provide known patents to the examiner after the examiner requested them, and that intentional omission constitutes fraud on the USPTO. (Ex. 15, Roberts Rep., ¶¶ 59-60; Ex. 208, 12/12/18 Roberts Dep., at 224:25-225:14, 226:5-227:5). Ms. Roberts concluded the evidence established a reasonable inference that applicant and its counsel was aware of numerous puzzle cube patents during the prosecution of the '094 Registration and intentionally withheld them after the examiner requested them. (*Id.*; *see also* Statement

of Material Fact Nos. 338-376). Ms. Roberts—a former trademark examiner herself—
testified "I can't think of a reason not to submit [the known puzzle cube patents], except
that they were supportive of the functionality of the mark presented in the trademark
application." (Ex. 208, 12/12/18 Roberts Dep., at 225:11-14)

540. The Duncan Quick Cube puzzle has been a profitable product for Flambeau. (Ex. 162, 8/16/18 Burke Dep. Tr. at 189:14-22).

**Defendant's Response:** Undisputed.

541. As of August 16, 2018, the Duncan Quick Cube puzzle ranked in the top 10 Duncan products in sales revenue. (Ex. 162, 8/16/18 Burke Dep. Tr. at 189:23-190:3).

**Defendant's Response:** Undisputed.

542. Flambeau's sales of the Duncan Quick Cube puzzle exceeded its sales forecast for year two of sales. (Ex. 162, 8/16/18 Burke Dep. Tr. at 207:3-7).

**Defendant's Response:** Undisputed to the extent the Quick Cube puzzle exceeded sales forecasts for its second year but not its first. (Ex. 162, 8/16/18 Burke Dep. Tr. at 207:3-7).

543. Flambeau continues to sell the Duncan Quick Cube puzzle. (Ex. 157, Duncan Website).

**Defendant's Response:** Undisputed.

Respectfully submitted this <u>21st</u> day of August, 2020.

                                        <u> /s/ Anthony A. Tomaselli             </u>
Anthony A. Tomaselli (*pro hac vice*)
anthony.tomaselli@quarles.com
Kristin Graham Noel *(pro hac vice)*
kristin.noel@quarles.com
Matthew J. Duchemin *(pro hac vice)*
matthew.duchemin@quarles.com
Anita Marie Boor (*pro hac vice*)
anita.boor@quarles.com
QUARLES & BRADY, LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: 608-251-5000
*Attorneys for Defendant Flambeau, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 21, 2020, I caused to be electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Anita Marie Boor*
Anita Marie Boor
