UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUBIK'S BRAND LIMITED,

                    Plaintiff,

      -against-

FLAMBEAU, INC.

                  Defendant.

Civil Action No. 1:17-cv-6559 (PGG)

**[CONFIDENTIAL VERSION]**

<br>

## PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL FACTS TO DEFENDANT FLAMBEAU, INC.'S RULE 56.1 <u>STATEMENT OF MATERIAL FACTS</u>

**TABLE OF CONTENTS**

**SECTION I:**     RBL'S RESPONSES AND COUNTERSTATEMENTS TO FLAMBEAU'S RULE 56.1 STATEMENT OF MATERIAL FACTS.................................................................. 1

**SECTION II:**     RBL'S STATEMENT OF ADDITIONAL MATERIAL FACTS................. 100

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1(b), Plaintiff Rubik's Brand Limited ("RBL") hereby submits its Counterstatement of Material Facts in response to Defendant Flambeau, Inc.'s ("Flambeau") Rule 56.1 Statement of Material Facts ("SMF"). Section I contains RBL's responses to each factual assertion asserted by Flambeau in its SMF,[1] without admitting that any of Flambeau's statements are material. Section II contains RBL's Rule 56.1 Statement of Material Facts that contains additional material facts asserted by RBL in accordance with this Court's Individual Rule V(B):

## SECTION I:  RBL'S RESPONSES TO FLAMBEAU'S SMF

### The Parties[2]

1. Rubik's Brand Limited ("RBL") is a limited liability company organized under the laws of the United Kingdom, with its principal place of business in London, England. (Dkt. 1, Complaint, ¶ 5; Dkt. 28, Answer to Counterclaims, ¶ 6).

   **Plaintiff's Response:**  Admit.

2. Flambeau is a corporation organized under the laws of the State of Wisconsin, with its principal place of business in Baraboo, Wisconsin. (Dkt. 24, Answer, ¶ 6; *id.*, Counterclaims, ¶ 5).

   **Plaintiff's Response:**  Admit.

3. RBL asserts rights over a design mark consisting of a black puzzle cube having nine square-shaped color patches on each of its six faces, with the color patches on each face

---

[1] "Ex." refers to the exhibits contained in RBL's Appendix, filed concurrently herewith.

[2] RBL has included the headings found in Flambeau's Rule 56.1 Statement for ease of reference. However, to the extent that such headings themselves contain factual statements themselves, RBL denies those statements.

being the same when the puzzle is in the start or solved position, and consisting of the colors red, white, blue, green, yellow, and orange (hereinafter "3x3 Cube Design"). (Dkt.1, Complaint, ¶¶ 10, 15; Ex. 67, RBL Interrog. Resp., No. 4; Ex. 37, '094 Registration; Ex. 61, Kremer Dep. Tr., at 12:9-20, 111:8-112:3, 112:10-11, 160:12-15, 160:18-21).

**Plaintiff's Response:** Admit to the extent "rights" mean federal trademark registration rights under 15 U.S.C. § 1114(1)(a) pursuant to Reg. No. 1,265,094, and common law trademark rights in the design shown in paragraph 10 of the Complaint. Dkt. 1 (hereinafter "RUBIK'S Design").

4. RBL does not manufacture puzzle cubes. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 49:10-18).

   **Plaintiff's Response:** Admit.

5. RBL does not directly sell puzzle cubes. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 33:23-34:16, 50:12-51:12, 152:19-153:2).

   **Plaintiff's Response:** Disputed. The cited evidence does not support Defendant's assertion. RBL sells puzzle cubes directly to consumers through its website, https://www.rubiks.com/en-us/shop.html.

6. RBL licenses intellectual property, including the 3x3 Cube Design, to manufacturers of puzzle cubes for a royalty. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 15:9-13, 163:7-12, 166:25-167:13, 170:12-24, 171:4, 171:10-14, 171:20-25, 172:6-10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 49:10-18; Ex. 64, Vollmar Dep. Tr., at 27:17-19, 28:2-8).

   **Plaintiff's Response:** Admit to the extent "3x3 Cube Design" means the "RUBIK'S Design".

7. Flambeau is a manufacturer and seller of plastic goods. (Ex. 1, Burke Decl., ¶ 5).

   **Plaintiff's Response:** Admit.

8.  Duncan Toys Company ("Duncan") is a division of Flambeau. (Ex. 1, Burke Decl., ¶ 5).

    **Plaintiff's Response:**  Admit.

9.  Flambeau, through Duncan, sells a puzzle cube called the "Duncan Quick Cube" or the
    "Quick Cube." Ex. 1, Burke Decl., ¶¶ 10-13.

    **Plaintiff's Response:**  Admit.

10. In August 2017, RBL sued Flambeau, claiming Flambeau's sales of the Duncan Quick
    Cube infringe RBL's alleged rights in the 3x3 Cube Design. (Dkt. 1, Complaint, ¶¶ 15,
    28-60; *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 117:21-118:6).

    **Plaintiff's Response:**  Admit that in August 2017, RBL sued Flambeau, but dispute the
    remaining assertion as the only basis for the suit.  RBL claimed federal and common law
    trademark infringement of the RUBIK'S Design, false designation of origin, trademark
    dilution and unfair business practice under New York law. Dkt. 1, Complaint ¶¶ 28-61.

    <u>**Puzzle Cubes**</u>

11. Three-dimensional puzzles are three-dimensional objects that are composed of smaller
    segments that can be twisted and turned to scramble and solve the faces of the object by
    its external indicia. (Ex. 16, Loetz Rep., ¶¶ 17-19).

    **Plaintiff's Response:**  Admit.

12. Puzzle cubes are a type of three-dimensional puzzle that have six equal, square faces.
    (Ex. 16, Loetz Rep., ¶ 17-18; Ex. 60, Riehl Dep. Tr., at 10:17-20, 53:16-19, 54:7-12,
    54:17-23).

    **Plaintiff's Response:**  Admit.

13. The smaller segments of puzzle cubes are typically smaller cubes. (Ex. 16, Loetz Rep., ¶
    18).

    **Plaintiff's Response:**  Admit.

14. The external indicia of puzzle cubes are typically colors. (Ex. 16, Loetz Rep., ¶ 18).

    **Plaintiff's Response:**  Disputed.  Puzzles cubes are often sold with numbers, shapes, patterns or other designs.  *See* Ex. 181, Gottlieb Rep. ¶ 30; *see e.g.* Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 182, Sponge Bob Cube; Ex. 183, Disney Cube.

15. Puzzle cubes are in their "solved state" when each face of the cube shows the desired external indicia. (Ex. 16, Loetz Rep., ¶ 20; Ex. 60, Riehl Dep. Tr., at 10:17-20, 73:14-19, 73:24-74:9).

    **Plaintiff's Response:**  Admit.

16. A typical "solved state" for a puzzle cube is when each face of the cube shows a single, distinct color. (Ex. 16, Loetz Rep., ¶ 20).

    **Plaintiff's Response:**  Disputed.  Puzzles cubes that have numbers, shapes, patterns or other designs do not have a "solved state" with each face of the cube showing a single, distinct color.  *See* response to Flambeau SMF ¶ 14; Ex. 181, Gottlieb Rep. ¶ 30; *see e.g.* Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 182, Sponge Bob Cube; Ex. 183, Disney Cube.  In addition, puzzle cubes that have all six faces consisting of one color do not have each face of the cube showing a single, distinct color.  *See e.g.* Ex. 184, Mirror Cube.

17. Puzzle cubes are classified by the number of smaller segments that compose each face of the cube. (Ex. 16, Loetz Rep., ¶ 21).

    **Plaintiff's Response:**  Admit.

18. A 3x3 puzzle cube is a puzzle cube where each face is divided into nine equal segments organized into three rows of three. (Ex. 16, Loetz Rep., ¶ 21).

    **Plaintiff's Response:**  Disputed.  A puzzle cube where each face is divided into nine equal segments organized into three rows of three is only one type of 3x3 puzzle cube.

3x3 puzzle cubes also include varieties where each face is divided into nine unequal

segments organized into three rows of three. Ex. 184, Mirror Cube; Ex. 185, DianSheng

Case Cube; Ex. 186, Redi Cube; Ex. 187.

19. 3x3 puzzle cubes are a common type of puzzle cube. (Ex. 16, Loetz Rep., ¶ 21).

   **Plaintiff's Response:**  Admit.

## Early Puzzle Cube Patents

20. Three-dimensional puzzles and puzzle cubes have been known and used for decades.

   (Ex. 16, Loetz Rep., ¶ 22.a-g; Exs. 18-30 (collecting patents on puzzle cubes)).

   **Plaintiff's Response:**  Admit, but dispute the referenced Exs. 18-30 all disclose puzzle

   cubes.  *See e.g.* Ex. 23 (claiming a 2x3 puzzle); Ex. 29 (claiming a spherical puzzle).

21. U.S. Patent No. 3,081,089 for a "Manipulable Toy" was applied for February 2, 1960

   and issued in the name of William O. Gustafson on March 12, 1963 ("Gustafson

   Patent"). (Ex. 29, Gustafson Patent, p. 1, 3).

   **Plaintiff's Response:**  Admit to the extent "Manipulable Toy" means "Manipulatable

   Toy".  *See* Flambeau Ex. 29, Gustafson Patent, p. 1, 3.

22. The Gustafson Patent discloses "a mechanical puzzle having a plurality of vari-colored

   parts which are movable relative to each other to form various patterns." (Ex. 29,

   Gustafson Patent, at FLAMBEAU001063).

   **Plaintiff's Response:**  Admit.

23. The Gustafson Patent expired by the early 1980s. (Ex. 29, Gustafson Patent, at

   FLAMBEAU001063; Ex. 16, Loetz Rep., ¶ 23 & n. 26).

   **Plaintiff's Response:**  Admit.

24. U.S. Patent No. 3,655,201 for a "Pattern Forming Puzzle and Method with Pieces

   Rotatable in Groups" was applied for March 4, 1970 and issued in the name of Larry D.

Nichols on April 11, 1972 ("Nichols Patent"). (Ex. 18, Nichols Patent, at FLAMBEAU001072).

**Plaintiff's Response:**  Admit.

25.  The Nichols Patent discloses "a cube-type assembly" wherein "[e]ach cube has colored surfaces and when properly arranged one distinct color on each of the six faces is presented." (Ex. 18, Nichols Patent, at FLAMBEAU001072 (Abstract); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 111:16-112:3, 112:18-113:9, 113:12-25).

**Plaintiff's Response:**  Admit.

26.  The Nicholas Patent discloses a subdivided cube wherein "the exposed surfaces are colored so as to allow the complete cube if its component parts are properly arranged to present one distinct coloration on each of its six faces." (Ex. 18, Nichols Patent, at FLAMBEAU001074, Col. 1:63-65; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 111:16-112:3, 112:18-113:9, 113:12-25).

**Plaintiff's Response:**  Admit.

27.  The Nichols Patent expired by the early 1990s. (Ex. 18, Nichols Patent, at FLAMBEAU001072; Ex. 16, Loetz Rep., ¶ 23 & n. 26).

**Plaintiff's Response:**  Admit.

28.  Japanese Patent No. S53-120946 for a "Rotation type stereoscopic combination toy" was applied for March 29, 1977 and was published in the name of Terutoshi Ishige on October 21, 1978 ("Ishige Patent"). (Ex. 19, Ishige Patent, at FLAMBEAU001583 (English translation)).

**Plaintiff's Response:**  Admit.

29.  The Ishige Patent discloses "stereoscopic puzzles that combine pictures, letters, patterns, etc. of each surface in which each surface of cubes is equally divided into 3 horizontally

and vertically." (Ex. 19, Ishige Patent, at FLAMBEAU001583, ¶ 3; *see also* Ex. 63,

Simms Dep. Tr., at 15:17-20, 125:21-25, 126:9-21).

**Plaintiff's Response:**  Admit.

30.  The Ishige Patent discloses the following figures of a 3x3 puzzle cube:



(Ex. 19, Ishige Patent, at FLAMBEAU001586 (English translation)).

**Plaintiff's Response:**  Admit.

31.  RBL agrees that Ishige is recognized as an independent inventor of the 3x3 puzzle cube

that RBL calls the Rubik's Cube. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 109:6-14).

**Plaintiff's Response:**  Disputed. RBL's "RUBIK'S CUBE" is a 3x3 puzzle cube based

upon the RUBIK'S Design with a grid pattern and distinct color patches on each face of

the cube consisting of red, white, blue, green, yellow and orange. The Ishige Patent, on

the other hand, does not disclose a 3x3 puzzle cube with a grid pattern and distinct color

patches on each face of the cube. Rather, the Ishige Patent discloses "stereoscopic

puzzles that combine pictures, letters, patterns etc. of each surface." Ex. 19, Ishige

Patent, at FLAMBEAU001583 (English translation).

**The Rubik Patents**

32. RBL credits Ernö Rubik, a Hungarian professor, with inventing the 3x3 puzzle cube at-issue in this case. (Dkt. 1, Complaint, ¶ 9).

    **Plaintiff's Response:** Admit.

33. Mr. Rubik was issued at least five patents covering puzzle cubes in the 1970s and early 1980s. (Exs. 20-24 (collecting Rubik patents)).

    **Plaintiff's Response:** Admit.

34. Hungarian Patent No. 170062 for a "Spatial Logic Toy" was applied for January 30, 1975 and issued in the name of Mr. Rubik on December 31, 1977 ("the '062 Rubik Patent"). (Ex. 20, '062 Rubik Patent, at FLAMBEAU000640 (English translation); *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 187:23-188:4).

    **Plaintiff's Response:** Admit.

35. The '062 Rubik Patent discloses a 3x3 puzzle cube. (Ex. 20, '062 Rubik Patent, FLAMBEAU000640-641, FLAMBEAU000645 at Figs. 1-4 (English translation); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 114:1-9, 114:16-22, 116:13-15, 116:21-117:1; Ex. 69, RBL Req. Ad. Resp., Nos. 18-19).

    **Plaintiff's Response:** Admit.

36. The '062 Rubik Patent discloses a "spatial logical toy, which may be assembled from twenty-seven solid pieces, into with respect to its external shape, a closed cube." (Ex. 20, '062 Rubik Patent, at FLAMBEAU000640 (English translation); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 114:1-9, 114:16-22, 116:13-15, 116:21-117:1).

    **Plaintiff's Response:** Admit.

37. The '062 Patent discloses "[o]f the twenty-seven elements forming the large cube the nine solid pieces forming any face surface of the cube are arranged so that they may

rotate together and at the same time." (Ex. 20, '062 Rubik Patent, at

FLAMBEAU000640 (English translation); *see also* Ex. 63, Simms Dep. Tr., at 15:17-

20, 114:1-9, 114:16-22, 116:13-15, 116:21-117:1).

**Plaintiff's Response:** Admit.

38. The '062 Patent discloses "[t]he surfaces of the cubes are supplied with predetermined

planar figures, or three-dimensional shapes, or numbers (coded), with which they may

be differentiated from each other and matched with each other, which as a result of

rotation around the spatial axes according to the very different variation or combinations

appear as further, specific legible figures, number or symbol combinations on the given

face of the cube." (Ex. 20, '062 Rubik Patent, at FLAMBEAU000640 (English

translation); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 114:1-9, 114:16-22, 116:13-

15, 116:21-117:1).

**Plaintiff's Response:** Admit.

39. The '062 Rubik Patent discloses the following figures of a 3x3 puzzle cube:



(Ex. 20, '062 Rubik Patent, at FLAMBEAU000641, FLAMBEAU000645 (English

translation)).

**Plaintiff's Response:** Admit.

9

40. Belgian Patent No. 887875 for a "Spatial logical toy" was published in the name of Mr. Rubik on July 1, 1981 ("the '875 Rubik Patent"). (Ex. 21, '875 Rubik Patent, at FLAMBEAU000619-620 (English translation); *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 117:1-5)).

    **Plaintiff's Response:**  Admit.

41. The '875 Rubik Patent discloses a 3x3 puzzle cube. (Ex. 21, '875 Rubik Patent, FLAMBEAU000621-624 (English translation); Ex. 69, RBL Req. Ad. Resp., Nos. 20-21).

    **Plaintiff's Response:**  Admit.

42. The '875 Rubik Patent discloses "a spatial logical toy that, as regards to its external appearance, consists of twenty-seven solids forming a closed cube…." (Ex. 21, '875 Rubik Patent, FLAMBEAU000621).

    **Plaintiff's Response:**  Admit.

43. The '875 Rubik Patent discloses "Among the twenty-seven components that comprise the main cube, nine components that form any one of the sides of the cube are mounted such that they rotate together and at the same time…." (Ex. 21, '875 Rubik Patent, FLAMBEAU000621).

    **Plaintiff's Response:**  Admit.

44. The '875 Rubik Patent discloses "The surfaces of the cubes are supplied (encoded) with predetermined flat illustrations or plastic shapes or numeric figures, by which they may be made to be distinct and identifiable from each other…." (Ex. 21, '875 Rubik Patent, FLAMBEAU000621).

    **Plaintiff's Response:**  Admit.

45. The '875 Rubik Patent discloses the following figures of a 3x3 puzzle cube:



(Ex. 21, '875 Rubik Patent, at FLAMBEAU000614).

**Plaintiff's Response:** Admit.

46. Hungarian Patent No. 180387 for a "Spatial Logic Toy" was applied for October 28,

1980 and issued in the name of Mr. Rubik on October 30, 1986 ("the '387 Rubik

Patent"). (Ex. 22, '387 Rubik Patent, at FLAMBEAU000659 (English translation); *see*

*also* Ex. 63, Simms Dep. Tr., at 15:17-20, 118:22-119:7).

**Plaintiff's Response:** Admit.

47. The '387 Patent states "[s]patial logic toys are well known." (Ex. 22, '387 Rubik Patent,

at FLAMBEAU000659, ¶ 2).

**Plaintiff's Response:** Admit.

48. The '387 Patent references the Ishige Patent as disclosing a 3x3 puzzle cube "of which

the 9 small cube faces located on each of the faces of the large cube can be arranged by

rotation so that each large cube face contains the same color of small cube faces." (Ex.

22, '387 Rubik Patent, at FLAMBEAU000659, ¶ 3).

**Plaintiff's Response:** Admit.

49. The '387 Patent discloses "a spatial logic toy, which has a given number of toy elements arrange so as to be rotatable around the spatial axes projected from the geometrical center of the logic toy." (Ex. 22, '387 Rubik Patent, at FLAMBEAU000659, ¶ 1).

   **Plaintiff's Response:**  Admit.

50. The '387 Patent claims an "[embodiment of [a] spatial logic toy … characterized by … colors … on the external surfaces of the toy elements …." (Ex. 22, '387 Rubik Patent, at FLAMBEAU000664-665, Cl. 8; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 118:22-119:7, 119:12-120:17, 121:13-15).

   **Plaintiff's Response:**  Admit.

51. U.S. Patent No. 4,378,116 for a "Spatial Logical Toy" was applied for August 3, 1981 and issued in the name of Mr. Rubik on March 29, 1983 ("the '116 Rubik Patent"). (Ex. 23, '116 Rubik Patent, at FLAMBEAU000667; Ex. 61, Kremer Dep. Tr., at 12:9-20, 206:22-207:15).

   **Plaintiff's Response:**  Admit.

52. The '116 Rubik Patent states "[s]patial logic toys are well known." (Ex. 23, '116 Rubik Patent, at FLAMBEAU000669, Col. 1:9).

   **Plaintiff's Response:**  Admit.

53. The '116 Rubik Patent references the '062 Rubik Patent as disclosing a 3x3 puzzle cube. (Ex. 23, '116 Rubik Patent, at FLAMBEAU000667-668).

   **Plaintiff's Response:**  Admit.

54. The '116 Rubik Patent references the '062 Rubik Patent as disclosing a puzzle cube wherein "[t]he surfaces of the small cubes forming each surface of the large cube are colored … [and] can be assembled into the predetermined logical order of sequence by simultaneously rotating the nine toy elements forming the surfaces of the 'large cube.'"

12

(Ex. 23, '116 Rubik Patent, at FLAMBEAU000669, Col. 1:17-22; Ex. 61, Kremer Dep. Tr., at 12:9-20, 207:21-208:17; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 121:20-22, 122:20-123:4, 123:18-24).

**Plaintiff's Response:** Admit.

55. The '116 Rubik Patent expired by the early 2000s. (Ex. 23, '116 Rubik Patent, at FLAMBEAU000667; Ex. 16, Loetz Rep., ¶ 23 & n. 26).

**Plaintiff's Response:** Admit.

56. U.S. Patent No. 4,378,117 for a "Spatial Logical Toy" was applied for August 3, 1981 and issued in the name of Mr. Rubik on March 29, 1983 ("the '117 Rubik Patent"). (Ex. 24, '117 Rubik Patent, at FLAMBEAU001361; Ex. 61, Kremer Dep. Tr., at 12:9-20, 211:15-212:3).

**Plaintiff's Response:** Admit.

57. The '117 Rubik Patent discloses a "preferred embodiment" of a spatial logical toy wherein "the solid forming the toy is a regular geometrical solid confined by planes, preferably a cube…." (Ex. 24, '117 Rubik Patent, at FLAMBEAU001363, Col. 1:10-12; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 124:4-22, 125:2-20).

**Plaintiff's Response:** Admit.

58. The '117 Rubik Patent discloses a "preferred embodiment" of a spatial logical toy wherein "[t]he small cubic elements forming the plane surfaces of the large cube are either colored or indicated with numbers, figures or any other symbols…." (Ex. 24, '117 Rubik Patent, at FLAMBEAU001363, Col. 1:16-18).

**Plaintiff's Response:** Admit.

59. The '117 Rubik Patent discloses a "preferred embodiment" of a spatial logical toy wherein "by rotating the cubes, several combinations become possible in compliance

with the contents yielded by the indicia." (Ex. 24, '117 Rubik Patent, at

FLAMBEAU001363, Col. 1:19-21).

**Plaintiff's Response:** Admit.

60. The '117 Rubik Patent expired by the early 2000s. (Ex. 24, '117 Rubik Patent, at

FLAMBEAU001361; Ex. 16, Loetz Rep., ¶ 23 & n. 26).

**Plaintiff's Response:** Admit.

## Other Puzzle Cube Patents

61. U.S. Patent No. 4,409,750 for a "Calender Formed from a Cube Puzzle" was applied for

August 18, 1981 and issued in the name of Marvin A. Silbermintz on October 18, 1983

("the Silbermintz Patent"). (Ex. 25, Silbermintz Patent, at FLAMBEAU001365).

**Plaintiff's Response:** Admit.

62. When the Silbermintz Patent issued, it was assigned to the Ideal Toy Corporation. (Ex.

25, Silbermintz Patent, at FLAMBEAU001365).

**Plaintiff's Response:** Admit.

63. The Silbermintz Patent lists the '062 Rubik Patent in "References Cited." (Ex. 25,

Silbermintz Patent, at FLAMBEAU001365).

**Plaintiff's Response:** Admit.

64. The Silbermintz Patent discloses that in the "Ideal 'Rubik's Cube' version of the cube

puzzle, each face is colored uniformly with a distinct color, but repeated rotation of the

various faces scrambles the individual cubie faces. The object of the game then is to

continue to rotate the cube faces in order to return the cubies to their original position so

that all sides of the cube have a solid color." (Ex. 25, Silbermintz Patent, at

FLAMBEAU001375, Col. 1:26-32).

**Plaintiff's Response:** Admit.

65. U.S. Patent No. 4,421,311 for a "Puzzle-Cube" was applied for January 29, 1982 and

    issued in the name of Peter Sebesteny on December 20, 1983 ("the Sebesteny Patent").

    (Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

    **Plaintiff's Response:** Admit.

66. When the Sebesteny Patent issued, it was assigned to the Ideal Toy Corporation (Ex. 28,

    Sebesteny Patent, at FLAMBEAU001383).

    **Plaintiff's Response:** Admit.

67. The Sebesteny Patent lists the Gustafson Patent, the Nichols Patent, the '062 Rubik

    Patent, and the Ishige Patent in "References Cited." (Ex. 28, Sebesteny Patent, at

    FLAMBEAU001383).

    **Plaintiff's Response:** Admit.

68. The Sebesteny Patent discloses:

> A puzzle cube in a 3×3×3 version has been dis-
> cussed and previously known (The Mathematical Intel-
> ligencer, September 1979, pages 29 and 30, Springer-
> Verlag). In such a puzzle cube, nine outer surfaces of
> the cube elements are respectively provided with one
> and the same color, so that in the starting position each
> side of the cube body is one color. Thus, the cube body
> has six different colored surfaces which are to be re-
> adjusted again after a random disarrangement of the
> individual cube elements. Each cube element may be
> rotated about three axes standing perpendicularly one
> upon another and extending through the cube center. In
> this rotary movement, it takes along with it all the cube
> elements that are disposed in the same plane with re-
> spect to the direction of rotation. Thus, each cube ele-
> ment forms part of three sections respectively arranged
> normal to each other and adapted to be rotated about a
> center axis of the cube. Therefore, each cube element
> can be rotated only together with the respectively asso-
> ciated section, while by itself it has to be considered as
> being stationary with respect to the cube body. Pre-
> cluded is furthermore a diagonal rotation of the cube
> elements.

(Ex. 28, Sebesteny Patent, at FLAMBEAU001391).

**Plaintiff's Response:** Admit.

69. U.S. Patent No. 6,626,431 for a "Rotational Cubic Puzzle" was applied for May 29, 2001 and issued in the name of William Possidento on September 30, 2003 ("the Possidento Patent"). (Ex. 26, Possidento Patent, at FLAMBEAU001678).

    **Plaintiff's Response:** Admit.

70. The Possidento Patent discloses an invention that in its "simplest form" includes "a cubic rotatable block type of puzzle" in "a 3x3 array on each of the six faces." (Ex. 26, Possidento Patent, at FLAMBEAU001682, Col. 1:10-17).

    **Plaintiff's Response:** Admit.

71. The Possidento Patent discloses that "Each face of the puzzle is divided into 9 sections; in the case of Rubik's Cube, the 9 sections are supposed to all be of the same color when the puzzle is solved correctly." (Ex. 26, Possidento Patent, at FLAMBEAU001682, Col. 1:31-33).

    **Plaintiff's Response:** Admit.

72. U.S. Patent No. 7,644,924 for a "Three Dimensional Sudoku Cube Puzzle and Method" was applied for May 8, 2007 and issued in the name of Jay Horowitz on January 12, 2010 ("the Horowitz Patent"). (Ex. 27, Horowitz Patent, at FLAMBEAU001685).

    **Plaintiff's Response:** Admit.

73. The Horowitz Patent discloses "a three dimensional puzzle bearing the shape of a cube." (Ex. 27, Horowitz Patent, at FLAMBEAU001692).

    **Plaintiff's Response:** Admit.

74. The Horowitz Patent discloses an embodiment of a three dimensional puzzle bearing the shape of a cube wherein "each face bears one of six distinct colored indicia." (Ex. 27, Horowitz Patent, at FLAMBEAU001692, Col. 2:9-10).

**Plaintiff's Response:** Admit.

75. UK Patent Application for a "Spatial logic puzzle" was filed June 12, 2012 and published in the name of Steven Perrin on October 3, 2012 ("the Perrin Patent"). (Ex. 30, Perrin Patent Application, at RBL_009260).

    **Plaintiff's Response:** Admit.

76. The Perrin Patent Application was filed by Seven Towns Ltd. (Ex. 30, Perrin Patent Application, at FLAMBEAU009260).

    **Plaintiff's Response:** Admit.

77. Seven Towns Ltd. is RBL's predecessor-in-interest to intellectual property rights related to the Rubik's Cube. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 15:23-16:4, 16:12-25, 17:9-24, 21:8-22:15; Ex. 60, Riehl Dep. Tr., at 10:17-20, 23:20-24, 25:5-9, 33:18-22, 41:3-20, 34:4-9, 196:21-197:13).

    **Plaintiff's Response:** Admit.

78. The Perrin Patent Application discloses the "general arrangement of a 3 x 3 x 3 Rubik's cube puzzle." (Ex. 30, Perrin Patent Application, at RBL_009274, ¶ 3).

    **Plaintiff's Response:** Admit.

79. The Perrin Patent Application discloses using "snap-in coloured inserts for the various face edge and corner cubes instead of more usual adhesive coloured identifiers." (Ex. 30, Perrin Patent Application, at RBL_009287, ¶ 1).

    **Plaintiff's Response:** Admit.

## Ideal, CBS & the Nichols Patent Litigation

80. Ideal Toy Company ("Ideal") learned of Mr. Rubik's puzzle cubes in late 1979. (Ex. 39, 6/19/1985 Brief for Appellant, CBS, Inc., filed in *CBS, Inc. v. Moleculon Research Corp.*, No. 85-2096 (Fed. Cir.) ("CBS Brief"), at FLAMBEAU002015 (1985 WL

671390, *16)).

**Plaintiff's Response:**  Admit.

81. In September 1979, Ideal entered into an agreement granting Ideal exclusive rights to sell Mr. Rubik's puzzle cubes in the U.S. (Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 10/2/1984 Opinion & Order, issued in *Moleculon Research Corporation v. CBS, Inc.*, No. 82-289 (D. Del.) ("1984 D. Del. Op."), at FLAMBEAU002072 (594 F. Supp. 1420, 1424); Ex. 63, Simms Dep. Tr., at 15:17-20, 69:6-16; *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 29:24-30:8, 30:12-25, 32:3-10, 32:20-24).

**Plaintiff's Response:**  Admit to the extent "Mr. Rubik's puzzle cubes" refers to the 3x3 Rubik's Cube. Ex. 39 at FLAMBEAU002015.

82. In September 1979, Ideal entered into an agreement granting Ideal rights and to use the name "Rubik's" for puzzle cubes in the U.S. (Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16)).

**Plaintiff's Response:**  Admit.

83. Ideal debuted its 3x3 puzzle cube, called the "Rubik's Cube," at the New York City Toy Fair in February 1980. (Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *17); Ex. 61, Kremer Dep. Tr., at 12:9-20, 98:6-17).

**Plaintiff's Response:**  Admit.

84. In early 1981, a representative of Moleculon Research Corporation ("Moleculon"), wrote to the president of Ideal about the Nichols Patent. (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:**  Admit.

85. Ideal responded to Moleculon that it had studied the prior art and believed its Rubik's

18

Cube did not infringe any valid patent claims. (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:** Admit.

86. In August 1981, representatives from Moleculon and Ideal discussed the possibility of Ideal licensing the Nichols Patent. (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:** Admit.

87. Moleculon filed suit against Ideal for patent infringement of the Nichols Patent in May 1982 ("the Nichols Patent Litigation"). (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002071-72 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:** Admit.

88. During the Nichols Patent Litigation, Ideal was acquired by CBS, Inc. ("CBS") and CBS was named as the defendant. (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424); *see also* Ex. 66, Cube is a Problem to CBS, New York Times (1984), at FLAMBEAU002026; Ex. 61, Kremer Dep. Tr., at 12:9-20, 33:25-34:3).

**Plaintiff's Response:** Admit.

89. In October 1984, the United States District Court for the District of Delaware issued an opinion finding claims of the Nichols Patent valid and infringed by variations of the Rubik's Cube. (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002086 (594 F. Supp. 1420, 1441)).

**Plaintiff's Response:** Admit.

90. In May 1986, the United States Court of Appeals for the Federal Circuit issued an opinion affirming the district court's finding that claims of the Nichols Patent were not invalid, affirming the finding that the 2x2 Rubik's Cube infringed, and vacating and

remanding on the finding that the 3x3 and 4x4 Rubik's Cubes infringed. (Ex. 40, 5/16/1986 Opinion issued in *Moleculon Research Corporation v. CBS, Inc.,* No. 85-2096 (Fed. Cir.), at FLAMBEAU002062).

**Plaintiff's Response:** Admit.

91. In July 1987, the United States District Court for the District of Delaware issued an opinion and order finding that the 3x3 and 4x4 Rubik's Cubes infringe the Nichols Patent. (Ex. 41, 7/6/1987 Opinion & Order issued in *Moleculon Research Corporation v.CBS, Inc.*, No. 82-289 (D. Del.), at FLAMBEAU002091).

**Plaintiff's Response:** Admit.

92. In April 1989, the United States Court of Appeals for the Federal Circuit issued an opinion reversing the district court's finding that the 3x3 and 4x4 Rubik's Cubes infringe the Nichols Patent. (Ex. 42, 4/5/1989 Opinion issued in *Moleculon Research Corporation v. CBS, Inc.,* No. 87-1594 (Fed. Cir.), at FLAMBEAU002096).

**Plaintiff's Response:** Admit.

**Prosecution of the '094 Registration**

93. In April 1982, Ideal's patent counsel filed an application to register a trademark on Ideal's behalf for puzzle cubes consisting of "a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow, and orange," which was assigned Application No. 358,308. (Ex. 31, 4/5/1982 Application ("the '308 Application"), at FLAMBEAU000039-42; Ex. 15, Roberts Decl., ¶ 30; Ex. 61, Kremer Dep. Tr., at 12:9-20, 57:24-58:3, 58:7; Ex. 63, Simms Dep. Tr., at 15:17-20, 60:22-61:1).

**Plaintiff's Response:** Admit.

94. Ideal submitted with the '308 Application the following drawing lined for the colors red, green, orange, blue, and yellow:



(Ex. 31, '308 Application, at FLAMBEAU000039, FLAMBEAU000249; Ex. 16, Loetz Rep., ¶ 38; Ex. 15, Roberts Decl., ¶ 30).

**Plaintiff's Response:** Admit.

95. Ideal submitted with the '308 Applications the following photographs of the puzzle cubes that it contended used the applied-for trademark:




(Ex. 31, '308 Application, at FLAMBEAU000040, FLAMBEAU000253-257; Ex.

16, Loetz Rep., ¶ 39; Ex. 61, Kremer Dep. Tr., at 12:9-20, 57:24-58:3, 58:7, 58:12-59:3, 59:12-19).

**Plaintiff's Response:** Admit.

96. The photographs Ideal submitted with the '308 Application showed the white face of the 3x3 Rubik's Cube adjacent to the yellow and orange faces. (Ex. 31, '308 Application, at FLAMBEAU000040, FLAMBEAU000253-257; Ex. 16, Loetz Rep., ¶ 39; Ex. 61, Kremer Dep. Tr., at 12:9-20, 57:24-58:3, 58:7, 58:12-59:3, 59:12-19, 99:25-100:9).

**Plaintiff's Response:** Admit.

97. The photographs Ideal submitted with the '308 Application showed the red face was adjacent to the blue and green faces. (Ex. 31, '308 Application, at FLAMBEAU000040, FLAMBEAU000253-257; Ex. 16, Loetz Rep., ¶ 39; Ex. 61, Kremer Dep. Tr., at 12:9-20, 57:24-58:3, 58:7, 58:12-59:3, 59:12-19).

**Plaintiff's Response:** Admit.

98. The examiner initially refused registration in an office action dated on or about July 27, 1982. (Ex. 32, 7/27/1982 Office Action; Ex. 15, Roberts Decl., ¶ 31; Ex. 61, Kremer Dep. Tr., at 12:9-20, 75:5-17, 79:6-14; Ex. 63, Simms Dep. Tr., at 15:17-20, 63:10-19, 64:1-7).

**Plaintiff's Response:** Admit.

99. The examiner initially refused registration "because the design sought to be registered appears to be the configuration of applicant's goods and the configuration appears to be primarily functional in nature." (Ex. 32, 7/27/1982 Office Action; Ex. 15, Roberts Decl., ¶ 31; Ex. 63, Simms Dep. Tr., at 15:17-20, 63:10-19, 64:1-7).

**Plaintiff's Response:** Admit.

100. Ideal filed a response to the July 27, 1982 office action on or about September 7, 1982.

(Ex. 33, 9/7/1982 Response; Ex. 15, Roberts Decl., ¶ 32; Ex. 63, Simms Dep. Tr., at 15:17-20, 64:21-65:1).

**Plaintiff's Response:**  Admit.

101. In its September 7, 1982 response, Ideal changed its identification of goods to "three dimensional puzzles." (Ex. 33, 9/7/1982 Response, at FLAMBEAU000044; Ex. 63, Simms Dep. Tr., at 15:17-20, 65:18-22).

**Plaintiff's Response:**  Admit.

102. In its September 7, 1982 response, Ideal conceded that the mark sought for registration is a configuration of the goods. (Ex. 33, 9/7/1982 Response, at FLAMBEAU000044; Ex. 63, Simms Dep. Tr., at 15:17-20, 65:18-22).

**Plaintiff's Response:**  Admit.

103. In its September 7, 1982 response, Ideal argued that the applied-for design was not functional because "the design features of applicant's product, as shown in the drawings, are not essential to effective competition or to any other factor." (Ex. 33, 9/7/1982 Response, at FLAMBEAU000046).

**Plaintiff's Response:**  Admit.

104. In its September 7, 1982 response, Ideal argued that the applied-for design was not functional because "Cube puzzles such as manufactured by applicant can be formed of any color plastic material desired. They need not be formed of black. The black color of the plastic which forms the distinctive black grid pattern of the trademark serve absolutely no function in the use of the product." (Ex. 33, 9/7/1982 Response, at FLAMBEAU000046).

**Plaintiff's Response:**  Admit.

105. In its September 7, 1982 response, Ideal argued that the applied-for design was not

functional because "Likewise, the color patches on the faces of the product are not functional. The color patches need not be square as used by applicant nor need they be colored." (Ex. 33, 9/7/1982 Response, at FLAMBEAU000046).

**Plaintiff's Response:** Admit.

106. In its September 7, 1982 response, Ideal argued that the applied-for design was not functional because "And, if colored, they need not be the precise colors used by applicant." (Ex. 33, 9/7/1982 Response, at FLAMBEAU000046).

**Plaintiff's Response:** Admit.

107. Ideal cited three court decisions in its September 7, 1982 response that it claimed established the non-functionality of the applied-for design. (Ex. 33, 9/7/1982 Response, at FLAMBEAU000047).

**Plaintiff's Response:** Admit.

108. As of August 17, 1982, all of the stock and trademark rights of Ideal were acquired by CBS. (Ex. 35, 5/31/1983 Response, at FLAMBEAU000099).

**Plaintiff's Response:** Admit.

109. Ideal assigned the '308 Application to CBS in August or September 1982. (Ex. 37, '094 Registration (CBS, Inc. listed as "assignee of Ideal Toy Corporation"); Ex. 61, Kremer Dep. Tr., at 12:9-20, 197:3-9; Ex. 63, Simms Dep. Tr., at 15:17-20, 77:18-24).

**Plaintiff's Response:** Admit.

110. The examiner refused the registration a second time in an office action dated on or about January 17, 1983. (Ex. 34, 1/17/1983 Office Action; Ex. 15, Roberts Decl., ¶ 33; Ex. 61, Kremer Dep. Tr., at 12:9-20, 79:19-25, 80:14-20, 80:25-81:1; Ex. 63, Simms Dep. Tr., at 15:17-20, 78:12-14, 79:6-23).

**Plaintiff's Response:** Admit.

111. The examiner stated "the design sought to be registered appears to be the configuration of the applicant's goods and the configuration appears to be primarily functional in nature." (Ex. 34, 1/17/1983 Office Action).

**Plaintiff's Response:** Admit.

112. The examiner noted that the decisions Ideal had cited in its September 7, 1982 response involved preliminary injunctions. (Ex. 34, 1/17/1983 Office Action).

**Plaintiff's Response:** Admit.

113. The examiner ordered in her January 17, 1983 office action that "Applicant must set forth the registration number of any patents which cover the goods in the application." (Ex. 34, 1/17/1983 Office Action; Ex. 15, Roberts Decl., ¶ 34; Ex. 63, Simms Dep. Tr., at 15:17-20, 79:24-80:20).

**Plaintiff's Response:** Admit.

114. The examiner's January 17, 1983 request for "any patents which cover the goods in the application" included foreign patents. (Ex. 63, Simms Dep. Tr., at 15:17-20, 81:5- 11, 82:2-5, 82:10-25).

**Plaintiff's Response:** Admit.

115. CBS (or Ideal on its behalf) filed a response to the January 17, 1983 office action on or about May 31, 1983. (Ex. 35, 5/31/1983 Response; Ex. 15, Roberts Decl., ¶ 35; Ex. 63, Simms Dep. Tr., at 15:17-20, 83:1-11).

**Plaintiff's Response:** Admit.

116. In the May 31, 1983 response, neither Ideal nor CBS set forth the registration numbers of any patents which cover three dimensional puzzles. (Ex. 35, 5/31/1983 Response; Ex. 15, Roberts Decl., ¶¶ 38, 49).

**Plaintiff's Response:** Admit.

117. Ideal or CBS cited two court decisions—*In the matter of Certain Puzzle Cubes* and *CBS, Inc. v. Logical Games, Inc.*—and asserted they were "determinative as to the issue of non-functionality." (Ex. 35, 5/31/1983 Response, at FLAMBEAU000099-100).

**Plaintiff's Response:** Admit.

118. The decision from *In the matter of Certain Puzzle Cubes* submitted by CBS referenced the '062 Rubik Patent, but no other patent. (Ex. 35, 5/31/1983 Response, at FLAMBEAU000101, FLAMBEAU000125-126).

**Plaintiff's Response:** Admit.

119. The decision from *In the matter of Certain Puzzle Cubes* submitted by Ideal or CBS mistakenly stated that Ideal "do[es] not have any patent rights in the United States to the puzzle cube." (Ex. 35, 5/31/1983 Response, at FLAMBEAU000112, n.13; Ex. 63, Simms Dep. Tr., at 15:17-20, 73:17-74:1; Ex. 25, Silbermintz Patent, at FLAMBEAU001365; Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

**Plaintiff's Response:** Disputed. The International Trade Commission decision from *In the matter of Certain Puzzle Cubes* correctly stated that Ideal "do[es] not have any patent rights in the United States to the *cube puzzle*." Ex. 35 at FLAMBEAU000112 (emphasis added). The quoted statement by the ITC is a footnote to the ITC's comment that, "Ideal claims a common-law trademark in the appearance of its cube." *Id.* Accordingly, "the cube puzzle" or "Ideal's cube puzzle" at issue is defined by the ITC as the "Rubik's Cube," which "is a six-sided cube made of black plastic. On each side there are nine smaller cubes, called 'cubies.'" *Id.* at FLAMBEAU000112-113. The ICT correctly stated that Ideal "do[es] not have any patent rights in the United States to the [Rubik's Cube]" because the referenced Rubik's Cube is a 3x3 cube puzzle with nine smaller cubes on each side of the cube puzzle. The only two U.S. patents issued in Mr.

26

Rubik's name (the '116 Rubik Patent and the '117 Rubik Patent) do not disclose a 3x3

cube puzzle. The '116 Rubik Patent claims a 2x3 puzzle with six smaller cubes on four

sides of the cube puzzle, as shown below:



Ex. 23, '116 Rubik Patent, at FLAMBEAU000667. The '117 Rubik Patent claims a 2x2

cube puzzle with four smaller cubes on each side of the cube puzzle, as shown below:



Fig.1a

Ex. 24, '117 Rubik Patent, at FLAMBEAU001362.

120. The decision from *CBS, Inc. v. Logical Games, Inc.* submitted by Ideal or CBS did not

reference patents. (Ex. 35, 5/31/1983 Response, at FLAMBEAU000152-161).

**Plaintiff's Response:** Admit.

121. After CBS's May 31, 1983 response, the '308 Application was re-assigned to a new

examiner and the new examiner approved the applied-for mark for publication the same

day. (Ex. 15, Roberts Decl., ¶ 45; Ex. 36, Notice of Publication; Ex. 48, TSDR Printout,

at FLAMBEAU000003).

**Plaintiff's Response:** Admit.

122. U.S. Registration No. 1,265,094 issued to CBS, Inc. on January 24, 1984 ("the '094 Registration"). (Ex. 37, '094 Registration; Ex. 15, Roberts Decl., ¶ 46).

   **Plaintiff's Response:** Admit.

123. The '094 Registration is for "three dimensional puzzles." (Ex. 37, '094 Registration; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13).

   **Plaintiff's Response:** Admit.

124. The '094 Registration states "the mark consists of a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow and orange." (Ex. 37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24; Ex. 61, Kremer Dep. Tr., at 12:9-20, 54:14-18, 55:25-56:15).

   **Plaintiff's Response:** Admit.

125. The '094 Registration provides the following drawing lined for the colors red, green, orange, blue and yellow:



(Ex. 37, '094 Registration).

**Plaintiff's Response:** Admit.

126. CBS assigned the '094 Registration to Seven Towns in 1986. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 196:21-197:2; Ex. 48, TSDR Printout, at FLAMBEAU000003-4).

**Plaintiff's Response:** Admit.

127. Seven Towns assigned the '094 Registration to RBL in 2013. Ex. 61, Kremer Dep. Tr., at 12:9-20, 197:10-13; Ex. 48, TSDR Printout, at FLAMBEAU000003-4).

**Plaintiff's Response:** Admit.

## Speed Cubing & the World Cubing Association

128. By October 1982, it was reported that "the cube has become passe" and the trend for sales of the Rubik's Cube "clearly is downward." (Ex. 73, Rubik's Cube: A Craze Ends, New York Times (Oct. 30, 1982).

**Plaintiff's Response:** Admit.

129. By 1984, it was reported that popularity of the 3x3 Rubik's Cube had "dropped off dramatically." (Ex. 66, Cube is a Problem to CBS, New York Times (1984), at FLAMBEAU002026; Ex. 62, Gottlieb Dep. Tr., at 309:16-310:1, 310:8-311:6).

**Plaintiff's Response:** Admit.

130. Speed cubing is an activity where individuals strive to solve three dimensional puzzles as quickly as possible. (Ex. 16, Loetz Rep., ¶ 97; Ex. 60, Riehl Dep. Tr., at 10:17-20, 192-193:20, 202:6-8, 220:15-221:4, 222:11-14, 225:3-10, 226:3-8; Ex. 61, Kremer Dep. Tr., at 12:9-20, 216:12-22; Ex. 63, Simms Dep. Tr., at 15:17-20, 148:2-10; Ex. 69, RBL Req. Ad. Resp., No. 16).

**Plaintiff's Response:** Admit.

131. The popularity of speed cubing has grown exponentially in recent years. (Ex. 58,

Children of the Cube, New York Times (Aug. 15, 2018), at FLAMBEAU002607; *see also* Ex. 16, Loetz Rep., ¶ 99-100).

**Plaintiff's Response:** Admit.

132. The World Cubing Association ("WCA"), the largest organization for speed cubing, formed in 2004 to approve and administer speed cubing events and competitions. (Ex. 58, Children of the Cube, New York Times (Aug. 15, 2018), at FLAMBEAU002613; *see also* Ex. 16, Loetz Rep., ¶ 98; Ex. 60, Riehl Dep. Tr., at 10:17- 20, 203:14-22; Ex. 61, Kremer Dep. Tr., at 12:9-20, 239:20-240:3).

**Plaintiff's Response:** Admit to the extent the WCA approves and administer speed cubing events and competitions that are hosted or endorsed by the WCA. Dispute that the WCA approves and administers all speed cubing events and competitions. For example, RBL approves and administers its own speed cubing events and competitions through its You CAN Do The RUBIK'S CUBE Program without WCA participation. *See* Ex. 76, Riehl Decl. ¶¶ 22, 25, 30. In addition, the annual Red Bull Rubik's Cube World Championship is a speed cubing event and competition approved and administered by RBL and Red Bull Mind Gamers. *See* Ex. 150 at RBL_006078-RBL_006079. Dispute that the citations to the Riehl and Kremer deposition transcripts support Flambeau's statements in SMF ¶ 132.

133. In 2017, the number of first-time competitors at WCA events was about 24,000, which was five times more than the number of first-time competitors at WCA events in 2012. (Ex. 58, Children of the Cube, New York Times (Aug. 15, 2018), at FLAMBEAU002607; Ex. 16, Loetz Rep., ¶ 99).

**Plaintiff's Response:** Admit.

134. The WCA publishes regulations that apply to all official competitions sanctioned by the

WCA ("WCA Regulations"). (Ex. 9, WCA Regulations, at FLAMBEAU002484; Ex.

60, Riehl Dep. Tr., at 10:17-20, 247:2-8).

**Plaintiff's Response:** Admit.

135. Competitors at WCA events may use any brand of three-dimensional puzzle, so long as

the puzzle conforms with Article 3 of the WCA Regulations. (Ex. 9, WCA Regulations,

at FLAMBEAU002488-2489; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 230:7-231:3,

257:18-22).

**Plaintiff's Response:** Admit.

136. Article 3a of WCA Regulations provides:

3a) Competitors must provide their own puzzles for the competition.
   ○ 3a1) Competitors must be ready to submit their puzzles when they are called (see Regulation 2u).
   ○ 3a2) Puzzles must be fully operational, such that normal scrambling is possible.
   ○ 3a3) Polyhedral puzzles must use a color scheme with one unique color per face in the solved state. Each puzzle variation must have moves, states, and solutions functionally identical to the original puzzle.

Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:** Admit.

137. Article 3d of the WCA Regulations provides:

3d) Puzzles must have colored parts, which define the color scheme of the puzzle and must be one and only one of the following: colored stickers, colored tiles, colored plastic, or painted/printed colors. All colored parts of a puzzle must be made of a similar material.
   ○ 3d1) For competitors with a medically documented visual disability, the following exceptions apply:
      ■ 3d1a) Blind competitors may use textured puzzles with different textures on different faces. Each face should have a distinct color, to aid in scrambling and judging.
      ■ 3d1b) Color blind competitors who cannot distinguish between the necessary number of colors may use colored parts with patterns, if it has been explicitly approved according to Regulation 2s. Patterns may come from stickers or be drawn.
   ○ 3d2) The colors of the colored parts must be solid, with one uniform color per face. Each color must be clearly distinct from the other colors.

Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:** Admit.

138. Article 3h of the WCA Regulations provides:

- 3h) Modifications that enhance the basic concept of a puzzle are not permitted. Modified versions of puzzles are permitted only if the modification does not make any additional information available to the competitor (e.g. orientation or identity of pieces), compared to an unmodified version of the same puzzle.
    ○ 3h1) "Pillowed" puzzles are permitted.
    ○ 3h2) Puzzles whose colored plastic is visible inside the puzzle (e.g. "stickerless" puzzles) are permitted. This does not include the following puzzles:
        ■ 3h2a) Puzzles with transparent parts. Exception: An overlay sticker (see Regulation 3l).
    ○ 3h3) Any modifications to a puzzle that result in poor performance by a competitor are not grounds for additional attempts.
    ○ 3h4) For Clock, custom "inserts" (the same shape and size as the traditional paper inserts) are permitted, at the discretion of the WCA Delegate. The inserts must have a clear indication of 12 o'clock that matches the original inserts.

Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:** Admit.

139. Article 3j of the WCA Regulations provides:

3j) Puzzles must be clean, and must not have any markings, elevated pieces, damage, or other differences that significantly distinguish any piece from a similar piece. Exception: a logo (see Regulation 3l).
    ○ 3j1) Puzzles are permitted to have reasonable wear, at the discretion of the WCA Delegate.
    ○ 3j2) Definition: Two pieces are similar to each other if they are identical in shape and size, or mirrored in shape and identical in size.
    ○ 3j3) Corrugated/textured parts which permit the orientation of pieces to be distinguished by feel are not permitted for blindfolded events.

Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:** Admit.

140. Article 3l of the WCA Regulations provides:

3l) A puzzle may have a logo on a colored part. If it does, it must have at most one colored part with a logo. Exception: For blindfolded events, a puzzle must not have a logo.
    ○ 3l1) The logo must be placed on a center piece. Exceptions for puzzles that do not have center pieces:
        ■ 3l1a) For Pyraminx and 2x2x2, the logo may be on any piece.
        ■ 3l1b) For Square-1, the logo must be on a piece in the equatorial slice.
    ○ 3l2) The logo may be embossed, engraved, or consist of an overlay sticker.

(Ex. 9, WCA Regulations, at FLAMBEAU002489).

**Plaintiff's Response:** Admit.

141. To be eligible for WCA 3x3 puzzle cube events, the puzzle "must use a color scheme with one unique color per face in the solved state." (Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:** Admit.

142. To be eligible for WCA 3x3 puzzle cube events, the puzzle "must have colored parts" and the "colors of the colored parts must be solid, with one uniform color per face" and "[e]ach color must be clearly distinct from the other colors." (Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:** Admit.

143. To be eligible for WCA 3x3 puzzle cube events, the puzzle "must be clean, and must not have any markings, elevated pieces, damage, or other differences that significantly distinguish any piece from a similar piece." (Ex. 9, WCA Regulations, at FLAMBEAU002488).

**Plaintiff's Response:** Admit.

144. To be eligible for WCA 3x3 puzzle cube events, any logo on the puzzle "must be placed on a center piece." (Ex. 9, WCA Regulations, at FLAMBEAU002489).

**Plaintiff's Response:** Admit.

145. Because of the nature of speedcubing, competitors are interested in using cubes that can be solved most quickly. (Ex. 16, Loetz Rep., ¶ 101; Ex. 60, Riehl Dep. Tr., at 10:17-20, 110:6-18, 110:24-111:9, 112:21-113:10, 181:16-182:4; Ex. 61, Kremer Dep. Tr., at 12:9-20, 216:12-22; *see also* Ex. 62, Gottlieb Dep. Tr., at 186:19-187:7, 188:11- 189:3, 195:18-196:14, 197:1-10, 261:17-262:2).

**Plaintiff's Response:** Admit.

146. RBL targets speedcubing competitors with its products. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 224:13-22, 225:5-11; *see also* Ex. 62, Gottlieb Dep. Tr., at 250:1-6, 250:10-21, 252:14-25, 253:9-13, 268:3-15).

**Plaintiff's Response:** Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 146. Mr. Kremer's testimony is specifically with regard to only one of RBL products, the Rubik's Speed Cube, which is a RBL licensed 3x3 puzzle cube created in partnership with Gan, a puzzle cube manufacturing company. Ex. 61, Kremer Dep. Tr.: 123:2-5; 172:2-10. Mr. Kremer testified that The Rubik's Speed Cube generally targets the speed cubing community through its relationship with Gan because, "Gan produces a cube which purports to be the fastest rotating cube, and therefore, those small segments of the population that are involved in trying to be the fastest would be interested in purchasing a Gan Rubik Gan cube [the Rubik's Speed Cube]." *Id*. at 225:5-11.

147. RBL sponsors WCA competitions to promote its products. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 239:6-17).

**Plaintiff's Response:** Admit to the extent that Mr. Kremer testified that "From time to time, [RBL] ha[s] contributed sponsorship or physical items such as medals for competitions." Ex. 61, Kremer Dep. Tr., at 12:9-20, 239:15-19.

148. 3x3 puzzle cubes sold under the "Valk," "GAN," and "MoYu" brands are commonly recommended for speedcubing. (Ex. 16, Loetz Rep., ¶ 101).

**Plaintiff's Response:** Admit.

### RBL and the RUBIK'S Brand

149. RBL licenses toy makers and sellers to use the RUBIK'S brand and the 3x3 Cube

Design. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 15:9-13, 163:7-12, 166:25-167:13, 170:12-24, 171:4, 171:10-14, 171:20-25, 172:6-10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 49:10-18; Ex. 16, Loetz Rep., ¶ 29).

**Plaintiff's Response:** Admit to the extent "3x3 Cube Design" means the "RUBIK'S Design".

150. One of RBL's licensed products is the 3x3 Rubik's Cube, a 3x3 puzzle cube with black 90-degree segments and square, solid color patches on each side in the solved state:



(Ex. 16, Loetz Rep., ¶¶ 29-30; Ex. 60, Riehl Dep. Tr., at 10:17-20, 26:8-13, 53:5-11, 62:10-13, 65:3-16, 71:19-72:6, 109:6-19, 137:13-138:11; Ex. 63, Simms Dep. Tr., at 15:17-20, 85:16-86:5).

**Plaintiff's Response:** Admit.

151. RBL requires its licensees to follow a style guide. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15; Ex. 70, Style Guide).

**Plaintiff's Response:** Admit.

152. RBL's style guide requires a specific color scheme for the 3x3 Rubik's Cube. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15, 145:8-146:21; Ex. 16, Loetz Rep., ¶¶ 32-33; Ex. 70, Style Guide, at RBL_003628).

**Plaintiff's Response:** Admit.

153. RBL's style guidelines require the 3x3 Rubik's Cube to have a black base and uniform, square patches in six colors specified by Pantone color number. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15, 145:8-146:21; Ex. 16, Loetz Rep., ¶ 33; Ex. 74, Geek Took Kit, at BOSTONA_000040; Ex. 46, Pantone Color Scheme; Ex. 47, Using Official Rubik's Cube Colors).

**Plaintiff's Response:** Admit.

154. RBL's style guidelines currently require the 3x3 Rubik's Cube to have the white face opposite the yellow face, the red face opposite the orange face, and the blue face opposite the green face, and that is how the 3x3 Rubik's Cubes are currently marketed and sold. (Ex. 44, Rubik's Colour Orientation; Ex. 61, Kremer Dep. Tr., at 12:9-20, 60:24-61:9, 64:2-7; Ex. 60, Riehl Dep. Tr., at 10:17-20, 68:4-7, 69:13-20, 69:23-70:6; Ex. 16, Loetz Rep., ¶ 32).

**Plaintiff's Response:** Admit.

155. RBL changed the orientation of the colors for the 3x3 Rubik's Cube to have the white face opposite the yellow face because it was aesthetically more pleasing. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 62:3-16).

**Plaintiff's Response:** Admit to the extent "RBL" refers to "RBL or its predecessors." Ex. 61, Kremer Dep. Tr., at 62:3-16.

156. RBL's style guide requires the RUBIK'S name in the center of the white face of the 3x3 Rubik's Cube. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 84:15-20, 85:9-15, 85:25- 86:7, 91:19-20, 91:24-92:2; Ex. 16, Loetz Rep., ¶¶ 32, 34; Ex. 70, Style Guide, at RBL_003627, RBL_003629; Ex. 74, Geek Took Kit, at BOSTONA_000039).

**Plaintiff's Response:** Admit.

157. The RUBIK'S name is currently featured on the center white segment of the 3x3

Rubik's Cube. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:18-20, 267:22-268:7, 269:22-270:10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 76:12-18, 76:25-77:15, 111:10-16, 126:19-22, 141:13-25; Ex. 16, Loetz Rep., ¶ 34; Ex. 62, Gottlieb Dep. Tr., at 22:2-12, 22:22-23:4; Ex. 63, Simms Dep. Tr., at 15:17-20, 129:2-7; Ex. 69, RBL Req. Ad. Resp., No. 27).

**Plaintiff's Response:** Admit.

158. RBL's corporate representative could not think of a time when a RBL licensee or a retailer promoted the 3x3 Rubik's Cube without the Rubik's name. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:18-20, 267:22-268:7, 269:22-270:10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 76:12-18, 76:25-77:15, 111:10-16, 126:19-22).

**Plaintiff's Response:** Admit.

159. The RUBIK'S name is currently featured on the packaging for the 3x3 Rubik's Cube in multiple locations. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:21-24, 265:17- 266:17, 268:8-10, 268:16-23, 269:19-21; Ex. 60, Riehl Dep. Tr., at 10:17-20, 79:16-21, 81:9-14, 81:25-82:4, 111:17-112:2; Ex. 16, Loetz Rep., ¶ 34; Ex. 62, Gottlieb Dep. Tr., at 22:2-12, 22:22-23:4; Ex. 63, Simms Dep. Tr., at 15:17-20, 129:2-7; Ex. 69, RBL Req. Ad. Resp., No. 26).

**Plaintiff's Response:** Admit.

160. RBL's corporate representative could not think of a time when a Rubik's Cube point of sale display that did not use the Rubik's name. (Ex. 60, Riehl Dep. Tr., at 10:17- 20, 138:16-17, 138:21-139:14).

**Plaintiff's Response:** Admit.

### RBL's Promotional Materials

161. RBL's product book states that Mr. Rubik's original invention was a "solid Cube [that]

twisted and turned – and still it did not break or fall apart. With colourful stickers on its

sides, the Cube got scrambled and thus emerged the first 'Rubik's Cube.'" (Ex. 43,

Product Book, at RBL_000245; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 127:2-10).

**Plaintiff's Response:**  Admit.

162. RBL's product book states "Colour is a key aspect of the DNA of Rubik's Cube, with its

multiple squares of red, orange, yellow, green, blue and white." (Ex. 43, Product Book,

at RBL_000246; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 127:2-10).

**Plaintiff's Response:**  Admit.

163. RBL's product book and website state "The Rubik's Cube is the classic colour-

matching puzzle that's a great mental challenge at home or on the move. Twist and turn

the sides of the Cube so that each of the six faces only have one colour." (Ex. 43,

Product Book, at RBL_000260; Ex. 49, New Rubik's 3x3 Cube; *see also* Ex. 60, Riehl

Dep. Tr., at 10:17-20, 127:2-10).

**Plaintiff's Response:**  Admit.

164. RBL's website states "the aim is to twist and turn the Rubik's Cube to return it to its

original state, with every side having one solid colour." (Ex. 49, New Rubik's 3x3

Cube).

**Plaintiff's Response:**  Admit.

165. RBL publishes guides on how to solve the 3x3 Rubik's Cube on its website to download

for free. (Ex. 50, How to solve the 3x3 Rubik's cube?; Ex. 60, Riehl Dep. Tr., at 10:17-

20, 205:20-206:12; Ex. 69, RBL Req. Ad. Resp., No. 13; *see also* Ex. 62, Gottlieb Dep.

Tr., at 95:17-23, 96:4-15 (confirming solving guide from official RBL website)).

**Plaintiff's Response:**  Admit.

166. RBL's Solution Guide for the 3x3 Rubik's Cube provides step-by-step instructions on

how to solve the cube by using the six specific colors of the cube's pieces. (Ex. 51, Solution Guide 3x3 Rubik's Cube; Ex. 60, Riehl Dep. Tr., at 10:17-20, 205:20- 207:6, 208:5-19, 208:24-209:15; Ex. 62, Gottlieb Dep. Tr., at 99:6-20; Ex. 69, RBL Req. Ad. Resp., No. 15; Ex. 16, Loetz Rep., ¶ 62).

**Plaintiff's Response:** Admit.

167. RBL's Solution Guide for the 3x3 Rubik's Cube teaches center pieces are "pieces with one (1) color, there are six (6) center pieces located in the center of each side, center pieces do not move and represent the color of their side." (Ex. 51, Solution Guide 3x3 Rubik's Cube, at RBL_000662).

**Plaintiff's Response:** Admit.

168. RBL's Solution Guide for the 3x3 Rubik's Cube teaches "center piece colours are always opposite each other: white opposite yellow; orange opposite red; green opposite blue." (Ex. 51, Solution Guide 3x3 Rubik's Cube, at RBL_000662).

**Plaintiff's Response:** Admit.

169. RBL's Solution Guide for the 3x3 Rubik's Cube teaches "move the blue/white edge piece to the bottom (D) face, then rotate it on the bottom until it is directly under the blue center piece." (Ex. 51, Solution Guide 3x3 Rubik's Cube, at RBL_000664).

**Plaintiff's Response:** Admit.

170. Entities and individuals other than RBL have created solving guides for 3x3 puzzle cubes that provide step-by-step instructions on how to solve the cube by using the colors of the cube's pieces. (Ex. 71, The Ideal Solution; Ex. 72, Scientific American, Magic Cubology; Ex. 16, Loetz Rep., ¶ 64 (discussing solving guide provided by Ideal).

**Plaintiff's Response:** Admit to the extent the referenced solving guides provide step-by-step instructions on how to specifically solve the Rubik's Cube. The Ideal Solution

was created by RBL's predecessor, Ideal Toy Corporation. Ex. 71, The Ideal Solution at FLAMBEAU002461. The title of the The Ideal Solution guide is, "Rubik's Cube ™ Puzzle – an Introduction and Solution," and shows an image of an officially licensed 3x3 Rubik's Cube. *Id*. at FLAMBEAU002460-FLAMBEAU002461. The Scientific American article recites the history of Mr. Rubik and the Rubik's Cube, and specifically teaches how to solve "the Magic Cube, also known as Rubik's Cube." Ex. 72, Scientific American, Magic Cubology at FLAMBEAU001170. Mr. Rubik had originally named his puzzle cube the "Magic Cube" before Ideal Toy Corporation changed its name to "Rubik's Cube" in 1980. *See* Ex. 75, Kremer Decl. ¶ 3.

171. RBL publishes lesson plans for educators to teach students how to solve a 3x3 puzzle cube by using the six specific colors of the cube's pieces. (E.g., Ex. 52, Lesson 1; Ex. 53, Lesson 2; Ex. 16, Loetz Rep., ¶ 63; Ex. 60, Riehl Dep. Tr., at 10:17-20, 205:20-206:12; Ex. 63, Simms Dep. Tr., at 15:17-20, 141:3-12).

**Plaintiff's Response:** Admit to the extent that "a 3x3 puzzle cube" specifically refers to "the 3x3 Rubik's Cube". Ex. 52, Lesson 1; Ex. 53, Lesson 2.

172. RBL's Lesson 1 Plan explains how to use the 3x3 Rubik's Cube to "[h]ave students identify a specific color face" and "identify the color of the opposite face." (Ex. 52, Lesson 1, at RBL_000344).

**Plaintiff's Response:** Admit.

173. RBL publishes a check list for solving the 3x3 Rubik's Cube. (Ex. 56, Check List for Solving the Rubik's Cube; Ex. 60, Riehl Dep. Tr., at 10:17-20, 214:8-24).

**Plaintiff's Response:** Admit.

174. RBL's check list for solving the 3x3 Rubik's Cube lists stages of solving the cube based on matching the six specific colors of the pieces. (Ex. 56, Check List for Solving the

Rubik's Cube; Ex. 16, Loetz Rep., ¶ 66; Ex. 60, Riehl Dep. Tr., at 10:17-20, 214:8- 24, 215:19-22).

**Plaintiff's Response:** Admit.

175. RBL provides instructions on how to solve the Rubik's Cube by the colors red, green, orange, blue, yellow, and white. (Ex. 63, Simms Dep. Tr., at 15:17-20, 137:5- 138:8).

**Plaintiff's Response:** Admit.

### Flambeau & The Duncan Quick Cube

176. Flambeau's toy division, Duncan Toys Company, is a well-known and respected name in the toy industry. (Ex. 1, Burke Decl., ¶ 5; Ex. 60, Riehl Dep. Tr., at 10:17-20, 260:22-261:8; Ex. 61, Kremer Dep. Tr., at 12:9-20, 91:22-24, 92:11-18; Ex. 62, Gottlieb Dep. Tr., at 11:18-12:6, 12:13-18, 13:2-10; Ex. 63, Simms Dep. Tr., at 15:17-20, 31:25-32:15, 32:25-33:3; Ex. 64, Vollmar Dep. Tr., at 20:7-12).

**Plaintiff's Response:** Admit that Flambeau's toy division, Duncan Toys Company, is a well-known name in the toy industry, which is supported by the cited exhibits. Dispute the remaining statement in SMF ¶ 176 and that the cited exhibits support the remaining statement.

177. Flambeau's DUNCAN mark has been continuously used since 1929. (Ex. 1, Burke Decl., ¶ 6).

**Plaintiff's Response:** Admit that Flambeau makes the representation contained in SMF ¶ 177.

178. Flambeau owns a U.S. Trademark Registration for DUNCAN for toys, games, and playthings. (Ex. 1, Burke Decl., ¶ 6; Ex. 2, U.S. Registration No. 5,920,928).

**Plaintiff's Response:** Admit.

179. Flambeau's DUNCAN-branded Yo-Yo has been sold for decades and has been inducted

into the National Toy Hall of Fame. (Ex. 1, Burke Decl., ¶ 5; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 260:22-261:8; Ex. 62, Gottlieb Dep. Tr., at 11:18-12:6, 12:13-18, 13:2-10).

**Plaintiff's Response:**  Admit.

180. In 2015, Flambeau began looking into developing a DUNCAN-branded 3x3 puzzle cube for speed cubing. (Ex. 1, Burke Decl., ¶ 10).

**Plaintiff's Response:**  Disputed. Flambeau did not develop a Duncan-branded 3x3 puzzle cube for the purpose of targeting speed cubers.  Flambeau sought to develop a Duncan-branded 3x3 puzzle cube that would target the same users and purchasers of its Duncan-branded yo-yos – namely, users aged 8-15 years and purchasers that are parents of users aged 8-15 years.  Ex. 162, 8/16/18 Burke Dep. Tr. at 77:1-15; Ex. 161, Project Summary at Flambeau001091. The head of Duncan and person responsible for developing the puzzle cube, Michael Burke, became interested in a cube product after a Duncan-sponsored yo-yo player named Taka, who helps Duncan with yo-yo demonstrations and product development and also performs yo-yo demonstrations for Yongjun (the current manufacturer of the Duncan Quick Cube), gave Mr. Burke the idea of offering a Duncan-branded 3x3 puzzle cube selected from a Yongjun catalog. *See* Ex. 188, D. Roberts Dep. Tr. at 8:12-14; Ex. 162, 8/16/18 Burke Dep. Tr. at 116:19-119:8. Further, according to an internal Flambeau document with the project name "Quick Cube Puzzle," dated June 15, 2015, Flambeau states that it sought to offer a product with the "same overall look and size as Rubik's Cube." Ex. 161, Project Summary at Flambeau001091. SMF ¶¶ 381-82. Burke 8/16/18 Dep. Tr. 81:3-82:4.

181. Duncan reviewed catalogues from various manufactures, ordered samples, and selected a cube that had features favorable for speed cubing. (Ex. 1, Burke Decl., ¶ 11).

**Plaintiff's Response:**  Disputed. Duncan only reviewed catalogues from Yongjun after receiving the idea to offer a 3x3 puzzle cube manufactured by Yongjun from a Duncan-sponsored yo-yo player named Taka who performs yo-yo demonstrations for Yongjun. *See* Response to SMF ¶ 180.  After Taka recommended that Mr. Burke take a look at Yongjun's product line, Mr. Burke asked Flambeau's China team to send him Yongjun's product offerings so that he could select what type of products he could receive physical samples of. Ex. 162, 8/16/18 Burke Dep. Tr. at 116:19-119:8. Mr. Burke testified as to his awareness of the RUBIK'S CUBE puzzles' introduction in the U.S. "in the early '80's." (Ex. 162, 8/16/18 Burke Dep. Tr. at 29:6-14.) Before or during the process of developing the Duncan Quick Cube, Mr. Burke also researched the Rubik's Cube. *Id*. at 31:23-32:7. Duncan specifically selected a cube with the "Same overall look and size as Rubik's Cube." *See* Response to SMF ¶ 180.

182. Flambeau branded the 3x3 puzzle cube it selected to sell as the "Duncan Quick Cube." (Ex. 1, Burke Decl., ¶ 12).

   **Plaintiff's Response:**  Admit.

183. Flambeau's Duncan Quick Cube design was finalized after consulting with Flambeau's legal counsel. (Ex. 1, Burke Decl., ¶ 15; Ex. 10, Berson Decl., ¶¶6-10).

   **Plaintiff's Response:**  Disputed. The Duncan Quick Cube was not designed by Flambeau. The Duncan Quick Cube was selected from a Yongjun catalog. *See* Responses to SMF ¶¶ 180-181; Ex. 162, 8/16/18 Burke Dep. Tr. at 121:10-122:25. According to an internal Flambeau document with the project name "Quick Cube Puzzle," dated June 15, 2015, Flambeau states the "Vendor already has the design." In that document, Flambeau also states that it sought to offer a product with the "same overall look and size as Rubik's Cube." Ex. 161, Project Summary at Flambeau001091.

SMF ¶¶ 381-82.

184. Duncan's Quick Cube design was adopted in good faith. (Ex. 1, Burke Decl., ¶ 15; *see also* Ex. 10, Berson Decl., ¶¶ 6-10).

**Plaintiff's Response:** Disputed. The opinion provided by Flambeau's legal counsel, Mr. Berson, regarding non-infringement of the Rubik's Cube by Duncan's Quick Cube was not properly founded and of no professional value. Mr. Berson's opinion is not properly founded because his analysis is based on patent law, not trademark law. Mr. Berson was asked at his deposition whether he was "reading the product description in the trademark description as you would a claim limitation in a utility patent." (Berson 89:20-23.) Mr. Berson refused to answer the question "yes" or "no" (Berson 88:24-95:5.) Although refusing to acknowledge it, this is precisely what Mr. Berson did – he assessed the trademark infringement question by applying utility patent law. In addition, Flambeau did not provide Mr. Berson a full and accurate disclosure of the design of the Quick Cube since Mr. Berson did not have a sample or exemplar of the Quick Cube, and had not even been informed of the colors that would be used on the cube. Ex. 173, Berson Dep. Tr. 127:2-128:16. After failing to provide Mr. Berson any information about what colors Duncan would be using for the final Quick Cube design, Duncan specifically chose to adopt a puzzle cube design with the "Same overall look and size as Rubik's Cube." *See* Response to SMF ¶ 181. Mr. Berson's conclusion that "Duncan will avoid [trademark infringement] by offering a white cube" is based solely on his reading the Rubik's Design trademark registration, from which he concluded "require the cube to be black" and nothing else. (Ex. 13 at FLAMBEAU001087-88) Mr. Berson's conclusion is contrary to fundamental principles of trademark law and without an analysis of the *Polaroid* factors. Further, Flambeau intentionally adopted the RUBIK'S

44

Design for the packaging for the Quick Cube. ==In another Flambeau internal document, the "Project Description" reads: "Need packaging for a new cube (like Rubik's Cube)...." Ex. 189 at FLAMBEAU002606.== Flambeau's first purchase order of Quick Cubes contained packaging with a logo that included a puzzle cube with a black grid, as shown below:



Ex. 165, Quick Cube Presentation at FLAMBEAU000893-894; *see also* FLAMBEAU001850; FLAMBEAU001851. ==Duncan did not request Mr. Berson's opinion regarding using a logo with a black grid puzzle cube until after the first purchase order was shipped to Flambeau customers and sold to the public.== Ex. 165 at FLAMBEAU000893; Ex. 12 at FLAMBEAU001085; Ex. 162, 8/16/18 Burke Dep. Tr., 164:25-165:6; 166:4-23; 154:17-24.  SMF ¶¶ 446-66.

185. Flambeau began selling the Duncan Quick Cube in March 2016. (Ex. 1, Burke Decl., ¶¶ 27-28).

**Plaintiff's Response:**  Admit.

186. The Duncan Quick Cube has a white base:



(Ex. 1, Burke Decl., ¶ 13; Ex. 6, Quick Cubes; Ex. 7, Quick Cube 3x3; *see also* Ex. 3, Quick Cube & Packaging).

**Plaintiff's Response:** Admit.

187. The Duncan Quick Cube has bright, fluorescent color patches. (Ex. 1, Burke Decl., ¶ 13; Ex. 3, Quick Cube & Packaging).

**Plaintiff's Response:** Disputed. The Quick Cubes shown in Mr. Burke's Declaration ¶ 13 and Exhibit 3 appear to have standard red and blue colored patches. Further, the white patches shown in Mr. Burke's Declaration ¶ 13 is devoid of color and cannot be characterized as bright or fluorescent.

188. The Duncan Quick Cube's white face is opposite the yellow face. (Ex. 1, Burke Decl., ¶ 13).

**Plaintiff's Response:** Admit.

189. Because the Duncan Quick Cube is for speed cubing, the inner corners of the smaller cube segments and patches are cut away to allow "corner cutting" for faster solving. (Ex. 1, Burke Decl., ¶¶ 14, 18; Ex. 3, Quick Cube & Packaging).

**Plaintiff's Response:** Disputed. The Duncan Quick Cube was not developed for the purpose of speed cubing. *See* Response to ¶ 180. In addition, the inner corners of smaller cube segments do not necessarily allow for faster solving. Flambeau's expert, Lee Loetz, alleges in his report that RBL's Speed Cube (as shown in Figure 24 of his report) also

features rounded inner corners on the smaller segments similar to the Quick Cube. Ex. 16 at ¶ 107. However, the screenshot of RBL's website cited by Mr. Loetz does not promote the Rubik's Speed Cube as being faster due to the inner corners of the smaller cube segments being cut away. Rather, the Rubik's Speed Cube encourages faster solving because the inner mechanism of the Rubik's Speed Cube has a strong and stable core and lubricating tracks. Ex.190 at FLAMBEAU002579-FLAMBEAU002581.

190. Flambeau promotes the Duncan Quick Cube for speedcubing: "The Duncan® Quick Cube ™ features smooth, easy turning design to allow the user to 'corner cut' for superior performance and play." (Ex. 1, Burke Decl., ¶ 18; Ex. 6, Quick Cubes; Ex. 8, Duncan Travel / Brain Games; Ex. 62, Gottlieb Dep. Tr., at 249:19-25).

**Plaintiff's Response:** Admit.

191. Flambeau promotes the Duncan Quick Cube's "corner-cutting design for speed solving." (Ex. 1, Burke Decl., ¶ 18; Ex. 8, Duncan Travel / Brain Games).

**Plaintiff's Response:** Admit.

192. The Duncan Quick Cube is always branded with the DUNCAN house mark on its white face. (Ex. 1, Burke Decl., ¶ 16; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 262:8- 12, 263:18-25, 270:14-25; Ex. 62, Gottlieb Dep. Tr., at 24:22-25:5; Ex. 63, Simms Dep. Tr., at 15:17-20, 128:24-129:1).

**Plaintiff's Response:** Admit that Flambeau makes the representation contained in SMF ¶ 192.

193. The Duncan Quick Cube's packaging contains the DUNCAN house mark in several locations. (Ex. 1, Burke Decl., ¶ 17; Ex. 3, Quick Cube & Packaging; Ex. 4, Duncan Quick Cube 3902QC; Ex. 5, Duncan Quick Cube 3901QC; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 262:22-263:7, 271:2-3, 271:8-9; Ex. 61, Kremer Dep. Tr., at 12:9- 20,

135:14-17; Ex. 62, Gottlieb Dep. Tr., at 24:22-25:5; Ex. 63, Simms Dep. Tr., at 15:17-20, 128:21-23).

**Plaintiff's Response:** Admit that Flambeau makes the representation contained in SMF ¶ 193.

194. Flambeau does not use either the word mark RUBIK's or the word mark RUBIK's CUBE for its Duncan Quick Cube or otherwise. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 270:14-25; Ex. 61, Kremer Dep. Tr., at 12:9-20, 91:10-17).

**Plaintiff's Response:** Admit that Flambeau makes the representation contained in SMF ¶ 194.

## The 3x3 Cube Design[3]

195. RBL's 3x3 Cube Design consists of a black 3x3 puzzle cube having nine square- shaped color patches on each of its six faces, with the color patches on each face being the same when the puzzle is in the start or solved position, and consisting of the colors red, white, blue, green, yellow, and orange. (Dkt. 1, Complaint, ¶¶ 10, 15; Ex. 67, RBL Interrog. Resp., No. 4; Ex. 37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24; Ex. 61, Kremer Dep. Tr., at 12:9-20, 54:14-18, 55:25- 56:15, 111:8-112:3, 112:10-11; Ex. 63, Simms Dep. Tr., at 15:17-20, 40:12-18, 45:21- 46:4).

**Plaintiff's Response:** Admit.

196. RBL's 3x3 Cube Design specifies three rows of three smaller cube segments on each of its six faces. (Dkt. 1, Complaint, ¶¶ 10, 15; Ex. 67, RBL Interrog. Resp., No. 4; Ex. 37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24; Ex. 61, Kremer Dep. Tr., at 12:9-20, 54:14-18, 55:25-56:15; Ex. 68, RBL Interrog.

---

[3] RBL interprets all references to "the 3x3 Cube Design" to mean the "RUBIK'S Design" as defined in its response to SMF ¶ 3.

Resp., No. 24).

**Plaintiff's Response:** Disputed. The RUBIK'S Design trademark registration describes the mark as "consist[ing] of a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow and orange" Ex. 37, '094 Registration.

197. RBL's 3x3 Cube Design specifies square color patches in three primary colors (red, blue, and yellow), two secondary colors (green and orange), and white. (Dkt. 1, Complaint, ¶¶ 10, 15; Ex. 67, RBL Interrog. Resp., No. 4; Ex. 37, '094 Registration; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 311:2-18; Ex. 68, RBL Interrog. Resp., No. 24).

**Plaintiff's Response:** Disputed. The RUBIK'S Design trademark registration describes the mark as "consist[ing] of a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow and orange" Ex. 37, '094 Registration.

### Functionality

198. Lee Loetz has over 23 years of experience in toy design, working at and with leaders in the toy industry like Walt Disney Company and Fischer Price. (Ex. 16, Loetz Rep., ¶¶ 6-8).

**Plaintiff's Response:** Admit that Mr. Loetz's report makes the representation contained in SMF ¶ 198.

199. Mr. Loetz has taught toy design at the college level, including teaching color theory as it applies to toys and other consumer products. (Ex. 16, Loetz Rep., ¶ 10).

**Plaintiff's Response:** Admit that Mr. Loetz's report makes the representation contained in SMF ¶ 199.

200. Mr. Loetz is the named inventor on at least five utility patents claiming inventions

related to toy products and at least one design patent for the design of a toy product. (Ex. 16, Loetz Rep., ¶ 12).

**Plaintiff's Response:** Admit.

201. Mr. Loetz analyzed the 3x3 Cube Design and determined that it is functional in nature. (Ex. 16, Loetz Rep., ¶¶ 51-96).

**Plaintiff's Response:** Disputed. Mr. Loetz is not a lawyer, does not possess any legal degrees, has not taking any courses in trademark law or patent law, and has never given an expert opinion relating to an issue of patent law. Ex. 164, Loetz Dep. Tr.: 14:4-15. Accordingly, Mr. Loetz's opinion on whether the RUBIK'S Design is functional is entirely unfounded. Further, Mr. Loetz's determination regarding functionality is not based on a legal understanding of utilitarian or aesthetic "functionality" as applied by the courts of law or defined by the U.S. Patent and Trademark Office in TMEP §1202. Rather, he uses the term "functional" in the sense of how a toy designer would use it, which he defines as, "what is the function of the product that you're design designing." *Id.* at 169:16-170:2. Further, Mr. Loetz acknowledged that a puzzle cube with any six colors that can be discerned from one another can be scrambled and solved, which is contrary to his determination of functionality of the 3x3 Cube Design in his report. *Id.* at Loetz Dep. Tr. 132:5-17.  SMF ¶¶ 533-37.

202. The 3x3 Cube Design is functional in nature. (Ex. 16, Loetz Rep., ¶¶ 51-96).

**Plaintiff's Response:** Disputed. The Rubik's Design is registered on the Principal Trademark register of the U.S. Patent and Trademark Office, and thus, the mark is *prima facie* valid, which means it is not functional. The '094 Registration is in full force and is incontestable under Section 15 of the Lanham Act. 15 U.S.C. § 1065. *See* Ex. 48, TSDR Printout, at FLAMBEAU000003-4. There is also a plethora of third-party 3x3 puzzle

cubes that are distinct from the appearance of the Rubik's Design. *See* Ex. 181, Gottlieb Rep. ¶ 30; *see e.g.* Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 182, Sponge Bob Cube; Ex. 183, Disney Cube; Ex. 167, Gottlieb Dep. Tr. 170:23-173:24. All of these third-party cubes are used and operate in the same way as the Rubik's Cube puzzle. SMF ¶¶ 468-510. Further, Flambeau's expert Mr. Loetz acknowledged that a puzzle cube with *any* six colors that can be discerned from one another can be scrambled and solved. *See* SMF ¶ 510, Loetz Dep. Tr. 132:5-17. Mr. Loetz also testified that "[t]he specific colors of the stickers most likely would not affect cost." *See* SMF ¶ 511, Loetz Dep. Tr. 132:5-12.

### Intended Use and Purpose

203. The 3x3 Cube Design is essential to the use or purpose of a 3x3 puzzle cube. (Ex. 16, Loetz Rep., ¶¶ 52-67).

    **Plaintiff's Response:** Disputed. *See* Response to SMF ¶ 202.

204. The intended use and purpose of a 3x3 puzzle cube, like the 3x3 Rubik's Cube, is for it to be scrambled and solved. (Ex. 16, Loetz Rep., ¶ 52; Ex. 63, Simms Dep. Tr., at 15:17-20, 34:24-35:4, 38:1-4, 69:22-70:3; Ex. 68, RBL Interrog. Resp., No. 23).

    **Plaintiff's Response:** Admit that a purpose of a 3x3 puzzle cube, like the 3x3 Rubik's Cube, is for it to be scrambled and solved, but dispute that it is the only use and purpose of a 3x3 puzzle cube. Ex. 167, Gottlieb Dep. Tr. at 161:23-162:12.

205. The play value of the 3x3 Rubik's Cube is to scramble the smaller colored segments and then solve the puzzle by matching the like-colored segments on each side of the larger cube. (Ex. 16, Loetz Rep., ¶¶ 53-55; Ex. 63, Simms Dep. Tr., at 15:17-20, 142:7-18).

    **Plaintiff's Response:** Admit.

206. The smaller cube segments of the 3x3 Cube Design allow a 3x3 puzzle cube to be

twisted and turned. (Ex. 16, Loetz Rep., ¶¶ 56-60).

**Plaintiff's Response:** Disputed. The 3x3 Cube Design (defined by RBL as RUBIK'S Design in SMF ¶ 3) covers the trade dress of the 3x3 Rubik's Cube and does not participate in allowing a 3x3 puzzle cube to be twisted and turned. Smaller cube segments of a 3x3 puzzle cube can be twisted and turned, regardless of the design. *See* SMF ¶¶ 468-510.

207. The smaller cube segments of the 3x3 Cube Design allow a 3x3 puzzle cube to be scrambled and solved. (Ex. 16, Loetz Rep., ¶¶ 56-60).

**Plaintiff's Response:** Disputed. The smaller cube segments of a 3x3 puzzle cube can be scrambled and solved, regardless of the design. *See* SMF ¶¶ 468-510.

208. Without separate smaller segments, a 3x3 puzzle cube could not be twisted or turned. (Ex. 16, Loetz Rep., ¶¶ 57-58).

**Plaintiff's Response:** Admit.

209. Without separate smaller segments, a 3x3 puzzle cube could not be scrambled and solved. (Ex. 16, Loetz Rep., ¶¶ 57-58).

**Plaintiff's Response:** Admit.

210. The color patches of the 3x3 Cube Design allow a 3x3 puzzle cube to be scrambled and solved. (Ex. 16, Loetz Rep., ¶¶ 61-66; Ex. 60, Riehl Dep. Tr., at 10:17-20, 73:14-19, 73:24-74:9, 74:15-17, 76:5-10, 218:18-22, 219:25-220:6).

**Plaintiff's Response:** Disputed. The color patches are a part of the trade dress of the 3x3 Rubik's Cube and do not participate in allowing a 3x3 puzzle cube to be scrambled and solved. A 3x3 puzzle cube can be scrambled and solved with any variety of colors or designs of the patches on the smaller cube segments. *See* SMF ¶¶ 468-510. Further, Flambeau's expert Mr. Loetz acknowledged that a puzzle cube with ***any*** six colors that

52

can be discerned from one another can be scrambled and solved. *See* SMF ¶ 510. Loetz

Dep. Tr. 132:5-17.

211. An all-black 3x3 puzzle cube could not be scrambled or solved. (Ex. 60, Riehl Dep. Tr.,

at 10:17-20, 215:23-216:5).

**Plaintiff's Response:**  Disputed. The Rubik's Mirror Block puzzle cube is a 3x3 cube

that has one single color, silver, for all six faces of the cube and can be scrambled and

solved. *See* Ex. 191, Rubik's Mirror Block. Flambeau also produced two puzzle cubes

whereby each cube also has only one single color, silver or gold, for all six faces of the

cube and can be scrambled and solved. *See* Ex. 184. Similarly, the same type of 3x3

cube can be created in an all-black color and be scrambled and solved.

### Quality of the Cube – Color v. Other Indicia

212. The 3x3 Cube Design improves the quality of a 3x3 puzzle cube. (Ex. 16, Loetz Rep., ¶¶

72-96).

**Plaintiff's Response:**  Disputed. The Rubik's Design has nothing to do with the quality

of a 3x3 puzzle cube. There is a plethora of third-party 3x3 puzzle cubes that are distinct

from the appearance of the Rubik's Design. *See* Ex. 181, Gottlieb Rep. ¶ 30; *see e.g.*

Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 182, Sponge Bob Cube; Ex. 183,

Disney Cube; Ex. 167, Gottlieb Dep. Tr. 170:23-173:24. All of these third-party cubes

are used and operate in the same way as the Rubik's Cube puzzle. SMF ¶¶ 468-510. Mr.

Loetz alleges in his report that "[t]he [Rubik's Design] uses bright, contrasting colors to

allow for easier and faster solving". Ex. 16, Loetz Rep., ¶ 73. However, the Rubik's

Speed Cube has the exact same Rubik's Design as the classic 3x3 Rubik's Cube, but is

faster because the inner mechanism of the Rubik's Speed Cube has a strong and stable

core and lubricating tracks. Ex.190 at FLAMBEAU002579-FLAMBEAU002581; *see*

53

*also* Response to SMF ¶ 189.

213. Color patches provide a simple and easy way to gauge whether a 3x3 puzzle cube is solved. (Ex. 16, Loetz Rep., ¶¶ 67-68; Ex. 60, Riehl Dep. Tr., at 10:17-20, 73:14-19, 73:24-74:9, 74:15-17, 76:5-10).

**Plaintiff's Response:** Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 213. The citations only support the contention that the color patches on the 3x3 Rubik's Cube provide a way to gauge whether the 3x3 Rubik's Cube is solved. 3x3 puzzle cubes that do not have color patches use other indicia to gauge whether the 3x3 puzzle cube is solved. *See e.g.*, SMF ¶¶ 468-510; Response to SMF ¶ 211.

214. Color is more quickly and easily discerned than non-color indicia like numbers and shapes. (Ex. 16, Loetz Rep., ¶¶ 67, 88-92; *see also* Ex. 60, Riehl Dep. Tr., at 10:17- 20, 119:3-9; *see also* Ex. 62, Gottlieb Dep. Tr., at 168:11-18, 169:2-8, 169:23-170:1, 170:8-12, 170:19-22).

**Plaintiff's Response:** Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 214. The articles cited by Mr. Loetz do not support the contention that color is more quickly and easily discernable than non-color indicia, but simply discuss the influence of color on memory. "The common belief is that speedcubers have incredible memory capacity… [h]owever, th[is] [is] not true. Learning algorithms, which can greatly help to increase your speed when solving the cube, is all about muscle memory." Ex. 192 at p. 2. A speedcuber describes this use of algorithms and "tactile memory" to solve a Rubik's Cube and his experiences at the 2013 Rubik's Cube World Championship in the article, "*Cracking The Cube, Going Slow To Go Fast and Other Unexpected Turns In The World Of Competitive Rubik's Cube Solving*." Exhibit 193,

54

FLAMBEAU002117 at FLAMBEAU002212-FLAMBEAU002213.

> In practice, of course, learning algorithms is much harder. It takes a certain tactile memory, not unlike that required to memorize scales on a musical instrument. When I asked cubers at competitions, like the World Championship, if they wouldn't mind demonstrating a particular algorithm, they sometimes had trouble; the moves had bypassed their conscious thinking, and entered the murky world of knee-jerk reflexes.

*Id.* As described by the speedcuber, learning to solve the Rubik's Cube and learning to solve it fast has nothing to do with the colors of the Rubik's Cube or Rubik's Design – it is about learning the algorithms associated with the indicia provided by the puzzle cube. Accordingly, learning algorithms to solve a 3x3 puzzle cube and muscle memory has nothing to do with the indicia used for the 3x3 puzzle cube – any type of indicia, e.g. numbers and shapes, can be used to learn algorithms and promote muscle memory.

215. Matching segments of a puzzle cube by numbers or shapes is not as intuitive as matching segments by color. (Ex. 16, Loetz Rep., ¶¶ 93-94; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20, 119:3-9; *see also* Ex. 62, Gottlieb Dep. Tr., at 130:8-14 (using letters instead of colors "changes the play pattern").

**Plaintiff's Response:** Disputed. *See* Response to SMF ¶ 214.

216. A cube with different numbers on its smaller cube segments may not require matching, but ordering. (Ex. 16, Loetz Rep., ¶ 93).

**Plaintiff's Response:** Disputed. *See* Response to SMF ¶ 214.

217. Mr. Rubik said that he used color on his puzzle cube because "it was necessary to … identify the elements" and color is "very simple and … very easy to distinguish." (Ex. 16, Loetz Rep., ¶ 68).

**Plaintiff's Response:** Admit.

218. Mr. Rubik said that color was "the most simple way to mark the solved state" of his

puzzle cube. (Ex. 16, Loetz Rep., ¶ 70; Ex. 62, Gottlieb Dep. Tr., at 80:19-82:10; Ex. 57, Ruwix).

**Plaintiff's Response:** Admit.

## Quality of the Cube – Color Options

219. Color is a spectrum that can be represented by the color wheel. (Ex. 16, Loetz Rep., ¶ 74).

 **Plaintiff's Response:** Admit.

220. There are only three primary colors: red, yellow, and blue. (Ex. 16, Loetz Rep., ¶ 75).

 **Plaintiff's Response:** Admit.

221. Primary colors cannot be mixed or formed by any combination of other colors. (Ex. 16, Loetz Rep., ¶ 75).

 **Plaintiff's Response:** Admit.

222. There are only three secondary colors: green, orange, and purple. (Ex. 16, Loetz Rep., ¶ 76).

 **Plaintiff's Response:** Admit.

223. Each secondary color is derived by mixing two primary colors: blue and yellow make green; yellow and red make orange; red and blue make purple. (Ex. 16, Loetz Rep., ¶ 76).

 **Plaintiff's Response:** Admit.

224. There are twelve tertiary colors that are derived by mixing a primary and secondary color. (Ex. 16, Loetz Rep., ¶ 77).

 **Plaintiff's Response:** Admit.

225. In the toy-making context, primary and secondary colors are preferred over gray, white, and brown. (Ex. 62, Gottlieb Dep. Tr., at 217:1-11, 223:24-224:2, 225:1-226:5).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statements in SMF ¶ 225. Mr. Gottlieb's testimony supports his contention that,

> The toy industry's focus is not on using contrasting colors, but on using primary colors for young children, up to approximately four years old. While it is believed in the industry that children in that age group are particularly attracted to primary colors, this belief is not held for children approximately aged five years and older. Further, there are many toys that are successfully marketed and sold to older children that do not have contrasting colors or do not focus on primary colors.

Ex. 181, Gottlieb Rep, at ¶¶ 21-23.

226. Analogous colors are any three adjacent colors on a twelve-part color wheel. (Ex. 16, Loetz Rep., ¶ 78).

**Plaintiff's Response:** Admit.

227. Analogous colors are perceived as similar shades and thus have minimum contrast. (Ex. 16, Loetz Rep., ¶ 78).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statements in SMF ¶ 227. In particular, the citation in Mr. Loetz's Report to "Color Matters, Basic Color Theory" does not support Flambeau's statements in SMF ¶ 227.

228. Complementary colors are those which are directly opposite on the color wheel. (Ex. 16, Loetz Rep., ¶ 79).

**Plaintiff's Response:** Admit.

229. Complementary colors are perceived as opposite shades and thus have maximum contrast. (Ex. 16, Loetz Rep., ¶ 79).

**Plaintiff's Response:** Admit.

230. Colors with maximum contrast are those that fall opposite of each other on the color wheel (e.g., red and green, blue and orange, and yellow and purple). (Ex. 16, Loetz Rep., ¶¶ 79, 83; *see also* Ex. 62, Gottlieb Dep. Tr., at 173:25-174:3, 197:20-23, 198:14- 17,

57

198:20-22, 200:11-24, 201:17-25).

**Plaintiff's Response:** Admit.

231. There are eight maximum contrasting colors or shades: the shades of the six primary and secondary colors of the color wheel, plus white and black. (Ex. 16, Loetz Rep., ¶ 83).

**Plaintiff's Response:** Admit.

232. It is well-known and accepted in the industry that children respond better to contrasting colors than to analogous colors. (Ex. 16, Loetz Rep., ¶ 80).

**Plaintiff's Response:** Disputed. *See* Response to SMF ¶ 225.

233. In the puzzle cube context, segments bearing six different colors with maximum contrast tell the user to match segments of the same color on each of the six sides. (Ex. 16, Loetz Rep., ¶ 82).

**Plaintiff's Response:** Disputed. *See* Responses to SMF ¶¶ 213-214; Ex. 167, Gottlieb Dep. Tr. 170:23-173:11.

234. In the puzzle cube context, colors with maximum contrast allow the user to match segments of the same color *easily* because the user does not need to focus on discerning the colors and can focus exclusively on matching segments of the same color. (Ex. 16, Loetz Rep., ¶ 82).

**Plaintiff's Response:** Disputed. *See* Responses to SMF ¶¶ 213-214; Ex. 167, Gottlieb Dep. Tr. 170:23-173:11.

235. In the puzzle cube context, colors with maximum contrast allow the user to match segments of the same color *quickly* because the user does not need to focus on discerning the colors and can focus exclusively on matching segments of the same color. (Ex. 16, Loetz Rep., ¶ 82).

**Plaintiff's Response:** Disputed. *See* Responses to SMF ¶¶ 213-214; Ex. 167, Gottlieb

58

Dep. Tr. 170:23-173:11.

236. Puzzle cubes that use maximum contrasting colors enable the solver to more quickly and easily distinguish the cube segments and match the segments by color than puzzle cubes that use less contrasting colors. (Ex. 16, Loetz Rep., ¶¶ 80-82, 157; Ex. 62, Gottlieb Dep. Tr., at 201:17-203:23, 204:8-205:12, 207:22-208:1, 209:9-22, 210:1-13; Exs. 54-55 (color wheels marked at Mr. Gottlieb's deposition)).

**Plaintiff's Response:**   Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 236. *See* Response to SMF ¶ 214; Ex. 167, Gottlieb Dep. Tr. 170:23-173:11.

237. A solver would need to take more time and mental energy to distinguish the cube segments of a 3x3 puzzle cube that used less contrasting colors than to distinguish the cube segments of a 3x3 puzzle cube that used maximum contrasting colors. (Ex. 16, Loetz Rep., ¶¶ 80-82; Ex. 62, Gottlieb Dep. Tr., at 201:17-203:23, 204:8-205:12, 207:22- 208:1, 209:9-22, 210:1-13, 301:10-17; Exs. 54-55 (color wheels marked at Mr. Gottlieb's deposition)).

**Plaintiff's Response:**  Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 237. *See* Response to SMF ¶ 214.

238. A solver would need to take more time and mental energy to distinguish the cube segments of a 3x3 puzzle cube that used six shades of orange than to distinguish the cube segments of a 3x3 puzzle cube that used maximum contrasting colors. (Ex. 16, Loetz Rep., ¶¶ 80-82; Ex. 62, Gottlieb Dep. Tr., at 201:17-203:23, 204:8-205:12, 207:22-208:1, 209:9-22, 210:1-13, 301:10-17; Exs. 54-55 (color wheels marked at Mr. Gottlieb's deposition)).

**Plaintiff's Response:**  Disputed. The citations to the exhibits do not support Flambeau's

statements in SMF ¶ 238. *See* Response to SMF ¶ 214; Ex. 167, Gottlieb Dep. Tr. 170:23-173:11.

239. Maximum contrasting colors on a puzzle cube are relevant to speed cubers because speed cubers are trying to go fastest. (Ex. 62, Gottlieb Dep. Tr., at 240:5-12).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statements in SMF ¶ 239. *See* Response to SMF ¶ 214; Ex. 167, Gottlieb Dep. Tr. 170:23-173:11.

240. The 3x3 Cube Design uses seven of the eight maximum contrasting colors or shades: black for its base and red, white, blue, green, yellow, and orange for its color patches. (Ex. 16, Loetz Rep., ¶¶ 73-79; Ex. 60, Riehl Dep. Tr., at 10:17-20, 311:2-18).

**Plaintiff's Response:** Admit.

### Utility Patents on the 3x3 Cube Design

241. Mr. Loetz charted the features of the 3x3 Cube Design against those features disclosed in twelve different utility patents covering puzzle cubes and found the utility patents disclosed all of the 3x3 Cube Design's features. (Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5; *see also* Ex. 62, Gottlieb Dep. Tr., at 83:24-84:4 (Mr. Gottlieb testified he is "really not knowledgeable in any area of the patent of the Rubik's Cube"); *see also id.* at 84:14-16 (did not review any patents), 84:20-85:6 (did not find patents "germane"), 85:7-11)).

**Plaintiff's Response:** Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 241. The sole basis for a foundation for Mr. Loetz's opinion is that Mr. Loetz "holds numerous utility patents." (Def's Mem. at p.12.) Mr. Loetz is not an attorney, much less a patent attorney, nor does he have any proffered expertise in U.S. patent law. *See* SMF ¶ 533. He is therefore unqualified to render opinions or analyses on

utility patent claims and disclosures. *Id.* Further, none of the utility patents cited disclose the Rubik's Design. *See* SMF ¶¶ 515-532. More specifically, the cited utility patents cited do not claim any colors for the six faces of the puzzle cube, do not claim a black colored cube, and do not claim a black grid design. *Id.*

242. Utility patents disclose puzzle cubes comprised of smaller cube segments so that the puzzle can be twisted and turned. (Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5).

**Plaintiff's Response:**  Admit, but dispute the referenced Appendix all disclose puzzle cubes.  *See e.g.* Fig. 37 shows a 2x3 puzzle. Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5.

243. Utility patents disclose comprising each face of a puzzle cube of three rows of three smaller cube segments. (Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5).

**Plaintiff's Response:**  Admit, but dispute the referenced Appendix all disclose puzzle cube of three rows of three smaller cube segments.  *See e.g.* Fig. 27 shows a 2x2 puzzle with each face of a puzzle cube of two rows of two smaller cube segments and 37 shows a 2x3 puzzle with four faces of the puzzle cube having three rows of two smaller cube segments. Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5.

244. Utility patents disclose using color patches to scramble and solve a puzzle cube. (Ex. 16, Loetz Rep., ¶¶ 118-148 & Appendix 5).

**Plaintiff's Response:**  Disputed. *See* Response to SMF ¶ 241.

245. RBL is aware of at least one U.S. Patent covering Mr. Rubik's puzzle cube invention. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 107:23-108:2).

**Plaintiff's Response:**  Admit to the extent "Mr. Rubik's puzzle cube invention" refers to the internal mechanism of the 2x2 cube puzzle claimed in the '116 Rubik Patent, which does not include the Rubik's Design. Ex. 23, '116 Rubik Patent, at

FLAMBEAU000667; *see also* Response to SMF ¶ 119.

246. RBL is aware of at least one Hungarian Patent covering Mr. Rubik's puzzle cube invention. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 187:23-188:4).

**Plaintiff's Response:** Admit to the extent "Mr. Rubik's puzzle cube invention" refers to the internal mechanism of the 3x3 cube puzzle claimed in the '062 Rubik Patent, which does not include the Rubik's Design. Ex. 20, '062 Rubik Patent; *see also* Response to SMF ¶¶ 521-24.

247. RBL is aware of a Japanese Patent on a 3x3 puzzle cube. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 108:23-109:14).

**Plaintiff's Response:** Admit.

248. RBL advertised that its 3x3 Rubik's Cube was patented. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 95:15-18).

**Plaintiff's Response:** Admit to the extent "patented" refers to the internal mechanism of the 3x3 Rubik's Cube was patented and not the Rubik's design. *See* Response to Response to SMF ¶ 246.

249. RBL removed references to the 3x3 Rubik's Cube being patented because the patent rights are no longer in force. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 96:14-19, 96:25-97:6).

**Plaintiff's Response:** Admit to the extent "patented" and "patent rights" refers to the internal mechanism of the 3x3 Rubik's Cube was patented and not the Rubik's design. *See* Response to Response to SMF ¶¶ 246, 249.

## **Lack of Alternatives to the 3x3 Cube Design**

250. A cube is more easily handled and manipulated than other shapes, like a sphere or triangle. (Ex. 16, Loetz Rep., ¶¶ 60, 153)

**Plaintiff's Response:** Admit.

251. 2x2 puzzle cubes are easier to solve than 3x3 puzzle cubes. (Ex. 16, Loetz Rep., ¶ 154).

**Plaintiff's Response:** Admit.

252. 4x4 puzzle cubes are harder to solve than 3x3 puzzle cubes. (Ex. 16, Loetz Rep., ¶ 154).

**Plaintiff's Response:** Admit.

253. The 3x3 puzzle cube presents a challenge, but an achievable one for average individuals. (Ex. 16, Loetz Rep., ¶ 155).

**Plaintiff's Response:** Admit.

254. To achieve maximum contrast with colors, a puzzle cube maker is limited to eight options: shades of the three primary colors, shades of the three secondary colors, white, and black. (Ex. 16, Loetz Rep., ¶ 159).

**Plaintiff's Response:** Disputed. *See* Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 181, Gottlieb Rep. at ¶¶ 19-23; Ex. 167, Gottlieb Dep. Tr. 170:23-173:24; *see also* Responses to ¶¶ 213, 214.

255. Because white provides the best background for a logo, puzzle cube makers prefer to make one side of the cube white. (Ex. 16, Loetz Rep., ¶ 160).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 256. More specifically, the cited mathematical equation in Mr. Loetz's report does not support Mr. Loetz's contention in ¶ 160 of his report. *See* Ex. 16, Loetz Rep., ¶ 160.

256. The human eye can more easily detect differences in green hues than differences in blue or purple hues. (Ex. 16, Loetz Rep., ¶ 84).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 257. More specifically, the cited article is unavailable, and Mr.

63

Loetz is not an expert in the retinal neurocircuitry field he is opining on.

257. The human eye can more easily detect differences in red hues than differences in blue or purple hues. (Ex. 16, Loetz Rep., ¶ 84).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 258. More specifically, the cited article is unavailable, and Mr. Loetz is not an expert in the retinal neurocircuitry field he is opining on.

258. Because blue and purple are comparatively more difficult to distinguish from one another than other colors, puzzle cube makers prefer to use only one of those two colors. (Ex. 16, Loetz Rep., ¶ 161).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 259. More specifically, Mr. Loetz provides no support for his contentions in his report and is not an expert in the retinal neurocircuitry field he is opining on.

259. With one side fixed on white, and another side fixed on either blue or purple, there are only five different combinations of maximum contrasting colors for the remaining four sides of a puzzle cube. (Ex. 16, Loetz Rep., ¶ 161).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 259. More specifically, Mr. Loetz provides no support for his contentions in his report. There are numerous color combinations that could be used for a 3x3 puzzle cube that do not infringe on the Rubik's Design. *See* Ex. 181, Gottlieb Rep., at ¶¶ 19-23; Ex. 167, Gottlieb Dep. Tr. 170:23-173:24. RBL's toy expert, Richard Gottlieb, confirmed that, "All that's required for a user to operate and solve a 3x3 puzzle cube is for the puzzle cube to have any six colors that are contrasting and easily distinguished from one another. As long as six easily distinguishable colors are used, the

3x3 puzzle cube will operate the precisely the same manner as a 3x3 puzzle cube that contains the same six colors as the RUBIK'S CUBE puzzle." Mr. Gottlieb further states that, "A 3x3 puzzle cube can have six contrasting colors, that are not primary and secondary colors, and effectively operate in the same manner as a puzzle cube with primary and secondary colors." Ex. 181, Gottlieb Rep. at ¶ 19.

260. There are more than five puzzle cube makers and sellers in the industry. (Ex. 16, Loetz Rep., ¶ 163).

**Plaintiff's Response:** Admit.

261. The number of possible 3x3 puzzle cube designs with maximum contrasting colors are fewer than the number of entities that wish to manufacture and/or sell puzzle cubes. (Ex. 16, Loetz Rep., ¶ 164).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 261. *See* Response to SMF ¶ 259.

262. Colors appear more brilliantly when they are shown on a black background. (Ex. 16, Loetz Rep., ¶ 87).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 262. More specifically, the article cited by Mr. Loetz only mentions the color red shown on a black background and does not make a generalization about colors shown on a black background. Ex. 16, Loetz Rep., ¶ 87.

263. Mr. Gottlieb did not know whether his proposed alternative designs could be solved as easily as a cube with the Rubik's Cube Design. (Ex. 62, Gottlieb Dep. Tr., at 284:13-285:2).

**Plaintiff's Response:** Disputed. Mr. Gottlieb was asked whether his proposed alternative designs could be solved as quickly, not easily, as a cube with the Rubik's

Cube Design.

264. Mr. Gottlieb did not know the cost of manufacturing any of his proposed alternative designs. (Ex. 62, Gottlieb Dep. Tr., at 286:6-10).

**Plaintiff's Response:**  Admit.

265. Mr. Gottlieb did not know whether his proposed alternative designs could be used at WCA competitions. (Ex. 62, Gottlieb Dep. Tr., at 288:4-12).

**Plaintiff's Response:**  Admit.

266. Mr. Gottlieb had "no comment" on whether RBL considered all 3x3 puzzle cubes, like his alternative designs, infringing. (Ex. 62, Gottlieb Dep. Tr., at 291:12-22).

**Plaintiff's Response:**  Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 266. More specifically, Flambeau misrepresents Mr. Gottlieb's testimony. Mr. Gottlieb was asked the hypothetical, "If RBL claims all 3x3 puzzle cubes are infringing… Would it call into question whether these [alternative design] cubes that you've put in the chart on pages 11 and 12 report are actually alternative designs?" Mr. Gottlieb answered, "I have no comment on that… because it gets into a legal area and I don't want to go there, it's not part of my report." (Ex. 62, Gottlieb Dep. Tr., at 291:12-292:1).

**Manufacturing 3x3 Puzzle Cubes**

267. The initial manufacturing of the 3x3 Rubik's Cube created the 3x3 Cube Design at-issue in this case. (Ex. 16, Loetz Rep., ¶¶ 168-169).

**Plaintiff's Response:**  Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 267. More specifically, Mr. Loetz cannot possibly know and opine on the reasons for Mr. Rubik's design choices when Mr. Rubik invented the Rubik's Cube puzzle in 1974. (*See* Kremer Decl. ¶ 3).

268. Initially, the base of the 3x3 Rubik's Cube was manufactured from black plastic. (Ex. 16, Loetz Rep., ¶ 168).

**Plaintiff's Response:** Admit to the extent "manufactured" refers to manufacture in the U.S. *See* Ex. 78, RBL_002974 at RBL_002993.

269. Initially, the color patches of the 3x3 Rubik's Cube were applied with colored stickers. (Ex. 16, Loetz Rep., ¶ 168; Ex. 60, Riehl Dep. Tr., at 10:17-20, 172:22-24, 178:2-8, 178:19-179:2).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 269. More specifically, Mr. Loetz cannot possibly know and opine on how the original Rubik's Cube was manufactured. In fact, at one point, in 1980, the predecessor the to the 3x3 Rubik's Cube did not have colored stickers. The Hungarian toy manufacturer of the original 3x3 Rubik's Cube sold puzzle Rubik's Cubes with colors printed directly onto the black plastic base. *See* Ex. 78 RBL_002974 at RBL_002986.

270. When the colored stickers were applied to the 3x3 Rubik's Cube, they did not extend to the edges of the smaller cube segments for practical reasons, creating a black grid. (Ex. 16, Loetz Rep., ¶ 168; Ex. 63, Simms Dep. Tr., at 15:17-20, 87:2-16).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 270. *See* Response to SMF ¶ 267.

271. The 3x3 Rubik's Cube is no longer stickered and now uses colored tiles. (Ex. 16, Loetz Rep., ¶ 168; Ex. 60, Riehl Dep. Tr., at 10:17-20, 172:22-24, 178:2-8, 178:19- 179:2).

**Plaintiff's Response:** Disputed. RBL currently sells a 3x3 "Retro Rubik's Cube" that has stickers. Ex. 154.

272. Manufacturing the base of a puzzle cube from a single color of plastic generates

efficiencies in sourcing material, molding parts, and assembly. (Ex. 16, Loetz Rep., ¶¶ 166-167; Ex. 61, Kremer Dep. Tr., at 12:9-20, 253:24-6, 254:9-12; *see also* Ex. 62, Gottleib Dep. Tr., at 226:12-16, 228:1-5; Ex. 65, Cipolla Dep. Tr., at 74:6-20, 77:22-25, 81:2-8).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 272. For example, Flambeau's expert, Mark Cipolla, testified that different types of plastics are used for toy products depending on the application. *See* Ex. 65, Cipolla Dep. Tr., at 52:22-25. However, he did not know what types of plastic are used for the base of 3x3 puzzle cubes and did not consider whether different types of plastic could have an effect on manufacturing costs and/or efficiencies. *See id*., at 69:15-19; 82:10-17.

273. Black plastic is generally more readily available and cheaper than other colored plastic. (Ex. 65, Cipolla Dep. Tr., at 88:1-91:3).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 273. For example, Flambeau's expert, Mark Cipolla, testified that different types of plastics are used for toy products depending on the application. *See* Ex. 65, Cipolla Dep. Tr., at 52:22-25. However, he did not know what types of plastic are used for the base of 3x3 puzzle cubes and did not consider whether different types of plastic could have an effect on manufacturing costs and/or efficiencies. *See id*., at 69:15-19; 82:10-17. Despite his testimony, Mr. Cipolla only considered one type of plastic in supporting his contention described that black plastic is generally more readily available and cheaper than other colored plastic. *See id*., at 91:1-19.

274. Applying color to a puzzle cube with stickers is a cost-effective means of creating the external indicia of the puzzle. (Ex. 65, Cipolla Dep. Tr., at 76:9-77:9, 77:22-25, 94:16-

22, 95:14-96:8).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 274. Mr. Cipolla testified he does not have expertise in the design and manufacture of stickers. Ex. 65, Cipolla Dep. Tr., at 80:18-20. Mr. Cipolla also testified that different stickers have different costs and did not perform a comparison of different sticker costs to applying color to a puzzle cube without stickers. *See id*., at 78:1-80:20; 97:14-98:9.

### Hindering Competition

275. RBL's corporate representative testified that RBL believes *every* 3x3 puzzle cube infringes RBL's trademark rights—i.e., "is a Rubik's knock-off"—it is only a matter of degree. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 289:19-22; *see also* Ex. 61, Kremer Dep. Tr., at 148:22-149:8; Ex. 62, Gottlieb Dep. Tr., at 291:12-22).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 275. Ms. Riehl testified that not all 3x3 puzzle cube competitors of the Rubik's Cube are knock offs, but competitors that have 3x3 puzzle designs that are too close to the Rubik's Design, such as the Duncan Quick Cube, are considered knock offs. Ex. 60, Riehl Dep. Tr., at 290:2-10. Mr. Kremer's testimony referred to protection of the grid feature of the Rubik's Design in the EU. Ex. 61, Kremer Dep. Tr., at 148:22-149:11. Mr. Gottlieb is not a corporate representative, but nonetheless provided several examples of 3x3 puzzle cubes that compete fairly with the Rubik's Cube and do not infringe the Rubik's Design. Ex. 181, Gottlieb Rep. at ¶ 30.

276. The 3x3 Cube Design is just one of a limited set of competitively viable 3x3 puzzle cube designs. (Ex. 16, Loetz Rep., ¶¶ 152-164).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's

statement in SMF ¶ 276. There is a plethora of third-party 3x3 puzzle cubes that are distinct from the appearance of the Rubik's Design. *See* Exs. 175-180 (collection of 3x3 puzzle cubes); Ex. 181, Gottlieb Rep., at ¶ 30; Ex. 167, Gottlieb Dep. Tr. 170:23-173:24; *see* SMF ¶¶ 468-510. All of these third-party cubes are used and operate in the same way as the Rubik's Cube puzzle. SMF at ¶¶ 468-510. Further, Flambeau's expert Mr. Loetz acknowledged that a puzzle cube with *any* six colors that can be discerned from one another can be scrambled and solved. *See* SMF ¶ 510, Loetz Dep. Tr. 132:5-17.

277. Cubes with numbers and/or shapes as their external indicial are not eligible to be used at WCA competitions. (Ex. 16, Loetz Rep., ¶ 158).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 277. For example, the WCA regulations allow textured puzzles and puzzles with colored parts with patterns. *See* Ex. 9 at FLAMBEAU002488.

278. If a puzzle cube maker's 3x3 puzzle cube was not eligible to be used at WCA competitions, the puzzle cube marker would not have the opportunity to promote its products and brand and goodwill throughout the world. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 241:13-17).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 278. Mr. Kremer's testimony relates to RBL sponsorship of WCA competitions.

279. Granting RBL a monopoly over the 3x3 Cube Design would put puzzle cube makers at a disadvantage and hinder competition in the industry. (Ex. 16, Loetz Rep., ¶¶ 108-109).

**Plaintiff's Response:** Disputed. *See* Response to SMF ¶ 276.

## **European Union Decisions**

280. In *Simba Toys GmbH & Co. KG v. Seven Towns Ltd.*, the Court of Justice of the

European Union (First Chamber) considered whether the following "[t]hree-dimensional

mark in the shape of a cube with surfaces having a grid structure" was invalid as

functional:



(Ex. 59, Judgment of the Court, ¶¶ 1, 7-10; *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20,

83:4-23).

**Plaintiff's Response:** Disputed. The Court of Justice of the European Union (First

Chamber) considered whether the proper legal standard for functionality was applied.

Ex. 59, Judgment of the Court, ¶¶ 14-18.

281. In a November 10, 2016 Judgment, the Court of Justice of the European Union (First

Chamber) entered final judgment that the "[t]45ere-dimensional mark in the shape of a

cube with surfaces having a grid structure" was not protectable as a trademark because it

was functional. (Ex. 59, Judgment of the Court, ¶¶ 33-58).

**Plaintiff's Response:**  Disputed. The Court of Justice of the European Union (First

Chamber) found that the General Court infringed Article 7(1)(e)(ii) of Regulation No

40/94 and set aside the judgement of the General Court and annulled the decision of the

Second Board of Appeal of the European Union Intellectual Property Office. Ex. 59,

Judgment of the Court, at FLAMBEAU000559.

282. In *Rubik's Brand Ltd. V. Simba Toys GmbH & Co. KG*, the European General Court

71

(Eighth Chamber) considered whether the following "[t]hree-dimensional mark in the shape of a cube with surfaces having a grid structure" was invalid as functional:



(Ex. 45, Judgment of the General Court, ¶¶ 1-2).

**Plaintiff's Response:**  Admit to the extent "functional" refers to the definition of "functional" under the laws of the European Union.

283. The European General Court reasoned the "black lines actually represent a physical separation between the different small cubes, allowing a player to rotate each row of small cubes independently of each other in order to gather those small cubes, in the desired colour scheme, on the cube's six faces. Such a physical separation is necessary to rotate, vertically and horizontally, the different rows of small cubes by means of a mechanism located in the centre of the cube. Without such a physical separation,  the cube would be nothing more than a solid block in which none of the individual elements could move independently of the others." (Ex. 45, Judgment of the General Court, ¶ 86).

**Plaintiff's Response:**  Admit.

284. The European General Court reasoned "[T]he cube shape is inseparable, on the one

72

hand, from the grid structure, which consists of the black lines that intersect on each of the faces of the cube and divide each of them into nine small cubes of equal size divided into rows of 3 x 3, and, on the other, from the function of the actual goods at issue, which is to rotate, horizontally and vertically, the rows of small cubes. In the light of those factors, the shape of the product is necessarily that of a cube, that is, a regular hexahedron." (Ex. 45, Judgment of the General Court, ¶ 89).

**Plaintiff's Response:** Admit.

285. The European General Court (Eighth Chamber) determined that the "[t]hree-dimensional mark in the shape of a cube with surfaces having a grid structure" was functional and not protectable as a trademark. (Ex. 45, Judgment of the General Court, ¶ 87).

**Plaintiff's Response:** Admit to the extent "functional and not protectable as a trademark" refers to the definitions of "functional" and "not protectable as a trademark" under the laws of the European Union."

## No Actual Confusion

286. RBL has no evidence of actual confusion (i.e., mistaken association) between the Duncan Quick Cube and the 3x3 Rubik's Cube. (Ex. 67, RBL Interrog. Resp., No. 11; Ex. 61, Kremer Dep. Tr., at 12:9-20, 92:19-93:2, 141:2-142:5; Ex. 60, Riehl Dep. Tr., at 10:17-20, 266:13-18, 268:8-11).

**Plaintiff's Response:** Admit.

287. RBL has no evidence of actual confusion (i.e., mistaken association) between the Duncan Quick Cube and RBL. (Ex. 67, RBL Interrog. Resp., No. 11; Ex. 61, Kremer Dep. Tr., at 12:9-20, 92:19-93:2, 141:2-142:5; Ex. 60, Riehl Dep. Tr., at 10:17-20, 267:2- 5).

**Plaintiff's Response:**  Admit.

288. RBL has no survey evidence that the Duncan Quick Cube causes confusion with the 3x3 Cube Design. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17; Ex. 62, Gottlieb Dep. Tr., at 142:21-143:4).

   **Plaintiff's Response:**  Admit.

289. RBL has no survey evidence that the Duncan Quick Cube causes confusion with RBL. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17; Ex. 62, Gottlieb Dep. Tr., at 142:21-143:4).

   **Plaintiff's Response:**  Admit.

290. Flambeau is aware of no actual confusion (i.e., mistaken association) between the Duncan Quick Cube and the Rubik's Cube. (Ex. 1, Burke Decl., ¶ 27).

   **Plaintiff's Response:**  Admit.

291. Flambeau is aware of no actual confusion (i.e., mistaken association) between the Duncan Quick Cube and RBL. (Ex. 1, Burke Decl., ¶ 28).

   **Plaintiff's Response:**  Admit.

292. Consumers are aware that there are many 3x3 puzzle cube makers and that not all 3x3 puzzle cubes originate or are authorized by RBL. (Ex. 16, Loetz Rep., ¶ 205).

   **Plaintiff's Response:**  Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 292. More specifically, the exhibit does not cite to a consumers' awareness of many 3x3 puzzle cube makers and does not support the statement consumers are aware the referenced 3x3 puzzle cubes do not originate or are authorized by RBL.

## Dissimilarities in Designs

293. The overall impressions of RBL's 3x3 Cube Design and Flambeau's Duncan Quick

Cube are different. (Ex. 16, Loetz Rep., ¶¶ 190-194).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 293. Mr. Loetz states his opinion on alleged differences in features between the Duncan Quick Cube and Rubik's Cube but does not comment on the overall impressions of the cubes.

294. RBL's 3x3 Cube Design specifies a black cube, and every single "core puzzle cube" that RBL offers in its product book has black-edges and no "core puzzle cube" that RBL offers in its product book has white edges. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 137:13-138:11; Ex. 69, RBL Req. Ad. Resp., No. 7).

**Plaintiff's Response:** Admit to the extent SMF ¶ 294 is referring to RBL's product offerings in the product book that were available when the product book was made. Ex. 60, Riehl Dep. Tr., at 127:7-128:7. Dispute that the citation to the Ex. 69 supports Flambeau's statement in SMF ¶ 294.

295. The Duncan Quick Cube is a white cube. (Ex. 1, Burke Decl., ¶ 13; Ex. 16, Loetz Rep., ¶ 191; Ex. 60, Riehl Dep. Tr., at 10:17-20, 264:7-14).

**Plaintiff's Response:** Admit.

296. In branding, white and black are perceived as opposites. (Ex. 16, Loetz Rep., ¶ 191).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 296. More specifically, Mr. Loetz provides no support for his opinion, does not explain how he reached his conclusion, does not explain how white and black are perceived as opposites in branding, and does not identify the target audience for the alleged perception.

297. A white cube is unlikely to suggest affiliation with a design using a black cube. (Ex. 16, Loetz Rep., ¶ 191).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's statement in SMF ¶ 297. *See* Response to SMF ¶ 296.

298. RBL's 3x3 Cube Design specifies uniform, square-shaped smaller cube segments. (Ex. 37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24; Ex. 69, RBL Req. Ad. Resp., No. 9).

**Plaintiff's Response:** Disputed. The RUBIK'S Design trademark registration describes the mark as "consist[ing] of a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow and orange" Ex. 37, '094 Registration.

299. The Duncan Quick Cube's smaller segments are not uniformly square. (Ex. 1, Burke Decl., ¶ 14; Ex. 16, Loetz Rep., ¶ 192; Ex. 60, Riehl Dep. Tr., at 10:17-20, 264:25-265:2).

**Plaintiff's Response:** Disputed. *See* Ex. 3, Duncan Quick Cube, at FLAMBEAU001444.

300. The inner corners of the Duncan Quick Cube's smaller segments are cut away for quicker turning, resulting in four diamond shapes holes around the center segment of each face. (Ex. 1, Burke Decl., ¶ 14; Ex. 16, Loetz Rep., ¶ 192).

**Plaintiff's Response:** Disputed. *See* Ex. 3, Duncan Quick Cube, at FLAMBEAU001444.

301. RBL's 3x3 Cube Design specifies uniform, square-shaped color patches. (Ex. 37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12-13, 60:18-24).

**Plaintiff's Response:** Disputed. The RUBIK'S Design trademark registration describes the mark as "consist[ing] of a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors

red, white, blue, green, yellow and orange" Ex. 37, '094 Registration.

302. The color patches on the Duncan Quick Cube are not uniformly square. (Ex. 1, Burke

Decl., ¶ 14; Ex. 16, Loetz Rep., ¶ 193).

**Plaintiff's Response:** Disputed. *See* Ex. 3, Duncan Quick Cube, at

FLAMBEAU001444.

303. The inner corners of the color patches on the Duncan Quick Cube and are cut away. (Ex.

1, Burke Decl., ¶ 14).

**Plaintiff's Response:** Disputed. *See* Ex. 3, Duncan Quick Cube, at

FLAMBEAU001444.

304. RBL's 3x3 Cube Design specifies color patches of three traditional primary colors—red

blue, and yellow, two traditional secondary colors—green and orange, and white. (Ex.

37, '094 Registration; Ex. 60, Riehl Dep. Tr., at 10:17-20, 56:23-57:3, 57:12- 13, 60:18-

24).

**Plaintiff's Response:** Disputed. The RUBIK'S Design trademark registration describes

the mark as "consist[ing] of a black cube having nine color patches on each of its six

faces with the color patches on each face being the same and consisting of the colors

red, white, blue, green, yellow and orange" Ex. 37, '094 Registration.

305. The Quick Cube's patches use a bright, fluorescent color palette. (Ex. 1, Burke Decl., ¶

13; Ex. 16, Loetz Rep., ¶ 194; *see also* Ex. 60, Riehl Dep. Tr., at 10:17-20,

265:16-266:12).

**Plaintiff's Response:** Disputed. *See* Response to SMF ¶ 187.

306. As registered, the 3x3 Cube Design requires a certain orientation to these colors, with

the white face adjacent to the yellow and orange faces and the red face adjacent to the

blue and green faces. (Ex. 37, '094 Registration; Ex. 31, '308 Application, at

FLAMBEAU000040, FLAMBEAU000253-257; Ex. 16, Loetz Rep., ¶ 39; Ex. 61,

Kremer Dep. Tr., at 12:9-20, 57:24-58:3, 58:7, 58:12-59:3, 59:12-19).

**Plaintiff's Response:** Disputed. The '094 Registration does not describe the orientation

of colors on the cube. Ex. 37, '094 Registration.

307. The white face of the Duncan Quick Cube is opposite the yellow face, which is not the

case in the 3x3 Cube Design, as registered. (Ex. 1, Burke Decl., ¶ 13; Ex. 16, Loetz

Rep., ¶ 39).

**Plaintiff's Response:** Admit that the white face of the Duncan Quick Cube is opposite

the yellow face, but dispute the remaining statements in SMF ¶ 307. *See* Response to

SMF ¶ 306.

### Use of House Marks

308. Both parties use their house marks on their respective products as source identifiers:

| 3x3 Rubik's Cube | Duncan Quick Cube |
|---|---|
|  | |
| (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:18-20, 267:22-268:7, 269:22-270:10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 76:12-18, 76:25- 77:15, 111:10-16, 126:19-22, 141:13-25; Ex. 16, Loetz Rep., ¶¶ 34, 190; Ex. 62, Gottlieb Dep. Tr., at 22:2-12, 22:22-23:4). | (Ex. 1, Burke Decl., ¶¶ 13, 16; Ex. 61, Kremer Dep. Tr., at 12:9-20, 40:10-41:3, 48:10-49:2; Ex. 60, Riehl Dep. Tr., at 10:17-20, 262:8-12, 263:18-25, 270:14-25; Ex. 16, Loetz Rep., ¶ 190; Ex. 62, Gottlieb Dep. Tr., at 24:22-25:5). |

**Plaintiff's Response:** Admit.

309. Both parties use their house marks on their respective products' packaging as source identifiers:

| 3x3 Rubik's Cube | Duncan Quick Cube |
|---|---|
|  | |
| (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:21-24, 265:17-266:17, 268:8-10, 268:16-23, 269:19-21, 270:6-13; Ex. 60, Riehl Dep. Tr., at 10:17-20, 79:16-21, 81:9-14, 81:25-82:4, 111:17-112:2, 138:16-17, 138:21-139:14; Ex. 16, Loetz Rep., ¶¶ 34, 195; Ex. 62, Gottlieb Dep. Tr., at 22:2-12, 22:22-23:4). | (Ex. 1, Burke Decl., ¶ 17; Ex. 3, Quick Cube & Packaging; Ex. 4, Duncan Quick Cube 3902QC; Ex. 5, Duncan Quick Cube 3901QC; see also Ex. 60, Riehl Dep. Tr., at 10:17-20, 262:22-263:7, 271:2-3, 271:8-9; Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:14-17; Ex. 16, Loetz Rep., ¶ 195; Ex. 62, Gottlieb Dep. Tr., at 24:22-25:5). |

**Plaintiff's Response:** Admit.

**Good Faith & Advice of Counsel**

310. Prior to launching the Duncan Quick Cube in the U.S., Flambeau sought and received advice on how to avoid potential IP risks. (Ex. 1, Burke Decl., ¶ 15; Ex. 10, Berson Decl., ¶¶ 6-10).

**Plaintiff's Response:** Disputed. *See* SMF ¶¶ 446-66.

311. Counsel informed Flambeau that the Duncan Quick Cube appeared conventional, that it was well known in the field that Mr. Rubik's original patents on the conventional 3x3 puzzle cube had expired, and that Flambeau could avoid patent infringement by practicing what was disclosed in the expired patents. (Ex. 10, Berson Decl., ¶ 7; Ex. 11, 5/28/15 Patent Opinion).

**Plaintiff's Response:** Admit.

312. Counsel informed Flambeau that the '094 Registration specified a black cube and thus Flambeau could avoid infringement with a white cube. (Ex. 10, Berson Decl., ¶¶ 8- 9; Ex. 12, 1/28/16 Trademark Opinion; Ex. 13, 2/1/2016 Trademark Opinion).

**Plaintiff's Response:** Disputed. The citations to the exhibits do not support Flambeau's statement in SMF ¶ 312. *See* SMF ¶¶ 446-66. Further, in Ex. 12, Mr. Berson provides his opinion regarding the packaging for the Duncan Quick Cube and not the design of the Duncan Quick Cube itself.

313. Counsel informed Flambeau that the European Court of Justice found RBL's registration for 3x3 puzzle cube design functional in the European Union. (Ex. 10, Berson Decl., ¶ 10; Ex. 14, 11/11/2016 Trademark Opinion).

**Plaintiff's Response:** Admit.

## Genericness of the 3x3 Cube Design

314. Mr. Loetz conducted a review of the 3x3 puzzle cube market and concluded that the 3x3 Cube Design lacks distinctiveness because it no longer indicates to the purchasing public that a puzzle cube bearing that design is sourced from any one particular manufacturer or seller. (Ex. 16, Loetz Rep., ¶¶ 176-187).

**Plaintiff's Response:** Disputed. The citation to the exhibit does not support Flambeau's

statement in SMF ¶ 314. More specifically, Mr. Loetz does not provide any evidence

regarding a lack of distinctiveness for the Rubik's Design or the views of the purchasing

public.

315. There are dozens of different non-Rubik's 3x3 puzzle cubes available for purchase in the

U.S. (Ex. 16, Loetz Rep., ¶¶ 183-186 & Appendix 7; Ex. 61, Kremer Dep. Tr., at 12:9-

20, 250:5-15; *see also* Ex. 62, Gottlieb Dep. Tr., at 65:20-66:5 (Mr. Gottlieb "wouldn't

know" how many brands or models of speed cubes are available on the market)).

**Plaintiff's Response:** Admit.

316. There are dozens of different non-Rubik's 3x3 puzzle cubes using the 3x3 Cube Design

available for purchase in the U.S. (Ex. 16, Loetz Rep., ¶¶ 183-186 & Appendix 7; Ex.

61, Kremer Dep. Tr., at 12:9-20, 250:5-15; *see also* Ex. 62, Gottlieb Dep. Tr., at 65:20-

66:5 (Mr. Gottlieb "wouldn't know" how many brands or models of speed cubes are

available on the market)).

**Plaintiff's Response:** Admit to the extent "using" refers to unauthorized use of the

Rubik's Design.

317. The 3x3 Cube indicates to the purchasing public that the product is a generic 3x3 puzzle

cube, not any particular brand of cube. (Ex. 16, Loetz Rep., ¶¶ 176, 182, 187).

**Plaintiff's Response:** Disputed. RBL expends tremendous resources in the United

States and throughout the world to enforce and protect its intellectual property rights,

including those in and to the Rubik's Design. Kremer Decl. ¶¶12-18. These enforcement

efforts have included instituting federal litigations, cease and desist letters, registration

of the Rubik's Design with the U.S. Customs and Border Protection and engagement of

a company called Yellow Brand Protection. *Id. See* SMF ¶ 430.

318. RBL's corporate representative represented that over half of WCA competitors use non-

RBL branded 3x3 puzzle cubes. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 230:7- 231:2, 257:18-258:14).

**Plaintiff's Response:** Admit.

### Different Play Value

319. Flambeau's Quick Cube is designed for speed solving. (Ex. 1, Burke Decl., ¶¶ 10-12, 14; Ex. 16, Loetz Rep., ¶ 197).

    **Plaintiff's Response:** Disputed. According to an internal Flambeau document, dated June 15, 2015, Flambeau sought to develop a product with the "same overall look and size as Rubik's Cube." Ex. 161 at FLAMBEAU001091. SMF ¶¶ 380-81.

320. The inner corners of the Quick Cube's smaller segments are cut-away so that the segments can turn quickly and easily. (Ex. 1, Burke Decl., ¶ 14; Ex. 16, Loetz Rep., ¶ 197; *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 218:9-12).

**Plaintiff's Response:** Disputed. *See* Response to SMF ¶ 300.

321. Puzzle cubes that bear the 3x3 Cube Design, like the 3x3 Rubik's Cube, have uniform square segments that catch on each other when the puzzle is twisted and turned. (Ex. 16, Loetz Rep., ¶¶ 197-98).

**Plaintiff's Response:** Disputed. The Rubik's Speed Cube has the exact same Rubik's Design as the classic 3x3 Rubik's Cube, but is faster because the inner mechanism of the Rubik's Speed Cube has a strong and stable core and lubricating tracks. Ex. 190 at FLAMBEAU002579-FLAMBEAU002581; *see also* Response to SMF ¶ 189.

322. The Duncan Quick Cube turns more smoothly, quickly, and easily than puzzle cubes that bear the 3x3 Cube Design, like the 3x3 Rubik's Cube. (Ex. 16, Loetz Rep., ¶¶ 197-98).

    **Plaintiff's Response:** Disputed. *See* Response to SMF ¶¶ 189, 321.

**Different Customers**

323. RBL does not sell puzzle cubes directly to retailers. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 33:23-34:16, 50:12-51:12, 152:19-153:2).

   **Plaintiff's Response:** Admit.

324. RBL licenses its alleged trademark rights, including the 3x3 Cube Design, to puzzle cube manufacturers for a royalty. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 15:9-13, 163:7-12, 166:25-167:13, 170:12-24, 171:4, 171:10-14, 171:20-25, 172:6-10; Ex. 60, Riehl Dep. Tr., at 10:17-20, 49:10-18, 50:22-51:9).

   **Plaintiff's Response:** Admit.

325. RBL's licensees include large manufacturers, like Hasbro. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 135:25-136:5; Ex. 60, Riehl Dep. Tr., at 10:17-20, 33:23-34:16, 50:12-51:12, 161:11-22).

   **Plaintiff's Response:** Admit.

326. Flambeau sells its Quick Cubes directly to retailers. (Ex. 1, Burke Decl., ¶ 24).

   **Plaintiff's Response:** Admit.

327. Flambeau's customers include large retailers, like Target and Staples. (Ex. 1, Burke Decl., ¶ 24).

   **Plaintiff's Response:** Admit.

**Sophistication of Customers**

328. Flambeau's retail customers are sophisticated. (Ex. 1, Burke Decl., ¶ 25; Ex. 16, Loetz Rep., ¶ 220-203).

   **Plaintiff's Response:** Admit.

329. Retailers of the Duncan Quick Cube have dedicated purchasing departments with individuals highly specialized in and knowledgeable regarding purchasing products for

re-sale. (Ex. 1, Burke Decl., ¶ 25; Ex. 16, Loetz Rep., ¶ 201; *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 136:9-25; Ex. 62, Gottlieb Dep. Tr., at 149:5-13, 149:18-151:25).

**Plaintiff's Response:** Admit that retailers have sophisticated people in their purchasing department and purchase products as a part of their job duties, but dispute the remaining statements in SMF ¶ 329. Ex. 61, Kremer Dep. Tr., at 135:25-136:25; Ex. 62, Gottlieb Dep. Tr., at 150:20-151:17.

330. Individuals in the retailers' purchasing departments are typically buying large, bulk orders, so they exercise a high degree of care when reviewing products and making purchases. (Ex. 1, Burke Decl., ¶ 26; Ex. 16, Loetz Rep., ¶ 202; Ex. 62, Gottlieb Dep. Tr., at 149:5-13, 149:18-151:25).

**Plaintiff's Response:** Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 330. The citations do not support retailer buying trends or motivations regarding products they decide to purchase.

331. Flambeau's and its customers' purchasing agreements are arms-length deals reached through negotiation where each side is familiar with the other and does due diligence before entering into the formal arrangement. (Ex. 1, Burke Decl., ¶ 26; Ex. 16, Loetz Rep., ¶ 203; Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:2-12).

**Plaintiff's Response:** Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 331. The citations do not include supporting evidence regarding the negotiations or due diligence of Flambeau's customers.

332. RBL concedes that retailers, like those that buy the 3x3 Rubik's Cube and the Duncan Quick Cube, are knowledgeable about the products they purchase. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 136:9-15, 136:18-137:12; Ex. 60, Riehl Dep. Tr., at 10:17-20, 153:17-24, 155:6-12, 158:7-159:8).

**Plaintiff's Response:** Disputed. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 332. *See* Response to SMF ¶ 329. The cited deposition testimony also simply supports the fact that certain retailers have relationships with RBL's licensees.

## No Evidence of Dilution

333. RBL has no survey evidence that shows the 3x3 Cube Design has secondary meaning. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17; Ex. 60, Riehl Dep. Tr., at 10:17-20, 183:23-25; Ex. 62, Gottlieb Dep. Tr., at 141:5-8, 141:12-15; *see also id.* at 124:14-19 (no survey on cube purchaser interests)).

   **Plaintiff's Response:** Admit.

334. RBL has no survey evidence that shows the 3x3 Cube Design is famous. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17; Ex. 60, Riehl Dep. Tr., at 10:17-20, 183:23-25; Ex. 62, Gottlieb Dep. Tr., at 141:5-8, 141:12-15; *see also id.* at 114:3-9 (Mr. Gottlieb did not know sales data for the number of Rubik's Cubes in the U.S.), 124:14-19 (no survey on cube purchaser interests).

   **Plaintiff's Response:** Admit.

335. RBL has no survey evidence that the Quick Cube has caused blurring of the 3x3 Cube Design. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17; Ex. 60, Riehl Dep. Tr., at 10:17-20, 183:23-25).

   **Plaintiff's Response:** Admit.

336. RBL has no survey evidence that the Quick Cube has tarnished the 3x3 Cube Design. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 137:13-17).

   **Plaintiff's Response:** Admit.

337. RBL has no survey evidence that the Quick Cube has diluted the 3x3 Cube Design. (Ex.

61, Kremer Dep. Tr., at 12:9-20, 137:13-17).

**Plaintiff's Response:** Admit.

## <u>Fraud on the PTO</u>

338. Jessie Roberts worked as trademark examiner and administrator with the USPTO for over 26 years. (Ex. 15, Roberts Rep., ¶¶ 3-4).

**Plaintiff's Response:** Admit to the extent "administrator" refers to her position as "Administrator for Trademark Identifications, Classification and Practice". Ex. 15, J. Roberts Rep. (*see* Ex. A of the Report, CV, at pp. 1-2).

339. In her position as Trademark Lead Attorney, Ms. Roberts was responsible for training new examining attorneys and handling difficult and complex trademark applications. (Ex. 15, Roberts Rep., ¶ 3).

**Plaintiff's Response:** Admit to the extent "Trademark Lead Attorney" refers to the position Ms. Roberts held from December 1985 to November 1987. Ex. 15, J. Roberts Rep. (*see* Ex. A of the Report, CV at p. 2).

340. In her position as Administrator for Trademark Identifications, Classifications and Practice, Ms. Roberts set policy concerning the identification of goods and services for purposes of trademark registrations. (Ex. 15, Roberts Rep., ¶ 4).

**Plaintiff's Response:** Admit.

341. Ms. Roberts is the author of *International Trademark Classification: A Guide to the Nice Agreement* published by Oxford University Press, now in its fifth edition (published in 2017). (Ex. 15, Roberts Rep., ¶ 4).

**Plaintiff's Response:** Admit.

342. Ms. Roberts reviewed the file history of the '094 Registration and concluded that the application to register the 3x3 Cube Design should have been refused for functionality.

(Ex. 15, Roberts Rep., ¶¶ 38-44 *see also id.*, ¶¶ 50-54, 57-58).

**Plaintiff's Response:** Admit to the extent the conclusion of Ms. Roberts was based on her belief that the referenced Rubik's U.S. patents and the Hungarian Patent No. 180,307 were relevant to the examiner's determination of functionality and, in addition, on her belief that an external design can be functional if there is a reference to it in any part of a utility patent even if the patent does not claim any feature of the external design. Ex. 194, J. Roberts Dep. Tr., 215:24-217:3; 132:17-133:9; Ex. 195, Simms Rep., ¶¶ 3, 27-33.

343. Ms. Roberts concluded that Ideal's and CBS' failure to provide known patents to the examiner during prosecution of the '094 Registration after the examiner requested the patents constituted fraud on the USPTO. Ex. 15, Roberts Rep., ¶¶ 59-60.

**Plaintiff's Response:** Admit to the extent Ms. Roberts formed her conclusion based on the allegation that Ideal and CBS committed fraud by allegedly failing to provide certain patents, but this conclusion was based on a lack of knowledge regarding the subjective mental impressions of the applicant in determining not to submit the Rubik's U.S. patents and the Hungarian Patent No. 180,307. Ex. 194, J. Roberts Dep. Tr., 222:20-224:24; Ex. Ex. 195, Simms Rep., ¶¶ 2, 20-26.

344. Ms. Roberts concluded that Ideal's and CBS' fraud caused injury not only to the USPTO, but to puzzle cube makers, like Flambeau, against whom RBL has asserted the '094 Registration. (Ex. 15, Roberts Rep., ¶ 61).

**Plaintiff's Response:** Admit to the extent Ms. Roberts formed her conclusion based on the allegation that Ideal and CBS committed fraud by allegedly failing to provide certain patents, but this conclusion was based on a lack of knowledge regarding the subjective mental impressions of the applicant in determining not to submit the Rubik's U.S.

patents and the Hungarian Patent No. 180,307. Ex. 194, J. Roberts Dep. Tr., 222:20-224:24.

**Knowledge of Patents**

345. Ms. Roberts created a timeline of events related to Ideal's and CBS's knowledge of certain utility patents, which is attached as Exhibit G to her report. (Ex. 15, Roberts Rep., ¶ 47 & Exhibit G; *see also* Ex. 63, Simms Dep. Tr., at 15:17-20, 47:15-18, 48:6-11 (Mr. Simms reviewed only a single patent), 49:1-6, 49:10-13, 49:20-25, 52:9-53:4, 53:8-54:25, 55:18-57:4).

**Plaintiff's Response:** Admit that Ms. Roberts created a timeline of alleged events attached as Exhibit G to her report, but dispute the remaining statements in SMF 345. The citations to the exhibits do not support Flambeau's statements in SMF ¶ 345 regarding Ideal's and CBS's knowledge of certain utility patents.

346. In September 1982, Ideal was in a business relationship with Mr. Rubik's and certain Hungarian authorities that gave Ideal exclusive rights to sell the 3x3 Rubik's Cube in the U.S. (Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); *see also* Ex. 61, Kremer Dep. Tr., at 12:9-20, 29:24-30:8, 30:12-25, 32:3-10, 32:20-24).

**Plaintiff's Response:** Admit.

347. It is reasonable to infer that patent counsel is aware of the patents related to the goods of his or her client. (Ex. 63, Simms Dep. Tr., at 15:17-20, 61:2-10, 97:15-98:4).

**Plaintiff's Response:** Admit.

348. The '308 Application was submitted by Ideal's patent counsel. (Ex. 63, Simms Dep. Tr., at 15:17-20, 60:22-61:1; Ex. 31, '308 Application).

**Plaintiff's Response:** Admit.

349. In September 1982, Ideal was aware of the '062 Rubik Patent, which had issued in

December 1977 and named Mr. Rubik as an inventor, because Ideal was in a business

relationship with Mr. Rubik regarding Ideal's puzzle cube business at that time. (Ex. 15,

Roberts Rep., ¶¶ 36, 55; Ex. 20, '062 Rubik Patent, at FLAMBEAU000640; Ex. 39,

CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16)).

**Plaintiff's Response:**  Admit to the extent "business relationship" refers to the

agreement Ideal entered into granting it exclusive rights to sell the 3x3 Rubik's Cube in

the U.S. and "Ideal's puzzle cube business" refers to Ideal's business in selling the 3x3

Rubik's Cube in the U.S. *See* Response to SMF ¶ 346.

350. In September 1982, Ideal was aware of the '062 Rubik Patent because Ideal listed the

'062 Patent in patent applications that Ideal filed in August 1981 and January 1982. (Ex.

25, Silbermintz Patent, at FLAMBEAU001365; Ex. 28, Sebesteny Patent, at

FLAMBEAU001383).

**Plaintiff's Response:**  Admit.

351. In September 1982, Ideal was aware of the '875 Rubik Patent, which had published in

July 1981 and named Mr. Rubik as an inventor, because Ideal was in a business

relationship with Mr. Rubik regarding Ideal's puzzle cube business at that time. (Ex. 15,

Roberts Rep., ¶¶ 36, 55; Ex. 21, '875 Rubik Patent, at FLAMBEAU000619-620; Ex. 39,

CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16)).

**Plaintiff's Response:**  Admit to the extent Ideal was in a business relationship with Mr.

Rubik's regarding selling the 3x3 Rubik's Cube in the U.S. and it would be reasonable

to assume Ideal was aware of the '875 Rubik Patent. *See* Response to SMF ¶ 349.

352. In September 1982, Ideal was aware of the application that gave rise to the '387 Rubik

Patent, which was filed in October 1980 and named Mr. Rubik as an inventor, because

Ideal was in a business relationship with Mr. Rubik regarding Ideal's puzzle cube

business at that time. (Ex. 15, Roberts Rep., ¶¶ 36, 55; Ex. 22, '387 Rubik Patent, at FLAMBEAU000659; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390,*16)).

**Plaintiff's Response:** Admit that in September 1982 Ideal was in a business relationship with Mr. Rubik's regarding selling the 3x3 Rubik's Cube in the U.S. Also admit that the '387 Rubik Patent was filed in October 1980 and named Mr. Rubik's as an inventor, but dispute the remaining statements in SMF ¶ 352. The '387 Rubik Patent claims a 2x3 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume Ideal was aware of the '387 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 22, '387 Rubik Patent, at FLAMBEAU000666.

353. In September 1982, Ideal was aware of the application that gave rise to the '116 Rubik Patent, which was filed in August 1981 and named Mr. Rubik as an inventor, because Ideal was in a business relationship with Mr. Rubik regarding Ideal's puzzle cube business at that time. (Ex. 15, Roberts Rep., ¶¶ 36, 55; Ex. 23, '116 Rubik Patent, at FLAMBEAU000667; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390,*16)).

**Plaintiff's Response:** Admit that in September 1982 Ideal was in a business relationship with Mr. Rubik's regarding selling the 3x3 Rubik's Cube in the U.S. Also admit that the '116 Rubik Patent was filed in August 1981 and named Mr. Rubik's as an inventor, but dispute the remaining statements in SMF ¶ 353. The '116 Rubik Patent claims a 2x3 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume Ideal was aware of the '116 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 23, '116 Rubik Patent, at FLAMBEAU000667.

354. In September 1982, Ideal was aware of the application that gave rise to the '117 Rubik

Patent, which was filed in August 1981 and named Mr. Rubik as an inventor, because Ideal was in a business relationship with Mr. Rubik regarding Ideal's puzzle cube business at that time. (Ex. 15, Roberts Rep., ¶¶ 36, 55; Ex. 24, '117 Rubik Patent, at FLAMBEAU001361; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390,*16)).

**Plaintiff's Response:** Admit that in September 1982 Ideal was in a business relationship with Mr. Rubik's regarding selling the 3x3 Rubik's Cube in the U.S. Also admit that the '117 Rubik Patent was filed in August 1981 and named Mr. Rubik's as an inventor, but dispute the remaining statements in SMF ¶ 354. The '117 Rubik Patent claims a 2x2 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume Ideal was aware of the '117 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 23, '117 Rubik Patent, at FLAMBEAU001362.

355. In September 1982, Ideal was aware of the Nichols Patent because it had been sued on that patent in May 1982. (Ex. 15, Roberts Rep., ¶ 37; Ex. 38, 1984 D. Del. Op.,  at FLAMBEAU002072 (594 F. Supp. 1420, 1424); Ex. 63, Simms Dep. Tr., at 15:17-20, 155:20-156:5).

**Plaintiff's Response:** Admit.

356. In September 1982, Ideal was aware of the application that gave rise to the Silbermintz Patent because it was the named assignee when it was applied for in August 1981. (Ex. 25, Silbermintz Patent, at FLAMBEAU001365).

**Plaintiff's Response:** Admit.

357. In September 1982, Ideal was are of the application that gave rise to the Sebesteny Patent because it was the named assignee when it was applied for in January 1982. (Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

**Plaintiff's Response:** Admit.

358. In September 1982, Ideal was aware of the Ishige Patent because Ideal listed the Ishige Patent in a patent application that Ideal filed in January 1982. (Ex. 28, Sebesteny Patent, at FLAMBEAU001383).

**Plaintiff's Response:** Admit.

359. In August or September 1982, CBS acquired Ideal's 3x3 Rubik's Cube business, including all intellectual property rights. (Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424); *see also* Ex. 66, Cube is a Problem to CBS, New York Times (1984), at FLAMBEAU002026).

**Plaintiff's Response:** Admit.

360. By May 1983, CBS was made aware of the '062 Rubik Patent when it purchased Ideal's puzzle cube business, which included exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S. (Ex. 15, Roberts Rep., ¶ 36; Ex. 20, '062 Rubik Patent, at FLAMBEAU000640; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424); *see also* Ex. 25, Silbermintz Patent, at FLAMBEAU001365 (listing '062 Rubik Patent as reference); Ex. 28, Sebesteny Patent, at FLAMBEAU001383 (same)).

**Plaintiff's Response:** Admit.

361. By May 1983, CBS was aware of the '875 Rubik Patent when it purchased Ideal's puzzle cube business, which included exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S. (Ex. 15, Roberts Rep., ¶ 36; Ex. 21, '875 Rubik Patent, at FLAMBEAU000619-620; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at

92

FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:** Admit that it would be reasonable to assume CBS was aware of the '875 Rubik Patent by May 1983.

362. By May 1983, CBS was aware of the application that gave rise to the '387 Rubik Patent when it purchased Ideal's puzzle cube business, which included exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S. (Ex. 15, Roberts Rep., ¶ 36; Ex. 22, '387 Rubik Patent, at FLAMBEAU000659; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:** Admit that CBS purchased Ideal's puzzle cube business with regard to its exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S., but dispute the remaining statements in SMF ¶ 362. The '387 Rubik Patent claims a 2x3 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume CBS was aware of the '387 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 22, '387 Rubik Patent, at FLAMBEAU000666.

363. By May 1983, CBS was aware of the '116 Rubik Patent when it purchased Ideal's puzzle cube business, which included exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S. (Ex. 15, Roberts Rep., ¶ 36; Ex. 23, '116 Rubik Patent, at FLAMBEAU000667; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:** Admit that CBS purchased Ideal's puzzle cube business with regard to its exclusive rights from Mr. Rubik and certain Hungarian authorities to sell

93

the 3x3 Puzzle Cube in the U.S., but dispute the remaining statements in SMF ¶ 363. The '116 Rubik Patent claims a 2x3 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume CBS was aware of the '116 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 23, '116 Rubik Patent, at FLAMBEAU000667.

364. By May 1983, CBS was aware of the '117 Rubik Patent when it purchased Ideal's puzzle cube business, which included exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S. (Ex. 15, Roberts Rep., ¶ 36; Ex. 24, '117 Rubik Patent, at FLAMBEAU001361; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:** Admit that CBS purchased Ideal's puzzle cube business with regard to its exclusive rights from Mr. Rubik and certain Hungarian authorities to sell the 3x3 Puzzle Cube in the U.S., but dispute the remaining statements in SMF ¶ 364. The '117 Rubik Patent claims a 2x2 puzzle that was not relevant to Ideal's 3x3 Rubik's Cube business. Accordingly, it would not be reasonable to assume Ideal was aware of the '117 Rubik Patent. *See* Response to SMF ¶ 349; Ex. 23, '117 Rubik Patent, at FLAMBEAU001362.

365. By May 1983, CBS was aware of the Nichols Patent because it had been named as a defendant in a patent infringement lawsuit regarding that patent. (Ex. 15, Roberts Rep., ¶ 37; Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424); Ex. 63, Simms Dep. Tr., at 15:17-20, 155:20-156:5).

**Plaintiff's Response:** Admit.

366. By May 1983, CBS was made aware of the application that gave rise to the

Silbermintz Patent when it purchased Ideal's intellectual property rights. (Ex. 25, Silbermintz Patent, at FLAMBEAU001365; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:** Admit that it would be reasonable to assume, by May 1983, CBS was aware of the application that gave rise to the Silbermintz Patent when it purchased Ideal's intellectual property rights.

367. By May 1983, CBS was made aware of the application that gave rise to the Sebesteny Patent when it purchased Ideal's intellectual property rights. (Ex. 28, Sebesteny Patent, at FLAMBEAU001383; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:** Admit that it would be reasonable to assume, by May 1983, CBS was aware of the application that gave rise to the Sebesteny Patent when it purchased Ideal's intellectual property rights.

368. By May 1983, CBS was made aware of the Ishige Patent when it purchased Ideal's intellectual property rights, which included a patent application listing the Ishige Patent. (Ex. 28, Sebesteny Patent, at FLAMBEAU001383; Ex. 39, CBS Brief, at FLAMBEAU002015 (1985 WL 671390, *16); Ex. 38, 1984 D. Del. Op., at FLAMBEAU002072 (594 F. Supp. 1420, 1424)).

**Plaintiff's Response:** Admit that it would be reasonable to assume, by May 1983, CBS was aware of the Ishige Patent when it purchased Ideal's intellectual property rights.

## Material Omission

369. Despite knowing about patents covering three-dimensional puzzles, Ideal did not provide any of those patents to the trademark examiner in prosecuting the '308

95

Application. (Ex. 15, Roberts Rep., ¶¶ 38, 49, 56; Ex. 63, Simms Dep. Tr., at 15:17-20, 206:20-207:1).

**Plaintiff's Response:** Admit that Ideal knew about utility patents that claimed the internal mechanism of the 3x3 Rubik's Cube, but dispute the remaining statements in ¶ 369. During prosecution of the '308 Application, Ideal submitted the International Trade Commission decision from *In the matter of Certain Puzzle Cubes*, which discussed the '062 Rubik's Patent and correctly affirmed that Ideal did not have any relevant patent rights in the U.S. with regard to the 3x3 Rubik's Cube. *See* Ex. 35 at FLAMBEAU000112; SMF ¶ 118; Response to SMF ¶ 119.

370. RBL has no idea whether Ideal ever provided any patents to the trademark examiner in prosecuting the '308 Application. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 81:4-6).

**Plaintiff's Response:** Admit, except RBL is aware that during prosecution of the '308 Application, Ideal submitted the International Trade Commission decision from *In the matter of Certain Puzzle Cubes*, which discussed the '062 Rubik's Patent and correctly affirmed that Ideal did not have any relevant patent rights in the U.S. with regard to the 3x3 Rubik's Cube. *See* Ex. 35 at FLAMBEAU000112; SMF ¶ 118; Response to SMF ¶ 119.

371. RBL has not conducted any investigation into whether Ideal ever provided any patents to the trademark examiner in prosecuting the '308 Application. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 81:4-15).

**Plaintiff's Response:** Admit, subject to its response to SMF ¶ 370.

372. Despite knowing about patents covering three-dimensional puzzles, CBS did not provide any of those patents to the trademark examiner in prosecuting the '308 Application. (Ex. 15, Roberts Rep., ¶¶ 38, 49, 56; Ex. 63, Simms Dep. Tr., at 15:17-20, 206:20-207:1).

**Plaintiff's Response:**  Admit that CBS knew about utility patents that claimed the internal mechanism of the 3x3 Rubik's Cube but dispute the remaining statements in ¶ 372. During prosecution of the '308 Application, Ideal submitted the International Trade Commission decision from *In the matter of Certain Puzzle Cubes*, which discussed the '062 Rubik's Patent and correctly affirmed that Ideal did not have any relevant patent rights in the U.S. with regard to the 3x3 Rubik's Cube. *See* Ex. 35 at FLAMBEAU000112; SMF ¶ 118; Response to SMF ¶ 119.

373. RBL has no idea whether CBS ever provided any patents to the trademark examiner in prosecuting the '308 Application. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 81:4-6).

**Plaintiff's Response:**  Admit, except RBL is aware that during prosecution of the '308 Application, Ideal submitted the International Trade Commission decision from *In the matter of Certain Puzzle Cubes*, which discussed the '062 Rubik's Patent and correctly affirmed that Ideal did not have any relevant patent rights in the U.S. with regard to the 3x3 Rubik's Cube. *See* Ex. 35 at FLAMBEAU000112; SMF ¶ 118; Response to SMF ¶ 119.

374. RBL has not conducted any investigation into whether CBS ever provided any patents to the trademark examiner in prosecuting the '308 Application. (Ex. 61, Kremer Dep. Tr., at 12:9-20, 81:4-15).

**Plaintiff's Response:**  Admit, subject to its response to SMF ¶ 373.

375. Had Ideal provided the Rubik Patents to the examiner, they should have led to a refusal of the '308 Application based on functionality. (Ex. 15, Roberts Rep., ¶¶ 38-44; *see also id.*, ¶¶ 50-54, 57-58).

**Plaintiff's Response:**  Disputed.  The citation to the exhibit does not support Flambeau's statements in SMF ¶ 375. Ms. Roberts' conclusion with regard to the

allegations made in SMF ¶ 375 are based on an erroneous underlying assumption. *See* Response to SMF ¶ ¶ 342; Ex. 195, Simms Rep., ¶ ¶ 3, 27-33.

376. Had CBS provided the Rubik Patents to the examiner, they should have led to a refusal of the '308 Application based on functionality. (Ex. 15, Roberts Rep., ¶ ¶ 38-44 *see also id.*, ¶ ¶ 50-54, 57-58).

**Plaintiff's Response:**  Disputed. The citation to the exhibit does not support Flambeau's statements in SMF ¶ 376.  Ms. Roberts' conclusion with regard to the allegations made in SMF ¶ 376 are based on an erroneous underlying assumption. *See* Responses to SMF ¶ ¶ 343; Ex. 195, Simms Rep., ¶ ¶ 2, 20-26

<u>**No Damage to RBL**</u>

377. Sales of the 3x3 Rubik's Cube increased for RBL's U.S. licenses from 2015 to 2016. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 292:19-22).

**Plaintiff's Response:**  Admit.

378. Sales of the 3x3 Rubik's Cube increased for RBL's U.S. licenses from 2016 to 2017. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 292:19-24).

**Plaintiff's Response:**  Disputed. By 2017, sales of 3x3 RUBIK'S CUBES for RBL's U.S. licensees had decreased by several millions. *See* Ex. 76, Riehl Decl. at ¶ 32; Exhibit 142, RBL_006453; Ex. 75, Kremer Decl. ¶ 19.

379. Sales of the 3x3 Rubik's Cube for RBL's U.S. licenses were up from 2017 to 2018 as of August 2018. (Ex. 60, Riehl Dep. Tr., at 10:17-20, 292:19-293:2-4).

**Plaintiff's Response:**  Disputed. Overall sales for the 3x3 Rubik's Cube declined from 2017 to 2018. *See* Ex. 75, Kremer Decl. ¶ 19. In particular, sales of the 3x3 Rubik's Cube declined for Hasbro, RBL's biggest licensee for the 3x3 Rubik's Cube, which sells the 3x3 Rubik's Cube to mass market retailers such as Walmart and Target, and

formerly Toys "R" Us. Ex. 60, Riehl Dep. Tr., at 292:25-293:-2; Ex. 75, Kremer Decl. ¶ 7.

380. RBL has not quantified any damage to its reputation allegedly caused by the Duncan Quick Cube. (Ex. 64, Vollmar Dep. Tr., at 35:25-36:10).

**Plaintiff's Response:** Disputed. Duncan's actions have been harmful to RBL's reputation. RBL's licensees of the 3x3 RUBIK'S CUBE have expressed their concern to RBL about the promotion and sale of the Duncan Quick Cube. RBL has had to assure them that it is taking action to assert RBL's trade dress rights. The RUBIK'S CUBE has been a success ever since it debuted in the U.S. in 1980. By 1981, the RUBIK'S CUBE puzzle had become a worldwide sensation with many millions of sales. Over the past 40 years, RBL and its predecessors have steadfastly worked and invested immense resources to protect the RUBIK'S Design. They have also expended massive resources to promote the RUBIK'S brand and oversee the manufacture of twisty puzzles that adhere to its high quality and safety standards. The goodwill symbolized by the Rubik's Design is of extraordinary value and is among RBL's most valuable IP assets. As a result of the extraordinary success of the RUBIK'S CUBE, the RUBIK'S Design is instantly recognizable to the public as signifying the source of the puzzle (Ex. 167, Gottlieb Depo. Tr. at 156:11-157:4.) A cheaper priced 3x3 twisty puzzle that uses the RUBIK'S Design without authorization tarnishes RBL's reputation and dilutes the distinctiveness of the world famous RUBIK'S Design. Ex 75, Kremer Decl. ¶¶ 3, 5, 22, 24; SMF ¶¶ 431-45.

## SECTION II: RBL'S STATEMENT OF ADDITIONAL MATERIAL FACTS

381.    Flambeau created an internal company document with the project name "Quick Cube Puzzle." (Ex. 161, Project Summary at Flambeau001091).

382.    Flambeau described the Quick Cube puzzle as having the "same overall look and size as the Rubik's Cube." (Ex. 161, Project Summary at Flambeau001091; Ex. 162, 8/16/18 Burke Dep. Tr. at 71:12-19).

383.    Flambeau stated that the Quick Cube base be colored white "(instead of black)." (Ex. 161, Project Summary at Flambeau001091).

384.    The Quick Cube puzzle is a 3x3 puzzle cube. (Ex. 161, Project Summary at Flambeau001091; Ex. 3, Duncan Quick Cube at FLAMBEAU001444).

385.    The Quick Cube puzzle is the same size as the Rubik's Cube puzzle. (Ex. 163, RUBIK'S CUBE; Ex. 3, Duncan Quick Cube).

386.    The color patches on the Rubik's Cube puzzle are colored red, orange, yellow, green, blue, and white. (Ex. 163, RUBIK'S CUBE).

387.    The color patches on the Quick Cube are colored red, orange, yellow, green, blue, and white. (Ex. 3, Duncan Quick Cube; Ex. 162, 8/16/18 Burke Dep. Tr. at 164:3-24; Ex. 164, Loetz Dep. Tr. at 245:6-22).

388.    Each of the color patches on the Rubik's Cube puzzle is smaller than the underlying cube section, such that it is framed by the black cube base. (Ex. 163, RUBIK'S CUBE).

389.    Each of the color patches on the Quick Cube puzzle is smaller than the underlying cube section, such that it is framed by the white cube base. (Ex. 3, Duncan Quick Cube).

390.    Each side of the Rubik's Cube Puzzle has a grid appearance. (Ex. 163, RUBIK'S CUBE).

391.    Each side of the Quick Cube Puzzle has a grid appearance. (Ex. 3, Duncan Quick Cube).

392.    The Quick Cube puzzle was initially sold in packaging that depicted a 3x3 puzzle cube with color patches colored red, orange, yellow, blue, green and white with a black cube base. (Ex. 3, Duncan Quick Cube; Ex. 162, 8/16/18 Burke Dep. Tr. at 164:25-165:21; Ex. 165, Quick Cube Presentation at FLAMBEAU000893-894).

393.    A PowerPoint presentation for the Quick Cube puzzle for customers and sales representatives shows an image of a 3x3 puzzle cube with color patches colored red, orange, yellow, blue, green, and white with a black cube base. (Ex. 165, Quick Cube Presentation at FLAMBEAU000893-894).

394.    The Quick Cube puzzle has the same overall look and size as the Rubik's Cube puzzle. (Ex. 161, Project Summary at Flambeau001091; Ex. 3, Duncan Quick Cube; Ex. 163, RUBIK'S CUBE).

395.    The Rubik's Cube puzzle was introduced in the United States in 1980. (Ex. 75, Kremer Decl. ¶ 3.)

396.    Since 1980, the Rubik's Cube puzzle has been sold in the United States with the same six colors – red, orange, yellow, blue, green and white.  (Ex. 75, Kremer Decl. ¶4.)

397.    The Rubik's Cube puzzle has been sold in the United States continuously since 1980. (Ex. 75, Kremer Decl. ¶4.)

398.    Over 45 million Rubik's Cube puzzles have been sold in the United States. (Ex. 75, Kremer Decl. ¶ 19.)

399.    The Rubik's Cube puzzle was inducted into the National Toy Hall of Fame in 2014. (Ex. 76, Riehl Decl. ¶ 15).

400.    The Rubik's Cube puzzle is in the design collection of the Museum of Modern

101

Art in New York City.  (Ex. 76, Riehl Decl. ¶14).

401.    The Rubik's Cube puzzle is included in Time Magazine's "ALL-TIME 100 Greatest Toys." (Ex. 76, Riehl Decl. ¶ 16).

402.    The Rubik's Cube puzzle is included in an October 29, 2014 article in Time Magazine entitled, "The 13 Most Influential Toys of All Time." (Ex. 76, Riehl Decl. ¶ 16).

403.    The Rubik's Cube puzzle has appeared in numerous motion pictures, print advertisements, television commercials, music videos and elsewhere. (Ex. 75, Riehl Decl. ¶¶ 5-10).

404.    Third-party companies have utilized the Rubik's Cube in media campaigns, including Apple, Google, Kia Motors and Office Depot. (Ex. 75, Riehl Decl. ¶ 5.)

405.    According to the World Cube Association ("WCA") website, the WCA governs competitions for mechanical puzzles that are operated by twisting groups of pieces. (Ex. 166 at FLAMBEAU002505).

406.    The WCA describes the Rubik's Cube puzzle as the "most famous of these [mechanical] puzzles. (Ex. 166 at FLAMBEAU002505).

407.    RBL owns the Rubik's Cube business and all associated intellectual property rights, including all of the common law trademark rights in and to the Rubik's Design in the United States.  (Ex. 75, Kremer Decl. ¶4.)

408.    The Rubik's Cube puzzle and the Rubik's Design have been promoted in the United States by RBL and its predecessors in interest from 1980 through the present day. (Ex. 75 Kremer Decl. ¶ 5).

409.    RBL has engaged in substantial promotional and marketing activities in the United States for the Rubik's Design and that features the Rubik's Design. (Ex. 75 Kremer Decl. ¶¶ 6-11; Ex. 76, Riehl Decl. ¶¶19-35).

410.    RBL and its licensees have spent several millions to advertise and promote the Rubik's Cube puzzle in the United States. (Ex. 75, Kremer Decl. 10-11; Ex. 76, Riehl Decl. ¶¶ 25-26).

411.    The target users of the Quick Cube puzzle are children aged 8-15 years. (Ex. 162, 8/16/18 Burke Dep. Tr. at 77:1-15; Ex. 161, Project Summary at Flambeau001091).

412.    The purchasers of the Quick Cube puzzle are parents of children aged 8-15 years. (Ex. 161, Project Summary at Flambeau001091; Ex. 167, Gottlieb Dep. Tr. at 123:11-124:13, 269:2-17).

413.    The target users of the Rubik's Cube puzzle are children aged 8-17. (Ex. 76, Riehl Decl. at ¶ 39).

414.    The target purchasers of the Rubik's Cube puzzle are parents of children aged 8-17. (Ex. 76, Riehl Decl. at ¶ 39; Gottlieb Dep. Tr. at 123:11-124:13, 269:2-17).

415.    The Quick Cube puzzle has been sold in Target, Staples and Toys "R" Us before it went out of business. (Ex. 1, Burke Decl., ¶ 24).

416.    The Rubik's Cube puzzle has been sold in Target, Staples and Toys "R" Us before it went out of business. (Ex. 75, Kremer Decl. at ¶ 7; Ex. 76, Riehl Decl. at ¶ 37).

417.    Flambeau stated that the "target competitor" of the Quick Cube is "Rubik's Cube" and the Quick Cube product would be sold at "roughly ½ the retail of Rubik's Cube." (Ex. 161, Project Summary at Flambeau001091).

418.    The Quick Cube puzzle is sold at an approximate retail price of $5.99. (Ex. 76, Riehl Decl. at ¶ 39; Ex. 157, Duncan Website**).**

419.    The Rubik's Cube puzzle is sold at an approximate retail price of $9.99-$13.95. (Ex. 76, Riehl Decl. at ¶ 39; Ex. 154, RBL Website; Ex. 155; Hasbro Website; Ex. 156; Winning Moves Website; Ex. 157, Duncan Website).

420.    The Rubik's Cube puzzle and the Quick Cube puzzle have been displayed and sold side by side at retailers.  (Ex. 76, Riehl Decl. ¶ 37, Exs. 151-153).

421.    The Rubik's Cube is licensed and sold by Hasbro, Inc. ("Hasbro") (Ex. 75, Kremer Decl. ¶ 7).

422.    Hasbro sells the Rubik's Cube puzzle to major retailers such as Walmart, Target and Best Buy. **(**Ex. 75, Kremer Decl. at ¶ 7)

423.    Hasbro is a well-known toy company. **(**Ex. 16, Loetz Rep., ¶¶ 9, 35, 178; Ex. 76, Riehl Decl. at ¶ 2).

424.    Rubik's Cube puzzles sold by Hasbro are sold in packaging that contains the Hasbro name and trademark. (Ex. 163, RUBIK'S CUBE).

425.    The Rubik's Cube is licensed and sold by Winning Moves, Inc. ("Winning Moves"). (Ex. 75, Kremer Decl. ¶ 7).

426.    Winning Moves sells the Rubik's Cube puzzle to specialty stores such as Restoration Hardware, Barnes & Noble and Staples. (Ex. 75, Kremer Decl. ¶ 7).

427.    The Rubik's Cube is licensed and sold by Super Impulse USA. (Ex. 75, Kremer Decl. ¶7).

428.    Super Impulse USA sells a miniature keychain version of the 3x3 Rubik's Cube puzzle. (Ex. 75, Kremer Decl. ¶ 7).

429.    RBL maintains strict quality control standards by requiring licensees, for example, to follow a style guide with regard to the visual display of the Rubik's Design. (Ex. 75, Kremer Decl. ¶ 35; Ex. 70, Style Guide; Ex. 74, Geek Took Kit, at BOSTONA_000039).

430.    RBL take steps in the United States and throughout the world to enforce and protect its intellectual property rights, including those in and to the Rubik's Design, which have included instituting federal litigations, cease and desist letters, registration of the Rubik's Design

with the U.S. Customs and Border Protection and engagement of a company called Yellow Brand Protection. (Ex. 75, Kremer Decl. ¶ 12-18).

431.    The manufacturer and supplier of the Quick Cube puzzle is a company named Yongjun, located in China. (Ex. 162, 8/16/18 Burke Dep. Tr. at 72:17-75:14; 121:23-122:25).

432.    Samples of the Yongjun cube puzzles received by Flambeau had poor stickers. (Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000922, Flambeau000924).

433.    Samples of the Yongjun cube puzzles received by Flambeau had grease, hair and dirt on them. (Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919-Flambeau000920).

434.    Samples of the Yongjun cube puzzles received by Flambeau had air bubbles under the stickers. (Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000921).

435.    The packaging for samples of the Yongjun cube puzzles received by Flambeau had grease stains. (Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000923).

436.    Flambeau noted that samples of the Yongjun cube puzzles received by Flambeau had loose center pieces that fall out easily over time. (Ex. 168, Quick Cube Quality Inspection Report at Flambeau000919, Flambeau000925).

437.    A purchaser of the Quick Cube puzzle wrote to Flambeau that shortly after purchase, "the entire cube fell apart." (Ex. 169, Customer Email at Flambeau001489).

438.    Flambeau had its Quick Cube Puzzles tested for compliance with the Consumer Product Safety Improvement Act ("CPSIA") by a laboratory named SGS. (Ex. 170, SGS Test Report).

105

439.    A report from SGS dated March 15, 2016 indicates that the Quick Cube puzzles failed the test for certain toxic components, including phthalates. (Ex. 170, SGS Test Report at FLAMBEAU002729).

440.    Phthalates are suspected of causing cancer and other serious illnesses. (Exhibit 171, Kitzes Rep. at pp. 12-13).

441.    The color decals (stickers) on the Quick Cube puzzles contained up to 150 times the permissible limit of certain phthalates under the CPSIA. (Ex. 170, SGS Test Report at FLAMBEAU002730-2731).

442.    The SGS report specified that "Accessible Materials can be placed in the Mouth." (Ex. 170, SGS Test Report at FLAMBEAU002730).

443.    Flambeau considers children as young as eight years old to be the target market users of the Quick Cube puzzle. (Ex. 161, Project Summary at Flambeau001091).

444.    Flambeau shipped the Quick Cube puzzles from the lots received, samples of which failed the SGS phthalates tests, to its direct customers for sale to the public. (Ex. 170, SGS Test Report at FLAMBEAU002729-2731; Ex. 162, 8/16/18 Burke Dep. Tr. at 154:17-24).

445.    Flambeau did not recall any of the Quick Cube puzzles after it shipped them to its direct customers for sale to the public. (Ex. 172, 11/29/18 Burke Dep. Tr. at 133:25-12).

446.    Flambeau voluntarily waived the attorney-client privilege and produced in discovery a purported opinion of counsel concerning functionality and trademark infringement. (Exs. 11-13; Ex. 162, 8/16/18 Burke Dep. Tr. at 72:17-73:12).

447.    Bennett Berson of Quarles & Brady, LLP is a patent attorney. (Ex. 173, Berson Dep. Tr. at 8:1-9:5).

448.    Bennett Berson's area of focus is biotechnology. (Ex. 173, Berson Dep. Tr. at 9:16-10:2).

449.    Bennett Berson considers himself to be a prosecution attorney. (Ex. 173, Berson Dep. Tr. at 8:13-14).

450.    Bennett Berson was unable to recall if he had ever been involved in a federal court trademark litigation. (Ex. 173, Berson Dep. Tr. at 17:7-9).

451.    Bennett Berson was unable to recall if he had given any opinions on the protectability of a claimed trade dress. (Ex. 173, Berson Dep. Tr. at 17:14-16).

452.    Flambeau sought Bennett Berson's opinion as to whether the Quick Cube design infringes any trademarks owned by RBL. (Ex. 173, Berson Dep. Tr. at 54:8-12).

453.    Flambeau sought Mr. Berson's legal opinion on trademark infringement after its Quick Cube puzzles were designed. (Ex. 173, Berson Dep. Tr. at 52:18-54:19; Ex. 89 at FLAMBEAU001088).

454.    Flambeau sought Mr. Berson's legal opinion on trademark infringement after its Quick Cube puzzles were produced. (Ex. 173, Berson Dep. Tr. at 52:18-54:19; Ex. 13 at FLAMBEAU001088).

455.    Flambeau sought Mr. Berson's legal opinion on trademark infringement after its Quick Cube puzzles were shipped from its supplier in China. (Ex. 173, Berson Dep. Tr. at 52:18-54:19; Ex. 162, 8/16/18 Burke Dep. Tr. at 97:2-98:3; Ex. 13 at FLAMBEAU001088).

456.    Quarles & Brady, LLP did not conduct any legal research on any trademark law issues in connection with Mr. Berson's opinion as to whether the Quick Cube design infringes any RBL trademarks. (Ex. 173, Berson Dep. Tr. at 58:15-59:3; 64:3-7; 70:2-17; 123:10-17).

457.    Mr. Berson did not conduct an analysis of the *Polaroid* confusion factors in reaching his conclusion on trademark infringement rendered to Flambeau. (Ex. 173, Berson Dep. Tr. at 58:15-59:8; 116:21-118:14; 122:24-125:15).

458.    Quarles & Brady, LLP did not research whether any prior trademark decisions

concerned the use of a white cube base by a defendant in an action to enforce the Rubik's Design. (Ex. 173, Berson Dep. Tr. at 122:24-125:15).

459.    A case captioned *CBS Inc. v. Logical Games, Inc.,* No. CIV.A. 82-0473-A, 1982 WL 52131 (E.D. Va. Dec. 28, 1982) concerned claims of trademark infringement by a predecessor of RBL against a defendant that was selling a 3x3 cube puzzle with a white cube base. (Ex. 82, *CBS Inc. v. Logical Games, Inc.* (Berson Dep. Ex. 18)).

460.    Mr. Berson had not reviewed the opinion in *CBS, Inc. v. Logical Games* prior to or in connection with his legal opinion that Flambeau will avoid infringement of the Rubik's Design by "offering a white cube." (Ex. 173, Berson Dep. Tr. at 122:24-125:15).

461.    Mr. Berson would have wanted to review the opinion in *CBS, Inc. v. Logical Games* in connection with his legal opinion that Flambeau will avoid infringement of the Rubik's Design by "offering a white cube" had he known about it. (Ex. 173, Berson Dep. Tr. at 130:22-131:5).

462.    Mr. Benson did not review an actual, physical sample of the Quick Cube puzzle before he reached his legal conclusion as expressed in his opinion.  (Ex. 173, Berson Dep. Tr. at 125:17-22).

463.    Mr. Berson had no information from Flambeau on what colors would be used on the patches of the Quick Cube puzzle before he reached his legal conclusion as expressed in his opinion. (Ex. 173, Berson Dep. Tr. at 127:17-128:16; Ex. 162, 8/16/18 Burke Dep. Tr. at 125:6-14).

464.    Mr. Berson did not know what colors would be used on the patches of the Quick Cube puzzle when he rendered his legal opinion on trademark infringement to Flambeau.  (Ex. 173, Berson Dep. Tr. at 127:17-128:16).

465.    Mr. Berson did not render a legal opinion to Flambeau on whether the Quick

108

Cube puzzle gives rise to a claim of dilution.  (Ex. 13, Berson Email, at FLAMBEAU001087).

466.    Mr. Berson did not mention "dilution" in his legal opinion to Flambeau regarding this Quick Cube puzzle.  (Ex. 13, Berson Email).

467.    Parents of children aged 8-15 years are not sophisticated buyers of 3x3 puzzle cubes.  (Ex. 76, Riehl Decl. ¶ 33; Ex. 167, Gottlieb Dep. Tr. at 123:11-124:13).

468.    Yongjun manufactures and offers for sale 3x3 puzzle cubes that do not contain the Rubik's Design.  (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720-723).

469.    A Yongjun Toy Catalog produced in this action by Flambeau includes 3x3 puzzle cubes that do not contain the Rubik's Design.  (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720-723).

470.    The product shown on page 12 of the Yongjun Toy Catalog called "Guanlong pink stickerless" is a 3x3 puzzle cube. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).

471.    The "Guanlong pink stickerless" puzzle cube color patches are not framed by an underlying color of the puzzle cube base. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).

472.    The "Guanlong pink stickerless" puzzle cube can be scrambled and solved the same way as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).

473.    The "Guanlong pink stickerless" puzzle cube has the same use and purpose as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000720).

474.    The product shown on page 14 of the Yongjun Toy Catalog called "LingGan" is a 3x3 puzzle cube. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000721).

475.    The "LingGan" puzzle cube contains color patches that are round in shape. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000721).

476.    The "LingGan" puzzle cube can be scrambled and solved the same way as the

Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000721).

477.    The "LingGan" puzzle cube has the same use and purpose as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000721)

478.    The product shown on page 16 of the Yongjun Toy Catalog called "Carat Diamond" is a 3x3 puzzle cube. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000722)

479.    The "Carat Diamond" puzzle cube contains color patches that are octagonal in shape. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000722)

480.    The "Carat Diamond" puzzle cube can be scrambled and solved the same way as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000722)

481.    The "Carat Diamond" puzzle cube has the same use and purpose as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000722)

482.    The product shown on page 18 of the Yongjun Toy Catalog called "Love cube" is a 3x3 puzzle cube. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000723)

483.    The "Love cube" puzzle cube contains color patches that are heart shaped. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000723)

484.    The "Love cube" puzzle cube can be scrambled and solved the same way as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000723)

485.    The "Love cube" puzzle cube has the same use and purpose as the Rubik's Cube puzzle. (Ex. 174, Yongjun Toy Catalog, at FLAMBEAU000723)

486.    The product shown below and in Exhibit 175 to the Declaration of Darren W. Saunders ("Casino Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 16; Ex. 175).



487.    The Casino Cube contains patches with images of six different common slot machine symbols. (Saunders Decl. ¶ 16; Ex. 175).

488.    The Casino Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Saunders Decl. ¶ 16; Ex. 175).

489.    The Casino Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders Decl. ¶ 16; Ex. 175).

490.    The product shown below and in Exhibit 176 to the Declaration of Darren W. Saunders ("Emoji Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 17; Ex. 176).



491.    The Emoji Cube contains patches with images of six different emoji characters. (Saunders Decl. ¶ 17; Ex. 176).

492.    The Emoji Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Saunders Decl. ¶ 17; Ex. 176).

493. The Emoji Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders Decl. ¶ 17; Ex. 176).

494. The product shown below and in Exhibit 177 to the Declaration of Darren W. Saunders ("Dice Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 18; Ex. 177).



495. The Dice Cube contains patches with images of six different faces of a die. (Saunders Decl. ¶ 18; Ex. 177).

496. The Dice Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Saunders Decl. ¶ 18; Ex. 177).

497. The Dice Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders Decl. ¶ 18; Ex. 177).

498. The product shown below and in Exhibit 178 to the Declaration of Darren W. Saunders ("Numbers Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 19; Ex. 178).



499.    The Numbers Cube contains patches with six different colored images of the numbers 1-9. (Saunders Decl. ¶ 19; Ex. 178).

500.    The Numbers Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Saunders Decl. ¶ 19; Ex. 178).

501.    The Numbers Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders Decl. ¶ 19; Ex. 178).

502.    The product shown below in Exhibit 179 to the Declaration of Darren W. Saunders ("Squares and Circles Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 20; Ex. 179).



503.    The Squares and Circles Cube contains patches with six different colored images of a circle in the center cube on each side with patches of six different colored images of squares comprising the remaining cubes. (Saunders Decl. ¶ 20; Ex. 179).

504.    The Squares and Circles Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Saunders Decl. ¶ 20; Ex. 179).

505.    The Squares and Circles Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders Decl. ¶ 20; Ex. 179).

506.    The product shown below and in Exhibit 180 to the Declaration of Darren W. Saunders ("Colored Circles Cube") is a 3x3 puzzle cube. (Saunders Decl. ¶ 20; Ex. 179).



507.    The Colored Circles Cube contains patches with six different colored circles. (Saunders Decl. ¶ 21; Ex. 180).

508.    The Colored Circles Cube can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Saunders Decl. ¶ 21; Ex. 180).

509.    The Colored Circles Cube has the same use and purpose as the Rubik's Cube puzzle. (Saunders Decl. ¶ 21; Ex. 180).

510.    A 3x3 puzzle cube that contains color patches of any six colors that can be discerned from one another can be scrambled and solved in the same way as the Rubik's Cube puzzle. (Ex. 164, Loetz Dep. Tr. 132:5-17).

511.    A 3x3 puzzle cube that uses colored stickers that are different colors from the colors of the Rubik's Cube most likely would not affect the cost of manufacture of the cube. (Ex. 164, Loetz Dep. Tr. at 132:5-12).

512.    The WCA rules for competitions require "one uniform color per face" of a puzzle cube.  (Ex. 9, WCA Regulations at FLAMBEAU002488).

513.    The WCA rules provide that "each color must be clearly distinct from the other colors." (Ex. 9, WCA Regulations at FLAMBEAU002488).

514.    The WCA rules do not specify or require any specific colors for use on compliant puzzle cubes. (Ex. 9, WCA Regulations).

515.    Hungarian patent no. 170062 entitled "Spatial Logical Toy" does not claim any

colors for the six faces of the puzzle cube. (Ex. 20 at FLAMBEAU000644).

516. Hungarian patent no. 170062 does not claim a black colored cube. (Ex. 20 at FLAMBEAU000644).

517. Hungarian patent no. 170062 does not claim a black grid design. (Ex. 20 at FLAMBEAU000644).

518. Belgian patent no. 887.875 entitled "Spatial Logical Toy" does not claim does not claim any colors for the six faces of the puzzle cube. (Ex. 21 at FLAMBEAU000629-630).

519. Belgian patent no. 887.875 does not claim a black colored cube. (Ex. 21 at FLAMBEAU000629-630).

520. Belgian patent no. 887.875 does not claim a black grid design. (Ex. 21 at FLAMBEAU000629-630).

521. Hungarian patent no. 180387 entitled "Spatial Logical Toy" does not claim any colors for the six faces of the puzzle cube. (Ex. 22 at FLAMBEAU000664-665).

522. Hungarian patent no. 180387 does not claim a black colored cube. (Ex. 22 at FLAMBEAU000664-665).

523. Hungarian patent no. 180387 does not claim a black grid design. (Ex. 22 at FLAMBEAU000664-665).

524. Hungarian patent no. 180387 claims an embodiment of the spatial logical toy characterized by "colors, or letters, numbers or other symbols…" (Ex. 22 at FLAMBEAU000665).

525. U.S. patent no. 4,378,116 entitled "Spatial Logical Toy" does not claim does not claim any colors for the six faces of the puzzle cube. (Ex. 23 at FLAMBEAU000671).

526. U.S. patent no. 4,378,116 does not claim a black colored cube. (Ex. 23 at FLAMBEAU000671).

527.     U.S. patent no. 4,378,116 does not claim a black grid design. (Ex. 23 at FLAMBEAU000671).

528.     U.S. patent no. 4,378,116 states that the "surfaces of the small cubes forming each surface of the larger cube are colored, or carry numbers, figures or other symbols…" (Ex. 23 at FLAMBEAU000669).

529.     U.S. patent no. 4,378,117 entitled "Spatial Logical Toy" does not claim does not claim any colors for the six faces of the puzzle cube. (Ex. 24 at FLAMBEAU001364).

530.     U.S. patent no. 4,378,117 does not claim a black colored cube. (Ex. 24 at FLAMBEAU001364).

531.     U.S. patent no. 4,378,117 does not claim a black grid design. (Ex. 24 at FLAMBEAU001364).

532.     U.S. patent no. 4,378,117 states that the "small cubic elements forming the plane surfaces of the large cube are either colored or indicated with numbers, figures or any other symbols." (Ex. 23 at FLAMBEAU001363).

533.     Lee R. Loetz is not an attorney. (Ex. 164, Loetz Dep. Tr. at 14:4-5).

534.     Lee R. Loetz has not taken any courses in patent law. (Ex. 164, Loetz Dep. Tr. at 14:11-12).

535.     Lee R. Loetz has never given an expert opinion relating to an issue of patent law. (Ex. 164, Loetz Dep. Tr. at 14:13-16).

536.     Lee R. Loetz has never acted in an expert capacity with respect to claim construction of a patent. (Ex. 164, Loetz Dep. Tr. at 17:3-7).

537.     Lee R. Loetz has never given an opinion on what a U.S. utility patent discloses. (Ex. 164, Loetz Dep. Tr. at 17:16-19).

538.     No one at Flambeau knows what the subjective intent of the applicant of U.S.

Trademark Reg. No. 1,265,094 was during the prosecution of the underlying trademark application in 1982-1983. (Ex. 92, Jessie N. Roberts Dep. Tr. at 227:6-19).

539.    Jessie N. Roberts does not know what the subjective intent of the applicant of U.S. Trademark Reg. No. 1,265,094 was during the prosecution of the underlying trademark application in 1982-1983. (Ex. 92, Jessie N. Roberts Dep. Tr. at 224:3-15; 19-20; 227:6-19).

540.    The Duncan Quick Cube puzzle has been a profitable product for Flambeau. (Ex. 162, 8/16/18 Burke Dep. Tr. at 189:14-22).

541.    As of August 16, 2018, the Duncan Quick Cube puzzle ranked in the top 10 Duncan products in sales revenue. (Ex. 162, 8/16/18 Burke Dep. Tr. at 189:23-190:3).

542.    Flambeau's sales of the Duncan Quick Cube puzzle exceeded its sales forecast for year two of sales. (Ex. 162, 8/16/18 Burke Dep. Tr. at 207:3-7).

543.    Flambeau continues to sell the Duncan Quick Cube puzzle. (Ex. 157, Duncan Website).

Respectfully submitted,

Dated: New York, New York
August 5, 2020

*/s/ Darren W. Saunders*
Darren W. Saunders
dsaunders@peroffsaunders.com
Mark I. Peroff
mark.peroff@peroffsaunders.com
Cassandra M. Tam
cassandra.tam@peroffsaunders.com
Jason H. Kasner
jkasner@peroffsaunders.com
PEROFF SAUNDERS P.C.
745 5th Avenue | Suite 500
New York, NY 10151
Tel: 646.898.2030

*Attorneys for Plaintiff*
*Rubik's Brand Limited*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on August 5, 2020, by electronic mail on counsel of record for Defendant, pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Judge Gardephe's Rule IV.C:

QUARLES & BRADY, LLP
Anthony A Tomaselli
Anthony.Tomaselli@quarles.com
Anita Marie Boor
anita.boor@quarles.com
Kristin Graham Noel
kristin.noel@quarles.com
Matthew J Duchemin
matthew.duchemin@quarles.com

*Attorneys for Defendant*
*Flambeau, Inc.*

By:    _/s/Cassandra M. Tam_____
       Cassandra M. Tam

118